Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

30 F.3d 127 (Table)
**Unpublished Disposition**

**(Cite as: 30 F.3d 127, 1994 WL 390091 (1st Cir.(Mass.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA1 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals,
First Circuit.

**UNITED STATES, Appellee,**
v.
**Alvaro MORENO, A/K/A Andy, Defendant, Appellant.**

No. 94-1596

July 14, 1994

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, *U.S. District Judge* ]

*Raymond E. Gillespie* on Memorandum for appellant.

*Donald K. Stern,* United States Attorney, and *Michael J. Pelgro,* Assistant United States Attorney on Memorandum for appellee.

D. Mass.

AFFIRMED.

Before Torruella, Selya and Cyr, *Circuit Judges.*

Per Curiam.

**\*\*1** Defendant Alvaro E. Moreno appeals from a second district court order affirming the magistrate-judge's denial of bail pending trial. For the reasons that follow, we affirm.

Moreno was arrested pursuant to a complaint charging that he and three co- defendants conspired to possess, and possessed, cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846. After a detention/probable cause hearing, Magistrate-Judge Collings issued a detailed Memorandum and Order granting the government's motion for detention under 18 U.S.C. § 3142(f), because "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." Moreno filed two subsequent motions for release on conditions. The first was denied without prejudice by District Judge Zobel. Thereafter an indictment issued against Moreno and five others, charging Moreno with distribution of five or more kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, in addition to conspiracy to distribute, and to possess with intent to distribute. Moreno then filed his second motion for release, which was denied by Judge Gorton.

The evidence at the detention/probable cause hearing included a videotape which showed Moreno and a co-defendant negotiating the sale of five kilograms of cocaine to an undercover agent. Moreno's statements on the tape indicated that he was able to routinely arrange for the interstate delivery of up to twenty kilograms of cocaine at one time. He expressed general familiarity with the mechanics of illegal cocaine trafficking, including the comparative prices of the drug in various cities, and the identity of sources. He also made statements to the effect that he was planning a trip to Colombia to obtain heroin for illegal sale in the United States. Other evidence at the hearing tended to show that Moreno had participated in an earlier sale of one kilogram of cocaine, and that multi-kilogram quantities of the drug had been picked up and delivered from his residence.

Moreno is a native of Colombia and possesses a Colombian passport. His mother and siblings reside in Colombia. He entered the United States illegally in 1981, was granted amnesty, and has been a lawful permanent resident since July, 1989. He maintains a familial relationship in Massachusetts with his girlfriend and two children (ages 10 and 7). At the

time of the hearing in February, 1994, he had been employed by a paving company for several years, but was temporarily laid off due to bad weather. He offered a work history dating back to 1982, and several letters stating that he is viewed as a responsible worker and a person of good character.

It appears that after the arrest of a co-defendant, Moreno fled briefly to Canada. He returned within a week for the ostensible purpose of facing the charges against him. He was arrested at Chelsea District Court where he had gone to clear an unrelated default.

**\*\*2** In pretrial detention cases we undertake an "independent review, tempered by a degree of deference to the determinations made below." *United States v. Tortora,* 922 F.2d 880, 882 (1st Cir. 1990). With due respect to the lower court's factual determinations, we use "an intermediate level of scrutiny, more rigorous than the abuse-of-discretion or clear-error standards, but stopping short of plenary or *de novo* review." *Tortora,* 922 F.2d at 883; *United States v. O'Brien,* 895 F.2d 810, 814 (1st Cir. 1990). There must be clear and convincing evidence that the defendant's release poses a risk of danger to the community; and a preponderance of the evidence that there is a risk of flight. *See United States v. Patriarca,* 948 F.2d 789, 792-93 (1st Cir. 1991).

Where, as here, there is probable cause to believe that the defendant committed a controlled substances offense punishable by a maximum term of imprisonment of ten years or more, [FN1] the government is aided by the statutory presumption that no conditions will assure the defendant's appearance nor the safety of the community. *See* 18 U.S.C. § 3142(e). The presumption reflects Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade. *See United States v. Palmer-Contreras,* 835 F.2d 15, 17 (1st Cir. 1987) (presumption of risk of flight); *United States v. Williams,* 753 F.2d 329, 335 (4th Cir. 1985) (presumption of pretrial recidivism). When a defendant offers evidence in rebuttal, the presumption does not disappear, but "retains evidentiary weight-the amount dependent on how closely defendant's case resembles the congressional paradigm." *Palmer-Contreras,* 835 F.2d at 18. The presumption is then considered along with the other relevant factors outlined in 18 U.S.C. § 3142(g). *Palmer-Contreras,* 835 F.2d at 18.

We agree with the magistrate that the government made a strong showing that Moreno posed a danger to the community and a risk of flight. The evidence of Moreno's willingness and ability to deliver large quantities of illegal drugs, his family and other connections in Colombia, and his pre-arrest flight to Canada, all reflect a close match to the congressional paradigm of a defendant with the resources and foreign contacts to escape to other countries, and the financial incentive to continue in the drug trade. The magistrate persuasively reasoned that Moreno's proof of family ties and employment in Massachusetts was insufficient to rebut this strong presumption, especially considering the other relevant factors: the gravity of the offense charged, [FN2] the weight of the evidence against Moreno, and the possibility of his deportation upon conviction.

At the hearing before the magistrate, and in his first motion for release, Moreno offered no rebuttal to the presumption of dangerousness raised by evidence of his ability to deal in large quantities of drugs. In his second motion for release, however, Moreno offered his own affidavit stating that he had merely "pose[d] as a Colombian drug dealer" and a "big shot," as a favor to one of his co-defendants. Moreno argued that if released he would be too busy to engage in illegal activities, pointing to two current job offers and volunteer work at his church. He proffered as conditions, $1,000 cash security, and a third-party custodianship by his girlfriend or a co-worker. The district court summarily rejected the motion.

**\*\*3** We see no error in light of the very strong presumption of dangerousness raised by the government's evidence. As the government argues, the proposed custodians and conditions are easily manipulated and their effectiveness hinges on the defendant's good faith. They thus fall far short of providing the needed "objectively reasonable assurance of community safety." *Tortora,* 922 F.2d at 886. Defendant's final argument, that two of his co-defendants were released on conditions, is irrelevant. Detention determinations are fact-bound, and must be made individually. *Tortora,* 922 F.2d at 888.

For the reasons stated, the order of detention is *affirmed*.

FN1. Probable cause for the arrest was

established by the evidence at the hearing, a finding which defendant does not challenge. The grand jury indictment, too, facially established probable cause. *See United States v. Vargas,* 804 F.2d 157, 163 (1st Cir. 1986).

FN2. The magistrate stated that Moreno faced a *minimum mandatory* sentence of five years' imprisonment. The government argues here that the minimum mandatory is even higher, at ten years.

30 F.3d 127 (Table), 1994 WL 390091 (1st Cir.(Mass.)), Unpublished Disposition

END OF DOCUMENT