CJA 20  APPOINTMENT OF AND AUTHORITY TO PAY COURT APPOINTED COUNSEL

| 1. CIR./DIST./DIV. CODE | 2. PERSON REPRESENTED | | VOUCHER NUMBER |
|---|---|---|---|
| NMX | Berthod, Geno | | |

| 3. MAG. DKT./DEF. NUMBER | 4. DIST. DKT./DEF. NUMBER | 5. APPEALS DKT./DEF. NUMBER | 6. OTHER DKT. NUMBER |
|---|---|---|---|
| | 1:05-001849-013 | | |

| 7. IN CASE/MATTER OF  (Case Name) | 8. PAYMENT CATEGORY | 9. TYPE PERSON REPRESENTED | 10. REPRESENTATION TYPE (See Instructions) |
|---|---|---|---|
| U.S. v. Berthod | Felony | Adult Defendant | Criminal Case |

11. OFFENSE(S) CHARGED (Cite U.S. Code, Title & Section)   If more than one offense, list (up to five) major offenses charged, according to severity of offense.
1) 21 846-MD.F -- CONSPIRACY TO DISTRIBUTE MARIJUANA

| 12. ATTORNEY'S NAME  (First Name, M.I., Last Name, including any suffix) AND MAILING ADDRESS | 13. COURT ORDER |
|---|---|
| LOPEZ III, MARTIN 1500 MOUNTAIN RD, NW ALBUQUERQUE NM 87104 Telephone Number:  (505) 243-2900 | ☒ O  Appointing Counsel          ☐ C  Co-Counsel ☐ F  Subs For Federal Defender   ☐ R  Subs For Retained Attorney ☐ P  Subs For Panel Attorney     ☐ Y  Standby Counsel  Prior Attorney's Name:   Appointment Date:  ☐ Because the above-named person represented has testified under oath or has otherwise satisfied this court that he or she (1) is financially unable to employ counsel and (2) does not wish to waive counsel, and because the interests of justice so require, the attorney whose name appears in Item 12 is appointed to represent this person in this case, or ☐ Other (See Instructions) |
| 14.  NAME AND MAILING ADDRESS OF LAW FIRM (only provide per instructions) MARTIN LOPEZ III, PC 1500 MOUNTAIN RD, NW ALBUQUERQUE NM 87104 | Robert H. Scott Signature of Presiding Judicial Officer or By Order of the Court 09/19/2005 Date of Order                    Nunc Pro Tunc Date Repayment or partial repayment ordered from the person represented for this service at time of appointment.     ☐ YES     ☐ NO |

| CATEGORIES (Attach itemization of services with dates) | HOURS CLAIMED | TOTAL AMOUNT CLAIMED | MATH/TECH ADJUSTED HOURS | MATH/TECH ADJUSTED AMOUNT | ADDITIONAL REVIEW |
|---|---|---|---|---|---|
| 15.  a. Arraignment and/or Plea | | | | | |
| b. Bail and Detention Hearings | | | | | |
| c. Motion Hearings | | | | | |
| d. Trial | | | | | |
| e. Sentencing Hearings | | | | | |
| f. Revocation Hearings | | | | | |
| g. Appeals Court | | | | | |
| h. Other (Specify on additional sheets) | | | | | |
| (Rate per hour = $         )        TOTALS: | | | | | |
| 16.  a. Interviews and Conferences | | | | | |
| b. Obtaining and reviewing records | | | | | |
| c. Legal research and brief writing | | | | | |
| d. Travel time | | | | | |
| e. Investigative and Other work      (Specify on additional sheets) | | | | | |
| (Rate per hour = $         )        TOTALS: | | | | | |
| 17.  Travel Expenses      (lodging, parking, meals, mileage, etc.) | | | | | |
| 18.  Other Expenses      (other than expert, transcripts, etc.) | | | | | |

| 19. CERTIFICATION OF ATTORNEY/PAYEE FOR THE PERIOD OF SERVICE FROM _____ TO _____ | 20. APPOINTMENT TERMINATION DATE IF OTHER THAN CASE COMPLETION | 21. CASE DISPOSITION |
|---|---|---|

22. CLAIM STATUS     ☐ Final Payment     ☐ Interim Payment Number _____     ☐ Supplemental Payment
Have you previously applied to the court for compensation and/or reimbursement for this case?   ☐ YES    ☐ NO   If yes, were you paid?     ☐ YES    ☐ NO
Other than from the court, have you, or to your knowledge has anyone else, received payment (compensation or anything of value) from any other source in connection with this representation?     ☐ YES     ☐ NO   If yes, give details on additional sheets.
I swear or affirm the truth or correctness of the above statements.

Signature of Attorney:                                                                  Date:

| 23. IN COURT COMP. | 24. OUT OF COURT COMP. | 25. TRAVEL EXPENSES | 26. OTHER EXPENSES | 27. TOTAL AMT. APPR / CERT |
|---|---|---|---|---|
| 28.  SIGNATURE OF THE PRESIDING JUDICIAL OFFICER | | | DATE | 28a. JUDGE / MAG. JUDGE CODE |
| 29. IN COURT COMP. | 30. OUT OF COURT COMP. | 31. TRAVEL EXPENSES | 32. OTHER EXPENSES | 33. TOTAL AMT. APPROVED |
| 34.  SIGNATURE OF CHIEF JUDGE, COURT OF APPEALS (OR DELEGATE) Payment approved in excess of the statutory threshold amount. | | | DATE | 34a. JUDGE CODE |

250

Pleading Separator Sheet USDC NM

vineota   Case Number: 5cv451

Valdez, HumanServices,Dept

Document #:  61



5cv451+61+2005-11-10

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

Kristine Valdez, a.k.a. Kristine Sauceda,
on her own behalf and on behalf of
Dezideria Sauceda and Santiago Sauceda

        Plaintiff,

vs.                                                    CIV NO. 05-CV-451 MV/ACT

New Mexico Human Services Department,

Pamela S. Hyde in her official capacity as
Secretary of the New Mexico Human Services
Department,

Kathryn Falls, in her official capacity as Director of
the Income Support Division of the New Mexico Human
Services Department,

Carolyn Ingram, in her official capacity as Director of the
Medical Assistance Division of the New Mexico Human
Services Department.

## EMERGENCY MOTION AND SUPPORTING MEMORANDUM TO COMPEL DEFENDANTS' RESPONSES TO PLAINTIFF'S DISCOVERY AND REQUEST FOR IMMEDIATE HEARING

Plaintiff moves the Court to compel Defendants to answer Plaintiff's First Set of

Interrogatories and to provide all documents requested in Plaintiff's First Requests for

Production of Documents. Defendants have refused to provide information that is

discoverable and relevant to the litigation. Plaintiff requests an emergency hearing since

depositions are beginning next week, on November 16, 2005 and November 17, 2005.

Plaintiff is going to proceed with those depositions in a good faith effort to meet the

discovery deadline set by this Court. However, Plaintiff is reserving the right to re-call those witnesses once the Defendants have provided her with full and complete discovery. In support of this Motion, Plaintiff states the following:

1) On September 30, 2005, Plaintiff served Defendants with her First Set of Interrogatories and her Requests for Production of Documents. *See* Exhibits A and B, attached. Plaintiff set forth 11 interrogatories, and eight requests for production. The court has permitted each side a total of 30 of each.

2) On October 28, 2005, Defendants responded by answering Interrogatory Number One, part of Interrogatory Number Two, and parts of the Requests for Production. *See* Exhibits C and D, attached. Defendants claim that Plaintiff had used multiple "sub-parts" in the interrogatories, and that she has therefore exceeded her limit of 30. Defendants also refused to provide other information, claiming that it is not relevant to the litigation.

3) Plaintiff has sent Defendants two letters, detailing her complaint about their failure to provide the discovery requested, and also asking Defendants to confer with her in an attempt to resolve this issue without needing the Court's involvement, in compliance with Fed. R. Civ. P. 37(a)(2)(A). *See* Plaintiff's 11/4/05 and 11/7/05 letters, attached as Exhibits E and F. Defendants responded by refusing to confer with Plaintiff without the intervention of the Court. *See* Defendants' 11/9/05 letter, attached as Exhibit G. Hence, Plaintiff is filing this motion.

4) Fed. R. Civ. P. 26 governs discovery generally. Courts have held that Fed. R. Civ. P. 26 is to be construed liberally by courts. *Blout v. Wake Elec. Membership*

*Corp.*, 162 F.R.D. 102, 104 (E.D.N.C. 1993), *cited by Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 489 (1998); *see also Mack v. W.R. Grace & Co.*, 578 F. Supp. 626, 638 (N.D. Ga. 1983) (holding that discovery requests are undoubtedly proper when they lead to relevant or potentially relevant information that will advance the litigation by clarifying a party's contentions and apprising a party of what they must seek to disprove).

5) Defendants have no legal basis for their assertion that Interrogatory Number One contains 16 subparts, and Interrogatory Number Two contains 35 subparts. Defendants provide no case law to support their method of counting, and then use their unsupported tally to avoid answering most of Interrogatory Number Two, and all of Interrogatories 3 through 10.

6) As is more clearly outlined in Plaintiff's 11/4/05 letter to Defendants, a subpart is only discreet when it is logically or factually independent of the question posed by the basic interrogatory. *Cappaccione* at 492; *see also, Ins. Co. of Hartford v. Trustmark Ins. Co.*, 2003 U.S. Dist. LEXIS 18196 (D. Conn. March 7, 2003) (holding that where the complete answer to the latter question requires an answer to the former, there are not discreet subparts); *Myers v. United States Paint Co.*, 116 F.R.D. 165, 166 (D. Mass 1987) (subparts need not be counted as separate interrogatories if they are a logical extension of the basic interrogatory); *Ginn v. Gemini, Inc.* 137 F.R.D. 320, 322 (D. Nev. 1991) (interrogatory subparts are to be counted as part of but one interrogatory if they are logically and factually subsumed within and necessarily related to the primary question).

7) The 1993 amendment to Rule 33 modified the term "subparts" with the term "discrete", suggesting a preference for a more flexible approach to interrogatories. *SAFECO of America v. Rawstron*, 181 F.R.D. 441 (1998).

8) An interrogatory is counted as a single question for purposes of Fed. R. Civ. P. 33 even if it calls for an answer consisting of separate pieces of information, and "even if it calls for several separate bits of information, if there is a direct relationship between the various bits of information." *Clark v. Burlington Northern R.R.*, 112 F.R.D. 117, 118 (N.D. Miss. 1986) (quoting *Holcombe v. Southern Towing Co.*, No. DC 81-167-LS-O (N.D. Miss 1982)).

9) Interrogatory Number One consists of one question, "describe in full the auto-closure process." What follows is simply a specification of the type of information needed in order to fully answer this question. A full description of the auto-closure process logically and factually requires a discussion of the Medicaid categories and computer codes, the deadlines, casework instructions, notification provisions, etc.

10) Similarly, Interrogatory Number Two consists of one question, what are the reasons for auto-closure's adoption. The underlying data, in all of its possible forms, is implicit in a proper response to why auto-closure was adopted. The information requested is factually and logically interrelated, and necessary to answering the question of why auto-closure was adopted.

11) Defendants have refused to produce documents that they claim pertain only to six-month recertification. Specifically, in response to Request for Production Number Six, Defendants state that information concerning staffing levels of caseworkers

at the Income Services Division (ISD) pertains only to six-month recertification, not to auto-closure. *See* Defendants' Responses to Plaintiff's First Requests for Production of Documents, attached as Exhibit D.

12) Defendants provide the reasoning for this decision in "Interrogatory 1, subpart 14", where they assert that caseworker data is only relevant to the implementation of six-month recertification periods. *See* Defendants' Answers to Plaintiff's First Set of Interrogatories, attached as Exhibit C.

13) Plaintiff's definition of auto-closure encompasses the six-month recertification process, as was stated in the definitions section of the first set of Interrogatories,

> "The term auto-closure refers to the procedure that the Department implemented in May of 2004. Pursuant to this procedure, clients who are receiving certain categories of Medicaid assistance have their cases automatically closed *once they receive assistance for six months* unless they complete a new application and a caseworker timely updates information on the computer system."

*See* Plaintiff's First Set of Interrogatories to Defendants at p. 3, attached as Exhibit A.

14) Plaintiff is concerned that if Defendants are making this distinction, they have failed to produce other documents Plaintiff has requested because they consider auto-closure and six-month recertification to be two distinct systems, rather than two parts of the same system. This would violate the basic principle governing discovery, which is to provide all potentially relevant information that will advance the litigation.

5

15) Plaintiff's discovery requests are not broad or unusual.  Plaintiff has simply requested the information necessary to develop the facts of this case in order to prepare for trial.  Defendants not only refuse to provide the information, but they refuse to confer with Plaintiff to settle this dispute.

16) It is clear from Defendants' 11/9/05 letter that Defendants oppose this motion.

WHEREFORE, Plaintiff moves this court for an order compelling Defendants to answer all of Plaintiff's discovery requests.  In the alternative, if the Court finds that Plaintiff has used "sub-parts" and thereby exceeded the maximum amount of interrogatories currently permitted by the court, Plaintiff requests that the Court amend the discovery order so that all of Plaintiff's interrogatories can be answered.

RESPECTFULLY SUBMITTED.

Gail Evans
Chamiza Atencio-Pacheco
NM Center on Law and Poverty
3117 Silver SE
Albuquerque, NM 87106

John Bouman
Sargent Shriver National Center on
Poverty Law
50 East Washington, Suite 500
Chicago, IL 60602
(312) 263-3830 (voice)
(312) 263-3846 (fax)

I hereby certify that a true copy of the foregoing was sent via mail to all counsel of record on this _10th_ day of November, 2005.

Chamiza Atencio-Pacheco

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

Kristine Valdez, a.k.a. Kristine Sauceda,
on her own behalf and on behalf of
Dezideria Sauceda and Santiago Sauceda

        Plaintiff,

vs.                                       CIV NO. 05-CV-451 MV/ACT

New Mexico Human Services Department,

Pamela S. Hyde in her official capacity as
Secretary of the New Mexico Human Services
Department,

Kathryn Falls, in her official capacity as Director of
the Income Support Division of the New Mexico Human
Services Department,

Carolyn Ingram, in her official capacity as Director of the
Medical Assistance Division of the New Mexico Human
Services Department

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

TO:    Paul Ritzma, General Counsel
        Susan Rehr, Assistant General Counsel
        P.O. Box 2348
        Santa Fe, NM 87504
        Attorneys for the Defendants

Pursuant to Rule 33 of the Federal Rules of Civil Procedure for the District Courts of

New Mexico, Plaintiffs hereby serve upon and request the Defendants, to answer in writing and

under oath, within thirty (30) days following service thereof, the following interrogatories.

These interrogatories are continuing in nature and demand is hereby made that you supplement

1



or amend your answers in accordance with Rule 26 of the Federal Rules of Civil Procedure. Any objection must be served upon the Plaintiff's counsel within (30) days of the service of these interrogatories.

## INSTRUCTIONS

In answering these interrogatories, furnish all information, however obtained, which is available to you, including information in the possession of your agents, employees, representatives and anyone from whom you may freely obtain it, as well as from attorneys and their investigators. If you are unable to answer any interrogatory or sub-part thereto in full, after exercising due diligence to secure the information to do so, explicitly so state, and answer to the extent possible, and set forth the efforts you have made to secure the requested information.

If you do not answer any interrogatory or sub-part thereof, on the basis of any privilege, or claim of privilege, state the privilege asserted or claimed, and the facts upon which you rely to support the claim of privilege.

If any part of the information furnished in the answer to any interrogatory is not within the personal knowledge of the person answering these interrogatories, identify each other person (including their job title) that assisted in answering the interrogatories or provided information to the person answering them.

## DEFINITIONS

a)  When used herein in reference to any individual person, "identify" shall mean to state the full name, present or last known address, telephone number, present or last known employment, job title, position or business affiliation of said individual.

2

b) When used herein in reference to a firm, partnership, corporation, business entity or other organization, "identify" shall mean to state its full name, present or last known address and telephone number.

c) When used herein in reference to a document "identify" shall mean:

  i) to state the date, author, addressee, file number, type of document (i.e. letter, memorandum, book, telegram, chart, etc.), or some other means to identify it sufficiently to support a Request for Production; and,

  ii) to state its present location and custodian.

d) The term "document" means all written, recorded or graphic material of every type and description, in whatever form however produced, or reproduced including but not limited to any paper, letter, report, external memoranda, internal memoranda, computer print out, training material, manual, email, electronic document or data and budgetary analysis.

e) "Person" or "persons" means any individual, firm, partnership, organization, association, corporation, joint venture, proprietorship, agency, board, authority, commission or other legal or business entity.

f) "You" or "your" refers to the above named person or entity to whom these interrogatories are directed and includes all of its attorneys, divisions, subdivisions, subsidiaries or predecessors.

g) The term "autoclosure" or "autoclosure process" refers to the procedure that the Department implemented in May of 2004, as described in MAD-GI 04-03 (dated April 9, 2004) which states "As part of the Medicaid cost containment initiatives, Category 032, 035-F and 072 Medicaid cases will once again be closed automatically by ISD2 if the periodic review (PR) is not completed in the month in which it is due (the expiration month)" and subsequent alterations, if any.

3

h)  "Citation" means the standard description for a published document or a document available electronically on the internet or otherwise.

i)  "Defendants," unless otherwise specifically limited, means the named defendants and all employees and agents of the agencies they administer.

j)  "Medicaid" means the jointly funded state and federal program that provides necessary medical services to low-income persons pursuant to Title XIX of the Social Security Act, 42 U.S.C. §1396 et seq. as administered in New Mexico.

## INTERROGATORIES

1.  Describe in full the autoclosure process, including the Medicaid categories (i.e. category #) to which it applies, as well as a description of each of those categories and the computer codes, and the ways autoclosure differs from the previous system, and all of the deadlines, data entry instructions, data entry deadlines, computer codes and descriptions of each, casework instructions, notification provisions for recipients, specifications for disenrollment and re-enrollment in managed care organizations, appeals, reinstatements, corrections of errors, staffing needs and projections, and all other aspects of the autoclosure system.  Include in this description citations to any and all statutes, regulations, rules, policy statements, procedural issuances, instructions to staff, computer codes and descriptions of each, and any other documents (as defined above) relating to autoclosure that were in effect at any time between the date autoclosure became effective and the present.

**ANSWER:**

2. List the reasons why autoclosure was adopted, and for each reason and any reason, provide the underlying rationale, data, reports, predictions, analyses, computer models, professional recommendations, examples from other jurisdictions, academic studies, prior track

records of any similar automatic closure systems used in New Mexico, or any other information relied upon to establish the reason. For any reason that involves alleged savings of public funds, provide the full cost estimates including all underlying assumptions about staffing needs and reductions, caseloads, processing costs, mailing costs, startup costs, avoidance of costs of medical care, unit costs, appeals costs, reinstatement costs and any other cost projections and estimates. Provide citations to any of the information included in the answer to this interrogatory for which citations are available, and indicate the information for which there is no citation available.

**ANSWER:**

3. Starting with the month autoclosure became effective, and for each month thereafter, provide the following with respect to each month:

a) The number of open cases in the Medicaid program subject to autoclosure in that month;

b) The number of cases automatically closed under autoclosure because the case had not been fully processed by the deadline;

c) The number of the cases specified in subsection (b) that were later reinstated with no loss of coverage under Medicaid;

d) Of the number of cases specified in subsection (b) that were later reinstated, please provide a breakdown of the number of cases reopened one month after being autoclosed, two months after being autoclosed, three months after being autoclosed, four months after being autoclosed, five months after being autoclosed, and six months after being autoclosed.

e) Of the cases specified in subsection (b), specify all the different reasons for termination and provide the number of cases terminated for each reason

**ANSWER:**

5

4. Starting with the month autoclosure became effective, and for each month thereafter, provide, with respect to each month, the amount of money Defendants saved due solely to the autoclosure process and the calculation used to determine the alleged savings. If monthly calculations have not been made, provide the cumulative amount of money that Defendants have saved due to the autoclosure process for any periods of time, specifying the periods of time.

**ANSWER:**

5. Starting with the month autoclosure became effective, and for each month thereafter, provide, with respect to each month, in regard to the cases specified in the answer to question 3, subsection (b) above, the number of cases in which the recipient filed an appeal of the autoclosure decision, and the number of appeals won by the appellant after a hearing, and the number of appeals withdrawn by the appellant because the case was reinstated prior to formal decision.

**ANSWER:**

6. Since the implementation of autoclosure in May of 2004, specify all reports and analyses generated by or for the Defendants with respect to any aspect of autoclosure, including the name or designation of the report(s); date and frequency of the report(s) (or whether the report was one time only or irregular); person, organization and/or department that generates the report; data sources and uses of the report(s).

**ANSWER:**

6

7. Describe the entire process followed in the closing and reopening of the cases of Plaintiffs Valdez and Genthner, including but not limited to any actions with respect to disenrollment from or enrollment in managed care organizations, any review process conducted, dates and names/citations of documents sent to the client, information received by HSD from the clients, actions by eligibility workers (e.g., contacts/attempted contacts with applicants, entries into computer system), and specify the names of all caseworkers and supervisors involved in each case.

**ANSWER:**

8. For each field office, please indicate how recertification applications are processed and describe the performance levels on processing them, including how they are received, where placed (if, for example, in a "basket" or other), handled, the entire chain of custody and whether this varies depending on how the recertification application is received (i.e. U.S. mail, hand-delivery, or facsimile), as well as the number of recertification applications received in each field office (broken down by month) and the number that are actually processed in a timely fashion, and the number that are not, as well as the name, from each field office, of the person in charge of ensuring that recertification applications are timely processed, and the names of the individuals responsible for entering the data into the computer.

**ANSWER:**

7

9. Please indicate the number of cases that have been autoclosed and later reinstated by a supervisor who determines that the case was closed in error (include therein whether or not it was reopened using the "J" function on ISD2) for the time period May 2002 through the present. Include a monthly breakdown and field office breakdown. In answering this interrogatory, please also include a summation of the information contained report # HIJJ031Q entitled "Cases Reinstated by Supervisor."

   **ANSWER:**


10. Please describe in detail the processes and procedures HSD has implemented and is using to ensure it is complying with the mandate in 42 C.F.R. §§435.930(a) and (b) which require the agency to furnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures, and to continue to furnish Medicaid to all eligible individuals until they are found to be ineligible.

   **ANSWER:**


11. For each interrogatory, please provide the names, job titles, and responsibilities of each person who answered or assisted in answering or provided information to help answer each interrogatory and each request for production.

   **ANSWER:**

8

Respectfully Submitted,


Gail Evans, Legal Director
Center on Law and Poverty
3117 Silver Avenue SE
Albuquerque, NM 87106
(505) 255-2840

Attorney for Plaintiff

9

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

Kristine Valdez, a.k.a. Kristine Sauceda,
on her own behalf and on behalf of
Dezideria Sauceda and Santiago Sauceda

        Plaintiff,

vs.                                    **CIV NO. 05-CV-451 MV/ACT**

New Mexico Human Services Department,

Pamela S. Hyde in her official capacity as
Secretary of the New Mexico Human Services
Department,

Kathryn Falls, in her official capacity as Director of
the Income Support Division of the New Mexico Human
Services Department,

Carolyn Ingram, in her official capacity as Director of the
Medical Assistance Division of the New Mexico Human
Services Department

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

To: Paul Ritzma, General Counsel
Susan Rehr, Assistant General Counsel
P.O. Box 2348
Santa Fe, NM 87504
Attorneys for Defendants

    The requests for production of documents described herein are pursuant to Rules 26

and 34 of the Federal Rules of Civil Procedure for the District Courts of New Mexico.

Produce legible copies of the requested documents for inspection at the office of The



PLAINTIFF'S EXHIBIT
B
ALL-STATE LEGAL SUPPLY CO.

New Mexico Center on Law and Poverty, 3117 Silver SE, Albuquerque, New Mexico 87106, within thirty (30) days. For purposes of this request a document shall be defined as any paper, letter, report, external memoranda, internal memoranda, computer print-out, training material, electronic documents or record, manual, e-mail and/or budgetary analysis, and includes documents authored by the Department or in its possession or control. Any objection must be served upon the Plaintiffs' counsel within (30) days of the service of these requests for production of documents.

INSTRUCTIONS:

"Defendants," unless otherwise specifically limited, means the named defendants and all employees and agents of the agencies they administer.

If Defendants provide a citation to a free public source for documents, then they need not produce a physical copy in response to this Request for Production. Provide a log of the documents produced in hard copy, the documents produced via citation to a free source, and the documents not produced due to an objection, specifying the objection as to each document.

For each document not produced by personnel in the Defendants' departments, provide the author, the author's employing organization, and the relationship of the author and the author's employing organization to the Defendants.

If any document has been translated into a language other than English, provide copies of the document in each additional language.

**REQUESTS FOR PRODUCTION**

Please provide copies of the following documents:

1. All documents describing, governing, or otherwise pertaining to autoclosure (as defined in Plaintiff's First Set of Interrogatories), including the Medicaid categories to which it applies and those to which it does not, the ways in which it differs from the previous system, and all of the deadlines, data entry instructions, data entry deadlines, computer codes and descriptions of each, casework instructions, information and notices for recipients, specifications for disenrollment and re-enrollment in managed care organizations, appeals, reinstatements, corrections of errors, staffing needs and projections, and all other aspects of autoclosure. This request includes, but is not limited to any and all statutes, regulations, rules, policy statements, procedural issuances, instructions to staff, General Informations, emailed instructions, computer codes and descriptions of each, and any other documents (as defined above) relating to autoclosure in effect at any time between the date autoclosure became effective and the present.

2. All documents describing, supporting or otherwise pertaining to the reasons why autoclosure was adopted, and for each reason and any reason, the underlying rationale, data, reports, predictions, analyses, computer models, professional recommendations, examples from other jurisdictions, academic studies, or any other information relied upon to establish the reason. For any reason that involves alleged savings of public funds, all documents describing, including or otherwise pertaining to cost estimates, and underlying assumptions about staffing needs and reductions, caseloads, processing costs, mailing costs, startup costs, avoidance of costs of medical care, unit costs, appeals costs, reinstatement costs and any other cost projections and estimates.

3. All documents, reports and analyses generated by or for the Defendants with respect to any aspect of autoclosure after its implementation, including, with respect to each document, the name of the person, organization and/or department that generates the report. Also, produce all documents that are or describe the data sources for the documents, analyses and reports produced pursuant to the first sentence of this request.

4. All documents constituting or pertaining to the entire casework process followed in the closing and reopening of the cases of Plaintiffs Valdez and Genthner, including notices, communications to, from or about Valdez and Genthner and any managed care organizations, communications among Defendants' personnel, caseworkers and supervisors, and documents involving the handling of each of these cases by the individual defendants themselves or any administrators or other employees of the Defendants.

5. All documents generated before during or after the implementation of autoclosure that reference, describe or otherwise pertain to autoclosure that Defendants sent to or received from the federal Department of Health and Human Services and Centers for Medicare and Medicaid Services, including correspondence with respect to past use of any automatic closure system.

6. All documents describing or referencing any aspect of autoclosure, including the staffing needs for the Medicaid program (including staffing at ISD field offices), that the Defendants have submitted to, circulated in, or otherwise made known to the New

Mexico Legislature from one year prior to the implementation of that program to the time this request is answered, including but not limited to documents with respect to SB 486 in the year 2005.

7. Any and all documents that any of the Salud Managed Care Organizations (MCOs) have completed regarding the implementation and impact of auto-closure on their patients, including documents showing the number of individuals who have been disenrolled from the MCOs and documents which discuss the MCOs inability to meet or difficulty in meeting Health Plan Employer Data & Information Set requirements as a result of such disenrollments.

8. Please provide a copy of all documents, in any format, including electronic, that were relied on, referred to, cited to or used in any other way in responding to Plaintiff's First Set of Interrogatories.

Respectfully Submitted

Gail Evans, Legal Director
Center on Law and Poverty
3117 Silver Avenue SE
Albuquerque, NM 87106
(505) 255-2840

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

Kristine Valdez, a.k.a. Kristine Sauceda,
on her own behalf and on behalf of
Dezideria Sauceda and Santiago Sauceda

      **Plaintiff,**

vs.                                        **CIV NO. 05-CV-451 MV/ACT**

New Mexico Human Services Department,

Pamela S. Hyde in her official capacity as
Secretary of the New Mexico Human Services
Department,

Kathryn Falls, in her official capacity as Director of
the Income Support Division of the New Mexico Human
Services Department,

Carolyn Ingram, in her official capacity as Director of the
Medical Assistance Division of the New Mexico Human
Services Department

## DEFENDANTS' ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

      Pursuant to Rule 33 of the Federal Rules of Civil Procedure for the District Courts of

New Mexico, Defendants, through their undersigned counsel, hereby answer in writing and

under oath the Plaintiff's First Set of Interrogatories as follows:

## INTERROGATORIES

    1. Describe in full the autoclosure process, including the Medicaid categories (i.e. category

#) to which it applies, as well as a description of each of those categories and the computer



PLAINTIFF'S
EXHIBIT
C
ALL-STATE LEGAL SUPPLY CO.

codes, and the ways autoclosure differs from the previous system, and all of the deadlines, data entry instructions, data entry deadlines, computer codes and descriptions of each, casework instructions, notification provisions for recipients, specifications for disenrollment and re-enrollment in managed care organizations, appeals, reinstatements, corrections of errors, staffing needs and projections, and all other aspects of the autoclosure system. Include in this description citations to any and all statutes, regulations, rules, policy statements, procedural issuances, instructions to staff, computer codes and descriptions of each, and any other documents (as defined above) relating to autoclosure that were in effect at any time between the date autoclosure became effective and the present.

ANSWER: As framed, Interrogatory #1 is overly broad, burdensome and oppressive, requiring extensive research and a time-consuming review and evaluation of data. In addition, many of these questions have already been asked and answered through Inspection of Public Records Act (NMSA 1978, §§ 14-2-1 through 14-2-12) requests raised by counsel for Ms. Valdez and in documents provided to counsel in response to those requests. Pursuant to Fed.R.Civ.P. 33(d), Defendants have the option of producing business records, but when the requested information raised in Interrogatory # 1 and its subparts has already been produced to counsel through documents responsive to the questions raised, Defendants have so indicated. Furthermore, pursuant to Fed.R.Civ.P. 33(a), the limit on the number of interrogatories a party may serve includes "all discrete subparts." See Bell v. Woodward Governor Co., 2005 U.S. Dist. LEXIS 12969 (N.D. Ill. 6/30/05) (Rule's Advisory Committee guidance provides: "Parties cannot evade this presumptive limitation [total number of interrogatories permitted] through the device of joining as "subparts" questions that seek information about discrete separate subjects.")

2

If broken down into its subparts, Interrogatory # 1 actually contains 16 interrogatories, each of which seeks information about discrete, separate subjects. To the extent that Defendants can answer these separate queries, the responses to each follow or, when relevant, Defendants cite to the business records already produced to counsel for Plaintiff, pursuant to Fed.R.Civ.P. 33(d).

Interrogatory # 1 begins by asking Defendants to "describe in full the 'autoclosure process'."

Autoclosure is more accurately described as a part of the recertification (reapplication) process required of recipients in three Medicaid categories – Category 032 (Children's Medicaid), Category 072 (Family Medicaid) and Category 035-F (Family Planning Medicaid). Pursuant to federal regulation, 42 CFR § 435.916, which requires state Medicaid agencies to make an eligibility determination "at least once every twelve months", eligibility for Medicaid has a set duration, at the state's option. See also the Department's implementing regulations for the three categories: 8.202.600.11 NMAC (Family or JUL Medicaid, "Periodic Redeterminations of Eligibility"), 8.232.600.12 NMAC (Children's Medicaid, "Ongoing Benefits"), and 8.235.600.15(B) NMAC (Family Planning Medicaid, "Changes in Eligibility Due Income").

Autoclosure is a feature of the Department's Income Support Division eligibility computer system (ISD2), which has been programmed since May 1, 2004 to automatically close recipients' cases in certain Medicaid categories if recipients fail to recertify at the end of their six-month (i.e., Children's Medicaid or Family/JUL Medicaid) or twelve-month certification (Family Planning Medicaid) periods. As part of the recertification process, ISD2 generates to recipients in the three categories Notices of Expiration 45 days or more in advance of the date of expiration of their certification periods, advising them that their benefits will continue without delay if they

3

bring in or mail a signed reapplication, proof of income and health insurance by the first of the month of the expiration date of their certification periods. If recipients in the relevant categories fail to recertify, the ISD2 system will generate Notices of Closure, approximately 10 to 11 days before their cases will close, stating that their benefits will end for "failure to reapply for benefits per Manual Section 8.200.430.9" [reason code 235], along with an accompanying notice of right to an administrative hearing and request for continuation of benefits.

Pursuant to Fed.R.Civ.P. 33(d), Defendants have already produced to counsel for Plaintiff the following documents that are responsive to this part of Interrogatory # 1 (the first of which Plaintiff has cited to on p. 3, subsection g, in the Definitions section of her First Set of Interrogatories): (1) MAD GI-04-03 (dated April 9, 2004) ("Automatic Closure of Certain Medicaid Categories"); (2) MAD GI 04-06 (dated July 20, 2004)("Changes in Eligibility Policy and ISD2 Programming-Category 035, 032 and 072); (3) MAD GI-04-07 (dated July 20, 2004)("Category 072 Case Closures"); (4) MAD-MR-04-13 ("Six-Month Certification and Deletion of 12-Months Continuous Medicaid; (5) a two-page April 5, 2004 e-mail from Teresa Jo Garcia to Income Support Division employees entitled "Automatic Closure of Cat 032, 035-F, 072"; and (6)a two-page letter, dated February 8, 2005, from Medical Assistance Division Director Carolyn Ingram to Rep. Kiki Savavedra, Chairman of the New Mexico House Appropriation and Finance Committee, addressing, inter alia, autoclosure and the implementation of six-month certification periods.

Defendants produced the above-cited documents in an August 24, 2004 response to counsel for Plaintiff's Inspection of Public Records Act request of August 3, 2004 for training materials, etc. that the Department has produced "which direct and instruct Income Support Specialists on how to implement the new Medicaid close-ended certifications" (request #1), and in a March 25,

4

2005 response to Ms. Fisk's February 25, 2005 requests for: (1) information directing "Income Support caseworkers on how to implement the new six-month certification rule (request # 6); (2) information indicating " how workers should implement the new automatic closure regulation that went into effect in March 2004" (request #7); and information the "Department has produced in response to legislative requests about the impact of the six-month certification" (request #10).

Interrogatory # 1, subpart # 1 asks for a description of "the Medicaid categories (i.e., category #) to which [the autoclosure process] applies."

The three Medicaid categories to which "autoclosure" applies if recipients of those categories fail to timely recertify (reapply) are Category 072 (Family or JUL Medicaid) and Category 032 (Children's or KID Medicaid), for which recipients are eligible for six-month certification periods, and Category 035-F (Family Planning Medicaid), for which recipients are eligible for twelve-month recertification periods. See also 8.202.600.11 NMAC (Family or JUL Medicaid, "Periodic Redeterminations of Eligibility"), 8.232.600.12 NMAC (Children's Medicaid, "Ongoing Benefits"), and 8.235.600.15(B) NMAC (Family Planning Medicaid, "Changes in Eligibility Due Income"). To the extent that a further answer is required, pursuant to Fed.R.Civ.P.33(d), the documents described in answer to the first part of Interrogatory # 1 above (i.e., the description of the "autoclosure process") that have already been furnished to counsel for Plaintiff are also responsive to Interrogatory # 1, subpart # 1.

Interrogatory # 1, subpart # 2 asks for "computer codes" for the Medicaid categories relevant to the autoclosure process.

The only computer code (also known as "reason code") used in Notices of Closure for cases closed in the three Medicaid categories subject to autoclosure (032, 035-F and 072), if

recipients in the those categories fail to recertify at the end of their recertification periods. is 235. See Defendants' answer to the first part of Interrogatory # 1.

Interrogatory #1, subpart # 3 asks for "the ways autoclosure differs from the previous system."

Under the autoclosure system. implemented in May 2004. when individuals in the affected Medicaid categories (032. 035-F. and 072) fail to timely recertify for benefits at the end of their certification periods. the ISD2 system automatically generates Notices of Closure for "failure to reapply for benefits."

Under the system previously in effect. caseworkers were required to manually close cases of recipients who failed to recertify for benefits. Caseworkers under the previous system would initially receive messages ("action items") on their computers' Q screens to warn them when a recipient's twelve-month recertification was due. Caseworkers were then required to send a letter to the recipient asking him/her to reapply and update all necessary changes (income. household composition. etc.).

When recipients failed to recertify. many recipients who were not eligible to receive benefits continued to receive Medicaid well past the expiration of their certification periods: More than 10.000 were overdue for recertifications from January 2003 through January 2004. As a result. the Department continued to pay for ineligible Medicaid recipients. misusing federal and state funds in the process and exposing it to the risk of federal sanctions.  Furthermore. under the previous system. in which recipients in the relevant categories were certified for twelve months. regardless of changes in income (former 8.200.400.14 NMAC. 8.202.600.11 NMAC and KID-630.2). the Department had no reliable mechanism by which to ensure that only eligible recipients were receiving benefits (i.e.. recipients who timely reapplied and supplied necessary income and other verifications). See also Medical Assistance Division Director Carolyn Ingram's

February 8, 2005 letter to Rep. Kiki Saavedra, which was previously provided to counsel for Plaintiff and, pursuant to Fed.R.Civ.P.33(d), is responsive to Interrogatory # 1, subpart # 3 as well.

Interrogatory #1, subpart # 4 asks for "all of the deadlines" associated with the autoclosure process.

To answer this query requires a review of the relevant dates in the application and recertification process for clients with six-month certification periods, beginning with a client's application for Medicaid in two of the three relevant categories (032 and 072). For the sake of example, assume a client applied for category 072 on July 6, 2005 and was found to be eligible. Her six-month certification period would run from July 1, 2005 to December 31, 2005. On November 11, 2005, a Notice of Expiration will be sent to the recipient advising that her benefits will end on December 31, 2005 and that she must reapply and provide necessary verifications by December 1, 2005 (recipient's deadline) to determine continued eligibility without a delay in benefits. If the recipient submits the required documentation timely, the caseworker has until the close of business on December 20, 2005 (the caseworker's deadline) to work the case before closure. If the case is not recertified, her case will autoclose and a Notice of Closure will be sent on December 20, 2005 for "failure to reapply for benefits", effective December 31, 2005.

If the client is on managed care (Salud!) and the case is recertified and determined eligible by the caseworker's deadline (December 20th), Medicaid eligibility and Salud! enrollment will continue uninterrupted. If the case is not recertified by December 27, 2005 (the Salud! disenrollment deadline), the case will disenroll from Salud! for the following month. Because the recipient remains technically eligible for Medicaid until the last day of the certification period (December 31, 2005 in the example), the caseworker can reinstate and recertify a case from December 21, 2005 through December 31, 2005(e.g., if the recipient brings

7

in verifications or her application late. The recipient is not disenrolled from Salud! until the following month (January 1. 2005 in this example). If the recipient is reinstated and recertified from December 27. 2005 through December 31. 2005. the recipient can be re-enrolled in Salud! on the supplemental capitation run of January 1. 2006 (the re-enrollment deadline or the deadline to "recapitate a reinstated case").

Pursuant to Fed.R.Civ.P 33(d). MAD GI-04-03. dated April 9. 2004 ("Automatic Closure of Certain Medicaid Categories"). which was previously produced to counsel for Plaintiff. contains "all of the deadlines" associated with the autoclosure process responsive to Interrogatory # 1. subpart # 4. See Defendants' answer to the first part of Interrogatory # 1. See in particular the material on p. 2 on Category 072 and 032 cases and "Processing the Medicaid Recertification After the Deadline" on pages 3. 4 and 5.

Interrogatory # 1. subpart # 5 asks for "data entry instructions" associated with the autoclosure process.

Pursuant to Fed.R.Civ.P. 33(d). MAD GI-04-03. dated April 9. 2004 ("Automatic Closure of Certain Medicaid Categories"). which was previously produced to counsel for Plaintiff. contains "data entry instructions" associated with the autoclosure process responsive to Interrogatory # 1. subpart 5. See Defendants' answer to the first part of Interrogatory # 1.

Interrogatory #1. subpart # 6 asks for "data entry deadlines" associated with the autoclosure process.

Pursuant to Fed.R.Civ.P 33(d). MAD GI-04-03. dated April 9. 2004 ("Automatic Closure of Certain Medicaid Categories"). which was previously produced to counsel for Plaintiff. contains the "data entry deadlines" associated with the autoclosure process responsive to Interrogatory #1, subpart # 6. See Defendants' answer to the first part of Interrogatory # 1.

Interrogatory # 1. subpart # 7 asks for "computer codes and descriptions of each" associated with the autoclosure process.

If a recipient fails to recertify in the month of expiration, ISD2 will generate a Notice of Closure with reason code 235 ("failure to reapply for benefits"). There are no other relevant computer codes.

Interrogatory # 1, subpart # 8 asks for "casework instructions" associated with the autoclosure process.

Defendants have already produced to counsel for Plaintiff the following documents concerning casework instructions in answer to Inspection of Public Records requests submitted to counsel for Plaintiff that are, pursuant to Fed.R.Civ.P.33(d), responsive to Interrogatory subpart # 8 as well: GI 04-03 ("Automatic Closure of Certain Medicaid Categories"); MAD-GI 04-06 ("Changes in Eligibility Policy and ISD2 Programming - Category 035, 032 and 072; and MAD GI-04-07 (Category 072 Case Closures") in the Department's August 24, 2004 response to request # 1; and MAD-MR-04-13 ("Six Months Certification and Deletion of 12-Months Continuous Medicaid") and an April 5, 2004 e-mail from Teresa Jo Garcia to Income Support Division employees entitled "Automatic Closure of Cat 032, 035-F, 072" in the Department's March 28, 2005 response to February 25, 2005 request ##s 6 and 7.

Interrogatory # 1, subpart # 9 asks for "notification provisions for recipients" associated with the autoclosure process.

Sample Notices of Expiration and Notices of Closure for Categories 032 and 072 have already been produced to counsel for Plaintiff in the Department's March 28, 2005 response to a February 25, 2005 Inspection of Public Records Act request for the same (request ##s 12 and 13), and those notices are responsive to Interrogatory subpart # 9 as well, pursuant to Fed.R.Civ.P.33(d). During the course of this lawsuit, Notices of Closure for the relevant categories were revised to include manual citations and were furnished to counsel for Plaintiff.

See Defendants' Motion for Summary Judgment as to All Claims against All Defendants, p. 2,

para.8, supporting memorandum, p. 3, para. 9, and attached Affidavit of Carolyn Ingram.

Interrogatory # 1, subpart # 10 asks for "specifications for disenrollment and re-enrollment in
managed care organizations" associated with the autoclosure process.

Defendants' response to Interrogatory # 1, subpart # 4 and the examples cited within it are

also responsive to Interrogatory #1, subpart # 10.

Interrogatory # 1, subpart # 11 asks for "appeals" associated with the autoclosure process.

To the extent Defendants understand the question, all Notices of Expiration and Notices

of Closure issued to recipients in the affected categories (032, 035-F and 072) contain notices of

a recipient's right to an administrative hearing and right to request continuation of benefits

during the administrative hearing process (i.e., the recipient's right to appeal the expiration of

certification period cited in a Notice of Expiration and the recipient's right to appeal a Notice of

Closure). Appeals to District Court of final agency decisions are permitted, pursuant to NMSA

1978, §§ 23-3-4 and 39-3-1.1. The Department's Divisions and the Department's Hearings

Bureau do not maintain a log of appeals by reason (e.g., autoclosure). The Hearings Bureau

maintains a list of hearings only by category (e.g., Category 072, cash assistance, food stamps,

etc.).

Interrogatory # 1, subpart # 12 asks for "reinstatements" associated with the autoclosure process.

MAD GI-04-03, dated April 9, 2004 ("Automatic Closure of Certain Medicaid

Categories"), which was previously produced to counsel for Plaintiff and, pursuant to

Fed.R.Civ.P. 33(d), contains information on "reinstatements" associated with the autoclosure

process that is responsive to Interrogatory 1, subpart # 12. See Defendants' answer to the first

part of Interrogatory # 1. In addition, the Income Support Division maintains a daily list,

compiled monthly, entitled "Monthly Recap of Reinstated Cases by Supervisor", but it does not

indicate whether the case was autoclosed or manually closed. The list is sorted by case number and by category, but not by manner of closure.

Interrogatory #1, subpart 13 asks for "corrections of errors" associated with the autoclosure process.

As framed, the question is too broad to answer definitively. "Corrections of errors" associated with autoclosure could be carried out for a number of reasons, most frequently for a recipient's failure to bring in or mail in a reapplication with necessary verifications by the first of the month in a recipient's expiration month. Corrections of errors could also refer to corrections of caseworker errors in connection with the recertification process.

MAD GI-04-03, dated April 9, 2004 ("Automatic Closure of Certain Medicaid Categories"), which was previously produced to counsel for Plaintiff and, pursuant to Fed.R.Civ.P. 33(d), is responsive to Interrogatory # 13 as well. It contains a number of examples under the heading "Processing the Medicaid Recertification After the Deadline."

Interrogatory # 1, subpart # 14 asks for "staffing needs and projections" associated with the autoclosure process.

Defendants have documents on staffing needs and projections that are relevant to the implementation of six-month certification periods, but none that relate to the autoclosure process.

Interrogatory # 1, subpart # 15 asks for a description of "all other aspects of the autoclosure system."

As framed, the question is too broad to properly answer. Nevertheless, Defendants believe they have addressed autoclosure in its totality in their answers to the first part of Interrogatory # 1 (a description of the autoclosure system") and to subparts 1 through 14.

2. List the reasons why autoclosure was adopted, and for each reason and any reason, provide the underlying rationale, data, reports, predictions, analyses, computer models, professional

11

recommendations, examples from other jurisdictions, academic studies, prior track records of any similar automatic closure systems used in New Mexico, or any other information relied upon to establish the reason. For any reason that involves alleged savings of public funds, provide the full cost estimates including all underlying assumptions about staffing needs and reductions, caseloads, processing costs, mailing costs, startup costs, avoidance of costs of medical care, unit costs, appeals costs, reinstatement costs and any other cost projections and estimates. Provide citations to any of the information included in the answer to this interrogatory for which citations are available, and indicate the information for which there is no citation available.

**ANSWER:**

Pursuant to Fed.R.Civ.P. 33(a), the limit on the number of interrogatories a party may serve includes "all discrete subparts." See Bell v. Woodward Governor Co., 2005 U.S. Dist. LEXIS 12969 (N.D. Ill. 6/30/05) (Rule's Advisory Committee guidance provides: "Parties cannot evade this presumptive limitation [total number of interrogatories permitted] through the device of joining as "subparts" questions that seek information about discrete separate subjects.")

If broken down into its subparts, Interrogatory # 2 actually contains at least 35 interrogatories, each of which seeks information about discrete, separate subjects. To the extent that Defendants can answer these separate queries, the responses to each follow until Defendants have answered the first 30 interrogatories, beginning with Interrogatory # 1 and its 15 subparts (a total of 16 answers) and ending with Interrogatory # 2, subpart 13. Answering more than 30 interrogatories would constitute a waiver of Defendants' objection that Plaintiff's interrogatories exceed the numerical limitation. See Cappacchione v. Charlotte-Mecklenburg, Sch., 182 F.R.D. 486, 492 n.4 (W.D.N.C. 1998) (citing Moore's Federal Rules Pamphlet) (defendant waived objection to number of interrogatories by responding to excess interrogatories without seeking a

12

protective order). When relevant, pursuant to Fed.R.Civ.P. 33(d), Defendants cite to the business records already produced to counsel for Plaintiff.

Interrogatory # 2 begins by asking Defendants to "[l]ist the reasons why autoclosure was adopted, and "for each reason and any reason" asks Defendants, redundantly, to "provide the underlying rationale."

Under the previous system that provided Medicaid benefits to those eligible for Categories 072, 032 and 035-F for twelve months of continuous benefits, regardless of changes in income (former 8.200.400.14 NMAC, 8.202.600.11 NMAC and KID-630.2), caseworkers were required to manually close cases of recipients who failed to recertify for benefits. When recipients failed to recertify, many ineligible recipients continued to receive Medicaid well past the expiration of their certification periods. At least 10,000 recipients were overdue for recertifications in the period between January 2003 and January 2004. As a result, the Department continued to pay benefits to ineligible recipients, misusing federal and state funds in the process and exposing the Department to a risk of federal sanctions. In fact, the Centers for Medicare and Medicaid Services (CMS) issued an audit finding on March 18, 2003, requiring recoupment from the Department for its overpayments to ineligible recipients. The Department's failure to ensure that recipients timely recertified also placed it in violation of federal regulation 42 CFR § 435.916, which requires state agencies to make an eligibility determination "at least every twelve months." See also Medical Assistance Division Director Carolyn Ingram's February 8, 2005 letter to Rep. Kiki Saavedra, which was previously provided to counsel for Plaintiff and, pursuant to Fed.R.Civ.P.33(d), is responsive to Interrogatory # 2 as well.

Until the adoption of autoclosure, the Department had no reliable mechanism by which to: (1) ensure that only eligible recipients were receiving benefits (i.e., recipients who timely reapplied and provided necessary verifications); (2) prevent the misuse of federal and state funds

13

on ineligible cases: (3) prevent exposure to federal recoupment for expenditures to ineligible recipients: (4) ensure that cases of recipients who failed to recertify were not held open when they should have been closed for that reason: and (5) reduce the burdens on caseworkers associated with manual closures of cases of recipients who failed to recertify.

Interrogatory # 2, subpart # 1 asks for "data" on why autoclosure was adopted.

Relevant data that support the implementation of autoclosure can be found in these reports: (1) "Overdue PR End Dates as of 3/12/2004": (2) "Medicaid Program Changes Needed to Meet Targets in Executive FY05 General Fund Budget". p. 2 (Administrative Changes). dated January 12, 2003: (3) "Possible Medicaid Program Reductions" (discussion draft). p. 2 (December 2, 2004).

Interrogatory # 2, subpart # 2 asks for "reports" relating to why autoclosure was adopted.

Reports that are responsive to this request include: (1) Medical Assistance Division Director Carolyn Ingram's February 8, 2005 letter to Rep. Kiki Saavedra, which was previously provided to counsel for Plaintiff: (2) the CMS audit finding, dated March 18, 2003, that the Department made payments to ineligible Salud! recipients "because eligibility information was not reflected in the payment system timely": and (3) "Overdue PR End Dates as of 3/12/2004": (4) "Governor Richardson's Executive Budget". dated January 12, 2004 ("Administrative Cost Containments"). p. 2.

Interrogatory # 2, subpart # 3 asks for "predictions" in connection with why autoclosure was adopted.

Documents that could be styled as "predictions" include: 1) "Medicaid Program Changes Needed to Meet Targets in Executive FY05 General Fund Budget". p. 2 (Administrative Changes). dated January 12, 2003; (2) "Possible Medicaid Program Reductions" (discussion

draft), p. 2 (December 2, 2004); and (3) Governor Richardson's Executive Budget", dated January 12, 2004, (Administrative Cost Containments"), p. 2.

Interrogatory # 2, subpart # 4 asks for "analyses" concerning why autoclosure was adopted.

A document that may be viewed as an "analysis" of the rationale is a letter from Carolyn Ingram to Bill Jordan, Deputy Director of New Mexico Advocates for Children and Families, dated July 19, 2004, p. 2, re "Number of children projected to lose Medicaid/SCHIP coverage due to automatic case closure for failure to recertify." In her letter, Ms. Ingram explains: "The automatic case closure is intended to identify after proper notice to the recipient only those who are not eligible for Medicaid. In developing these estimates we looked at the number of children and adults in MAWC and JUL Medicaid categories whose cases closed in January of 2003 and the number of those who were recertified in the following six months. Using those numbers, we projected the number that would not return to the program at the end of twelve months. This number was 4,150. As previously stated our projections estimate that we will continue to see an increase in overall enrollment. The preliminary numbers that we have received do show a slight decrease in the number of cases in the program. However, we have also experienced new cases coming on to the Medicaid program." See also Medical Assistance Division Director Carolyn Ingram's February 8, 2005 letter to Rep. Kiki Saavedra, which was previously provided to counsel for Plaintiff and, pursuant to Fed.R.Civ.P.33(d), is responsive to Interrogatory # 2, subpart # 4 as well.

Interrogatory # 2, subpart # 5 asks for "computer models" relevant to why autoclosure was adopted.

Defendants did not use computer models in connection with the adoption of the autoclosure system.

Interrogatory # 2, subpart # 6 asks for "professional recommendations" relevant to why autoclosure was adopted.

Defendants did not rely upon professional recommendations in connection with the adoption of the autoclosure system.

Interrogatory # 2, subpart # 7 asks for "examples from other jurisdictions" relevant to why autoclosure was adopted.

Defendants did not rely upon examples from other jurisdictions in connection with the adoption of the autoclosure system.

Interrogatory # 7, subpart # 8 asks for "academic studies" relevant to why autoclosure was adopted.

Defendants did not rely upon academic studies in connection with the adoption of the autoclosure system.

Interrogatory # 2, subpart # 9 asks for "prior track records of any similar automatic closure systems used in New Mexico relevant to why autoclosure was adopted.

Defendants use an autoclosure system to ensure timely recertifications in some of their cash assistance programs (New Mexico Works, Education Works, time-limited General Assistance and Refugee Cash Assistance) and in the food stamp program, but that fact had little, if any, bearing on Defendants' decision to implement autoclosure in the Medicaid program.

Interrogatory # 2, subpart # 10 asks for "any other information relied upon to establish the reason" why autoclosure was adopted.

Defendants did not rely upon any other information other than those documents cited in answer to Interrogatory # 2.

Interrogatory # 2, subpart # 11 asks for "the full cost estimates" for "any reason that involves alleged savings of public funds" relevant to why autoclosure was adopted.

Although Defendants included the implementation of autoclosure among its administrative cost containment measures, the decision to implement autoclosure in the Medicaid

16

program was based, inter alia, on preventing the misuse of public funds (i.e., payments to recipients who failed to recertify for benefits). Full cost estimates can be found in the following: (1) "Possible Medicaid Program Reductions" (discussion draft), p. 2 (December 2, 2004); state general fund savings of $4,502,300 and total general fund and federal fund savings of $17,614,600; and (2) "Medicaid Program Changes Needed to Meet Targets in Executive FY05 General Fund Budget", p. 2 (Administrative Changes), dated January 12, 2003 (state general fund savings of $4,502,300).

Interrogatory # 2, subpart 12 asks for "all underlying assumptions about staffing needs and reductions, caseloads" in relation to the adoption of autoclosure for any reason that involves "alleged savings of public funds."

Defendants made no assumptions about staffing needs, reductions and caseloads in connection with the decision to implement an autoclosure system. Any assumptions made were solely in connection with the decision to implement six-month certification periods for some Medicaid categories.

Interrogatory # 2, subpart 13 asks for "underlying assumptions about processing costs" in relation to the adoption of autoclosure for any reason that involves the "alleged savings of public funds."

To the extent that Defendants understand this question, they made no underlying assumptions about "processing costs" in connection with the decision to implement autoclosure.

―――  ――  ―――――――――――――――――  ―――  ――  ――――――――――

Pursuant to Fed.R.Civ.P. 33(a) Defendants have not answered the remaining subparts of Interrogatory # 2 because they are discrete and separate questions that exceed 30 interrogatories, the total number of interrogatories the parties agreed to propound. See Order Adopting Attorneys' Provisional Discovery Plan with Changes and Setting Case Management Deadlines, filed June 21, 2005. Answering more than 30 interrogatories would constitute a waiver of

Defendants' objection that Plaintiff's interrogatories exceed the numerical limitation. See
Cappacchione v. Charlotte-Mecklenburg. Sch.. 182 F.R.D. 486. 492 n.4 (W.D.N.C. 1998) (citing
Moore's Federal Rules Pamphlet) (defendant waived objection to number of interrogatories by
responding to excess interrogatories without seeking a protective order).

**3.** Starting with the month autoclosure became effective, and for each month thereafter, provide
the following with respect to each month:

a) The number of open cases in the Medicaid program subject to autoclosure in that month:

b) The number of cases automatically closed under autoclosure because the case had not been
fully processed by the deadline:

c) The number of the cases specified in subsection (b) that were later reinstated with no loss
of coverage under Medicaid:

d) Of the number of cases specified in subsection (b) that were later reinstated. please
provide a breakdown of the number of cases reopened one month after being autoclosed, two
months after being autoclosed, three months after being autoclosed, four months after being
autoclosed, five months after being autoclosed, and six months after being autoclosed.

e) Of the cases specified in subsection (b), specify all the different reasons for termination
and provide the number of cases terminated for each reason

**ANSWER:**

Pursuant to Fed.R.Civ.P. 33(a), Defendants have not answered Interrogatory # 3 because it
exceeds 30 interrogatories, the total number the parties agreed to propound. See Order Adopting
Attorneys' Provisional Discovery Plan with Changes and Setting Case Management Deadlines.
filed June 21, 2005. Answering more than 30 interrogatories would constitute a waiver of
Defendants' objection that Plaintiff's interrogatories exceed the numerical limitation. See

18

Cappacchione v. Charlotte-Mecklenburg. Sch., 182 F.R.D. 486, 492 n.4 (W.D.N.C. 1998) (citing Moore's Federal Rules Pamphlet) (defendant waived objection to number of interrogatories by responding to excess interrogatories without seeking a protective order).

4. Starting with the month autoclosure became effective, and for each month thereafter, provide, with respect to each month, the amount of money Defendants saved due solely to the autoclosure process and the calculation used to determine the alleged savings. If monthly calculations have not been made, provide the cumulative amount of money that Defendants have saved due to the autoclosure process for any periods of time, specifying the periods of time.

**ANSWER:**

Pursuant to Fed.R.Civ.P. 33(a) Defendants have not answered Interrogatory # 4 because it exceeds 30 interrogatories, the total number the parties agreed to propound. See Order Adopting Attorneys' Provisional Discovery Plan with Changes and Setting Case Management Deadlines, filed June 21, 2005. Answering more than 30 interrogatories would constitute a waiver of Defendants' objection that Plaintiff's interrogatories exceed the numerical limitation. See Cappacchione v. Charlotte-Mecklenburg. Sch., 182 F.R.D. 486, 492 n.4 (W.D.N.C. 1998) (citing Moore's Federal Rules Pamphlet) (defendant waived objection to number of interrogatories by responding to excess interrogatories without seeking a protective order)

5. Starting with the month autoclosure became effective, and for each month thereafter, provide, with respect to each month, in regard to the cases specified in the answer to question 3, subsection (b) above, the number of cases in which the recipient filed an appeal of the autoclosure decision, and the number of appeals won by the appellant after a hearing, and the number of appeals withdrawn by the appellant because the case was reinstated prior to formal decision.

**ANSWER:**

Pursuant to Fed.R.Civ.P. 33(a), Defendants have not answered Interrogatory # 5 because it exceeds 30 interrogatories, the total number the parties agreed to propound. See Order Adopting Attorneys' Provisional Discovery Plan with Changes and Setting Case Management Deadlines, filed June 21, 2005. Answering more than 30 interrogatories would constitute a waiver of Defendants' objection that Plaintiff's interrogatories exceed the numerical limitation. See Cappacchione v. Charlotte-Mecklenburg. Sch., 182 F.R.D. 486, 492 n.4 (W.D.N.C. 1998) (citing Moore's Federal Rules Pamphlet) (defendant waived objection to number of interrogatories by responding to excess interrogatories without seeking a protective order).

**6.** Since the implementation of autoclosure in May of 2004, specify all reports and analyses generated by or for the Defendants with respect to any aspect of autoclosure, including the name or designation of the report(s); date and frequency of the report(s) (or whether the report was one time only or irregular); person, organization and/or department that generates the report; data sources and uses of the report(s).

**ANSWER:**

Pursuant to Fed.R.Civ.P. 33(a), Defendants have not answered Interrogatory # 6 because it exceeds 30 interrogatories, the total number the parties agreed to propound. See Order Adopting Attorneys' Provisional Discovery Plan with Changes and Setting Case Management Deadlines, filed June 21, 2005. Answering more than 30 interrogatories would constitute a waiver of Defendants' objection that Plaintiff's interrogatories exceed the numerical limitation. See Cappacchione v. Charlotte-Mecklenburg. Sch., 182 F.R.D. 486, 492 n.4 (W.D.N.C. 1998) citing Moore's Federal Rules Pamphlet) (defendant waived objection to number of interrogatories by responding to excess interrogatories without seeking a protective order).

7. Describe the entire process followed in the closing and reopening of the cases of Plaintiffs Valdez and Genthner, including but not limited to any actions with respect to disenrollment from or enrollment in managed care organizations, any review process conducted, dates and names/citations of documents sent to the client, information received by HSD from the clients, actions by eligibility workers (e.g., contacts/attempted contacts with applicants, entries into computer system), and specify the names of all caseworkers and supervisors involved in each case.

   **ANSWER:**

   Pursuant to Fed.R.Civ.P. 33(a) Defendants have not answered Interrogatory # 7 because it exceeds 30 interrogatories, the total number the parties agreed to propound. <u>See</u> Order Adopting Attorneys' Provisional Discovery Plan with Changes and Setting Case Management Deadlines, filed June 21, 2005. Answering more than 30 interrogatories would constitute a waiver of Defendants' objection that Plaintiff's interrogatories exceed the numerical limitation. <u>See</u> Cappacchione v. Charlotte-Mecklenburg. Sch., 182 F.R.D. 486, 492 n.4 (W.D.N.C. 1998) Moore's Federal Rules Pamphlet) (defendant waived objection to number of interrogatories by responding to excess interrogatories without seeking a protective order).

8. For each field office, please indicate how recertification applications are processed and describe the performance levels on processing them, including how they are received, where placed (if, for example, in a "basket" or other), handled, the entire chain of custody and whether this varies depending on how the recertification application is received (i.e. U.S. mail, hand-delivery, or facsimile), as well as the number of recertification applications received in each field office (broken down by month) and the number that are actually processed in a timely fashion, and the number that are not, as well as the name, from each field office, of the person in charge

of ensuring that recertification applications are timely processed, and the names of the individuals responsible for entering the data into the computer.

**ANSWER:**

Pursuant to Fed.R.Civ.P. 33(a), Defendants have not answered Interrogatory # 8 because it exceeds 30 interrogatories, the total number of interrogatories the parties agreed to propound. See Order Adopting Attorneys' Provisional Discovery Plan with Changes and Setting Case Management Deadlines, filed June 21, 2005. Answering more than 30 interrogatories would constitute a waiver of Defendants' objection that Plaintiff's interrogatories exceed the numerical limitation. See Cappacchione v. Charlotte-Mecklenburg. Sch., 182 F.R.D. 486, 492 n.4 (W.D.N.C. 1998) Moore's Federal Rules Pamphlet) (defendant waived objection to number of interrogatories by responding to excess interrogatories without seeking a protective order).

9.    Please indicate the number of cases that have been autoclosed and later reinstated by a supervisor who determines that the case was closed in error (include therein whether or not it was reopened using the "J" function on ISD2) for the time period May 2002 through the present. Include a monthly breakdown and field office breakdown. In answering this interrogatory, please also include a summation of the information contained report # HIJJ031Q entitled "Cases Reinstated by Supervisor."

**ANSWER:**

Pursuant to Fed.R.Civ.P. 33(a), Defendants have not answered Interrogatory # 9 because it exceeds 30 interrogatories, the total number the parties agreed to propound. See Order Adopting Attorneys' Provisional Discovery Plan with Changes and Setting Case Management Deadlines, filed June 21, 2005. Answering more than 30 interrogatories would constitute a waiver of Defendants' objection that Plaintiff's interrogatories exceed the numerical limitation. See

22

Cappacchione v. Charlotte-Mecklenburg. Sch., 182 F.R.D. 486. 492 n.4 (W.D.N.C. 1998)

Moore's Federal Rules Pamphlet) (defendant waived objection to number of interrogatories by

responding to excess interrogatories without seeking a protective order).

**10.** Please describe in detail the processes and procedures HSD has implemented and is using to

ensure it is complying with the mandate in 42 C.F.R. §§435.930(a) and (b) which require the

agency to furnish Medicaid promptly to recipients without any delay caused by the agency's

administrative procedures. and to continue to furnish Medicaid to all eligible individuals until

they are found to be ineligible.

**ANSWER:**

Pursuant to Fed.R.Civ.P. 33(a), Defendants have not answered Interrogatory # 10 because it

exceeds 30 interrrogatories, the total number of interrogatories the parties agreed to propound.

See Order Adopting Attorneys' Provisional Discovery Plan with Changes and Setting Case

Management Deadlines. filed June 21, 2005. Answering more than 30 interrogatories would

constitute a waiver of Defendants' objection that Plaintiff's interrogatories exceed the numerical

limitation. See Cappacchione v. Charlotte-Mecklenburg. Sch., 182 F.R.D. 486. 492 n.4

(W.D.N.C. 1998) Moore's Federal Rules Pamphlet) (defendant waived objection to number of

interrogatories by responding to excess interrogatories without seeking a protective order).

**11.** For each interrogatory. please provide the names. job titles. and responsibilities of each

person who answered or assisted in answering or provided information to help answer each

interrogatory and each request for production.

## ANSWER

Bob Beardsley, Bureau Chief, Client Services Bureau, Medical Assistance Division, assisted with Defendants' Answers to Plaintiff's First Set of Interrogatories and with Defendants' Responses to Plaintiff's First Request for Production of Documents.

Liz Martinez, Staff Manager, Client Services Bureau, Medical Assistance Division, assisted with Defendants' Answers to Plaintiff's First Set of Interrogatories.

Ted Roth, Bureau Chief, Income Support Division, assisted with Defendants Answers to Plaintiff's First Set of Interrogatories and with Defendants' Responses to Plantiff's First Request for Production of Documents.

Respectfully submitted,

Paul R.Ritzma and Susan K. Rehr
New Mexico Human Services Department
Office of General Counsel
P.O. Box 2348
Santa Fe, New Mexico 87504-2348
O: (505)-827-7701; Fax: (505)-827-7729

Counsel for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

Kristine Valdez, a.k.a. Kristine Sauceda,
on her own behalf and on behalf of
Dezideria Sauceda and Santiago Sauceda,

05 OCT 20  PM 4: 21

CLER  ... . . FE

       Plaintiff,

vs.

       **CIV NO. 05-CV-451 MV/ACT**

New Mexico Human Services Department,
Pamela S. Hyde in her official capacity as
Secretary of the New Mexico Human Services
Department,

Kathryn Falls, in her official capacity as Director of
the Income Support Division of the New Mexico Human
Services Department,

Carolyn Ingram, in her official capacity as director of the
Medical Assistance Division of the New Mexico Human
Services Department.

## CERTIFICATE OF MAILING

I hereby certify that I mailed an original and one copy of Defendants' Answers to

Plaintiffs' First Set of Interrogatories on this ⟨28th⟩ day of ⟨October⟩, 2005 to:

    Gail Evans
    New Mexico Center on Law and Poverty
    3117 Silver Ave SE
    Albuquerque, NM 87106

           Respectfully submitted,

           Susan K. Rehr
           New Mexico Human Services Department
           Office of General Counsel
           Albuquerque, NM 87106
           (505) 255-2840
           (Counsel for Defendants)

           25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**Kristine Valdez, a.k.a Kristine Sauceda,**
**on her own behalf and on behalf of**
**Desideria Sauceda and Santiago Sauceda,**

      **Plaintiffs,**

v.                                   **CIV NO. 05-CV-451 MV/ACT**

**New Mexico Human Services Department, et al.,**

      **Defendants.**

## VERIFICATION OF CAROLYN INGRAM

I, Carolyn Ingram, swear and affirm as follows:

1. I am the Director of the Medical Assistance Division for the New Mexico Human Services Department.

2. I can personally verify the accuracy, veracity and completeness of the Defendants' Answers to Plaintiff's First Set of Interrogatories in the above-captioned case as those answers relate to the Medical Assistance Division, its programs and policies.

                                           Carolyn Ingram

Executed this _28_ day of October, 2005 in Santa Fe, New Mexico

Subscribed and Sworn to before me this _28_ day of October, 2005.

_____
Notary Public

My Commission Expires:

OFFICIAL SEAL
**FELICIA C. HALFORD**
NOTARY PUBLIC - STATE OF NEW MEXICO
Notary Bond Filed With Secretary of State

My Commission Expires _4/24/07_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Kristine Valdez, a.k.a Kristine Sauceda,
on her own behalf and on behalf of
Desideria Sauceda and Santiago Sauceda,

      **Plaintiffs,**

v.                                     **CIV NO. 05-CV-451 MV/ACT**

New Mexico Human Services Department, et al.,

      **Defendants.**

## VERIFICATION OF KATIE FALLS

      I, Katie Falls, swear and affirm as follows:

1.  I am the Director of the Income Support Division for the New Mexico Human Services Department.

2.  I can personally verify the accuracy, veracity and completeness of the Defendants' Answers to Plaintiff's First Set of Interrogatories in the above-captioned case as those answers relate to the Income Support Division, its programs, policies and caseworkers.

                                                _____
                                                Katie Falls

Executed this 26th day of October, 2005 in Santa Fe, New Mexico

Subscribed and Sworn to before me this 26th day of October, 2005.

_____
Notary Public

My Commission Expires: April 11, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Kristine Valdez, a.k.a. Kristine Sauceda,
on her own behalf and on behalf of
Dezideria Sauceda and Santiago Sauceda

        Plaintiff,

vs.                                    CIV NO. 05-CV-451 MV/ACT

New Mexico Human Services Department,

Pamela S. Hyde in her official capacity as
Secretary of the New Mexico Human Services
Department,

Kathryn Falls, in her official capacity as Director of
the Income Support Division of the New Mexico Human
Services Department,

Carolyn Ingram, in her official capacity as Director of the
Medical Assistance Division of the New Mexico Human
Services Department

## DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure for the

District Court of New Mexico and in accord with the Instructions accompanying

Plaintiff's request, Defendants, through their undersigned counsel, hereby submit their

Responses to Plaintiff's First Requests for Production of Documents.



Plaintiff's Instructions are as follows: "Provide a log of the documents produced in hard copy, the documents produced via citation to a free source, and the documents not produced due to an objection, specifying the objection as to each document."

## REQUESTS FOR PRODUCTION

Please provide copies of the following documents:

1. All documents describing, governing, or otherwise pertaining to autoclosure (as defined in Plaintiff's First Set of Interrogatories), including the Medicaid categories to which it applies and those to which it does not, the ways in which it differs from the previous system, and all of the deadlines, data entry instructions, data entry deadlines, computer codes and descriptions of each, casework instructions, information and notices for recipients, specifications for disenrollment and re-enrollment in managed care organizations, appeals, reinstatements, corrections of errors, staffing needs and projections, and all other aspects of autoclosure. This request includes, but is not limited to any and all statutes, regulations, rules, policy statements, procedural issuances, instructions to staff, General Informations, emailed instructions, computer codes and descriptions of each, and any other documents (as defined above) relating to autoclosure in effect at any time between the date autoclosure became effective and the present. Response: See the attached log Defendants prepared in response to Production Request # 1. Documents already produced to counsel for Plaintiff in connection with counsel's Inspection of Public Records Act Requests are included in the log of Documents Produced via Citation to a Free Source. See also Defendants' Answers to Interrogatory # 1 and Defendants' Answers to Interrogatory # 1, subpart # 9. In response to the request

for documents relating to reinstatements, Defendants' Income Support Division maintains a "Monthly Recap of Reinstated Cases by Supervisor", which can be made available to counsel for copying after redaction. (This month's list is 536 pages long). The list does not show whether a case had been autoclosed or manually close. It is sorted by case number and category, but not by manner of closure.)

2. All documents describing, supporting or otherwise pertaining to the reasons why autoclosure was adopted, and for each reason and any reason, the underlying rationale, data, reports, predictions, analyses, computer models, professional recommendations, examples from other jurisdictions, academic studies, or any other information relied upon to establish the reason. For any reason that involves alleged savings of public funds, all documents describing, including or otherwise pertaining to cost estimates, and underlying assumptions about staffing needs and reductions, caseloads, processing costs, mailing costs, startup costs, avoidance of costs of medical care, unit costs, appeals costs, reinstatement costs and any other cost projections and estimates.

Response: See the attached log Defendants prepared in response to Production Request # 2.

3. All documents, reports and analyses generated by or for the Defendants with respect to any aspect of autoclosure after its implementation, including, with respect to each document, the name of the person, organization and/or department that generates the report. Also, produce all documents that are or describe the data sources for the documents, analyses and reports produced pursuant to the first sentence of this request.

Response: See the attached log Defendants prepared in response to Production Request # 3.

4. All documents constituting or pertaining to the entire casework process followed in the closing and reopening of the cases of Plaintiffs Valdez and Genthner, including notices, communications to, from or about Valdez and Genthner and any managed care organizations, communications among Defendants' personnel, caseworkers and supervisors, and documents involving the handling of each of these cases by the individual defendants themselves or any administrators or other employees of the Defendants.

Response: See the attached log Defendants prepared in response to Production Request # 4. Defendants have already produced Plaintiff Valdez's case file to counsel for Plaintiff. The documents produced concern Plaintiff Valdez only. Defendants object to the request for production of documents concerning proposed party Genthner, pursuant to Fed.R.Civ.P. 26(b)(1).

5. All documents generated before, during or after the implementation of autoclosure that reference, describe or otherwise pertain to autoclosure that Defendants sent to or received from the federal Department of Health and Human Services and Centers for Medicare and Medicaid Services, including correspondence with respect to past use of any automatic closure system.

Response: Defendants are unaware of any documents pertaining to autoclosure or to any automated closure system, past or present, that they sent to or received from the United States Department of Health and Human Services or the Centers for Medicare and Medicaid Services.

6. All documents describing or referencing any aspect of autoclosure, including the staffing needs for the Medicaid program (including staffing at ISD field offices), that the

Defendants have submitted to, circulated in, or otherwise made known to the New Mexico Legislature from one year prior to the implementation of that program to the time this request is answered, including but not limited to documents with respect to SB 486 in the year 2005.

Response: See the attached log Defendants prepared in response to Production Request # 6. The only other document Defendants have submitted to the Legislature referencing autoclosure, which has already been produced to counsel for Plaintiff, is Medical Assistance Division Director Carolyn Ingram's February 8, 2005 letter to Rep. Kiki Saavedra, cited in the attached log prepared in response to Production Request # 1. Documents concerning staffing needs for the Medicaid program or staffing for the ISD field offices do not relate to autoclosure, as noted in Defendants' Answers to Interrogatory #1, subpart # 14.

7. Any and all documents that any of the Salud Managed Care Organizations (MCOs) have completed regarding the implementation and impact of autoclosure on their patients, including documents showing the number of individuals who have been disenrolled from the MCOs and documents which discuss the MCOs inability to meet or difficulty in meeting Health Plan Employer Data & Information Set requirements as a result of such disenrollments.

Response: Defendants have included a sample Salud! letter in the attached log prepared in response to Production Request # 1. Defendants are unaware of any other documents in their custody or control regarding the implementation and impact of autoclosure that any of the Salud! MCOs have prepared, including any documents on disenrollments.

8. Please provide a copy of all documents, in any format, including electronic, that were relied on, referred to, cited to or used in any other way in responding to Plaintiff's First Set of Interrogatories.

Response: See the attached logs Defendants prepared in connection with their Responses to Plaintiff's First Requests for Production.

Respectfully submitted,

Paul R.Ritzma and Susan K. Rehr
New Mexico Human Services Department
Office of General Counsel
P.O. Box 2348
Santa Fe, New Mexico 87504-2348
O: (505)-827-7701; Fax: (505)-827-7729

Counsel for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

Kristine Valdez, a.k.a. Kristine Sauceda,
on her own behalf and on behalf of
Dezideria Sauceda and Santiago Sauceda,

05 OCT 28 PM 4: 22

CLERK-SANTA FE

        Plaintiff,

vs.                                          CIV NO. 05-CV-451 MV/ACT

New Mexico Human Services Department,
Pamela S. Hyde in her official capacity as
Secretary of the New Mexico Human Services
Department,

Kathryn Falls, in her official capacity as Director of
the Income Support Division of the New Mexico Human
Services Department,

Carolyn Ingram, in her official capacity as director of the
Medical Assistance Division of the New Mexico Human
Services Department.

## <u>CERTIFICATE OF MAILING</u>

I hereby certify that I mailed an original and one copy of Defendants' Responses to
Plaintiff's First Requests for Production on this _28th_ day of _October_ , 2005
to:    Gail Evans
       New Mexico Center on Law and Poverty
       3117 Silver Ave SE
       Albuquerque, NM 87106

               Respectfully submitted,

               Susan K. Rehr
               New Mexico Human Services Department
               Office of General Counsel
               Albuquerque, NM 87106
               (505) 255-2840
               (Counsel for Defendants)

# NM center on law and poverty

Paul Ritzma, General Counsel
Susan Rehr, Assistant General Counsel
Office of General Counsel
P.O. Box 2348
Santa Fe, NM 87504                      By U.S. Mail and email

November 4, 2005

Re: Defendants' Response to First Set of Interrogatories

Dear Mr. Ritzma and Ms. Rehr,

Pursuant to Fed. R. Civ. P. 37, we request a conference regarding your response to
Plaintiffs' First Set of Interrogatories. We would prefer to have this conference early next week,
but definitely by no later than Friday, November 11, 2005. Considering that our depositions
begin the following week, and discovery ends in mid-December, we really must talk soon. We
are happy to do the conference by phone.

We disagree with your interpretation that Interrogatories One and Two contain multiple
sub-parts. Indeed, Interrogatories One and Two are each one interrogatory, with the remaining
details listed to simply show the type of information we were looking for in the answer, so that
the answer would be complete and useful. Notably, you cite no case law to support your view
that Interrogatories One and Two contain subparts. A subpart is only discreet when it is logically
or factually independent of the question posed by the basic interrogatory. *Cappaccione* at 492;
*see also, Ins. Co. of Hartford v. Trustmark Ins. Co.*, 2003 U.S. Dist. LEXIS 18196 (D. Conn.
March 7, 2003) (holding that where the complete answer to the latter question requires an answer
to the former, there are not discreet subparts); *Myers v. United States Paint Co.*, 116 F.R.D. 165,
166 (D. Mass 1987) (subparts need not be counted as separate interrogatories if they are a logical
extension of the basic interrogatory); *Ginn v. Gemini, Inc.* 137 F.R.D. 320, 322 (D. Nev. 1991)
(interrogatory subparts are to be counted as part of but one interrogatory if they are logically and
factually subsumed within and necessarily related to the primary question). Moreover, the 1993
amendment to Rule 33 modified the term "subparts" with the term discrete, suggesting a
preference for a more flexible approach to interrogatories. *SAFECO of America v. Rawstron*, 181
F.R.D. 441 (1998).

Interrogatory One consists of one question, "describe in full the autoclosure process."
What follows is simply a specification of the type of information needed in order to fully answer
this question. A full description of the autoclosure process logically and factually requires a
discussion of the Medicaid categories and computer codes, the deadlines, casework instructions,
notification provisions, etc. Not providing this information would be an insufficient answer to

---

3117 Silver Ave SE • Albuquerque NM • 87106
www.nmpovertylaw.org • Phone: (505) 255-2840 • Fax: (505) 255-2778

*The Center receives funds from Equal Access to Justice and IOLTA funds from The Center For Civic Values*


PLAINTIFF'S
EXHIBIT
E
ALL-STATE LEGAL SUPPLY CO.

the interrogatory. Indeed many of your answers to the alleged subparts could just have easily been put in the initial answer to the interrogatory, as we had anticipated, rather than being answered separately. Some of your answers to the "sub-parts" contain the same information as your answer to the initial interrogatory, further suggesting they are not discreet subparts, but rather the same question requiring the same information in an answer. Likewise, some of your answers to the "subparts" are repetitive, again showing they are not actually separate questions. The information needed to answer this one interrogatory factually and logically interrelated, and thus, you wrongly identify Interrogatory One has having sixteen subparts.

Similarly, Interrogatory Two does not consist 35 subparts. An interrogatory is counted as a single question for purposes of Fed. R. Civ. P. 33 even if it calls for an answer consisting of separate pieces of information, and "even if it calls for several separate bits of information, if there is a direct relationship between the various bits of information." *Clark v. Burlington Northern R.R.*, 112 F.R.D. 117, 118 (N.D. Miss. 1986) (quoting *Holcombe v. Southern Towing Co.*, No. DC 81-167-LS-O (N.D. Miss 1982). Interrogatory Two consists of one question, what are the reasons for autoclosure's adoption. The underlying data, in all of its possible forms, is implicit in a proper response to why autoclosure was adopted. The information requested is factually and logically interrelated, and necessary to answering the question of why autoclosure was adopted.

Finally, you stated in your answers to Interrogatories Two through Ten that, as you counted, we had exceeded the 30 Interrogatories permitted by the Provisional Discovery Plan and thus, you could not answer any more interrogatories without waiving your objection based on numerosity. Yet, you answer Interrogatory #11, which, according to your count, would mean you answered 31 interrogatories, and you thereby waived your objection based on numerosity. *Cappaccione v. Charlotte-Mecklenburg Sch.*, 182 F.R.D 486, 492 n.4 (W.D.N.C. 1998).

Given the rules and the case law on this matter, as well as the liberal construction of discovery matters in general, we hope that through a conference, we will be able to resolve this dispute and proceed efficiently with discovery within the timeframes set by the court. If not, we will file a motion to compel. Also, although we are continuing with the depositions at this time, we reserve the right to further depose witnesses, if necessary, after we receive complete discovery.

Sincerely,

Gail Evans
Legal Director

cc: John Bouman

2

# NM center on law and poverty

Paul Ritzma, General Counsel
Susan Rehr, Assistant General Counsel
Office of General Counsel
P.O. Box 2348
Santa Fe, NM 87504                     By U.S. Mail and email


November 7, 2005


Re: Defendants' Responses to Plaintiffs' Requests for Production


Dear Mr. Ritzma and Ms. Rehr,

This letter is a follow-up to our letter of November 4, 2005. In your responses to our Requests for Production, you declined to produce documents we requested regarding staffing needs and projections associated with the auto-closure system. Likewise, in your answer to "Interrogatory 1, subpart 14", you assert your data is only relevant to the implementation of six-month recertification periods. Our definition of auto-closure encompasses the six-month recertification process, as was stated in our definitions' section of the first set of Interrogatories,

> "The term auto-closure refers to the procedure that the Department implemented in May of 2004. Pursuant to this procedure, clients who are receiving certain categories of Medicaid assistance have their cases automatically closed *once they receive assistance for six months* unless they complete a new application and a caseworker timely updates information on the computer system."

We would like to include a discussion of your responses to our Requests for Production, in the conference proposed in the November 4, 2005 letter. We believe given the liberal construction of the law regarding discovery, we are entitled to review the documents we requested.

---

3117 Silver Ave SE • Albuquerque NM • 87106
www.nmpovertylaw.org • Phone: (505) 255-2840 • Fax: (505) 255-2778

*The Center receives funds from Equal Access to Justice and IOLTA funds from The Center For Civic Value*

PLAINTIFF'S
EXHIBIT
F
ALL-STATE LEGAL SUPPLY CO.

Finally, in our November 4, 2005 letter we said we would like to confer by November 11, 2005. That Friday is actually Veteran's Day; we apologize for our mistake and hope that we can confer regarding these discovery issues by November 10, 2005, to resolve our differences in an amicable manner.

Thank you for your attention to these matters.


Sincerely,

/s/

Gail Evans
Chamiza Atencio-Pacheco

# New Mexico Human Services Department

Bill Richardson, Governor
Pamela S. Hyde, J.D., Secretary

Office of the Secretary
PO Box 2348
Santa Fe, NM 87504-2348
Phone: (505) 827-7750; Fax: (505) 827-6286

Office of General Counsel

Via Fax and U.S. Mail

November 9, 2005

Gail Evans
Chamiza Atencio-Pacheco
New Mexico Center on Law and Poverty
3117 Silver Ave SE
Albuquerque, NM 87106

Re:    Valdez v. HSD – Response to November 4, 2005 Letter and November 7,
2005 follow-up Letter Regarding the Defendants' Response to First Set of
Interrogatories and Requests for Production

Dear Ms. Evans and Ms. Atencio-Pacheco:

After having reviewed your letters, Fed. R. Civ. P. 37, the relevant case law
concerning interrogatory questions related to discreet subparts and the responses that
were provided, we are not persuaded that there is a "discovery dispute" that could be
resolved via a conference that by your demand must be conducted before November 10,
2005.

In response to your contention that "Interrogatory One consists of one question,"
we stand by our count of sixteen separate and discreet subparts and the responses that we
have given to those subparts. Also, in response to your contention that "Interrogatory
Two does not consist (sic) 35 subparts," we stand by our count that it does. It is notable
that when most of these same questions were asked by Ms. Fisk in her lengthy Inspection
of Public Records Act requests, she did so via discreet numbered questions without
subparts. Finally, your contention that we have waived our objection based on numerosity
because we, in good faith, provided names of the individuals who assisted with the
answers to the first 30 questions as an answer to your interrogatory #11 is not
supportable. Your Interrogatory #11 is not a separate question because it is nothing more
than an extension of each separate interrogatory question. We consider our good faith
effort to provide these names as best way of giving you the most complete answer to the
first 30 questions.

In response to your follow-up letter regarding the Requests for Production, we are
at a loss as to where in any of definition sections of either the Interrogatories or Requests
for Production the definition quoted in your letter appears. We simply cannot find such a

**Access  •  Quality  •  Accountability**



PLAINTIFF'S
EXHIBIT

ALL-STATE LEGAL SUPPLY CO.

definition. We believe that based on the requested response to the first subpart of Interrogatory #1, we have provided data relevant to the question asked in subpart 14.

As a compromise to your conference demand, I would suggest that we jointly contact Judge Torgerson's office to see if he would conduct a teleconference to discuss this matter.


Respectfully,


Paul R. Ritzma and Susan K. Rehr