IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**                                                                                               **Criminal No. 05-1849 JH**

**DANA JARVIS,**

        **Defendant.**

### MOTION TO RECONSIDER ORDER DENYING DEFENDANT'S MOTION TO END UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

Defendant Dana Jarvis, pursuant to the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and 18 U.S.C. § 3142(e), and respectfully request that this Court to reconsider its Order [Doc. No. 373] denying Defendant's *Motion to End Unconstitutional Conditions of Confinement* [Doc. No. 342] because Defendant 1) believes that the Court lacked key information essential to rendering a fully informed decision and 2) can show actual prejudice to his Sixth Amendment right to counsel.

### BACKGROUND

Mr. Jarvis is being detained at the Regional Correctional Center (hereinafter "RCC") on charges alleging distribution of marijuana. If convicted on all counts, Mr. Jarvis is facing a mandatory minimum sentence of 30 years. Defendant Jarvis is not charged with any crimes of violence in connection with the Indictment and has been a model detainee despite his prolonged pretrial detention and extreme conditions of confinement. Moreover, he has no felony record nor does he have a history of engaging or procuring violent acts.

This case has been declared "complex" and, consequently, the attorneys have been granted an extended period for discovery and briefing. As of the filing of this motion, the discovery collection contains more than 60,000 pages, multiple compact discs containing audio and transcribed versions of wiretapped conversations and photographs. Moreover, Mr. Jarvis has received extensive additional discovery involving the allegation that gave rise to his placement in administrative segregation.

On January 20, 2006, the Court entered its Order withdrawing Mr. Jarvis's first court appointed attorney from the case. Four days later, undersigned counsel was newly appointed as Mr. Jarvis's defense attorney – six months after the Indictment and eight months before the anticipated trial date. Two weeks later, undersigned counsel's representation of Mr. Jarvis was further complicated when Mr. Jarvis was placed in administrative segregation for allegedly plotting to hire an unidentified person to kill a cooperating government witness and the DEA case agent. Not only does Mr. Jarvis emphatically deny this allegation, but the government has not been unable to substantiate it beyond the confidential source's bare allegations. Further, the government has indicated that it does not intend to file any charges against Mr. Jarvis regarding this alleged hit scheme. Nonetheless, Mr. Jarvis remains under extreme conditions of confinement in what is also euphemistically referred to as administrative segregation.

On February 23, 2006, the Court held a hearing on Defendant's *Motion to End Unconstitutional Conditions of Confinement* [Doc. No. 342] wherein Defendant argued, *inter alia*, a Sixth Amendment violation stemming from a restriction on his ability to meet with certain members of his defense team. Although the Court noted that this particular issue was cured by stipulation of the parties, it asserted jurisdiction over any

ongoing condition of confinement that may implicate Defendant's Sixth Amendment rights. *See Memorandum and Order* [Doc. No. 373]. Ultimately, the Court denied Defendant Jarvis's *Motion to End Unconstitutional Conditions of Confinement* [Doc. No. 342] based on his Sixth Amendment claims because 1) the government offered a "proper administrative reason - prevention of a potential crime – other than punishment for the tightened conditions of Defendant's confinement[]" and 2) Defendant failed to present sufficient authority to persuade the Court to decide in his favor regarding any Sixth Amendment claim. *See Memorandum and Order* [Doc. No. 373].

## ARGUMENT

The Sixth Amendment protects Defendant's right to the assistance of counsel because of counsel's vital contribution to a just result in our adversarial system." *Strickland v. Washington,* 466 U.S. 668, 685 (U.S. 1984) (a defendant has a right to "an attorney . . . *who plays the role necessary to ensure that the trial is fair.*") [emphasis added]. Accordingly, Defendant's right to counsel "is the right to *effective* assistance of counsel." *Id.* at 686. It has been said that "there can be *no restrictions* upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process." *See Herring v. New York*, 422 U.S. 853, 858-59 (1975). [emphasis added]. It is this aspect of our criminal justice system, counsel's opportunity to collect and marshal evidence, that "best ensures a just result." *Id.* at 862. However, the extreme restrictions placed on Defendant, as well as the continued restrictions placed on the primary investigator assigned to this case, interfere with the defense's ability to fully and fairly participate in the adversary factfinding process." *See Herring v. New York*, 422 U.S. 853, 858-59 (1975).

3

Defendant is the very person who, theoretically, can best assist counsel in the effective preparation of his defense. Yet, the continued restrictions impair effective lines of communication with all members of the defense team, including Defendant. Further, and very concerning, is that these continued conditions of confinement have already resulted in damage to Defendant's ability to effectively sift through extremely the voluminous discovery.

Next, the investigator and his ability to freely communicate with every member of the defense team, including Defendant, is key to undersigned counsel's ability to effective mount a defense. Yet, the continued restrictions placed on the investigator and Defendant with regards to their communications impairs effective lines of communication in this matter. Without such, an effective defense is not possible.

### I.     The Government's Actions Show that the Segregation is Improperly Motivated and Cannot Be Supported as a Proper Administrative Reason

Administrative segregation may not be premised upon improper motives. *Moore v. Moore,* 1992 U.A. App. Lexis 22917 (10th Cir. 1992). A pretrial detainee may, however, be placed in administrative segregation "for nonpuntive reasons, such as [isolation from the general population] pending an investigation of misconduct charges or where there is a threat to the safety and security of the institution." *Stevenson v. Smith*, 1992 U.S. App. LEXIS 30964, 11-12 (10th Cir. 1992). In this case, Defendant was transferred to segregation only *after* the investigation had been *terminated without substantiation of the allegations* and in the absence to any threat to the safety and security of the institution.

Unfortunately, the Court lacked key information when it denied Defendant Jarvis's motion to end the unconstitutional conditions of confinement [see Doc. No. 342]. The effect of the government's actions to segregate Defendant Jarvis in such an extreme manner to unfairly optimize its case against Defendant by hobbling the defense preparation and adversely effecting Defendant Jarvis's mental health over a prolonged period of extreme isolation before his trial.

In its *Memorandum Opinion and Order* [Doc. No. 373], the Court found that the government had a proper administrative reason to impose the restrictions complained of in this motion "after it learned that Defendant's fellow detainee had accused him of plotting to have the DEA case agent and a cooperating defendant witness murdered." *See Memorandum Opinion and Order* at pg. 4 [Doc. No. 373]. However, the discovery disclosed by the government confirms that the government ordered Defendant's segregation *four months* **after it learned** of the alleged plot, after it terminated its investigation of this sole sources accusation, without being able to substantiate the accusations, and after determining that it would not pursue charges against Defendant Jarvis in this matter.

The facts show that Defendant Jarvis's fellow detainee turned informant first contacted the government on September 7, 2005. On October 4, 2005, the detainee / informant spoke to ATF Special Agent Martinez requesting that the government facilitate his release from RCC while his case was pending and stated that the person he had spoken of previously (Defendant Jarvis) was going to try to execute the case agent. On October 5, 2005, the detainee / informant participated in a debriefing with Special Agents Robert Eller and Mark Pruessmann and AUSA James Braun. Over the ensuing months,

5

the detainee / informant made numerous calls to the government wherein he repeated his hit story – each reiteration varying from the next. During one such call, the detainee / informant promised to provide the hit man in exchange for his release so that he may set up the deal. The detainee / informant, throughout his conversations with the government, asked to be released, to be moved to a halfway house, asked the interviewing agents to "to go bat for him".

The government terminated its investigation into this matter when it was unable to substantiate the detainee's accusations against Defendant Jarvis despite an extensive investigation. Further, the government has indicated to undersigned counsel that it does not intend to pursue any charges against Mr. Jarvis pertaining to this allegation. However, on or around February 6, 2006, the detainee making the accusation was released from RCC pending his trial and on February 7, 2006, Defendant Jarvis was transferred to administrative segregation. Oddly enough, Defendant Jarvis was allowed to remain in the general population during the government's investigation and then segregated him only after the investigation was terminated without substantiation of the allegation and after the government had concluded that no charges would be filed against Defendant Jarvis. During this extensive time period, Defendant Jarvis was permitted to make telephone calls as would any inmate in general population, including being allowed to telephonically contact his family and friends. Therefore, any claim by the government that it has proper reason to segregate Defendant Jarvis is simply unsupported by the facts. *See Moore,* 1992 U.S. App. Lexis 22917; *Stevenson*, 1992 U.S. App. LEXIS 30964, 11-12.

### II. The Restriction of Defendant's Telephone Access to the Investigator Violates Defendant's Sixth Amendment Right to Fully and Fairly Participate in the Fact Finding Process

The government has barred Defendant's telephone access to the CJA approved private investigator assigned to his defense team. This restriction adversely impacts defense counsel's ability to effectively sift through and make sense of voluminous discovery, especially in light of his late appointment to this case. The private investigator is assigned to screening and reviewing over 11,000 wiretapped conversations and assisting undersigned counsel in the determining relevance of each said phone conversation. Again, Defendant Jarvis is in the best position to assist the investigator and counsel in this daunting process.

Further, the Indictment in this matter sets forth an alleged conspiracy that is believed to have spanned across the country. This may require that the Investigator travel to areas outside of Albuquerque. This allegation alone necessitates telephone contact between the Investigator and Mr. Jarvis since face-to-face communications are not possible when the Investigator is working out of state. However, the restriction's placed on the Investigator and Mr. Jarvis require that any conversation between them occur on a face-to-face basis – an untenable and cost-prohibitive imposition whether the Investigator is on assignment in or out of Albuquerque. Although the undersigned counsel has not presumed to ask for a defense-budget nearing the amount allocated the government to develop and prosecute its case against Defendant, undersigned counsel does expect, at the very least, the ability to fully and fairly participate in the discovery process.

### III. The Government's Bar on Defendant's Ability to Have a Private Telephone Conversation with his Attorney Violates Defendant's Sixth Amendment Right to Effective Assistance of Counsel

The government requires that a guard be physically present in proximity to the phone provided to Defendant when Defendant calls undersigned counsel by phone. The guard's close proximity to Defendant when Defendant is discussing his case with undersigned counsel chills any meaningful telephone dialogue between Defendant and his attorney. Further, by requiring the presence of a third person in close proximity where Defendant has an attorney-client telephone conversation, the government forces Defendant to waive any reasonable expectation of privacy that he would otherwise have if afforded the privacy necessary to protect his attorney-client privilege. Moreover, Defendant Jarvis and his undersigned counsel can not schedule telephone conversations with any regularity as Defendant's phone calls to his counsel are allowed at the convenience of the corrections officers assigned to guard the pod where Defendant is incarcerated.

### IV. Defendant's Prolonged Segregation in Supermax Conditions is Damaging Defendant's Mental and Physical Stability and, Consequently, His Ability to Effectively Prepare His Defense.

Lastly, Defendant's administrative segregation creates extraordinarily extreme conditions that have, and continue to have, damaging effects on Defendant's psyche and physical health. This damage has progressed to the point that it impairs Defendant Jarvis's ability to effectively assist his defense team.

Research shows that individuals housed under super max conditions suffer a range of adverse effects, including "appetite and sleep disturbances, anxiety, panic, rage, loss of control, paranoia [and] hallucinations." *See, e.g.* Rhodes LA. *Pathological Effects of the Supermaximum Prison*. American Journal of Public Health,

10.2105/AJPH.2005.070045; Dr. Craig Haney, *Mental Health Issues in Long-Term Solitary and 'Supermax' Confinement*, 49 Crime & Delinquency 124, 126 (2003). Moreover, any prisoner housed in super-max for longer than tens days will exhibit negative psychological effects. Haney, *Mental Health Issues in Long-Term Solitary and 'Supermax' Confinement*, 49 Crime & Delinquency 124 at 132.

Mr. Jarvis's conditions of confinement mirror super-max conditions. Like the administrative segregation units at RCC, "supermax prisons house prisoners in virtual isolation and subject them to almost complete idleness for extremely long periods of time." *Id.* at 126. Mr. Jarvis has been locked alone in his cell for twenty-three hours a day since February 7th. He is only allowed out of his cell for showers five days a week, and is allowed to review his case discovery on a lap top computer for a few hours a day. Since being placed in Administrative Segregation, he has not been allowed to have telephonic contact with anyone except undersigned counsel. As such, he has been completely sequestered from his family, other relatives, and friends. This has created a state of emotional isolation that makes it increasingly difficult for Defendant Jarvis, who has yet to be convicted of any crime, to concentrate and focus.

When allowed to leave his cell, he is handcuffed and shackled. These restrictions have persisted now for more than 100 days. Trial in this matter is set for October 2006. By that time, Mr. Jarvis will have been confined under super-max conditions for a period approximating 240 days. This does not portend well for Mr. Jarvis's mental state and his ability to assist undersigned counsel in his defense. In fact, Mr. Jarvis requires the oversight of a psychologist and is currently being treated pharmacologically for those very mental conditions described by forensic research.

**WHEREFORE,** Defendant Jarvis respectfully requests that this Court to reconsider its findings and set an expedited hearing on this matter and that it modify its earlier order.

Respectfully Submitted,

By:   *Electronically Filed*
Joe M. Romero, Jr.
Attorney for the Defendant
1905 Lomas Blvd. NW
Albuquerque, NM 87104
(505) 843-9776

I hereby certify that a true and correct copy of the foregoing pleading was mailed to opposing counsel this 27 day of May, 2006.

*Electronically Filed 5/27 /06*
_____
JOE M. ROMERO, JR.

10