**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**
                                                    **CR No. 05-1849 JH**

**DANA JARVIS,**

        **Defendant.**

**DEFENDANT JARVIS' RESPONSE TO THE UNITED STATES' MOTION FOR
INTERLOCUTORY SALE OF REAL PROPERTY AND LIQUOR LICENSE
NUMBER 2599 [Doc. 664]**

Comes now the Defendant, Dana Jarvis, through counsel, Joe M. Romero, Jr. and Jody Neal-Post, and hereby responds to the United States' Motion for Interlocutory Sale of Mr. Jarvis' real property and liquor license 2599. Published federal case law around the country is devoid of precedent for allowing a *pre*-conviction sale of real property alleged to be criminally forfeitable, and the case herein is not so unique as to be the first such judicially approved sale. Mr. Jarvis states as follows.

**I.  Summary of the United States' Argument & Mr. Jarvis' Response to the
Government's Factual Allegations**

The United States seeks interlocutory sale of property it alleges is criminally forfeitable, property which has not and cannot be criminally forfeited *pre*-conviction of the underlying criminal charges which provide for forfeiture as an element of sentencing. *United States v. Dean*, 835 F. Supp. 1383, 1394 (D. Fla. 1993)("a criminal forfeiture may only be commenced following a criminal conviction").

The government alleges this is necessary pre-trial as "an interlocutory sale of the property by the United States Marshals Service provides the best means of maximizing and preserving the equity in the property," based upon its own allegation that "the property is now subject to waste, deterioration and decay."  "If such sale occurs in the near future," the United States continues, "before the property deteriorates or is perhaps destroyed, the sale should generate sufficient funds to satisfy First State Bank's Mortgage and provide additional proceeds which can be held by the United States Marshall's Service pending final judgment in this case." *Doc. 664*, ¶ 7.

The United States cites no case wherein what it requests was allowed, presumably as undersigned counsel can find none, yet asserts statutory authority impliedly allows what it seeks.  Interlocutory sales of assets *pre*-entry of judgment of criminal forfeiture rarely appear in published case law; when they do they are uniformly *post*-conviction after the government's rebuttable presumption of forfeitability has withstood trial or as an interlocutory sale by consent of the parties. *See* 18 U.S.C. 853(d). Nor does the authority the United States cites at paragraph 8 support *pre*-conviction interlocutory sale.  In fact, the United State's reliance on 18 U.S.C. 853 as authority for *pre*-conviction interlocutory sale of an allegedly forfeitable asset is belied by the first three words of 853(a): "Any person *convicted*…." (Emphasis added).   Mr. Jarvis has not been convicted. *United States v. Gilbert*, 244 F.3d 888, 924 (11th Cir. 2001)("It is beyond doubt that criminal forfeiture is part of a defendant's *sentence*.")(emphasis added). Furthermore, the United States owns no title it can sell, a matter the United States simply fails to address in its Motion.

2

Leaving for a moment the non-availability of the remedy the United States seeks, the government's factual basis underlying its allegations of waste are now moot. On September 13, 2006, the lessee of the property, Mr. Lambros, was arrested inside his home at 5:30 a.m. on a single misdemeanor charge arrest warrant for a violation of state liquor license law. Harlow's was searched and paperwork relating to the business was allegedly taken pursuant to a search warrant for the Harlow's address. Since the date of Mr. Lambros' arrest, Mr. Cummings, Mr. Jarvis' Power of Attorney for business matters while Mr. Jarvis is incarcerated, has been working round the clock to find a new lessee for the property.

Mr. Cummings has contacted Vincent Marchiondo, a real estate and liquor license broker, who has located a potential lessee for both the liquor license and the property. *See Ex. A, attch, Affidavit of Brandon Cummings*. This new lessee is willing to pay $6,200.00 per month, which is an increase of $600 a month over the previous lease. *Id.* The initial payment would include the first two and last two months. *Id.* Mr. Cummings has also notified the New Mexico Alcohol & Gaming Division that business is not presently being conducted at the property, and has had the liquor license placed in "voluntary suspension." *Id.* Upon information and belief, despite efforts of officers executing the warrant on the Harlow's property to secure permission to seize the liquor license, the State of New Mexico declined and has not, as of this date, seized liquor license 2599.

The United States alleges at paragraph 3 that it "expects that upon defendant's conviction, the property will be forfeited to the United States." This is of no moment to this Court's evaluation of the government's unprecedented request. Unless and until conviction, title to the subject property and attached liquor license, without which the

3

value of the property is substantially reduced, belongs to Mr. Jarvis. Mr. Jarvis does not consent to their sale.

## II. Legal Argument & Authorities Against a Contested, Pre-Conviction Interlocutory Sale

### a. The United States Has No Title to Sell

Beginning with the simplest resolution available to this Court, the Court should deny the government's request because as a matter of law, the United States does not own any title it can sell. To illustrate this, it is instructive to remember how the criminal forfeiture process proceeds:

> A criminal forfeiture proceeds in two steps. First, in conjunction with the criminal trial of the defendant, the factfinder determines whether the defendant had an interest in the allegedly forfeitable property that arose from his illegal activities. If so, the district court enters an order of forfeiture with respect to that property at the time of sentencing. In the second stage of proceedings, termed the ancillary proceeding, people other than the defendant may assert their interests in the property. *See* 18 U.S.C. § 1963(i). Following the ancillary proceeding, the district court may amend the order of forfeiture in accordance with its determination of the issues raised therein. *See* § 1963(i)(1).

*United States v. Pelullo*, 178 F.3d 196, 201-03 (3rd Cir. 1999); *see also United States v. Gilbert*, 244 F.3d 888, 907 (11th Cir. 2001) & *Roberts v. United States*, 141 F.3d 1468, 1471 (11th Cir. 1998)(1963 and 853 interpretation interchangable).

In *United States v. Schwimmer,* the Court put the criminal forfeiture process into the perspective of what equates to clear title pursuant to property law principles, or at what point the United States takes unclouded and hence marketable title to criminally forfeited property:

> In particular, the United States does not have clear title to the property that is the subject of the order of forfeiture until the adjudication of petitions under § 1963(l) (or the expiration of the period for filing such petitions),

4

>and the United States may not warrant good title to any subsequent purchaser or transferee until that time.

*United States v. Schwimmer*, 968 F.2d 1570, 1576 (2nd Cir. 1992); *see also United States' Proposed Order herein, Doc. 664, Ex. A,* p. 3, ¶11(deed to be issued upon sale would be "without covenants or warranties, express or implied."). *Schwimmer* makes clear that *even after entry of judgment of conviction* title cannot be warranted as clear in favor of the United States until the ancillary proceedings for the adjudication of third party interests has concluded or, in the absence of third-party claims, the time for such claims has run. As Mr. Jarvis is not even set for trial until April 10, 2007, the government clearly has nothing to warrant as far as title to any potential purchaser and admits as much.

There is no factual basis to the government's assertion at ¶ 7 that a sale now or soon would bring a higher price for the property than a foreclosure sale. The title problems Mr. Jarvis points out are real and even acknowledged by the United States in its proposed Order where it states that the deed to be issued upon sale would be "without covenants or warranties, express or implied." *See Doc. 664, Ex. A, Proposed Order,* p. 3, ¶11. Such title problems prohibiting transfer of an unclouded title are equally prohibiting of obtaining a maximum sale price.

The United States' proposed Order further and implicitly acknowledges that the clouded title reduces marketability of this property at paragraph 5, wherein the limit of a price of "less than two-thirds of the appraised value of the property" is conceded as being too low to allow sale. Subtract out all the fees of a broker, "any real estate commission, closing costs and other selling expenses," as well as United States Marshals Service costs as the United States proposes at ¶12 and the United States will have wasted a significant portion of the value of this asset.

5

Furthermore, over five months of revenue still exist in the possession of the United States Marshall's Service for payment of the outstanding loan, if the Marshall's Service accounting is accurate. As current owner of this property until judgment of forfeiture is entered, Mr. Jarvis is entitled to his rents from this property to pay his legitimate expenses, including child support, pursuant to *James Daniel Good.* S*ee Shelden v. United States*, 7 F.3d 1022, 1027 (Fed. Cir. 1993) ("Title to forfeited property transfers to the United States upon entry of a judgment of forfeiture."), *citing United States v. Stowell*, 133 U.S. 1, 17, 33 L. Ed. 555, 10 S. Ct. 244 (1890); *United States v. 51 Pieces of Real Property*, 17 F.3d 1306, 1316 (10th Cir. 1994)(entitlement to rents for *Good* violation). Freedom to manage his own property includes Mr. Jarvis being free to locate new lessees if he is able. Mr. Jarvis has shown that he is able.

### b. Allegations of Waste Do Not Entitle a Non-Owner to Sell Mr. Jarvis' Property

As touched on above, there is no legal authority cited by the United States which authorizes *pre*-trial interlocutory sale of an asset alleged to be criminally forfeitable. The United States' allegations of *pre*-conviction waste do not alter the non-availability of interlocutory sale as a pre-trial remedy, and their factual basis for the allegations of waste have evaporated with Mr. Lambros' arrest and imminent departure as lessee.

Factually, any waste in a property law sense occurring to the property known as Harlow's has undisputedly occurred after the United States inserted itself into the management of the property via the protective order alleging to protect the interests of all involved. The insertion of the United States created barriers to communication between lessor and lessee and interfered in their rights to freedom of contract. Allowing the United States to continue to allege waste of the property while creating and contributing

6

to it is not without negative consequence to either Mr. Jarvis or the United States. *See e.g. United States v. 1461 W. 42nd St.*, 251 F.3d 1329 (11th Cir. 2001)(problem of remedy for government waste of property); *United States v. Abner,* 231 F. Supp. 2d 1181, 1182-86 (D. Fla. 2002)(issue of governmental waste of properties in its care). In *United States v. Stewart,* the court found that since the amount received by the United States in a property sale goes directly to a defendant's restitution responsibilities at sentencing if a defendant is convicted, the government cannot waste properties and then cry deficiencies in restitution. *Stewart*, 185 F.3d 112 (D. Pa. 1999)(1999 U.S. Dist. LEXIS 10160, *7-10).

It is Mr. Jarvis who may be subject to restitution as a condition of sentencing. The cases cited above illustrate the difficulty for the courts in fashioning any remedy for waste perpetrated by the government while managing property alleged forfeitable. Based upon the presumption of innocence Mr. Jarvis now enjoys, Mr. Jarvis is entitled to manage his own property unless and until judgment of conviction is entered against him, *even if* the United States thinks it would be a better property manager. Such allowance to Mr. Jarvis also eliminates any possibility later of allegations by Mr. Jarvis of likely unredressable governmental waste or loss of the properties, or the accrual of *Bivens* claims against individual federal actors. *See Clymore v. United States (Clymore III),* 415 F.3d 1113, 1120 (10th Cir. 2005)(if the United States lost possession of the property, sovereign immunity prevented monetary damages to the claimant).

Regardless of how the United States may perceive waste of the property under Mr. Jarvis' management, it cites no authority to take management of the property of a legally competent, and until proven otherwise, innocent man. The government's authority, 21 U.S.C. 853(e)(1)(A) has been utilized for *post*-conviction pre-forfeiture

7

judgment sales by agreement of the parties and in civil forfeitures, but not as requested herein.  In *United States v. Lot 41, Berryhill Farm Estates*, one of the only interlocutory sales decisions in this Circuit, the United States sought an interlocutory sale of a residence in an *in rem* civil proceeding, *post-conviction*, clearly distinguishable from the facts herein. *Berryhill Farm Estates,* 128 F.3d 1386 (10th Cir. 1997). *Berryhill Farm Estates* sheds little light on the present issues, as it is a procedural morass of state, federal, civil and finally, criminal forfeitures across several jurisdictions. Similarly unhelpful, a *post*-conviction interlocutory sale was sought in *United States v. Carmichael*, 432 F. Supp. 2d 1253, 1254-56 (M. D. Ala. 2006).  The Court could understand the government's concerns about maintenance of the *post*-conviction allegedly forfeitable asset, yet stated as to authority pursuant to 18 U.S.C. 853:

> Carmichael's sentencing has been delayed, thereby delaying the entry of a final order of forfeiture. Meanwhile, the property at issue is subject to interlocutory sale. The result of these circumstances is that no court order (in the form of a final order of forfeiture) yet exists to reassure potential buyers of the government's clear title to the property.
>
> The government's concern is a legitimate one, since it is no doubt correct that 'a written order of default would be a much more persuasive assurance' to potential buyers than the government's own assertion of clear title based on the statutory language of § 853 and Rule 32.2. However, nothing in the language of § 853 or Rule 32.2 authorizes the court to enter default based on mere convenience; instead, they describe precisely how and when clear title to criminally forfeited property is obtained.

*Carmichael*, 432 F. Supp. 2d at 1256.  The Court found the language the United States' relied upon in 18 U.S.C. 853 allowing the Court to "take any action to preserve the availability of the property" to be unavailing as a grant of discretion, when the preconditions of 853 had not been met:

8

> However, the provision [853] permitting courts to "take any other action" to protect property cannot authorize entry of default under Rule 55, if the preconditions required by Rule 55 for such default are not met. As noted above, such preconditions fundamentally include the existence of a civil action [in the context of post judgment civil ancillary proceedings].

*Carmichael*, 432 F. Supp. 2d at 1256. In the present case, the premier precondition of 853 is not met - conviction of Mr. Jarvis. There simply exists no authority for this Court to grant the government's request.

### c. The "Expectation" of the United States of Achieving Judgment of Forfeiture is a Cloaked Relation-Back Argument

The government's assertion that it "expects" to succeed in forfeiting Mr. Jarvis' property upon his conviction is a red herring, as well as a cloaked relation-back argument.

The United States is operating as to Mr. Jarvis' properties as if the calendar reads 1990 rather than 2006, before the United States Supreme Court decisions in James *Daniel Good* and *United States v. 92 Buena Vista. United States v. 92 Buena Vista Ave.*, 507 U.S. 111 (1993). Before *Buena Vista*, the government relied upon the "relationship back doctrine" as a "fundamental misconception that, under the common law relation-back doctrine, all rights and legal title to the property pass to the United States 'at the moment of illegal use,'" meaning title passes the date the government alleges the criminal acts in the indictment occurred. *See Buena Vista*, 507 U.S. at 131-32 (J. Scalia explaining in dissent).

*Buena Vista* made clear that the language in the forfeiture statutes that title vests upon commission of the act giving rise to forfeiture, means a *nunc pro tunc* vesting - conviction occurs and at the moment a judgment of forfeiture is subsequently entered, the title vests in the United States *back dated* to the date of the offense of conviction. *United*

9

*States v. Pelullo*, 178 F.3d 196, 201(3rd Cir. 1999); *also United States v. Martinez*, 228 F.3d 587, 590 (5th Cir. 2000):

> If the government wins a judgment of forfeiture under the common law rule . . . the vesting of its title in the property relates back to the moment when the property became forfeitable. Until the government does win such a judgment, however, *someone else owns the property.*

*Buena Vista*, 507 U.S. at 126 (emphasis added). The "someone else" here is Mr. Jarvis.

In *Sheldon*, the Court discussed how, even after the district court entered the forfeiture order and title to the subject property effectively transferred to the United States, the government allowed the former owner to retain record title, live in and manage the subject property during the appeals process of the underlying criminal conviction. *Shelden*, 7 F.3d at 1027. Mr. Jarvis simply seeks judicial recognition by *denial* of the government's Motion for Interlocutory Sale that *pre*-conviction, he cannot be divested of the right to do the same - retain record title and manage his own property.

Since *Buena Vista* in 1993, the United States clearly has neither title nor right to title in property simply by virtue of alleging commission of a crime, the veiled and out-dated relation-back argument made here.

## **Conclusion**

The United States continues to take unprecedented actions against the defendant Mr. Jarvis in this case, at every turn injecting grounds for an eventual finding of constitutionally and fundamentally unfair proceedings in contravention of the Fifth Amendment.

It is the responsibility of the United States to seek justice, and a concomitant responsibility must be to conduct the proceedings free from taint that would render the

10

tremendous budgetary expense of a case of this magnitude meaningless by virtue of eventual reversal for compound error.

The United States has presented no legal authority for what it seeks herein and Mr. Jarvis confirms there is none. Long established United States Supreme Court precedent disallows what the United States seeks and continues to do, yet the government fails to bring this authority to the attention of the Court and distinguish it if it has a good faith basis for what it seeks.

Not only should the motion of the United States for interlocutory sale be denied for the real property and liquor license, Mr. Jarvis, pursuant to *Good*, ought to be returned to management of his own properties pre-trial and have his rents returned to him, and be allowed to use a portion of these rents for his property management expenses.

Mr. Jarvis seeks all other such relief as the Court finds allowable to him for the violations perpetrated by the United States.

    Respectfully submitted by:

    *ElectronicallyFiled*

    By_____
    Joe M. Romero, Jr., Attorney for Mr. Jarvis
    1905 Lomas Blvd. NW
    Albuquerque, NM 87104
    (505) 843-9776

    *ElectronicallyFiled*

    By_____
    Jody Neal-Post, Attorney for Mr. Jarvis
    317 Amherst SE
    Albuquerque, NM 87106
    (505) 268.7263

I hereby certify that a true and correct copy of the foregoing pleading was faxed to opposing counsel this 21st day of September 2006.

*Electronically Filed*

_____
JOE M. ROMERO, JR.