IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**THE UNITED STATES OF AMERICA,**

    **Plaintiff,**

  vs.                              No. CR 05-1849 JH

**DANA JARVIS,** *et al.***,**

    **Defendants.**

**AFFIDAVIT OF YVONNE BECKMAN, CPA
IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO DISMISS COUNT III, OR,
IN THE ALTERNATIVE,
MOTION FOR A BILL OF PARTICULARS PURSUANT TO
FED. R. CRIM. P. 7(c)(1), 7(f) & 12(b)(3)(B)**

STATE OF NEW MEXICO    )
                                       ) ss.
COUNTY OF BERNALILLO  )

    I, Yvonne Beckman, do swear and affirm the following:

1.    I am a New Mexico licensed Certified Public Accountant, license number 4036, firm permit number 09895.

2.    I received my Bachelor degree in Finance and Accounting from the University of New Mexico, with attainment of Certified Public Accountant accreditation in November of 1993. My public accounting practice since that date includes professional work with an emphasis in taxation, forensic accounting, attestation and litigation consulting and expert witness services. Litigation related experience encompasses analysis and testimony in cases involving criminal fraud and embezzlement issues, business and property valuation, real property and construction matters, and domestic relations. Experience has been derived by

and through casework and ongoing educational coursework in forensics, fraud, and litigation. I am currently undertaking coursework in obtaining further designations as a Certified Fraud Examiner and accreditation in valuations and forensics.

3.  A forensic financial investigation encompasses auditing techniques and the development of the scope of the investigation with respect to materiality and risk and detection of significant events in relation to the purpose of the investigation. Based upon a review of the Superceding Indictment in this case, the United States' purpose in any financial investigations undertaken of the Defendants in the present case must have been to investigate money laundering crimes and to determine any nexus between proceeds from alleged illegal activities and assets for determining the value of the forfeiture allegation. The higher the level of risk and materiality equates to the higher need for accuracy and confidence in the resultant data and the subsequent need for enlarging the scope of the audit. This is accomplished through testing and application of analytical procedures in conjunction with the raw data from the investigation. Procedurally, as the quantity of documentation obtained and assessed increases, the amount of time involved in the investigation increases accordingly.

4.  The scope of evidence reviewed in an investigation would include, but is not limited to, assessment and investigation into accounting records such as original books of entry, checks, bank records, electronic means of record retention and compilation and would include integrated systems which share data and support all aspects of the entity's financial reporting, operations and compliance objectives. Evidence obtained from third parties or outside sources other than the parties directly connected to either the business or personal affairs of the defendant(s) would also be obtained such as vendor inquiries and documentation, and reports filed with state and federal taxation agencies.

5.     Audit sampling may be used initially to isolate significant events or trends, providing an initial snapshot of the investigation target's financial portrait. However, the sampling will be enlarged at a later point to assist in achieving an appropriate measure of confidence in the data as representative across time, minimizing risk, and ensuring the effectiveness of the audit scope as accurate. Documentation and evidence facilitated in this sampling would include, but not be limited to, income tax returns, state sales tax returns, records (statements) from financial institutions, deposit books, canceled checks, inventory purchase invoices, payroll records, time cards, register receipts, accounts payable invoices and payments, physical inventory count records, electronic media, depreciation and asset reports, title and mortgage settlement statements, accountant's work papers, leases, agreements and contracts with subcontractors and vendors, notes payable and mortgage information, financial statements and general ledgers. This documentation would not only be obtained from the entities or individuals themselves, but as denoted previously, from third party information, which would increase the quantity and sufficiency of the assessment base of the investigation.

6.     To adequately define the scope of the investigation in this case, examiners would have investigated on a sample basis initially, and then broadened the scope in an effort to include any incident or occurrence of any significant event of alleged wrongdoing. In doing so, the investigation would have had to include an enormous amount of the aforementioned data and source documents, let alone procedures and time involved to adequately assess the broad scope of time, across fifteen years, that was then promulgated in the second indictment. On an approximate basis, for one lone defendant, a thorough investigation would have analyzed, on the average, one hundred transactions per week, fifty two weeks per year, over fifteen years, equating to 78,000 transactions for each defendant. To include

10 defendants would equate to assessment and investigation into 780,000 transactions preliminarily. This quantity of data would then equate to approximately one hour of investigation per transaction, surmounting 32,500 days or 89 years of investigation for one person assigned to encapsulate this semblance of activity.

7. It cannot be expected that the United States forensic examiners made the hypothetical, thorough investigation suggested above in support of the allegations in the superceding indictment at Count III. However, without any specific information as to the forensic manner of sampling or specifics as to which defendants allegedly violated what specific provisions of the two money laundering provisions the United States has alleged at Count III, I would have to perform the complete forensic analysis described above for each defendant to ensure that all counsel have the specifics of any financial transaction the United States *might* present as evidence for conviction at trial.

8. In contrast, if my task is limited to evaluation of certain alleged transactions described by manner of financial transaction, by specific individual(s), on a date and by a means certain, I can provide forensic support such that the defendant knows what he or she is alleged to have done and is prepared to meet the government's specific proof at trial.

FURTHER AFFIANT SAYETH NAUGHT.

Yvonne Beckman, CPA

SUBSCRIBED AND SWORN TO before me this 20th day of October, 2006, by Yvonne Beckman, CPA.

NOTARY PUBLIC

My commission expires: 3/26/09

4