IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                    NO.  CR 05-1849 JH

DANA JARVIS et al.,

        Defendant.

## DEFENDANT AYLA JARVIS' MOTION FOR SEVERANCE FROM CO-DEFENDANTS

COMES NOW the Defendant, Ayla Jarvis, by and through her attorney John F. Robbenhaar, and pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B) and 14, 18 U.S.C. § 5031 et seq. and the Fifth and Sixth Amendments to the United States Constitution, respectfully requests that the Court sever the Defendant Ayla Jarvis from her co-defendants for separate trial.  As grounds in support, Ms. Jarvis states the following.

I.  BACKGROUND AND INTRODUCTION

1.  The Government sought and obtained a Superseding Indictment which charges 22 defendants with having furthered a large-scale marijuana distribution conspiracy since approximately 1990.  The Defendant Ayla Jarvis has been charged in Count I of the Superseding Indictment with Conspiracy to Distribute 1000 Kilograms and More of Marijuana, contrary to 21 U.S.C. § 846.  Ms. Jarvis has also been charged in Count 3 with Conspiracy to Launder Money, contrary to 18 U.S.C. § 1956(h), and in a Criminal Forfeiture allegation, contrary to 18 U.S.C. § 982 and 21 U.S.C. § 853.

2.  Ayla Jarvis was born in 1986, and the alleged leader of the conspiracy is

Dana Jarvis, the father of Ayla Jarvis.  The Defendant Ayla Jarvis was just four years old at the genesis of the alleged conspiracy.  It is uncertain when the Government claims that Ms. Jarvis first entered the criminal conspiracy, but it is assumed that the Government will claim that Ms. Jarvis' first involvement occurred while a juvenile.  Ms. Jarvis was arrested in August 2005, or when she was nineteen years one month old.

3.    Ms. Jarvis sets forth the following arguments in support of her motion for severance.

● INABILITY TO CALL CO-DEFENDANT WITNESSES: Joint trial will deprive the Defendant Ayla Jarvis of the opportunity to introduce exculpatory testimony of a co-defendant who refuses to take the stand in his own defense at a joint trial.  For example, co-defendant Dana Jarvis may be able to explain how certain conduct of the Defendant Ayla Jarvis is innocent in nature, and has nothing to do with the alleged conspiracies; unfortunately, the jury would never her of this type of testimony were Ayla Jarvis tried alongside Dana Jarvis.  In such a scenario, the Defendant Ayla Jarvis would suffer a deprivation of her right to a fair trial by being unable to present necessary, exculpatory evidence.

Similarly, statements made by a co-defendant that is admitted under the rule of co-conspirator admissions, *see* Fed. R. Evid. 801(d)(2), will prejudicially impact the Defendant Ayla Jarvis' right to a fair trial and confrontation of witnesses.  Should the declarant of such a statement be tried alongside Ayla Jarvis, and in the event the statement inculpates Ayla Jarvis, Ms. Jarvis will have no recourse or ability to cross-examine the declarant.  Such a scenario clearly implicates the Defendant Ayla Jarvis' Sixth Amendment right to confront those who testify against her.

2

● REAL PREJUDICE BY SPILLOVER: The Defendant Ayla Jarvis will suffer unfair prejudice by being tried alongside her father and the other co-defendants. It is presumed that the vast majority of the Government's evidence will focus on Dana Jarvis' involvement in organizing and directing the alleged conspiracy. Indeed, Dana Jarvis is named in all 26 criminal counts, while Ayla Jarvis and the other individual defendants are named in only Counts 1 and 3–the two conspiracies–and the forfeiture allegation. Therefore, it is clear that the Government's case centers on Dana Jarvis, and its proof will reflect this fact.

As argued more fully below, the prejudice to Ayla Jarvis stems largely from the fact that the Government's witnesses will paint a picture that, for almost her entire life, she has essentially lived in the alleged conspiracy. As a close family member of the lead defendant, Ayla Jarvis will be seen and heard very frequently in the evidence, despite the fact that there may not be proof that she had yet entered the conspiracy. Such close links to the evidence, despite being a juvenile and not a member of the conspiracy, will result in unfair prejudice to the Defendant Ayla Jarvis.

● AYLA JARVIS WAS A JUVENILE FOR MOST OF THE ALLEGED TIMESPAN: Much of the Government's evidence will presumably describe conduct that occurred when Ayla Jarvis was a juvenile and before she allegedly joined the conspiracy. Evidence of a co-defendant's conduct in year 2000, for example, would not be admissible in a separate trial against Ayla Jarvis, and should not be used against Ayla Jarvis in a joint trial, as she was just 14 then and under the law was *presumptively not* part of any larger criminal conspiracy. See *Allen v. United States*, 150 U.S. 551, 558, 14 S.Ct. 196, 198, 37 L.Ed. 1179 (1893). Nonetheless, despite the predictable

use of limiting instructions, the jury will still hear this evidence and treat it as part of the conspiracy and against the conspirators.  The fact that Ayla Jarvis did not turn 18 until mid-2004 will be lost on a jury examining evidence presented against 22 individual defendants.  The fact is that the jury will hear most frequently the name of "Jarvis", and after weeks of trial with potentially dozens of witnesses and hundreds of exhibits, the likelihood of contamination and prejudicial spillover to Ayla Jarvis is very real.

●  MEGATRIAL REQUIRES SEVERANCE: The Defendant Ayla Jarvis is joined with 21 other defendants in Count 1, and with 9 other defendants in Count 3 of the Superseding Indictment.  Two separate conspiracies are charged, each demanding separate proof at trial.  While a single jury may typically be able to sort through and compartmentalize evidence related to separate criminal charges, the fact that there are 22 defendants and over 60,000 pages of discovery with potentially dozens of witnesses, will doubtlessly overwhelm any jury.  Will the 10 named defendants in Count 3 really receive a fair trial, and a neutral fact-finder, after evidence against them and 12 others has been presented as per Count 1?  Furthermore, regardless of limiting instructions, it is not hard to envision the scenario of evidence of criminal wrongdoing by a co-defendant, say Dana Jarvis, influencing the jury's decision regarding whether or not conduct by Ayla Jarvis was in furtherance of the criminal conspiracy.  Evidence that otherwise would not reach the level of proof beyond a reasonable doubt would still produce a guilty verdict against Ayla Jarvis.  To avoid this kind of structural error, lesser defendants such as Ayla Jarvis should be tried separately from the lead defendant Dana Jarvis.

Similarly, evidence which might satisfy proof beyond a reasonable doubt

4

for one of the two conspiracies may improperly influence a single jury to convict as to

the other conspiracy.  Again, once a jury is enlisted to examine evidence which involves

thousands of pages and the actions of 22 individuals, it becomes unreasonable to

expect that proof concerning one conspiracy will not influence the judgment and

understanding of proof centered on another conspiracy.

    4.    Accordingly, to avoid these structural defects and resulting constitutional

violations, severance of Ayla Jarvis from her co-defendants is necessary.  Some

authority in support o the above arguments follows.

II.    ARGUMENT

    5.    Rule 14 of the Federal Rules of Criminal Procedure gives a district court

discretion to grant a severance even if the joinder is technically proper under Rule 8,

where "there is a serious risk that a joint trial would compromise a specific trial right of

one of the defendants, or prevent the jury from making a reliable judgment about guilt

or innocence.  *Zafiro v. United States*, 506 U.S. 534 (1993); *United States v. Lane*, 474

U.S. 438, 447 (1986); *United States v. Ford*, 870 F.2d 729, 730 (D.C. Cir. 1989).

A.    DENIAL OF EXCULPATORY EVIDENCE

    6.    The Supreme Court recognized in *Zafiro*  that "a defendant might suffer

prejudice [from a joint trial] if essential exculpatory evidence that would be available to a

defendant tried alone, were unavailable in a joint trial."  506 U.S. at 539.  In considering

a claim to sever based on exculpatory evidence, the following factors are relevant:

        1. the likelihood that the co-defendant would, in fact, testify and waive his

            Fifth Amendment privilege at the severed trial;

        2. the significance of the testimony to the theory of the defense;

5

3.  the exculpatory nature and effect of the such testimony;

4.  the likelihood that the testimony will be impeached;

5.  the amount of prejudice caused by the absence of such testimony;

6.  the effect of severance on judicial economy; and

7.  the timeliness of the motion.

*United States v. Powell*, 982 F.2d 1422, 1432-33 (10th Cir. 1992) (*citing United States v.
McConnell*, 749 F.2d 1441, 1445 (10th Cir. 1984.  It is anticipated that the Defendant
Ayla Jarvis will supplement this motion with an affidavit to demonstrate the testimony to
be given by Dana Jarvis on Ayla Jarvis' behalf.

7.      Further, if Dana Jarvis' exculpatory testimony is unavailable to the
Defendant Ayla Jarvis at a joint trial, and if Dana Jarvis' incriminating hearsay
statements are admitted, the Defendant Ayla Jarvis intends to introduce evidence
pursuant to Fed. R. Evid. 806 to impeach the credibility and the trustworthiness of Dana
Jarvis' hearsay statements.[1]  That testimony, much of it from government agent
witnesses as well as others, may well be otherwise inadmissible against co-defendant
Dana Jarvis.  Defendant Ayla Jarvis raises this possibility only to alert the Court to
imminent problems at a joint trial.  Any abridgement of Ayla Jarvis' right to present that
evidence at a joint trial would clearly prejudice her right to a fair trial and to present
witnesses on her own behalf.  A joint trial under these circumstances, with hearsay
testimony introduced by one co-defendant which implicates other co-defendants, also

_____

[1] Fed. R. Evid. 806, Advisory Committee Note, provides: "The declarant of a
hearsay statement which is admitted in evidence is in effect a witness.  His credibility
should in fairness be subject to impeachment and support as though he had in fact
testified.

presents numerous Sixth Amendment confrontation issues.  *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

B.    MEGATRIAL

8.    The "megatrial", where more than 10 defendants are joined in a single indictment or for a single trial, has become more common in the age of drug conspiracy and racketeering cases.  The Second Circuit examined some of the concerns that arise when numerous defendants are joined in a single trial.  In *United States v. Casamento*, 887 F.2d 1141, (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990), the Second Circuit has condemned the megatrial and adopted a presumption against a joint trial and for severance.  It counseled that if the estimated length of the government's case is more than four months, then the prosecutor should "present a reasoned basis to support a conclusion that a joint trial of all the defendants is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants."  887 F.2d at 1152.

9.    In the present case, the trial could last months, based on the sheer volume of evidence and number of defendants.  Much of the evidence will focus on lead defendant Dana Jarvis, who is named in each individual count.  While the Defendant Ayla Jarvis recognizes that a complaint of "spillover effect" from damaging or overwhelming evidence against a co-defendant is not alone sufficient to justify severance, the real prejudice in this case occurs from the fact that Ayla Jarvis was a juvenile for most of the conspiratorial time frame, and a jury will find it extraordinarily difficult to follow admonishing instructions and separate out evidence that is applicable only to a single co-defendant.

7

> "A co-defendant in the conspiracy trial occupies an uneasy seat.  There generally will be evidence of wrongdoing by somebody.  It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather flock together."

*Krulewith v. United States*, 336 U.S. 440, 454 (1949).

C.    GREATER EFFICIENCY

10.    Contrary to what is often argued against separate trials, a severance that results in multiple trials actually may promote efficiency because "the later trials are certain to be shortened or even precluded by the earlier trial or trials."  *United States v. Gallo*, 668 F.Supp. 736, 757 (E.D.N.Y. 1987).  After the first trial, the Government obtains a better sense of what is effective, and thus becomes more efficient in putting on its case.  Further, there is a strong possibility that certain severed defendants may plead guilty after they have seen the government's method and proof in the preceding trials.  Alternatively, if the severed defendants who go to trial first are acquitted, then the government may elect to not prosecute others or may offer more attractive plea bargains.

11.    In the present case, with a total of 22 co-defendants, there is a very real possibility that, after seeing the evidence at a separate trial and upon conviction of the previously-tried co-defendant, the remaining defendants may opt to plead guilty and thereby save the Government and the Court much expense.  Of course, this is inherently speculative, but the likelihood of this scenario playing out is strong.

D.    PREJUDICIAL SPILLOVER

12.    Rule 14 may also require severance when it becomes apparent that the evidence against one defendant is "far more damaging" than the evidence against the

8

others.  *United States v. Mardian*, 546 F.2d 973, 977 (D.C. Cir. 1976) (en banc).  In

multi-defendant trials, the risk exists of spill-over prejudice from the defendant against

whom much of the evidence pertains to the defendants against whom little of the

evidence pertains.  *United States v. Butler*, 822 F.2d 1191, 1194 (D.C. 1987).  This risk

is particularly significant in conspiracy cases.  *United States v. Sutton*, 801 F.2d 1346,

1363-64 (D.C. Cir. 1986).  In multi-defendant trials, the "sheer volume of such evidence

against co-conspirators, especially when the prejudiced defendants sit in court for

weeks or months on end without their names so much as being mentioned, can so

unbalance the scales" that no amount of cautionary instructions can undo the harm.

*Gallo*, 668 F.Supp. at 750.

      13.    In the present case, as stated above, Ayla Jarvis is the daughter of lead

defendant Dana Jarvis.  The Superseding Indictment alleges that the conspiracy began

when Ms. Jarvis was approximately three or four years old.  Clearly, at such an age,

criminal involvement is not possible.  But the fact that Ms. Jarvis is the daughter of

Dana Jarvis, and thereby intimately involved in Mr. Jarvis' daily activities, will too easily

lead a jury to conclude that her actions eventually furthered a larger conspiracy as

opposed to acts taken on her own or her father's behalf.  Based upon the nature of the

relationship between Ayla Jarvis and Dana Jarvis, it will be particularly difficult for a jury

to distinguish and compartmentalize evidence which pertains to Dana Jarvis and that

which pertains solely to Ayla Jarvis.

E.    <u>DENIAL OF RIGHT TO FAIR TRIAL</u>

      14.    By being tried alongside Dana Jarvis and her other co-defendants, Ayla

Jarvis will be denied a fair trial.  Substantial amounts of evidence may be admissible

against only one or some, but not all, of the co-defendants.  Given Ayla Jarvis' age,

much admitted evidence will simply not apply to her.  Numerous statements made by

co-defendants may be introduced as to these co-defendants but not as to Ayla Jarvis,

and if such statements are not made in furtherance of the alleged conspiracy, then the

statements may not be introduced as to any of the other co-defendants.  Similarly,

some evidence may be admissible only in reference to a particular count of the

Superseding Indictment.  While a court can try to instruct the jury that certain evidence

is admissible against other co-defendants but not Ms. Jarvis or as to one count and not

to another, a jury will be hard-pressed to understand and differentiate the evidence, and

severance is necessary to avoid a "web of hundreds of complicated and intricate

limiting instructions to evidence [the jurors] can barely recall in the first place."  *United

States v. Andrews*, 754 F.Supp.1172, 1177 (N.D. Ill. 1990).

F.    <u>THE DEFENDANT AYLA JARVIS WAS A JUVENILE FOR THE MAJORITY OF
      THE ALLEGED CONSPIRACY</u>

        15.    A severance of the Defendant Ayla Jarvis from her co-defendants is

particularly necessary due to the fact that for all but thirteen months of the alleged

conspiracy, Ms. Jarvis was a juvenile.  Evidence of co-defendant conduct prior to Ms.

Jarvis reaching the age of 18 or entering the conspiracy, is likely not admissible against

her.  Yet it is certain, based on the alleged scope and length of the conspiracies, that

much of the Government's proof will describe events which took place prior to Ayla

Jarvis' 18th birthday or her alleged joining of the conspiracies.  Again, countless limiting

instructions become hollow and fail to achieve their intended effect.  Unfair prejudice to

Ayla Jarvis, with the certainty of a criminal conviction, results.  Severance is the only

effective manner to cure this problem.

III.    <u>CONCLUSION</u>

16.    The Defendant Ayla Jarvis respectfully requests that the Court sever her trial from that of her father Dana Jarvis and from the trial(s) of her co-defendants. Based on her unique circumstances, being the daughter of the lead defendant and being a juvenile for the vast majority of the charged conspiracies, Ayla Jarvis will suffer a deprivation of her right to a fair trial.  Much, if not most, of the evidence that will be correctly introduced at trial against Dana Jarvis and other co-defendants would not be admissible against Ms. Jarvis, and no number of limiting instructions can cure this structural defect.  Additionally, a joint trial will deprive Ms. Jarvis of exculpatory evidence.  In order to avoid constitutional error, this Court should sever the trial of Ayla Jarvis from that of Dana Jarvis and the other co-defendants.

17.    Finally, it is anticipated that circumstances leading up to trial may dictate that the Defendant Ayla Jarvis may supplement and/or raise this motion again, prior to trial.  Even were this Court to initially deny Ms. Jarvis' request for severance, the Court's rulings on other motions filed by Ms. Jarvis and/or by her co-defendants may require that the Court examine the matter of severance again, prior to trial.

Respectfully submitted:


<u>*Filed Electronically*</u>
JOHN F. ROBBENHAAR
Attorney for Defendant Ayla Jarvis
1011 Lomas NW
Albuquerque, NM 87102
(505) 242-1950

11

I HEREBY CERTIFY that a
true and correct copy of the
foregoing pleading was mailed/
delivered to Assistant United States
Attorney James Braun on
October 20, 2006.

*Filed Electronically*
JOHN F. ROBBENHAAR