IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

06 OCT 20 PM 3:13

UNITED STATES OF AMERICA,

CLERK-ALBUQUERQUE

    Plaintiff,

v.                                  Criminal No. 05-1849 JH

DAKOTA FITZNER,

    Defendant.

**MOTION FOR COCONSPIRATOR STATEMENT
AND SUPPORTING POINTS AND AUTHORITIES
AND ALTERNATIVELY FOR BRADY DISCLOSURE**

    The Defendant, DAKOTA FITZNER, by and through his attorney, Todd Hotchkiss of Frechette & Associates, P.C., hereby moves this Court for an order directing the United States to immediately produce all coconspirator statements admissible against MR. FITZNER under Fed. R. Evid. 801(d)(2)(E) and <u>Bourjaily v. United States</u>, 483 U.S. 171, 107 S.Ct. 2775 (1987) and for a pretrial hearing to determine the admissibility of any such alleged statements pursuant to <u>United States v. James</u>, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917 (1979).

    As grounds, defense counsel states:

    1. MR. FITZNER was not charged in the preceding August 23, 2005 Indictment. That Indictment charged a conspiracy "(f)rom approximately September 2002, the precise date being unknown to the Grand Jury, up to and including August 2005".

    2. MR. FITZNER was initially charged in pending count 1 of the April 25, 2006 Superseding Indictment with conspiracy "(f)rom approximately 1990, the precise date

730

1

being unknown to the Grand Jury, up to and including August 25, 2005, in the State and District of New Mexico, and elsewhere," along with Dana Jarvis, Ayla Jarvis, Benjamin Swentnickas, Dennis Wilson, George Ripley, David Reid, John Nieto, Lloyd Montoya, George Osgood, Greg Hill, Geno Berthod, Russell Trujillo, Matthew Hothan, Manuel Gil, Melania Kirwin, Holly Bruner, Sam Jones, Bill Jones, Rafal Mistrzak, Mary Cannant, Adrian Sanford, and others, to distribute 1000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846.

3. The United States has produced discovery to the defendants, which contained in part Drug Enforcement Administration (DEA) reports of statements made by confidential witnesses and in the wiretap application affidavit by confidential sources alleging conduct against MR. FITZNER. Alleged statements by alleged co-conspirators may be introduced by the United States in its case-in-chief.

4. In the March 3, 2005 affidavit in support of the March 3, 2005 wiretap application, confidential source 3 (CS3) in July of 2004 stated that MR. FITZNER was a "'lieutenant' in charge of transporting bulk marijuana from the Tucson area to the Albuquerque area" and "also in charge of recruiting new members for the Jarvis DTO."

5. Statements, as summarized in the DEA-6 reports, were allegedly made by CW1, CW2, CW3, CW4 and CW6 allegedly incriminating MR. FITZNER:

    A. CW1 allegedly stated:

        I. On May 24, 2005, "he got involved with D. JARVIS through two friends of his Demian and Dakota (known to agents as Demian VASQUEZ and Dakota FITZNER) approximately three years ago."

        ii. On August 11, 2005, "When asked if he knew of any other couriers that took marijuana to Hill or picked up bulk U.S. currency from him, CW1 stated that Rafel MISTRZAK, Demian VASQUEZ, and Dakota FITZNER were such couriers."

        iii. On August 11, 2005, "CW1 said that Dakota FITZNER was a courier for JARVIS, but stopped approximately a year ago, got married and had a baby. CW1

2

said FITZNER transported bulk marijuana and U.S. currency to the East Coast of the United States. CW1 said that FITZNER's father and JARVIS were some type of business partners."

B. CW2 allegedly stated on either September 15, 2005, October 3, 2005, or February 21, 2006, in response to questioning about whom else was involved in the JARVIS drug trafficking organization, "CW2 said that Dakota FITZNER worked at the club and also transported money and bulk marijuana for the organization. CW2 said that JARVIS 'let it slip' that FITZNER was a courier for his organization once. In addition, CW2 said that when he went to JARVIS' house in Tucson he saw FITZNER there.".

C. CW3 allegedly said on November 2, 2005:

I. "People who brought loads [of marijuana] to CW3 included ... Dakota FITZNER .... These loads of marijuana were all in the range of approximately 200 pounds."

ii. "CW3 advised that FITZNER brought multiple loads to his residence at 8012 1st street."

iii. "The management duties [at Club Rhythm & Blues] were shared by Dakota (FITZNER) and John NIETO who was described as a bad person."

D. CW4 allegedly said:

I. On November 18, 2005, "CW4 ... said that FITZNER did several things for the drug organization to include transporting bulk cash, holding bulk cash, and transporting bulk marijuana. CW4 said that JARVIS told her that he trusted FITZNER. CW4 said that FITZNER also worked at Club Rhythm and Blues."

ii. On March 30, 2006, "CW4 said that she never personally worked with Dakota FITZNER, but knew that he drove bulk currency, stored money and drove bulk marijuana for the JARVIS DTO."

iii. On March 30, 2006, CW4 spoke of her knowledge of JARVIS' drug

3

ledgers, identified "DAK" as MR. FITZNER, but "stated that she did not know his new code."

 E. CW6 alleged stated on October 3, 2005:

  i. "CW6 said that Dakota FITZNER ... was a bulk marijuana courier for JARVIS."

  ii. CW6 said "she wasn't sure" how she knew FITZNER was involved, "that it was common knowledge among the employees at the club."

  iii. FITZNER "was a courier for the organization."

  iv. "CW6 said she was called by FITZNER after JARVIS was arrested and was told that he tried to call ABEYTA and warn him of his pending arrest. FITZNER told CW6 that if anyone was involved with JARVIS in the last six months then they were going to be arrested. FITZNER thought that JARVIS would try and do something to help his daughter Ayla."

6. The conspiracy as charged ranges from some undetermined date in 1990 to "up to and including August 25, 2005".

7. The discovery does not allege when MR. FITZNER, as opposed to others, allegedly entered the charged conspiracy. The earliest time is the July 2004 allegations by CS-3 in the March 2005 wiretap application affidavit. That affidavit does not identify when MR. FITZNER was involved in the charged conspiracy.

8. On August 11, 2005, "CW1 said that Dakota FITZNER was a courier for JARVIS, but stopped approximately a year ago, got married and had a baby." If CW1 is to be believed, MR. FITZNER ended any alleged participation in the charged conspiracy in August of 2004.

9. Consequently, it is uncertain when MR. FITZNER allegedly joined the conspiracy and apparently ended his participation in August of 2004.

10. Some of those statements allegedly made by CS3 and CW1, CW2, CW3, CW4 and CW6 may be used by the United States to implicate MR. FITZNER in the

4

alleged conspiracy or in any possible, relevant criminal activity.

11. MR. FITZNER is unaware via discovery disclosed to date of any other particular statements by any other alleged uncharged co-conspirator which the government may allegedly implicate MR. FITZNER in any of the charged conduct.

12. Out of court confessions of accomplices or coconspirators "are presumptively unreliable because they 'may well be the product of the co-defendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another.'" United States v. Humphrey, 208 F.3d 1190, 1205 (10th Cir. 2000)(quoting Crespin v. New Mexico, 144 F.3d 641, 646 (10th Cir. 1998)(quoting Lee v. Illinois, 476 U.S. 530, 545, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)).

13. "Under Fed. R. Evid. 802, hearsay is not admissible at trial." A possible exception is coconspirator statements under Fed. R. Evid. 801(d)(2)(E). United States v. Sinclair, 109 F.3d 1527, 1533 (10th Cir. 1997).

14. The Tenth Circuit has found that the "preferred order of proof in determining the admissibility of coconspirator statements" is a James hearing. United States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996). There is a 3 part test for admissibility of statements under Fed. R. Evid. 801(d)(2)(E), which the movant must prove by a preponderance of the evidence: (1) a conspiracy existed at the time the statements were made, (2) the declarant and MR. FITZNER were members of the conspiracy at the time the statements were made, and (3) the hearsay statements were made during the course of and in furtherance of the conspiracy. United States v. Heckard, 238 F.3d 1222, 1230 (10th Cir. 2001); Id. MR. FITZNER requests this court to make findings on this 3 part test.

15. Mere associations with conspirators, even with knowledge of their involvement in crime, are insufficient to prove participation in a conspiracy. United States v. Williamson, 53 F.3d 1500, 1518 (10th Cir. 1995).

16. The government must prove a conspiracy, and that MR. FITZNER and the

declarant were members of the conspiracy when statements were made. "(A)ssertive conduct or declarations made by one conspirator 'either before the formation or after the termination of the conspiracy are not admissible against a co-conspirator.'" United States v. Morris, 623 F.2d 145, 148 (10th Cir. 1980).(quoting Mares v. United States, 383 F.2d 805, 810 (10th Cir. 1967)). Otherwise, the declaration would be hearsay. United States v. Andrews, 585 F.2d 961, 965 (10th Cir. 1978). Likewise, it would not apply when an alleged conspirator is involved in nothing more than concealment of the criminal enterprise. Dutton v. Evans, 400 U.S. 74, 81,91 S.Ct. 210, 216 (1970).

17. For purposes of Fed. R. Evid. 801(d)(2)(E), the time at which a conspiracy ends depends on the particular facts of this case. United States v. Mayes, 917 F.2d 457, 464 (10th Cir. 1990).

18. A coconspirator statement is made during the course of the conspiracy if it is made before the objectives of the conspiracy have either failed or been achieved. United States v. Owens, 70 F.3d 1118, 1126 (10th Cir. 1995).

19. The relevance and prejudice tests of Fed. R. Evid. 104(a) also relate to the purposes of the James hearing. United States v. Owens, 70 F.3d at 1124.

20. There must also be some form of corroborating independent evidence linking the defendant to the alleged conspiracy. Id. at 1124-25.

21. The Jencks Act does not apply if the United States does not intend to call a co-conspirator as a witness. However, even if the Jencks Act does apply, the Court has discretion to order production of any co-conspirator's statements. United States v. Diston, 612 F.2d 1035, 1037-38 (7th Cir. 1980); United States v. McMillan, 489 F.2d 229, 231 (7th Cir. 1972); *contra* United States v. Randolph, 456 F.2d 132 (3rd Cir. 1972).

22. Co-conspirator's statements which the government intends to introduce at trial should also be discoverable prior to trial because those statements may be attributed to MR. FITZNER under Fed. R. Evid. 801(d)(2)(E). United States v. Thevis, 84 F.R.D. 47, 55-56 (N.D.. Ga. 1979); *see also* United States v. Mays, 460 F.Supp. 573 (E.D. Tex.

6

1978); United States v. Agnello, 367 F.Supp. 444 (E.D.N.Y. 1973); *contra* United States v. Percevault, 490 F.2d 126 (3rd Cir. 1974).

23. In Dennis v. United States, 384 U.S. 855, 873 (1966), the Supreme Court of the United States stated:

> A conspiracy case carries with it the inevitable risk of wrong attribution of responsibility to one or more of the multiple defendants .... In our adversary system of determining guilty or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant facts.

24. MR. FITZNER objects to the introduction of any co-conspirator statements based on the failure of Fed. R. Evid. 801(d)(2)(E) to authorize admission in this case, and of the due process and confrontation clauses of the Fifth and Sixth Amendments to the United States Constitution, respectively, to authorize admission.

25. Alternatively, to the extent any such or other statements fail to implicate MR. FITZNER, those favorable statements must be produced for Defendant under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny.

26. Defense counsel contacted Assistant U.S. Attorney James R.W. Braun for his position on this motion. Mr. Braun does not oppose a *James* hearing on this motion.

WHEREFORE, the Defendant, DAKOTA FITZNER, respectfully requests this Court to order the United States to produce any and all alleged or proffered co-conspirator's statements immediately or as soon as is practicable for any or all of the foregoing reasons. MR. FITZNER also requests this Court order such other and further relief as this Court deems just and proper.

### Request for Hearing

Pursuant to United States v. James, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917 (1979) and United States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996), MR. FITZNER respectfully requests a hearing on this motion.

Respectfully submitted,

*[signature]*

TODD HOTCHKISS
FRECHETTE & ASSOCIATES, P.C.
Attorney for DAKOTA FITZNER
P.O. Box 26807
Albuquerque, New Mexico  87125
Tele. (505) 247-8558

## CERTIFICATE OF SERVICE

I, Todd Hotchkiss, hereby certify that on October 20, 2006 I placed a copy of the foregoing motion for coconspirator statements in the U.S. Mail, first-class postage affixed thereto, for mailing to opposing counsel Mr. James R.W. Braun, Assistant United States Attorney, P.O. Box 607, Albuquerque, New Mexico  87103 and to all codefendants' counsel of record, the last known addresses.

*[signature]*

TODD HOTCHKISS