IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED

06 OCT 20 PM 3: 13

CLERK-ALBUQUERQUE

UNITED STATES OF AMERICA,

    Plaintiff,

v.      Criminal No. 05-1849 JH

DAKOTA FITZNER,

    Defendant.

## DEFENDANT DAKOTA FITZNER'S
## MOTION TO DISMISS COUNT 1 OR FOR BILL OF PARTICULARS
## AND SUPPORTING POINTS AND AUTHORITIES

The Defendant, DAKOTA FITZNER, by and through his attorney, Todd Hotchkiss of Frechette & Associates, P.C., hereby, pursuant to the U.S. Const. Amend. VI and Rule 7(f) of the Federal Rules of Criminal Procedure, moves this Court to dismiss Count 1 of the Superseding Indictment filed in this case or to order the U.S. Attorney to file a Bill of Particulars.

As grounds, MR. FITZNER states:

1. Pursuant to Fed. R. Crim. P. 7(f), this Court has discretion to order the government to produce a bill of particulars. MR. FITZNER understands that he may not be entitled to notice of all of the *evidence* the United States intends to produce, but is entitled to the be informed of the United States' case against him "with sufficient precision to allow him to prepare his defense". United States v. Ivy, 83 F.3d 1266, 1281 (10th Cir. 1996).

1



2. MR. FITZNER was initially charged in pending count 1 of the April 25, 2006 Superseding Indictment with conspiracy "(f)rom approximately 1990, the precise date being unknown to the Grand Jury, up to and including August 25, 2005, in the State and District of New Mexico, and elsewhere," along with Dana Jarvis, Ayla Jarvis, Benjamin Swentnickas, Dennis Wilson, George Ripley, David Reid, John Nieto, Lloyd Montoya, George Osgood, Greg Hill, Geno Berthod, Russell Trujillo, Matthew Hothan, Manuel Gil, Melania Kirwin, Holly Bruner, Sam Jones, Bill Jones, Rafal Mistrzak, Mary Cannant, Adrian Sanford, and others, to distribute 1000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846.

3. The preceding August 23, 2005 Indictment did not charge MR. FITZNER with any crime.

4. The United States has produced discovery to the defendants, which contained in part Drug Enforcement Administration (DEA) reports of statements made by confidential witnesses and in the wiretap application affidavit by confidential sources alleging conduct against MR. FITZNER.

5. In the March 3, 2005 affidavit in support of the March 3, 2005 wiretap application, confidential source number 3 (CS3) in July of 2004 stated that MR. FITZNER was a "'lieutenant' in charge of transporting bulk marijuana from the Tucson area to the Albuquerque area" and "also in charge of recruiting new members for the Jarvis DTO."

6. Statements, as summarized in the DEA-6 reports, were allegedly made by CW1, CW2, CW3, CW4 and CW6 allegedly incriminating MR. FITZNER:

A. CW1 allegedly stated:

1. On May 24, 2005, "CW1 said that he got involved with D. JARVIS through two friends of his Demian and Dakota (known to agents as Demian VASQUEZ and Dakota FITZNER)

2

approximately three years ago."

  ii. On August 11, 2005, "When asked if he knew of any other couriers that took marijuana to Hill or picked up bulk U.S. currency from him, CW1 stated that Rafel MISTRZAK, Demian VASQUEZ, and Dakota FITZNER were such couriers."

  iii. On August 11, 2005, "CW1 said that Dakota FITZNER was a courier for JARVIS, but stopped approximately a year ago, got married and had a baby. CW1 said FITZNER transported bulk marijuana and U.S. currency to the East Coast of the United States. CW1 said that FITZNER's father and JARVIS were some type of business partners."

 B. CW2 allegedly stated on either September 15, 2005, October 3, 2005, or February 21, 2006, in response to questioning about who else was involved in the JARVIS drug trafficking organization, "CW2 said that Dakota FITZNER worked at the club and also transported money and bulk marijuana for the organization. CW2 said that JARVIS 'let it slip' that FITZNER was a courier for his organization once. In addition, CW2 said that when he went to JARVIS' house in Tucson he saw FITZNER there.".

 C. CW3 allegedly said on November 2, 2005:

  I. "People who brought loads [of marijuana] to CW3 included ... Dakota FITZNER .... These loads of marijuana were all in the range of approximately 200 pounds."

  ii. "CW3 advised that FITZNER brought multiple loads to his residence at 8012 1st street."

  iii. "The management duties [at Club Rhythm & Blues] were shared by Dakota (FITZNER) and John NIETO who was described as a bad person."

 D. CW4 allegedly said:

3

   I. On November 18, 2005, "CW4 ... said that FITZNER did several things for the drug organization to include transporting bulk cash, holding bulk cash, and transporting bulk marijuana. CW4 said that JARVIS told her that he trusted FITZNER. CW4 said that FITZNER also worked at Club Rhythm and Blues."

   ii. On March 30, 2006, "CW4 said that she never personally worked with Dakota FITZNER, but knew that he drove bulk currency, stored money and drove bulk marijuana for the JARVIS DTO."

   iii. On March 30, 2006, CW4 spoke of her knowledge of JARVIS' drug ledgers, identified "DAK" as MR. FITZNER, but "stated that she did not know his new code."

  E. CW6 alleged stated on October 3, 2005:

   I. "CW6 said that Dakota FITZNER ... was a bulk marijuana courier for JARVIS."

   ii. CW6 said "she wasn't sure" how she knew FITZNER was involved, "that it was common knowledge among the employees at the club."

   iii. FITZNER "was a courier for the organization."

   iv. "CW6 said she was called by FITZNER after JARVIS was arrested and was told that he tried to call ABEYTA and warn him of his pending arrest. FITZNER told CW6 that if anyone was involved with JARVIS in the last six months then they were going to be arrested. FITZNER thought that JARVIS would try and do something to help his daughter Ayla."

 7. The conspiracy as charged ranges from some undetermined date in 1990 to "up to and including August 25, 2005".

 8. The discovery does not allege when MR. FITZNER, as opposed to other defendants, allegedly entered the charged conspiracy. The earliest time is the July 2004 allegations by CS-3 in

the March 2005 wiretap application affidavit. That affidavit does not identify when MR. FITZNER was involved in the charged conspiracy. The earliest date is July of 2004.

9. On August 11, 2005, "CW1 said that Dakota FITZNER was a courier for JARVIS, but stopped approximately a year ago, got married and had a baby." If CW1 is to be believed, MR. FITZNER ended any alleged participation in the charged conspiracy in August of 2004.

10. Consequently, it is uncertain when MR. FITZNER allegedly joined the conspiracy and he apparently ended his participation in August of 2004.

11. The Superseding Indictment alleges in the "Manner and Means of the Conspiracy" portion of Count 1, the following as it pertains to MR. FITZNER:

    A. Marijuana obtained, inspected, weighed and wrapped by others "was transported by members of the conspiracy, including .. Dakota Fitzner, from the Tucson area to New Mexico where it was stored at additional stash houses maintained by Dana Jarvis and/or other members of the conspiracy, including defendants ... Dakota Fitzner ...." (Superseding Indictment at 2-3)

    B. "From the New Mexico stash houses, marijuana was transported by members of the conspiracy, including ... Dakota Fitzner, to various locations throughout the United States, to include the Denver, Colorado area; Columbus, Ohio; and Bloomington, Indiana." (Superseding Indictment at 3)

    C. "The proceeds from the distribution of the marijuana, in the form of United States currency, were transported back to New Mexico, either by motor vehicle driven by members of the conspiracy, including defendants Dakota Fitzner ...." (Superseding Indictment at 3)

12. Defendants are not entitled to a Bill of Particulars with respect to information already available through other sources. United States v. Moody, 923 F.2d 341, reh'g denied, 929 F.2d 699

5

(5th Cir. 1991); United States v. Martell, 906 F.2d 555, reh'g denied, 916 F.2d 719 (11th Cir. 1990). However, the discovery in this case does not provide the information sought in this motion.

13. The Superseding Indictment's tracking of statutory language alone will not defeat a pretrial motion for a Bill of Particulars. United States v. Dunn, 841 F.2d 1026 (10th Cir. 1988). A Bill of Particulars should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or likely to lead to prejudicial surprise at trial. United States v. Rosa, 891 F.2d 1063 (3d Cir. 1989).

14. Count 1 of the Superseding Indictment, as currently constituted, is insufficient to apprise MR. FITZNER, so that MR. FITZNER could direct his investigation and trial preparation with sufficient focus and direction and avoid prejudicial surprise at trial. The dates when within the 15 year charged conspiracy the overt acts of MR. FITZNER allegedly occurred, and the date when MR. FITZNER allegedly joined the charged conspiracy, should be provided by the government. United States v. Taylor, 707 F.Supp. 696 (S.D.N.Y. 1989); United States v. Feola, 651 F.Supp. 1068 (S.D.N.Y.), aff'd, 875 F.2d 857, cert. denied, 110 S.Ct. 110. In United States v. Johnson, 2006 U.S. Dist. LEXIS 62841, 2-5 (D. Kan. 2006), a Bill of Particulars was ordered upon an indictment which charged an open 9 year period of years, much less than the open 15 year period charged in Count 1 of the Superseding Indictment in the present case. The Court found and ordered:

> The extended dates of the alleged offense - - over nine years - - coupled with the lack of specificity in the indictment justifies the granting of a bill of particulars. For these reasons, the court believes that a bill of particulars is necessary, even though the government has produced substantial discovery in this matter. The government shall be required to provide the specific time and location where the alleged offense commenced and the manner in which the alleged offense was perpetrated. The government should provide the bill of particulars within twenty-five days.

6

Id.

15. This is particularly important since it is alleged by CW1 that MR. FITZNER withdrew from the conspiracy approximately 1 year before August of 2005 and since MR. FITZNER was not a named defendant in the preceding August 23, 2005 Indictment. Also, the Superseding Indictment, and the discovery to date, does not indicate a specific amount of marijuana for which MR. FITZNER is specifically responsible.

15. If MR. FITZNER's alleged conspiring does not involve any incidents before he joined the pre-existing conspiracy or after he withdrew from the conspiracy, then the amount of alleged marijuana involved in Count 1 as pertaining to MR. FITZNER could be much less than alleged in the Superseding Indictment. See, United States v. Kendall, 766 F.2d 1426 (10th Cir. 1985); United States v. Smith, 692 F.2d 693 (10th Cir. 1982).

16. An indictment or information must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet. An indictment must also be sufficient to allow the defendant to plead a former acquittal or conviction as a defense to subsequent proceedings against him for the same or similar acts. Russell v. U.S., 469 U.S. 749 (1962); U.S. v. Lepanto, 817 F.2d 1463 (10th Cir. 1987). The Indictment does not meet the constitutional standards set out above.

17. If competing interests of the defense and the United States are closely balanced, the interests of the defendant in disclosure must prevail and a Bill of Particulars must be granted. United States v. Rogers, 617 F.Supp. 1024 (D. Colo. 1985). The United States' automatic reliance on Jencks Act material in place of a Bill of Particulars can be unacceptable, United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988).

7

18. Defense counsel contacted opposing counsel, Assistant United States Attorney James R.W. Braun, who opposes this motion.

WHEREFORE, the Defendant, DAKOTA FITZNER, respectfully requests this Court to dismiss Count 1 of the Superseding Indictment or to order the government to file a Bill of Particulars specifically setting out the foregoing requested particulars. MR. FITZNER also request such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Todd Hotchkiss*

TODD HOTCHKISS
FRECHETTE & ASSOCIATES, P.C.
Attorney for DAKOTA FITZNER
P.O. Box 26807
Albuquerque, New Mexico 87125
Tele. (505) 247-8558

## CERTIFICATE OF SERVICE

I, Todd Hotchkiss, hereby certify that on October 20, 2006 I mailed a true and accurate photocopy of the foregoing motion to dismiss count I or for a bill of particulars to opposing counsel, Mr. James R.W. Braun, Assistant United States Attorney, P.O. Box 607, Albuquerque, New Mexico 87103, the last known address, and to all codefendants' counsels of record.

*/s/ Todd Hotchkiss*

TODD HOTCHKISS