IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 05-1849 JH |
| ) | |
| DANA JARVIS, et al., ) | |
| ) | |
| Defendants. ) | |

UNITED STATES' RESPONSE TO "DEFENDANTS' JOINT MOTION
FOR DISCLOSURE AND PRODUCTION OF CONFIDENTIAL INFORMANTS"

COMES NOW the United States of America, by and through David C. Iglesias, United States Attorney for the District of New Mexico, and James R.W. Braun, Assistant United States Attorney for said District, and hereby responds to the "Defendants' Joint Motion for Disclosure and Production of Confidential Informants" (Doc. 722).

FACTUAL BACKGROUND

Between March 4 and August 25, 2005, federal agents conducted judicially authorized wiretap interceptions of eight telephones utilized by members of the Dana Jarvis marijuana trafficking organization. The affidavits submitted in support of the orders authorizing those interceptions included information provided by three confidential sources. On May 20, 2005, during the course of the wiretap interceptions, a marijuana courier for the Jarvis organization (referred to in discovery as CW1) was arrested in Nebraska with a load of marijuana. After CW1's arrest, he provided agents with

historical information regarding the operation of the Jarvis organization and the roles of its members.[1] On August 23, 2005, a federal grand jury in Albuquerque returned a twenty-six count indictment in this case charging twenty-one defendants with, *inter alia*, conspiracy to distribute more than 1000 kilograms of marijuana. After the return of the indictment, a number of defendants and other targets of the investigation also began providing the United States with historical information regarding the operation of the Jarvis organization and the roles of its members. Among these individuals are the cooperating witnesses who have been referred to in discovery as CW2-CW6, CW8, and CW9.[2]

On October 20, 2006, defendant Dana Jarvis filed "Defendants' Joint Motion for Disclosure and Production of Confidential Informants."[3] As discussed below, because Jarvis has failed to carry his burden of establishing that he is entitled to the information he seeks, his motion should be denied.

## DISCUSSION

In *Roviaro v. United States*, 353 U.S. 53, 59 (1957), the Supreme Court held that there is a "[g]overnment's privilege to withhold from disclosure the identity of persons

---

[1] The information provided by CW1 was included in subsequent wiretap affidavits, and CW1 was referenced by name in those affidavits. Thus, CW1's identity has already been disclosed to Jarvis.

[2] As noted in Jarvis's motion, there are other cooperating witnesses whose reports of interviews have not yet been released.

[3] Although it is styled as a joint motion, it was filed by counsel for Dana Jarvis on behalf of Dana Jarvis.

who furnish information of violations of law to officers charged with enforcement of that law."[4]  That privilege is not absolute.  However,

> A defendant seeking to force disclosure of an informant's identity has the burden to show the informant's testimony is relevant or essential to the fair determination of defendant's case.  In determining whether to require disclosure, a court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense.  The court conducts this balancing in light of the crime charged, the possible defenses, and the significance of the informant's testimony.

*United States v. Gordon*, 173 F.3d 761, 767 (10th Cir. 1999)(citations omitted).  Courts will not require the disclosure of an informant's identity where the informant "did not participate in the illegal activity or when information sought is cumulative."  *United States v. Leahy*, 47 F.3d 396, 398 (10th Cir. 1995).  Furthermore, an informant's "testimony must be shown to be valuable to a defendant; mere speculation is not enough." *Id*.

In the first paragraph of his motion, Jarvis requests information regarding "all confidential sources" in this case.  Throughout the rest of his motion, however, Jarvis discusses only the cooperating witnesses referred to as CW1-CW6, CW8, and CW9.  In

---

[4]*Roviaro* involved an informant who helped set up the commission of the charged crime and who was present at its occurrence.  As the Court noted in reaching its decision:

> This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged.  The informer was the only witness in a position to amplify or contradict the testimony of government witnesses.  Moreover, a government witness testified that [the informer] denied knowing [the accused] or ever having seen him before.

*Roviaro*, 353 U.S. at 64-65.

doing so, Jarvis ignores the fact that the confidential sources and cooperating witnesses involved in this case fall into two very different categories. In the first category are the three confidential sources who provided information that was used in the wiretap affidavits.[5] By not discussing these confidential sources in his motion, Jarvis has failed to establish that each of them is the type of witness to whom *Roviaro* even applies. Even assuming that *Roviaro* does apply, however, Jarvis has failed to meet his burden of showing that each of them would provide specific valuable testimony for him.[6] Therefore, Jarvis's request for discovery with regard to the confidential sources must be denied.

Next are the cooperating witnesses referenced above, some or all of whom will be called by the United States to testify at trial. These witnesses have provided historical information regarding the Jarvis drug trafficking organization, and are not the types of

---

[5]These confidential sources will not be called by the United States to testify at trial. Therefore, *Giglio v. United States*, 405 U.S. 150 (1972), does not apply to them with regard to the disclosure of impeachment information. *See United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) ("because both the discovery order and *Giglio* apply only to impeachment information relating to a government witness, they are inapplicable because the government did not ever call [the informant] as a witness").

[6]Jarvis asserts that "[u]pon information and belief, the aforementioned CSs [i.e., CW1-CW6, CW8, and CW9] *may* possess exculpatory evidence" as to him. (Def. Mot. at p. 2) (emphasis added). It is important to note that Jarvis does not make this assertion as to the three confidential sources referenced in the wiretap affidavits. Regardless, this vague and conclusory statement is clearly not enough for Jarvis to satisfy his burden as to any of the confidential sources or cooperating witnesses, as it is "mere speculation." *Leahy*, 47 F.3d at 398. To meet his burden, Jarvis would be required to state precisely what information *each* confidential source or cooperating witness would provide on his behalf. In any event, the United States is not aware of any such exculpatory evidence. Indeed, there is no indication that the confidential sources would provide anything but inculpatory testimony against Jarvis.

witnesses to whom *Roviaro* applies. Jarvis apparently seeks disclosure of information relating to all of these witnesses, whether the United States ultimately decides to call them at trial or not. As discussed above (at n. 5), however, Jarvis is only entitled to impeachment information pursuant to *Giglio* for witnesses whom the United States actually calls to testify at trial. The defense has already agreed, pursuant to the stipulated Second Order Setting Deadlines and Declaring Case Complex, that the United States is to produce *Giglio* material no later than 90 days prior to trial. The United States will provide the defense with impeachment information on the cooperating witnesses it intends to call to testify at trial as provided for in the stipulated scheduling order.[7]

Finally, in the "wherefore" section of his motion, Jarvis requests "an order from this Court permitting a pre-trial interview with the aforementioned Confidential Sources and Sources of Information." (Def. Mot. at p. 5). Jarvis does not cite to any authority for this request, likely because there is none. *See United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985) ("A witness in a criminal case has the right to refuse to be interviewed"). Aside from being contrary to law, this request should also be denied under D.N.M.LR-Cr. 47.7, which provides that "[a] motion, response or reply must cite authority in support of legal positions advanced."

---

[7]With regard to each witness, that information will consist of the following: 1) the identity of the witness; 2) the witness's criminal history, if any; 3) any consideration the witness has received or will receive from the United States in relation to this case; 4) the witness's plea agreement with the United States, if applicable; and 5) any history of substance abuse, if known to the United States. Any prior statement of a witness under the Jencks Act will be produced no later than 45 days prior to trial as provided for in the stipulated scheduling order.

CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the court deny Jarvis's "Motion for Disclosure and Production of Confidential Informants."

>Respectfully submitted,

>DAVID C. IGLESIAS
>United States Attorney

>*/s/ James R.W. Braun*

>JAMES R.W. BRAUN
>Assistant U.S. Attorney
>P.O. Box 607
>Albuquerque, NM  87103
>(505) 346-7274

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing pleading was mailed to counsel of record for defendant Dana Jarvis, Joe Romero, Jr., and Jody Neal-Post, on this 3rd day of November 2006.

>*/s/ James R.W. Braun*

>JAMES R.W. BRAUN
>Assistant U.S. Attorney