

U.S. Department of Justice

Office of the Deputy Attorney General

---

The Deputy Attorney General

*Washington, D.C. 20530*

October 19, 2006

# MEMORANDUM

TO:         Holders of the United States Attorneys' Manual, Title 9

FROM:       THE DEPUTY ATTORNEY GENERAL  *PJM*

SUBJECT:    Principles of Federal Prosecution

NOTE:       1. This is issued pursuant to USAM 1-1.550.
            2. Distribute to Holders of Title 9.
            3. Insert in front of affected sections.

AFFECTS:    9-5.000

PURPOSE:    The Department of Justice is proud of the long record of federal
            prosecutors meeting or exceeding their obligation, pursuant to *Brady v.
            Maryland* and *Giglio v. United States*, to disclose exculpatory and
            impeachment evidence to criminal defendants in preparation for trial. The
            purposes of this amendment to the U.S. Attorneys' Manual are to ensure
            that all federal prosecutors are fully aware of their constitutional obligation
            to disclose exculpatory and impeachment evidence, and to further develop
            the Department's guidance to federal prosecutors in relation to disclosure
            of information favorable to a defendant. The policy embodied in this
            bluesheet requires prosecutors to go beyond the minimum obligations
            required by the Constitution and establishes broader standards for the
            disclosure of exculpatory and impeachment information. It requires
            prosecutors to take the necessary steps to fulfill their constitutional
            disclosure obligation and further, to make disclosure in a manner and to an
            extent that promotes fair proceedings. At the same time, the policy
            recognizes the need to safeguard witnesses from harassment, assault, and
            intimidation and to make disclosure at a time and in a manner consistent
            with the needs of national security.

Memorandum Holders of the United States Attorneys' Manual Title 9
Subject: Principles of Federal Prosecution                          Page 2

The policy embodied in this bluesheet is intended to be flexible yet
produce regularity. As first stated in the preface to the original 1980
edition of the Principles of Federal Prosecution, "they have been cast in
general terms with a view to providing guidance rather than to mandating
results. The intent is to assure regularity without regimentation, to prevent
unwarranted disparity without sacrificing flexibility." Through the use of
circumscribed standards and principles outlined herein, federal prosecutors
must exercise their judgment and discretion so as to build confidence in
criminal trials and the criminal justice system, while protecting national
security, keeping witnesses safe and allowing for efficient resolution of
cases.

The bluesheet creates a new section 9-5.001 and amends section 9-5.100 in your United
States Attorneys' Manual.

Attachment

[NEW SECTION] USAM § 9-5.001

## POLICY REGARDING DISCLOSURE OF EXCULPATORY AND IMPEACHMENT INFORMATION

A.  **Purpose.** Consistent with applicable federal statutes, rules, and case law, the policy set forth here is intended to promote regularity in disclosure practices, through the reasoned and guided exercise of prosecutorial judgment and discretion by attorneys for the government, with respect to the government's obligation both to disclose exculpatory and impeachment information to criminal defendants and to seek a just result in every case. The policy is intended to ensure timely disclosure of an appropriate scope of exculpatory and impeachment information so as to ensure that trials are fair. The policy, however, recognizes that other interests, such as witness security and national security, are also critically important, *see* USAM § 9-21.000, and that if disclosure prior to trial might jeopardize these interests, disclosure may be delayed or restricted (*e.g.* pursuant to the Classified Information Procedures Act). This policy is not a substitute for researching the legal issues that may arise in an individual case. Additionally, this policy does not alter or supersede the policy that requires prosecutors to disclose "substantial evidence that directly negates the guilt of a subject of the investigation" to the grand jury before seeking an indictment, *see* USAM § 9-11.233.

B.  **Constitutional obligation to ensure a fair trial and disclose material exculpatory and impeachment evidence.** Government disclosure of material exculpatory and impeachment evidence is part of the constitutional guarantee to a fair trial. *Brady v. Maryland,* 373 U.S. 83, 87 (1963); *Giglio v. United States,* 405 U.S. 150, 154 (1972). The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady,* 373 U.S. at 87; *Giglio,* 405 U.S. at 154. Because they are Constitutional obligations, *Brady* and *Giglio* evidence must be disclosed regardless of whether the defendant makes a request for exculpatory or impeachment evidence. *Kyles v. Whitley,* 514 U.S. 419, 432-33 (1995). Neither the Constitution nor this policy, however, creates a general discovery right for trial preparation or plea negotiations. *U.S. v. Ruiz,* 536 U.S. 622, 629 (2002); *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977).

   1.  **Materiality and Admissibility.** Exculpatory and impeachment evidence is material to a finding of guilt – and thus the Constitution requires disclosure – when there is a reasonable probability that effective use of the evidence will result in an acquittal. *United States v. Bagley,* 475 U.S. 667, 676 (1985). Recognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence. *Kyles,* 514 U.S. at 439. While ordinarily, evidence that would not be admissible at trial need not be disclosed, this policy encourages prosecutors to err on the side of disclosure if admissibility is a close question.

2.    **The prosecution team.** It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all the members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant. *Kyles*, 514 U.S. at 437.

C.    **Disclosure of exculpatory and impeachment information beyond that which is constitutionally and legally required.** Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is "material" to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). The policy recognizes, however, that a trial should not involve the consideration of information which is irrelevant or not significantly probative of the issues before the court and should not involve spurious issues or arguments which serve to divert the trial process from examining the genuine issues. Information that goes only to such matters does not advance the purpose of a trial and thus is not subject to disclosure.

1.    **Additional exculpatory information that must be disclosed.** A prosecutor must disclose information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime.

2.    **Additional impeachment information that must be disclosed.** A prosecutor must disclose information that either casts a substantial doubt upon the accuracy of any evidence – including but not limited to witness testimony – the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence. This information must be disclosed regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime.

3.    **Information.** Unlike the requirements of *Brady* and its progeny, which focus on evidence, the disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence.

4.    **Cumulative impact of items of information.** While items of information viewed in isolation may not reasonably be seen as meeting the standards outlined in paragraphs 1 and 2 above, several items together can have such an effect. If this is the case, all such items must be disclosed.

D.  **Timing of disclosure.** Due process requires that disclosure of exculpatory and impeachment evidence material to guilt or innocence be made in sufficient time to permit the defendant to make effective use of that information at trial. *See, e.g. Weatherford v. Bursey*, 429 U.S. 545, 559 (1997); *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). In most cases, the disclosures required by the Constitution and this policy will be made in advance of trial.

1.  **Exculpatory information.** Exculpatory information must be disclosed reasonably promptly after it is discovered. This policy recognizes that exculpatory information that includes classified or otherwise sensitive national security material may require certain protective measures that may cause disclosure to be delayed or restricted (*e.g.* pursuant to the Classified Information Procedures Act).

2.  **Impeachment information.** Impeachment information, which depends on the prosecutor's decision on who is or may be called as a government witness, will typically be disclosed at a reasonable time before trial to allow the trial to proceed efficiently. In some cases, however, a prosecutor may have to balance the goals of early disclosure against other significant interests – such as witness security and national security – and may conclude that it is not appropriate to provide early disclosure. In such cases, required disclosures may be made at a time and in a manner consistent with the policy embodied in the Jencks Act, 18 U.S.C. § 3500.

3.  **Exculpatory or impeachment information casting doubt upon sentencing factors.** Exculpatory and impeachment information that casts doubt upon proof of an aggravating factor at sentencing, but that does not relate to proof of guilt, must be disclosed no later than the court's initial presentence investigation.

4.  **Supervisory approval and notice to the defendant.** A prosecutor must obtain supervisory approval not to disclose impeachment information before trial or not to disclose exculpatory information reasonably promptly because of its classified nature. Upon such approval, notice must be provided to the defendant of the time and manner by which disclosure of the exculpatory or impeachment information will be made.

E.  **Comment.** This policy establishes guidelines for the exercise of judgment and discretion by attorneys for the government in determining what information to disclose to a criminal defendant pursuant to the government's disclosure obligation as set out in *Brady v. Maryland* and *Giglio v. United States* and its obligation to seek justice in every case. As the Supreme Court has explained, disclosure is required when evidence in the possession of the prosecutor or prosecution team is material to guilt, innocence or punishment. This policy encourages prosecutors to err on the side of disclosure in close questions of materiality and identifies standards that favor greater disclosure in advance of trial through the production of exculpatory information that is inconsistent with any element of any charged crime and impeachment information that casts a substantial doubt upon either the accuracy of any evidence the government intends to rely on to prove an element

-3-

of any charged crime or that might have a significant bearing on the admissibility of prosecution evidence. Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies. Where it is unclear whether evidence or information should be disclosed, prosecutors are encouraged to reveal such information to defendants or to the court for inspection *in camera* and, where applicable, seek a protective order from the Court. By doing so, prosecutors will ensure confidence in fair trials and verdicts. Prosecutors are also encouraged to undertake periodic training concerning the government's disclosure obligation and the emerging case law surrounding that obligation.

USAM § 9-5.100

POLICY REGARDING THE DISCLOSURE TO PROSECUTORS OF POTENTIAL
IMPEACHMENT INFORMATION CONCERNING LAW ENFORCEMENT AGENCY
WITNESSES ("GIGLIO POLICY")

On December 9, 1996, the Attorney General issued a Policy regarding the Disclosure to
Prosecutors of Potential Impeachment Information Concerning Law Enforcement Agency
Witnesses ("Giglio Policy"). It applies to all Department of Justice Investigative agencies that
are named in the Preface, below. On October 19, 2006, the Attorney General amended this
policy to conform to the Department's new policy regarding disclosure of exculpatory and
impeachment information, *see* USAM § 9-5.001.

The Secretary of the Treasury has issued the same policy for all Treasury investigative
agencies.

Policy Regarding the Disclosure to Prosecutors of Potential Impeachment Information
Concerning Law Enforcement Agency Witnesses ("Giglio Policy")

Preface: The following policy is established for: the Federal Bureau of Investigation,
Drug Enforcement Administration, Bureau of Alcohol, Tobacco, Firearms and Explosives, the
United States Marshals Service, the Department of Justice Office of the Inspector General, and
the Department of Justice Office of Professional Responsibility ("the investigative agencies"). It
addresses their disclosure of potential impeachment information to the United States Attorneys'
Offices and Department of Justice litigating sections with authority to prosecute criminal cases
("Department of Justice prosecuting offices"). The purposes of this policy are to ensure that
prosecutors receive sufficient information to meet their obligations under *Giglio v. United States*,
405 U.S. 150 (1972), and to ensure that trials are fair, while protecting the legitimate privacy
rights of Government employees. NOTE: This policy is not intended to create or confer any
rights, privileges, or benefits to prospective or actual witnesses or defendants. It is also not
intended to have the force of law. *United States v. Caceres*, 440 U.S. 741 (1979).

The exact parameters of potential impeachment information are not easily determined.
Potential impeachment information, however, has been generally defined as impeaching
information which is material to the defense. It also includes information that either casts a
substantial doubt upon the accuracy of any evidence – including witness testimony – the
prosecutor intends to rely on to prove an element of any crime charged, or might have a
significant bearing on the admissibility of prosecution evidence. This information may include
but is not strictly limited to: (a) specific instances of conduct of a witness for the purpose of
attacking the witness' credibility or character for truthfulness; (b) evidence in the form of opinion
or reputation as to a witness' character for truthfulness; (c) prior inconsistent statements; and (d)
information that may be used to suggest that a witness is biased.

This policy is not intended to replace the obligation of individual agency employees to
inform prosecuting attorneys with whom they work of potential impeachment information prior

-5-

to providing a sworn statement or testimony in any investigation or case. In the majority of investigations and cases in which agency employees may be affiants or witnesses, it is expected that the prosecuting attorney will be able to obtain all potential impeachment information directly from agency witnesses during the normal course of investigations and/or preparation for hearings or trials.

**Procedures for Disclosing Potential Impeachment Information Relating to Department of Justice Employees**

1. **Obligation to Disclose Potential Impeachment Information.** It is expected that a prosecutor generally will be able to obtain all potential impeachment information directly from potential agency witnesses and/or affiants. Each investigative agency employee is obligated to inform prosecutors with whom they work of potential impeachment information as early as possible prior to providing a sworn statement or testimony in any criminal investigation or case. Each investigative agency should ensure that its employees fulfill this obligation. Nevertheless, in some cases, a prosecutor may also decide to request potential impeachment information from the investigative agency. This policy sets forth procedures for those cases in which a prosecutor decides to make such a request.

2. **Agency Officials.** Each of the investigative agencies shall designate an appropriate official(s) to serve as the point(s) of contact concerning Department of Justice employees' potential impeachment information ("the Agency Official"). Each Agency Official shall consult periodically with the relevant Requesting Officials about Supreme Court caselaw, circuit caselaw, and district court rulings and practice governing the definition and disclosure of impeachment information.

3. **Requesting Officials.** Each of the Department of Justice prosecuting offices shall designate an appropriate senior official(s) to serve as the point(s) of contact concerning potential impeachment information ("the Requesting Official"). Each Requesting Official shall inform the relevant Agency Officials about Supreme Court caselaw, circuit caselaw, and district court rulings and practice governing the definition and disclosure of impeachment information.

4. **Request to Agency Officials.** When a prosecutor determines that it is necessary to request potential impeachment information from an Agency Official(s) relating to an agency employee identified as a potential witness or affiant ("the employee") in a specific criminal case or investigation, the prosecutor shall notify the appropriate Requesting Official. Upon receiving such notification, the Requesting Official may request potential impeachment information relating to the employee from the employing Agency Official(s) and the designated Agency Official(s) in the Department of Justice Office of the Inspector General ("OIG") and the Department of Justice Office of Professional Responsibility ("DOJ-OPR").

5.    **Agency Review and Disclosure.** Upon receiving the request described in Paragraph 4, the Agency Official(s) from the employing agency, the OIG and DOJ-OPR shall each conduct a review, in accordance with its respective agency plan, for potential impeachment information regarding the identified employee. The employing Agency Official(s), the OIG and DOJ-OPR shall advise the Requesting Official of: (a) any finding of misconduct that reflects upon the truthfulness or possible bias of the employee, including a finding of lack of candor during an administrative inquiry; (b) any past or pending criminal charge brought against the employee; and (c) any credible allegation of misconduct that reflects upon the truthfulness or possible bias of the employee that is the subject of a pending investigation.

6.    **Treatment of Allegations Which Are Unsubstantiated, Not Credible, or Have Resulted in Exoneration.** Allegations that cannot be substantiated, are not credible, or have resulted in the exoneration of an employee generally are not considered to be potential impeachment information. Upon request, such information which reflects upon the truthfulness or bias of the employee, to the extent maintained by the agency, will be provided to the prosecuting office under the following circumstances: (a) when the Requesting Official advises the Agency Official that it is required by a Court decision in the district where the investigation or case is being pursued; (b) when, on or after the effective date of this policy: (i) the allegation was made by a federal prosecutor, magistrate judge, or judge; or (ii) the allegation received publicity; (c) when the Requesting Official and the Agency Official agree that such disclosure is appropriate, based upon exceptional circumstances involving the nature of the case or the role of the agency witness; or (d) when disclosure is otherwise deemed appropriate by the agency. The agency is responsible for advising the prosecuting office, to the extent determined, whether any aforementioned allegation is unsubstantiated, not credible, or resulted in the employee's exoneration. NOTE: With regard to allegations disclosed to a prosecuting office under this paragraph, the head of the prosecuting office shall ensure that special care is taken to protect the confidentiality of such information and the privacy interests and reputations of agency employee-witnesses, in accordance with paragraph 13 below. At the conclusion of the case, if such information was not disclosed to the defense, the head of the prosecuting office shall ensure that all materials received from an investigative agency regarding the allegation, including any and all copies, are expeditiously returned to the investigative agency. This does not prohibit a prosecuting office from keeping motions, responses, legal memoranda, court orders, and internal office memoranda or correspondence, in the relevant criminal case file(s).

7.    **Prosecuting Office Records.** Department of Justice prosecuting offices shall not retain in any system of records that can be accessed by the identity of an employee, potential impeachment information that was provided by an agency, except where the information was disclosed to defense counsel. This policy does not prohibit Department of Justice prosecuting offices from keeping motions and Court orders and supporting documents in the relevant criminal case file.

8.    Copies to Agencies. When potential impeachment information received from Agency Officials has been disclosed to a Court or defense counsel, the information disclosed, along with any judicial rulings and related pleadings, shall be provided to the Agency Official that provided the information and to the employing Agency Official for retention in the employing agency's system of records. The agency shall maintain judicial rulings and related pleadings on information that was disclosed to the Court but not to the defense in a manner that allows expeditious access upon the request of the Requesting Official.

9.    Record Retention. When potential impeachment information received from Agency Officials has been disclosed to defense counsel, the information disclosed, along with any judicial rulings and related pleadings, may be retained by the Requesting Official, together with any related correspondence or memoranda, in a system of records that can be accessed by the identity of the employee.

10.    Updating Records. Before any federal prosecutor uses or relies upon information included in the prosecuting office's system of records, the Requesting Official shall contact the relevant Agency Official(s) to determine the status of the potential impeachment information and shall add any additional information provided to the prosecuting office's system of records.

11.    Continuing Duty to Disclose. Each agency plan shall include provisions which will assure that, once a request for potential impeachment information has been made, the prosecuting office will be made aware of any additional potential impeachment information that arises after such request and during the pendency of the specific criminal case or investigation in which the employee is a potential witness or affiant. A prosecuting office which has made a request for potential impeachment information shall promptly notify the relevant agency when the specific criminal case or investigation for which the request was made ends in a judgment or declination, at which time the agency's duty to disclose shall cease.

12.    Removal of Records Upon Transfer, Reassignment, or Retirement of Employee. Upon being notified that an employee has retired, been transferred to an office in another judicial district, or been reassigned to a position in which the employee will neither be an affiant nor witness, and subsequent to the resolution of any litigation pending in the prosecuting office in which the employee could be an affiant or witness, the Requesting Official shall remove from the prosecuting office's system of records any record that can be accessed by the identity of the employee.

13.    Prosecuting Office Plans to Implement Policy. Within 120 days of the effective date of this policy, each prosecuting office shall develop a plan to implement this policy. The plan shall include provisions that require: (a) communication by the prosecuting office with the agency about the disclosure of potential impeachment information to the Court or defense counsel, including allowing the agency to express its views on whether certain information should be disclosed to the Court or defense counsel; (b) preserving the

-8-

security and confidentiality of potential impeachment information through proper storage and restricted access within a prosecuting office; (c) when appropriate, seeking an *ex parte, in camera* review and decision by the Court regarding whether potential impeachment information must be disclosed to defense counsel; (d) when appropriate, seeking protective orders to limit the use and further dissemination of potential impeachment information by defense counsel; and, (e) allowing the relevant agencies the timely opportunity to fully express their views.

14.    **Investigative Agency Plans to Implement Policy.** Within 120 days of the effective date of this policy, each of the investigative agencies shall develop a plan to effectuate this policy.