IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.          NO.  CR 05-1849 JH

DANA JARVIS et al.,

    Defendant.

## DEFENDANT AYLA JARVIS' REPLY TO "UNITED STATES' RESPONSE TO DEFENDANT AYLA JARVIS'S MOTION TO SUPPRESS EVIDENCE FROM TRAFFIC STOP AND SEARCH ON OCTOBER 28, 2004"

COMES NOW the Defendant, Ayla Jarvis, by and through her attorney John F. Robbenhaar, and hereby replies to the "United States' Response to Defendant Ayla Jarvis' Motion to Suppress Evidence from Traffic Stop and Search on October 28, 2004" [Doc. 807], (hereafter "response" or "Govt. Resp.").[1]

1.    In its response, the Government states simply that the traffic stop of the Defendant Ayla Jarvis on October 28, 2004 by the Indiana State Trooper was "valid" and therefore the Defendant's motion to suppress must be denied.  Govt. Resp. at 3-7.  Defendant respectfully replies that, despite the apparent simplicity of the traffic stop as recited by Officer Stailey in his report, there exist factual disputes which affect the legality of the traffic stop.  For example, it is noted by Officer Stailey that Ms. Jarvis committed an illegal u-turn, which formed the basis for the stop.  The evidence in this matter, however, will reflect that Ms. Jarvis did not commit an *illegal* u-turn or other

---

[1] Defendant Ayla Jarvis' Motion to Suppress..." was entered on the Court's docket as Doc. 715.

driving infraction. Accordingly, this Court will need to weigh and resolve this and other factual disputes prior to reaching its decision no the Defendant's motion.

    2.    The Government suggests that, because the Defendant Ayla Jarvis withdrew her motion to produce drug dog records, there no longer exists an issue as to the training of the drug dog and/or the accuracy of its alert. Govt. Resp. at 3, fn. 2. The Defendant simply states that, because probable cause to search the vehicle on October 28, 2004 is based upon the dog's alleged positive alert, the dog's training and accuracy are very much at issue in the present motion. Defendant did withdraw her motion to produce, and applauds the Government for its voluntary production of the discoverable materials. Nonetheless, the simple fact that discovery materials have been produced does not necessarily negate the legal issue of probable cause to search. Officer Stailey claims a positive drug dog alert, and based his subsequent search and seizure on that alert. The inconvenient fact that nothing illegal was found is glossed over by the Government, but is an important fact in terms of whether or not the Government can establish probable cause to search, in compliance with the Fourth Amendment.

    3.    The Government claims that the stop and search lasted a total of 43 minutes, and the second officer "arrived on the scene within 2-3 minutes" during which time Officer Stailey walked the drug dog around the exterior of the vehicle. Govt. Resp. at 8. Even though traffic stops may be of relatively brief durations, this does not ipso facto negate a claim of prolonged detention. *See U.S. v. Sharpe,* 470 U.S. 675, 690, 105 S.Ct. 1568 (1985) ("Even a stop that lasts no longer than necessary to complete the investigation for which the stop was made may amount to an illegal arrest if the stop is more than 'minimally intrusive.'") (Marshall, J., conc.). Furthermore, the length and

intrusiveness of a traffic stop are relevant for purposes of a *Terry* analysis. *U.S. v. Hensley*, 469 U.S. 221 (1985). Accordingly, in the present case, the details of Officer Stailey's stop, including his contact with Ms. Jarvis and his questioning, must be ascertained, as the "intrusiveness" of his stop relates directly to whether or not the traffic stop–based upon an alleged u-turn violation–comports with the reasonableness requirement of the Fourth Amendment.

      4.      The Government relies heavily on the "collective knowledge doctrine", and in particular on *U.S. v. Hensley*, *supra*, for its claim that, because Officer Stailey apparently relied upon information supplied to him by federal agents concerning an ongoing criminal investigation, his subsequent traffic stop of Ms. Jarvis was therefore based on reasonable suspicion. Govt. Resp. at 5. There are several problems with this argument. First, *Hensley* concerned a "wanted flyer" issued by one police agency and acted upon by another. Additionally, *Hensley* concerned a completed crime, and not an ongoing crime as is the case in the instant matter. Third, Officer Stailey's report lacks any reference to the fact that he had received information from federal agents concerning an ongoing criminal investigation, let alone what that information was and whether it amounted to reasonable suspicion; while it would appear that Officer Stailey conducted the traffic stop at the direction of federal agents, there is nothing concrete to suggest that in fact this is what transpired. *See U.S. v. Shareef*, 100 F.3d 1491, 1504 & n.5 (10th Cir. 1996) (declining to extend the collective knowledge doctrine where evidence showed that officers had not communicated with each other; "Information scattered among various officers in a police department cannot substitute for

possession of the necessary facts by a single officer related to the arrest"). Certainly, just being asked by a federal agent to effectuate a traffic stop–without receiving any more information amounting to reasonable suspicion–would result in an illegal traffic stop. *Id.* These are some of the problems that affect the viability of the "collective knowledge doctrine" and whether *Hensley* even controls in this case.

5. Finally, the Government contends that the federal agents possessed reasonable suspicion or probable cause on October 28, 2004 to stop and search the Defendant Ayla Jarvis' vehicle. Govt. Resp. at 6-7. The Government admits that, in October 2004, it was not intercepting telephone calls, as the warrants authorizing the interception of wire communications had not then been approved by a judicial officer. The Government notes, however, that on October 28, 2004 it had obtained information from a "reliable source" to suggest that Ms. Jarvis was flying to Bloomington to meet with "Greg" to possibly transport currency back to New Mexico or Arizona. The agents then follow Ms. Jarvis to Bloomington where she is surveilled meeting with an individual who later is confirmed to be "Greg". While there was some predictive accuracy to the reliable source's information, Defendant Ayla Jarvis submits that, as of October 28, 2004, the agents lacked reasonable suspicion and/or probable cause to stop her vehicle. Accordingly, the collective knowledge doctrine does not insulate Officer Stailey's illegal stop and subsequent search.

CONCLUSION

6. Motions to suppress are inherently fact-specific, and the arguments presented by both the Defendant and by the Government will have to be assessed in light of the facts presented. The legal issues involved–reasonable suspicion and/or

4

probable cause to stop, prolonged detention, canine sniff, search of vehicle–require analysis in light of the factual setting.  Accordingly, Defendant Ayla Jarvis respectfully requests that the Court hold an evidentiary hearing on her motion to suppress.

                                                    Respectfully submitted:

                                               *Filed Electronically*
                                               JOHN F. ROBBENHAAR
                                               Attorney for Defendant Ayla Jarvis
                                               1011 Lomas NW
                                               Albuquerque, NM 87102
                                               (505) 242-1950

I HEREBY CERTIFY that a
true and correct copy of the
foregoing pleading was mailed/
delivered to Assistant United States
Attorney James Braun on
January 26, 2007.

*Filed Electronically*
JOHN F. ROBBENHAAR