IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                              NO.  CR 05-1849 JH

DANA JARVIS et al.,

    Defendant.

**DEFENDANT AYLA JARVIS' REPLY
TO "UNITED STATES' RESPONSE TO DEFENDANT AYLA JARVIS'S
MOTION FOR SEVERANCE FROM CO-DEFENDANTS"**

COMES NOW the Defendant, Ayla Jarvis, by and through her attorney John F. Robbenhaar, and hereby replies to the "United States' Response to Defendant Ayla Jarvis' Motion For Severance from Co-Defendants" [Doc. 808], (hereafter "response" or "Govt. Resp.").[1]

1.    In its response, the Government correctly states that motions for severance are left to the discretion of the trial court. Govt. Resp. at 2, *citing U.S. v. McConnell*, 749 F.2d 1441, 1444 (10th Cir. 1984). In its discretion, a trial court is to weigh the prejudice which will be caused by joinder against considerations of economy and expedition. *Id.; also see U.S. v. Pursley*, 2007 WL 64833, ¶ 5, *citing U.S. v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989). Admittedly, the defendant bears a "heavy burden" to justify severance, *McConnell*, 749 F.2d at 1444, and a trial court's decision to grant or deny a motion for severance is reviewed for an abuse of discretion. *Pursley*, 2007 WL 64833, ¶ 6. Nonetheless, a trial court has the "continuing duty at all stages of

---

[1] Defendant Ayla Jarvis' Motion for Severance was entered on the Court's docket as Doc. 714.

the trial to grant a severance if prejudice does appear." *Peveto*, 881 F.2d at 857, *quoting Shaffer v. U.S.*, 362 U.S. 511 (1960).

2.  It would appear that the Government envisions a joint trial in which the actions, statements, and admissions of co-defendants will be introduced at trial–perhaps through a case agent–without the direct testimony of a cooperating co-defendant or unindicted co-conspirator. The Government claims, as it must, that it will respect the rule of law established in *Bruton v. U.S.*, 391 U.S. 123 (1968), by not introducing otherwise-admissible statements by a non-testifying co-defendant in a joint trial, when such statement would not be admissible against another co-defendant. Govt. Resp. at 5. And in the event a prior statement of a defendant must be introduced into evidence at trial, the Government assumes that through a process of redaction, these co-defendant statements may be introduced, perhaps again through a case agent. Govt. Resp. at 5. Such a system of introducing evidence via mere hearsay testimony of a case agent, or via redacted transcripts, threatens to convert the trial process into a presentation of unreliable and self-serving testimony. Fortunately for all, however, the Sixth Amendment right to cross-examination and the Fifth Amendment right to due process of law provide a bulwark against the encroachment of unreliable evidence in a criminal trial, namely in the form of severance of defendants.

3.  In order for any verdict against the Defendant Ayla Jarvis to have integrity it will have to be reached at a trial separate and apart from her co-defendants, and at a minimum apart from the trial of her father Dana Jarvis. There are countless recorded conversations between and among co-defendants, many involving the co-defendant Dana Jarvis and other co-defendants, and perhaps hundreds between co-defendant

2

Dana Jarvis and Ayla Jarvis. Virtually all of the recorded conversations between Dana Jarvis and others don't pertain to Ayla Jarvis, and yet may be deemed of evidentiary value by the Government and therefore may be admitted into evidence at trial. Moreover, the vast majority of conversations between Dana Jarvis and Ayla Jarvis pertain to familial or personal matters, while some of these recordings may be construed by the Government as directly related to the alleged conspiracies, and therefore may be admitted into evidence during trial. If such statements by a non-testifying co-defendant (e.g. Dana Jarvis) are admitted into evidence during joint trial, without the ability by Ayla Jarvis to cross-examine the declarant, the jury will simply be unable to avoid consideration of the statements as evidence against Ayla Jarvis, even if such statements do not directly implicate Ayla Jarvis. As the daughter of lead defendant Dana Jarvis, Ayla Jarvis will be swept up in an inference of guilt, if by nothing more than her personal relationship to her father. In this scenario, Ayla Jarvis' Sixth Amendment right to confrontation will have been eviscerated.

4. Perhaps more importantly, as noted by the Defendant in her underlying motion for severance, for the vast majority of the instant conspiracy, the Defendant Ayla Jarvis was a juvenile. As of yet, it is still unclear when Ms. Jarvis allegedly entered the alleged conspiracies, as the Government has not volunteered this information. *See, e.g.* "United States' Response to Ayla Jarvis' Motion for A Bill of Particulars as to Count 3 and the Forfeiture Allegation" [Doc. 813], at 6 (refusing to identify Defendant Ayla Jarvis' entrance date into the alleged conspiracies, claiming that the "defendant's age is irrelevant"). Nonetheless, it is assumed that the Government will allege that Ms. Jarvis affirmatively entered the conspiracies prior to reaching the age of 18.

5.     While evidence of co-conspirators' conduct in furtherance of a conspiracy may be admissible at a joint trial and against a late-entering co-defendant, *see U.S. v. Mendoza-Salgado*, 964 F.2d 993, 1006 (10th Cir.1992) (noting that once a person is implicated in the conspiracy, the acts attributable to any member of the conspiracy are attributable to all members of the conspiracy), in the case of Ayla Jarvis, all of the evidence of co-conspiratorial conduct before she entered the alleged conspiracies necessarily occurred when she was a juvenile. Furthermore, because there is a presumption against criminal liability at age 14 or younger, see *Allen v. United States*, 150 U.S. 551, 558, 14 S.Ct. 196, 198, 37 L.Ed. 1179 (1893) (rebuttable presumption that juveniles aged 8-14 are incapable of forming criminal intent), evidence of co-conspiratorial conduct before Ms. Jarvis' 15th birthday (July 2001) would not be admissible against Ayla Jarvis even at a separate trial of Ms. Jarvis. Yet, in a joint trial, this evidence is likely admissible. Unfortunately, limiting instructions cannot cure this structural dilemma: how to effectively instruct a jury to not hold some evidence against a co-defendant, simply because such evidence relates to incidents which took place before a date specific? That is to say, there is a very real likelihood of prejudicial spillover, in that Ayla Jarvis will be tarnished from the get-go, with evidence that is generally admissible against all defendants but her. When a joint trial results in otherwise inadmissible evidence (against Ayla Jarvis) being admitted (against all the other co-defendants), the prejudice to Ms. Jarvis is clear.

6.     The Government may claim that limiting instructions will cure any potential prejudice which might result from otherwise-inadmissible evidence (as against Defendant Ayla Jarvis) being introduced at a joint trial. Limiting instructions, however,

4

are simply not the curative fix-all that they are often made out to be. A jury which is charged with examining mountains of evidence relating to fifteen years of conduct by dozens of characters, will be hard-pressed to neatly compartmentalize evidence against each co-defendant, and accept certain evidence as against some defendants but not others. When numerous limiting instructions occur, how can a jury realistically keep it straight as to which evidence, or to which defendant, a particular instruction applied? Are we to assume that the Defendant Ayla Jarvis will not be prejudiced by the introduction of evidence of years' worth of activities (largely by her own father)? "The naive assumption that prejudicial effects can be overcome by instructions to the jury, [...], all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (J. Jackson, conc.) (citations omitted). The unfortunate and predictable response of the overwhelmed jury is to accept all evidence and apply it to all defendants.

7.   As stated in the Defendant's motion for severance, it is anticipated that a great amount of the evidence introduced by the Government at trial will describe events which took place prior to Ayla Jarvis' 18th birthday, or even prior to her allegedly joining the conspiracies. Evidence of the Defendant's pre-18 conduct should not be considered by the jury when determining her guilt or innocence as to the underlying charges. Defendant acknowledges that there is a split in the Circuit Courts of Appeal regarding this issue, and the Tenth Circuit has ruled that an adult defendant's pre-majority conduct is admissible on the same basis as post-majority conduct when that adult defendant is charged with a continuing crime such as conspiracy. *See U.S. v. Delatorre*, 157 F.3d 1205, 1211 (10th Cir. 1998). Other Circuits have held to the

contrary, limiting juries to only consider pre-majority conduct for purposes listed in Rule 404(b) of the Federal Rules of Evidence. *See U.S. v. Thomas*, 14 F.3d 228, 266 (D.C. Cir. (1997). While Defendant of course must acknowledge binding precedent from the Tenth Circuit as controlling in the instant case, she nevertheless points out the Circuit split in the event of reconsideration en banc by the Tenth Circuit or future review of this issue by the United States Supreme Court. Clearly, Defendant believes the better view is that espoused by the D.C., Sixth and Fourth Circuits view of this matter. *See Delatorre*, 157 F.3d 1205 at 1209-11 (discussing Circuit split on application of the Juvenile Delinquency Act to the admissibility of an adult defendant's pre-majority acts in furtherance of a continuing crime).

8.    Despite the Government's claim to the contrary, Ayla Jarvis' age <u>does</u> matter. In its Reply, the Government seems to suggest that the Defendant argues that her age is determinative, and that because she was a juvenile for part (if not most) of the conspiracies, she can't be tried alongside her co-defendants. Govt. Resp. at 11 ("her status as a juvenile during any portion of the entire conspiracy does not constitute grounds for severance."). As noted above, the Defendant Ayla Jarvis recognizes that precedent dictates that she be tried as an adult if she ratified pre-majority conspiratorial conduct by post-majority conduct. *Delatorre*, 157 F.3d at 1211; *but see Thomas*, 114 F.3d at 228 (holding that evidence of pre-eighteen conduct not admissible for purpose of proving guilt, but admissible only for Rule 404(b) purposes). But because there is a presumption against criminal liability for age 14 and below, much of the evidence that will be introduced by the Government at trial is simply inadmissible against the Defendant Ayla Jarvis. Because of this very basic fact, age <u>does</u> matter, and this Court

in its discretion should consider the Defendant's age in relation to the charged conspiracies when deciding the underlying motion.

CONCLUSION

9.     The Defendant Ayla Jarvis sits in a different posture than her co-defendants. Ayla Jarvis was a child for the majority of the charged conspiracies, and attained adult status just over a year prior to her arrest in August 2005. This simple yet compelling fact must matter in her motion for severance, as it affects the admissibility of much of the Government's evidence. In a separate trial of the Defendant Ayla Jarvis, much if not most of the Government's evidence would not be admissible. The end result would be a simpler and more efficient trial, and one that comports with the Sixth Amendment's right to a fair trial and confrontation of witnesses, and the Fifth Amendment's guarantee of the right to due process of law. The Defendant Ayla Jarvis states that she has met her burden in demonstrating why severance is necessary, and urges this Court, as it weighs the prejudice which will be caused by joinder against considerations of economy and expedition, to grant her motion for severance.

          Respectfully submitted:

          *Filed Electronically*
          JOHN F. ROBBENHAAR
          Attorney for Defendant Ayla Jarvis
          1011 Lomas NW
          Albuquerque, NM 87102
          (505) 242-1950

I HEREBY CERTIFY that a
true and correct copy of the
foregoing pleading was mailed/
delivered to Assistant United States
Attorney James Braun on
January 26, 2007.

*Filed Electronically*
JOHN F. ROBBENHAAR