**LAW OFFICES OF**
**NASH & KIRCHNER, P.C.**
P.O. BOX 2310
TUCSON, ARIZONA 85702
Telephone (520) 792-1613
Fax (520) 628-1079
Pima County Computer No. 41636
State Bar No. 002893
walter.nash@azbar.org
bkirchner@azbar.org

Attorney for defendant David Reid

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CR-05-1849 JH |
| vs. | |
| DAVID REID, | |
| Defendant. | |

**JOINDER IN MOTION FOR STAY / MOTION FOR CONTINUANCE / ADDITIONAL MEMORANDUM IN SUPPORT OF VACATING TRIAL DATE**

Excludable delay under 18 U.S.C. §3161(h)(1)(F) will occur as a result of this motion or of an order based thereon.

The defendant David Reid, by his present counsel undersigned, joins

in the Motion for Stay and incorporates by reference the memoranda submitted in support thereof.  In addition thereto, the defendant Reid moves this Court for an order vacating the present trial date and resetting the matter at a later time.

There are substantial, compelling reasons that exist in this case unique to the defendant David Reid which, respectfully, mandate additional time for Mr. Reid and his counsel to prepare in this matter.

Mr. Reid respectfully requests that this Court enter an order staying or vacating the present trial date and resetting the trial date (and all applicable deadlines) to enable Mr. Reid to obtain the effective assistance of counsel.

Counsel undersigned has reviewed this matter with counsel for the Government.  Mr. Braun does not oppose the Motion to Continue filed by Mr. Reid.

The concern of present counsel undersigned is that the posture of this case at the present time would result in Mr. Reid not receiving the effective assistance of counsel and a fair trial, in derogation of his constitutional right thereto, if the matter were to proceed on the presently set date.

Present counsel appeared for Mr. Reid during the first week of

LAW OFFICES OF
NASH & KIRCHNER, P.C.
P.O. BOX 2310
TUCSON, ARIZONA 85702
Telephone (520) 792-1613

2

October 2006[1].

In September of 2005, prior retained counsel appeared on behalf of Mr. Reid, along with local counsel Jerry Daniel Herrera. Prior retained counsel (not Mr. Herrera) had sole responsibility for preparing the case from that point until this Court recently allowed the substitution more than a year later. Normally, the mere fact that a defendant elects to change counsel does not operate as a stand alone reason to justify a continuance[2]. However, the scope of this prosecution, particularly when coupled with the level of preparation prior to the substitution of new counsel, mandates a different result.

This case now comprises almost eighty thousand (80,000) pages of disclosure. It is the understanding of counsel undersigned that more than eleven thousand (11,000) calls have been intercepted. There are a significant number of involved individuals, a substantial number of cooperating witnesses, and a host of other complicated fact patterns and issues herein. Getting up to speed by new counsel in such a

---

[1] Counsel undersigned did participate in early proceedings in the District of Arizona immediately after the arrest of Mr. Reid in order to secure his release. However, counsel undersigned made no appearance in this District, nor reviewed any pleadings or disclosure, until after the substitution in October of 2006.

[2] Unless the change is non-voluntary (conflict, death of counsel, *etc.*).

comprehensive, far reaching investigation would be difficult even *if* the matter had been extremely well prepared prior to the substitution of counsel. However, that unfortunately has not been the case in this matter all to the detriment of the defendant Reid's right to a fair trial and to the effective assistance of counsel.

Counsel undersigned, despite diligent efforts, did not receive the file herein for several weeks after the substitution issue was first raised. That delay was exacerbated by the condition of the file at the time of receipt. Personnel on the staff of counsel undersigned described the condition of the file received from prior counsel as though if it had been thrown on the floor of a room, gathered up, and placed in a box without any thought to organization. It took almost a month to fully organize and sort the voluminous materials.

The materials received consisted primarily of pleadings, correspondence, and other printed matter. Most, but not all, of the discovery disks released as of that date were contained in the file. There were no research notes, motions drafts, nor any other significant notes going to procedural or factual issues other than notes of what appeared to be a single meeting where Mr. Reid discussed his relationship with various

defendants herein. After that initial organizational process was completed, counsel undersigned set about trying to familiarize the defendant Reid with the factual posture of the case and to coordinate contact with other involved parties herein. I will advise the Court that Government's counsel and a number of individuals on the defense side of the case have been most generous with their time and thoroughly professional in attempting to bring counsel undersigned up to speed on this matter.

The scope of this case, particularly when coupled with the condition of the file and work that had not been done, clearly indicated that counsel undersigned needed additional help. The office of counsel undersigned has retained two additional lawyers in Tucson (not members of this firm) to provide assistance. Further, William Parnall, new local counsel, has been very helpful in coordinating local activities. However, due to the issues referred to above, counsel undersigned simply cannot be prepared to render effective assistance of counsel by the present trial date.

Richard Demarest has been managing the disclosure in this case. Mr. Demarest has been very helpful in providing previously undisclosed information and in guiding counsel undersigned through the voluminous materials that exist in this case. Counsel undersigned is also advised that

5

Mr. Demarest had no interaction at all with Mr. Reid's prior counsel[3].

Scott Davidson is serving as counsel in this matter concerning the preparation of and filing of a number of pretrial motions. Counsel undersigned is advised that there had been a number of meetings concerning various defense motions from early on in the case and that Mr. Reid's prior counsel did not participate in any of them, even telephonically. Mr. Davidson has also been most helpful to counsel undersigned in providing information and counsel undersigned will be participating in additional meetings and motions practice with Mr. Davidson.

Suzanne Doucette is this Court's appointed expert with regard to wiretap litigation. Ms. Doucette advises that she has had no interaction with Mr. Reid's prior counsel on any wiretap related issues. Ms. Doucette and counsel undersigned have had several telephonic and face to face conferences concerning wiretap issues in this matter and have participated in joint conferences involving Mr. Davidson since the substitution.

This Court has appointed two administrative counsel herein. Penny Adrian served as administrative counsel for just over a year prior to the

---

[3] Mr. Demarest also advises that there were unpaid bills for discovery furnished at the time of the substitution. These have subsequently been handled by counsel undersigned and Mr. Reid.

6

appointment of Jody Neal-Post.  Ms. Adrian advises that there were a number of joint defense meetings held and she believes that Mr. Reid's prior counsel participated telephonically in but one early meeting without offering any input.  Apparently there was no participation in any other meeting.  It is the understanding of counsel undersigned that there was no interaction or contact between Mr. Reid's prior counsel and Ms. Neal-Post on the same issues.  Ms. Neal-Post has been very forthcoming with counsel undersigned in providing information as to what has occurred in this case before and in assisting Mr. Reid's present counsel in efforts to try to become prepared.

  As mentioned before, Jerry Daniel Herrera served as prior local counsel for Mr. Reid.  It is the understanding of counsel undersigned that Mr. Herrera's role was simply to admit Mr. Reid's prior primary counsel.  Mr. Herrera advises that he met with Mr. Reid on a single occasion and met with prior counsel on a single occasion.  He was not asked to perform any substantial work in the case, to review disclosure, nor to prepare any motions.  After those initial meetings, Mr. Herrera had no face to face contact with either Mr. Reid or prior counsel.  Like so many others in this case, Mr. Herrera has been helpful to counsel undersigned and to Mr. Reid

7

since the substitution in an effort to attempt to prepare the case.

It is also the understanding of counsel undersigned that Mr. Reid's prior lawyer had but brief and limited contact with Government's counsel throughout the course of this litigation.

The nature of Mr. Reid's interaction with his prior lawyer appears also to be very brief[4]. Counsel undersigned is advised that other than the initial meeting to hire his prior counsel and contact related to modification of travel restrictions, Mr. Reid had but two meetings with his lawyer. Mr. Reid further advises that his former counsel never reviewed the extensive discovery materials with him, other than jointly watching a single DVD of video surveillance.

Mr. Reid had been told by prior counsel that essentially there was "nothing going on" in his case. Mr. Reid reviewed the court file online and noted the substantial amount of activity. When he queried his prior lawyer about the activity, he was told nothing could be done until all of the discovery was available. Mr. Reid advises that he was continually told that "they were waiting on discovery and could not do anything until the

---

[4] This proffer, made by counsel, is solely in conjunction with this pretrial motion and does not operate as any waiver of Mr. Reid's attorney client privilege or any other right or privilege.

8

discovery was received."

During the summer of 2006, Mr. Reid's then lawyer advised him that he had stopped doing any work on the case as a result of not receiving additional money. Mr. Reid inquired about any additional disclosure and was told that none was available. It is believed that additional disclosure was made available during this time. No pretrial motions were filed in more than a year by the defendant Reid's prior counsel other than motions regarding travel restrictions.

The unfortunate bottom line from Mr. Reid's position is that no real preparation had been done in this case for more than a year. There apparently was no real interaction between his prior counsel and the other skilled, competent lawyers and allied professionals who were and are diligently trying to put this case together from the defense perspective. Mr. Reid's present lawyer, counsel undersigned, has been confronted with the monumental task of trying to assimilate eighty thousand (80,000) pages of disclosure, on the heels of more than a year of inactivity, in order to try to get up to speed in a very short period of time. The sheer nature and complexity of this case makes that task impossible.

At the present time there are a number of other tasks that need to be

undertaken and which, it is respectfully submitted, cannot be completed, particularly in view of the prior history of Mr. Reid's representation, before the present trial date. There are significant issues that exist with regard to the transcription of calls. The transcriptionist has been working for approximately a year (alone) in transcribing the 11,473 calls. She is on disk 5 of 9 at the present time and believes it will take her nine months to a year to complete the balance of disks. The Government has disclosed some transcripts, but they represent only a small percentage of the total calls.

Significant work needs to be undertaken on the investigation of cooperators who have just been disclosed. There are a significant number of cooperating individuals who apparently will be trial witnesses in this matter. While the Government has been diligent in providing some disclosure, issues exist as to additional materials that need to be investigated and produced. Some of these efforts may require a further court order after all of the recently disclosed *Brady* material is comprehensively reviewed. For example, if a rap sheet or arrest record reflects misdemeanor arrests, those reports need to be tracked down through public records requests or courthouse visits to determine if they are reflective of other behavior such as drug addiction or behavioral problems.

Treatment records may be identified in those materials which will need to be further investigated and produced with the assistance of a court order. If there are pretrial supervision records or post conviction supervision records (probation, parole, or supervised release), these records need to be obtained to see if they also contain, *inter alia*, incidents of drug abuse or other psychological problems. If there are issues developed in a review of those records which seem to point to prior cooperation, those materials will also need to be tracked down, transcripts prepared (if they exist), and those matters reviewed as well. Simply put, the provision of the threshold discovery materials simply opens a door to substantial areas of due diligence that defense counsel needs to undertake if this case is to be properly prepared for trial.

It is also the understanding of counsel undersigned that expert witness materials are being disclosed currently. These need to be reviewed and a determination made if additional experts for the defense are required herein. If so, those experts need to be located, brought up to speed with regard to the history and opinions of the other experts, and the issues fully developed to see if there are areas of attack of the Government's experts and/or the necessity of independent defense experts for trial purposes.

11

In conversations with the court appointed expert on the wiretap, Suzanne Doucette, it appears that additional time is needed in order to pursue one of the issues on the wiretap not heretofore developed. A key issue in attempting to suppress evidence generated from a wiretap is a thorough analysis of the requirement of "necessity" for the wiretap. The full development of this issue requires a multilayered approach aimed at determining what materials or tools the Government had in its investigation which may show that the statements in the affidavit that a wiretap was necessary may in fact not be correct (even by omission). This research and factual investigation often results in a *Franks* hearing in order to fully develop the record on these facts and issues. For example, if the Government claims that a surveillance could not be conducted of a particular location, defense investigators/experts need to determine on the ground if that is correct. There are a host of related issues that often require the cooperation and assistance of co-counsel to develop through the co-defendants (particularly the targets of the investigation). This process is very laborious and time consuming and can require a succession of steps. Counsel undersigned has had an extremely limited period of time in order to try and look at this issue (while at the same time trying to

12

assimilate all of the other factual and legal matters in this case). In conversations with Ms. Doucette, it is the understanding of counsel undersigned that she would welcome additional time in order to properly develop this issue. Counsel undersigned has also started the development of these issues with other counsel.

Counsel undersigned also has a trial conflict addressed in a separate pleading.[5]

In addition to all of the foregoing, it is the understanding of counsel undersigned that still more disclosure is forthcoming. Dealing with this (particularly in conjunction with the newly-disclosed cooperators and potential expert disclosure issues) alone will be an extremely difficult task. When combined with the daunting task of continuing to assimilate and wrap one's arms around the balance of this case that has gone on for over a year, it becomes clear that proper preparation by the present trial date is simply impossible.

It is also the understanding of counsel undersigned that several defendants have very recently entered pleas and that still others may do so

---

[5] Counsel also has a long planned and pre-paid vacation trip with family and friends to Kentucky set for April 26 through and including April 30. This personal matter is not a stand-alone reason justifying a continuance

13

shortly.  If some or all of these individuals become witnesses, that will trigger still more disclosure and further investigative efforts by the defense.

Counsel undersigned will continue to expand the commitment of resources to the extent possible in order to try to properly prepare this case for trial.  However, it is respectfully submitted that to require Mr. Reid to go to trial on the date presently set on this record would generate a compelling ineffective assistance of counsel claim.  The only way to meaningfully assure Mr. Reid's right to a fair trial and to the meaningful and effective assistance of counsel is to vacate the present trial date and to extend other deadlines.

Pretrial preparation is, of course, the cornerstone of effective assistance of counsel.  This is particularly true in litigation as complex as the present case.  The Supreme Court recognizes that it is "a sure bet" that effective counsel will examine evidence that the prosecution gives notice it will use.  *Rompilla v. Beard*, 125 S.Ct. 2456, 2467 (2005).  *See also Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003); *Stouffer v. Reynolds*, 214 F.3d 1231, 1234 (10th Cir. 2000); *United States v. Cronic*, 839 F.2d 1401 (10th Cir. 1988).  The Sixth Amendment requires a reasonable defense investigation to be judged in light of the facts of the case "as seen 'from

14

counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003), *quoting Strickland v. Washington*, 466 U.S. 668, 688 (1984).  It is clear to counsel undersigned that, even with the outside assistance he has employed and will continue to employ, the present trial date will not allow him to adequately investigate and address all of the issues in this matter, including without limitation the recorded evidence, informant testimony, and expert witnesses that the prosecution will produce.

      Therefore, this Court is respectfully urged vacate the present trial date and to reset this matter at a later time.

      RESPECTFULLY SUBMITTED this 12th day of February, 2007.

                              LAW OFFICES OF
                              NASH & KIRCHNER, P.C.


                              BY /S/ Walter Nash
                                 WALTER NASH
                                 Attorney for Defendant Reid

LAW OFFICES OF
NASH & KIRCHNER, P.C.
P.O. BOX 2310
TUCSON, ARIZONA 85702
Telephone (520) 792-1613

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2007, I served a true and correct copy of this Joinder by U.S. Mail, postage prepaid, on counsel for the United States at the address listed below:

James R.W. Braun, Esq.
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico   87103

/s/ Walter Nash
_____

LAW OFFICES OF
NASH & KIRCHNER, P.C.
P.O. BOX 2310
TUCSON, ARIZONA 85702
Telephone (520) 792-1613