# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
### OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

September 19, 2007

Douglas E. Cressler
Chief Deputy Clerk

Matthew Dykman
United States District Court for the District of New Mexico
Office of the Clerk
333 Lomas N.W.
Albuquerque, NM 87102

RE:     **06-2264, United States v. Jarvis**
        Dist/Ag docket: [CR-05-1849-JH]

Dear Clerk:

Enclosed are a certified copy of the judgment and a copy of the opinion filed in this case which are issued as the mandate of this court. *See* Fed. R. App. P. 41(a). Please file it in records of your court or agency.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

Enclosure(s)

cc:     James R.W. Braun
        Stephen R. Kotz
        Jody Neal-Post

**F I L E D**
United States Court of Appeals
Tenth Circuit

**August 28, 2007**

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

  v.

DANA JARVIS,

      Defendant-Appellant.

No. 06-2264

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-05-1849-JH)**

---

Jody Neal-Post, Albuquerque, New Mexico, for Defendant-Appellant.

Stephen R. Kotz, Assistant United States Attorney (Larry Gomez, Acting United States Attorney, James R.W. Braun, Assistant United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **BRISCOE, HOLLOWAY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    INTRODUCTION

This is an interlocutory appeal from a district court order denying the motion of Defendant-Appellant Dana Jarvis to release funds.  At issue is the propriety of two notices of *lis pendens* filed under New Mexico state law by the United States on substitute property potentially subject to criminal forfeiture under 21 U.S.C. § 853.

This court has jurisdiction pursuant to the collateral order doctrine.  *United States v. Musson*, 802 F.2d 384, 385 (10th Cir. 1986).  Applying an exception to the usual rule that issues not presented below are forfeited on appeal, this court concludes the use by the United States of the New Mexico *lis pendens* statute was improper.  The order of the district court denying Jarvis' motion to release funds is, therefore, **reversed** and this case **remanded** to the district court with instructions to order the *lis pendens* notices removed.

## II.    BACKGROUND

Jarvis, along with twenty other defendants, was charged in initial and superceding multi-count indictments with conspiracy to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846; conspiracy to launder money and knowing conduct of a financial transaction involving proceeds of unlawful activity, in violation of 18 U.S.C. § 1956; and engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 and 18 U.S.C. § 2.

The initial indictment contained a criminal forfeiture allegation stating that, upon conviction for one or more of the substantive offenses, all defendants would be jointly and severally liable for a money judgment of just over $49 million in proceeds allegedly derived from or involved in the indicted offenses. The forfeitures were to be carried out pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982. The superseding indictment contained the same criminal offense charges as the initial indictment, but named a different combination of defendants and broadened the alleged time frame of the conspiracy and continuing criminal enterprise by twelve years. As a result, the superceding indictment increased the demand for money judgment from $49 million to $158.4 million.

Bank accounts, several parcels of real property, conveyances of personal property, and a liquor license were listed in the initial and superceding indictments as "forfeitable property" connected to the defendants' criminal conduct.[1] The superceding indictment added seized United States currency as

---

[1]Under the criminal forfeiture statute, property subject to mandatory forfeiture upon conviction includes:

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [a drug-related criminal] violation;

(2) any of the person's property used, or intended to be used, in any manner or part to commit or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual

(continued...)

forfeitable property.  Both the original and superceding indictments listed two

pieces of real property titled to Jarvis among the substitute assets to be forfeited

pursuant to 21 U.S.C. § 853(p) in the event other property directly connected to

the alleged criminal activity was unavailable for forfeiture.[2]  These two parcels

are collectively known as the "Mora properties," located in Mora County, New

Mexico.

The United States recorded notices of *lis pendens* on the Mora properties

with the Mora County clerk, *see* N.M. Stat. Ann. § 38-1-14, and filed the notices

with the district court.  The notices include the language, "The property located in

Mora County, New Mexico, was criminally indicted in this case and the United

States is seeking the forfeiture of all that lot or parcel of land, together with its

buildings, appurtenances, improvements, fixtures, attachments, and easements

---

[1](...continued)
rights affording a source of control over, the continuing criminal
enterprise.
21 U.S.C. § 853(a)(1)-(3).

[2]Substitute assets are defined in § 853(p).  Section 853(p)(2) requires the
court to order forfeiture of substitute property up to the value of the forfeitable
property described in § 853(a) when such forfeitable property:
(A) cannot be located upon the exercise of due diligence;
(B) has been transferred or sold to, or deposited with, a third party;
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property which cannot be divided
without difficulty.
21 U.S.C. § 853(p)(1)(A)-(E).

thereon." The United States did not attempt to use the criminal forfeiture statute to seek a federal protective order on the Mora properties.[3]

Claiming the United States' *lis pendens* notices on the Mora properties prevented him from liquidating these properties to pay for retained defense counsel, Jarvis moved the district court to release his property. Jarvis explained to the court that he had no other assets with which to retain counsel. He argued the Mora properties, which were purchased well before the initiation of the criminal activity charged in the indictment, were "substitute assets" within the meaning of § 853(p). Looking to the federal protective order provision of the criminal forfeiture statute, § 853(e), as well as most federal courts of appeals' interpretations of that statute, Jarvis contended there was no legal basis for the restraint of substitute assets without a conviction and forfeiture order. Because the United States' restraint of the Mora properties prevented him from hiring the counsel of his choice and deprived him of his Sixth Amendment right, Jarvis argued, a due process hearing was required before the United States could effectively freeze his assets.

---

[3]Section 853(e) allows the United States to seek a restraining order or injunction "to preserve the availability of property described in subsection (a) of [§ 853(a)] . . . upon the filing of an indictment or information charging a violation . . . for which criminal forfeiture may be ordered . . . and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture." 21 U.S.C. § 853(e)(1)(A). Section 853(e) does not, however, explicitly provide for pre-trial restraint of § 853(p) substitute property.

The United States responded to Jarvis' motion by contending that a *lis pendens* is not a legal restraint, but merely functions as constructive notice to prospective purchasers. Even if a *lis pendens* were a restraint, however, the United States argued that substitute assets such as the Mora properties may be restrained consistent with the statutory scheme provided for in § 853, especially in light of the guidance in § 853(*o*) that the criminal forfeiture statute be liberally construed to effect its objectives.

Drawing heavily on the United States' arguments, the district court denied Jarvis' motion, concluding the filing of a *lis pendens* does not constitute a restraint of property within the meaning of 21 U.S.C. § 853. Based on the reasoning in *United States v. Register*, 182 F.3d 820, 836–37 (11th Cir. 1999), and *Aronson v. City of Akron*, 116 F.3d 806, 811–12 (6th Cir. 1997), and borrowing language from *United States v. James Daniel Good Real Property*, 510 U.S. 43, 54 (1993), the court determined that a *lis pendens* did not interfere with any legal incidents of property ownership such as "the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents" and, therefore, did not constitute a property deprivation triggering due process concerns. The court also rejected Jarvis' argument that the nature of the properties as substitute assets, rather than forfeitable assets, should affect the court's analysis.

-6-

Jarvis moved the court to reconsider, again attempting to draw a distinction between forfeitable property under § 853(a) and substitute property under § 853(p). He argued that New Mexico law classifies a *lis pendens* as a restraint and that a restraint cannot apply to substitute property until (1) a court has issued an order of forfeiture and (2) the government is unable to satisfy the order with forfeitable § 853(a) property. He contended the *lis pendens* notices on the Mora properties were, therefore, a violation of state law. The United States, in response, maintained that because a *lis pendens* does not affect the owner's legal right to alienate his property, it is not a restraint. It again also argued that pre-trial restraint of substitute assets is permissible under the federal statutory scheme. After holding an evidentiary hearing, which included testimony by a realtor on the effect of a *lis pendens* notice on a seller's practical ability to alienate his land, the court rejected Jarvis' motion to reconsider, concluding in a single sentence that Jarvis had not presented any new arguments regarding his motion to release funds.

Jarvis timely appealed the district court's denial of his motion under the collateral order doctrine. *See Musson*, 802 F.2d at 385 (recognizing an exception to the final judgment rule in a federal criminal forfeiture case where "the disputed issues [involving the propriety of a restraining order] are collateral to and separate from the issue of the defendants' guilt or innocence"). On appeal, in addition to reviving the argument that a *lis pendens* constitutes an unlawful

-7-

restraint on substitute assets under § 853, Jarvis introduces a theory not presented

below regarding the nature of substitute assets in a criminal forfeiture proceeding.

Jarvis contends that, under the New Mexico *lis pendens* statute, a notice of *lis*

*pendens* is only proper where the underlying litigation involves a dispute

affecting title to the same real property upon which the notice has been filed.  He

argues § 853(p) substitute property can never be the subject of such underlying

litigation.  Rather, he argues, the United States seeks a money judgment for the

more than $158,000,000 allegedly attributable to Jarvis' criminal activities and

that, under New Mexico law, a *lis pendens* cannot be used to secure a money

judgment in an action unrelated to the property upon which the *lis pendens* has

been placed.  *See Hill v. Dep't of the Air Force*, 884 F.2d 1321, 1322 (10th Cir.

1989).  Jarvis alleges the district court erred when ruling on his motion by

concluding the threshold issue was whether a *lis pendens* constituted a restraint

within the meaning of § 853.  Instead, Jarvis argues, the court should have

considered in the first instance whether the *lis pendens* notices were lawful as a

matter of New Mexico state law.[4]

---

[4]Jarvis also contends the *lis pendens* notices were facially invalid because
they referred to the Mora properties as "criminally indicted."  Although he argues
the "criminally indicted" label is a material misstatement, Jarvis does not cite any
New Mexico case law to support this point.  Because Jarvis' claim is resolved in
his favor on other grounds, we do not address the merits of this argument.

The United States responds that Jarvis' state law argument was forfeited by his failure to present this theory to the district court.[5]  On the merits, the United States asserts the *lis pendens* notices were proper because title to the Mora properties could be affected by Jarvis' conviction and, therefore, the criminal action against Jarvis is one affecting title to real property within the meaning of the New Mexico *lis pendens* statute.  As to Jarvis' argument regarding the prohibition on filing of a *lis pendens* in anticipation of a money judgment, the government contends *Hill* is distinguishable because it involved a *lis pendens* filed in anticipation of a money judgment in a civil tort suit rather than in a criminal forfeiture proceeding.

## III.  DISCUSSION

### A.    Forfeiture of Argument Raised for First Time on Appeal

At no point in the proceedings below did Jarvis ever fully articulate the theory he relies upon now, that New Mexico *lis pendens* notices are improperly utilized in an *in personam* criminal forfeiture action where the real property itself is not the subject of the litigation or connected to the defendant's criminal

---

[5]The United States uses the term "waiver" to describe Jarvis' failure to raise the state law theory in the district court.  Because there is no allegation or support in the record that Jarvis intentionally relinquished a right to raise this theory, the term "forfeiture" is more appropriate to describe Jarvis' failure to raise the theory below.  *See United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006) (distinguishing a claim that is waived from one that is forfeited).  We therefore use the term "forfeiture" rather than "waiver" throughout this opinion to describe the potential effect of Jarvis' failure to present the theory below.

activity. The United States, similarly, never addressed this argument, nor did the court make any findings or reach any legal conclusions responsive to Jarvis' isolated reference to this theory. This court would, therefore, ordinarily decline to consider Jarvis' argument under the principle that issues not presented below are forfeited on appeal. *Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997) ("Propounding new arguments on appeal in an attempt to prompt us to reverse the trial court undermines important judicial values.").

**B.    Exceptions to the Forfeiture Principle**

Although a litigant's failure to raise an argument before the district court generally results in forfeiture on appeal, forfeiture is not jurisdictional. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Whether to address the argument despite the litigant's failure to raise it below is subject to this court's discretion based on the circumstances of the individual case. *Id.* For example, the Supreme Court has indicated appellate courts might be justified in resolving an issue for the first time on appeal "where the proper resolution is beyond any doubt or where injustice might otherwise result." *Id.* at 121 (citation and quotation omitted). This court has characterized its willingness to exercise its discretion to hear issues not raised below "only in the most unusual circumstances." *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993). We have consistently stated that "a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory." *Id.*

-10-

Nevertheless, this court has recognized an exception where the argument involves a pure matter of law and the proper resolution of the issue is certain. *Geddes v. United Staffing Alliance Employee Med. Plan*, 469 F.3d 919, 931 (10th Cir. 2006); *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227–28 (10th Cir. 2003) (considering new statutory argument for the first time on appeal); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1271 (10th Cir. 2000) (exercising discretion where district court's error in statutory interpretation was purely legal issue with a certain resolution); *Sussman v. Patterson*, 108 F.3d 1206, 1210 (10th Cir. 1997) (exercising discretion where issue not raised below was purely legal issue, had been fully briefed by the parties, and involved important public policy concerns); *Grubb v. FDIC*, 833 F.2d 222, 224 (10th Cir. 1987) (exercising discretion because issue presented only a question of law). We have justified our decision to exercise discretion in these situations because no additional findings of fact or presentation of evidence were required for the issue's disposition and both parties had the opportunity to address the issue in their appellate briefing. *See, e.g., Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1538 (10th Cir. 1996); *Grubb*, 833 F.3d at 224.

**C.    Application of the Forfeiture Exception**

Under the circumstances presented here, this court determines an exercise of our discretion is warranted to permit us to consider whether the federal government's use of a *lis pendens* was appropriate under New Mexico law. The

-11-

issue before us is purely legal in nature and the relevant statutory language and case law dictate a certain result.[6] This, therefore, is one of the unusual cases in which it is proper to apply the forfeiture exception.

### 1. Pure Issue of Law

None of the traditional functions unique to a trial court are necessary to the development of the issue Jarvis presents for the first time on appeal. The facts are not in dispute and there is nothing the trial court could have done to facilitate resolution of the issue. Had the trial court been given the opportunity to rule, our review would be *de novo*, just as it is now. The issue presents a pure question of law and both parties have fully briefed and argued the issue before this court.

### 2. Certainty of Proper Resolution

The purpose of recording a notice of *lis pendens* on a piece of real property is to provide "constructive notice to subsequent purchasers and encumbrancers of litigation affecting the title to [the] real property." *Title Guar. & Ins. Co. v. Campbell*, 742 P.2d 8, 13 (N.M. Ct. App. 1987); *S. Utsunomiya Enters., Inc. v. Moomuku Country Club*, 866 P.2d 951, 966–67 (Haw. 1994) (stating the purpose

---

[6]*Singleton v. Wolff*, 428 U.S. 106, 121 (1976), suggests two routes for determining whether an appellate court is justified in resolving an issue raised for the first time on appeal. Because we determine the resolution of the pure legal issue before us is certain, we need not address a potential alternative rationale for considering the issue: namely, whether injustice from an alleged violation of Jarvis' Sixth Amendment right to counsel would occur if this court were to decline to address the propriety of the New Mexico *lis pendens* notices placed on the Mora properties.

of a *lis pendens* notice "is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants"). In New Mexico, a *lis pendens* notice is essentially "a republication of the pleadings filed in the pending judicial proceedings." *Title Guar. & Ins. Co.*, 742 P.2d at 13. Under the New Mexico *lis pendens* statute, a notice of *lis pendens* may only be recorded by plaintiffs in "actions . . . affecting the title to real estate." N.M. Stat. Ann. § 38-1-14; *Superior Constr., Inc. v. Linnerooth*, 712 P.2d 1378, 1381 (N.M. 1986) ("[A] notice of *lis pendens* may be properly filed *only if plaintiff pleads a cause of action* which involves or affects the title to, or any interest in or a lien upon, specifically described real property." (emphasis added) (quotation omitted)).

To be eligible to record a *lis pendens* notice on a piece of real property, however, the party recording the notice must assert a present claim to the property's title or have some other present interest in the subject property. *See* 14 Richard R. Powell, Powell on Real Property § 82A.01[2], at 6 (M. Wolf ed., 2000) [hereinafter Powell]. The notice is intended to preserve the property rights in existence at the time the litigation commences, but does not create new or additional property rights. *Cf. id.* ("[P]ublic policy [underlying a *lis pendens* notice] requires that the property interests *existing at the time the court action is initiated* be preserved until the court's judgment can be enforced in favor of the prevailing party." (emphasis added)). In New Mexico, a *lis pendens* cannot be filed in "anticipation of a money judgment." *Hill*, 884 F.2d at 1322. A *lis*

-13-

*pendens* also generally cannot be used as "a substitute for a prejudgment attachment," *The Cadle Co. II, Inc. v. Superior Constr. & Contracting, Inc.* (*In re Rice*), 362 B.R. 687, 688 (Bankr. E.D. Va. 2006), or to create a constructive trust on property to satisfy a potential monetary judgment, *Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995).

For the United States to record a notice of *lis pendens*, it must establish that the underlying action, a criminal forfeiture proceeding, is one "affecting the title to real estate," N.M. Stat. Ann. § 38-1-14, specifically, the Mora properties. Criminal forfeiture is an *in personam* action in which the forfeiture of and the vesting of title in the United States in the defendant's tainted property is imposed as a punishment against the defendant. *See United States v. Nichols*, 841 F.2d 1485, 1487 (10th Cir. 1988) ([C]riminal forfeiture was designed both to penalize and to deter criminal activity."); *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1218 (10th Cir. 1986). The government's interest in and right to the defendant's property is defined in 21 U.S.C. § 853. Assets "constituting, or derived from, any proceeds" of the defendant's criminal action and property "used, or intended to be used" in the commission or facilitation of the defendant's criminal action "shall" be forfeited upon conviction. 21 U.S.C. § 853(a). By virtue of the statute's relation-back provision, the United States obtains a vested "right, title, and interest" in such tainted § 853(a) property superior to that of third parties "upon the commission of the act giving rise to forfeiture." *Id.*

§ 853(c). The government, furthermore, has the ability to seek a protective order to restrain tainted assets prior to trial in order to ensure the availability of the tainted property in the event of the defendant's conviction. *See id.* § 853(e).

In contrast, the statute treats the United States' interest in substitute property—property that neither comprises the fruits of nor is connected to the defendant's alleged crime—differently than it treats the government's interest in § 853(a) tainted property. Pursuant to § 853(p), forfeiture of substitute property cannot occur until after the defendant's conviction and a determination by the trial court that the defendant's act or omission resulted in the court's inability to reach § 853(a) assets. *See* § 853(p)(1)(A)-(E); Fed. R. Crim. P. 32.2(e)(1)(B). Both the relation-back and the protective order provisions of § 853 are silent as to § 853(p) substitute property. *See* § 853(c), (e). Unlike the pre-conviction interest the government may claim in tainted § 853(a) property, § 853(c) thus does not explicitly authorize the United States to claim any pre-conviction right, title, or interest in § 853(p) substitute property.[7] Furthermore, all but one federal court of appeals to address the issue has determined the legislative silence regarding substitute property in § 853(e) precludes pre-conviction restraint of substitute

---

[7]One court has ruled the government does have such authority despite the lack of explicit authorization in § 853(c). *See United States v. McHan*, 345 F.3d 262, 270–72 (4th Cir. 2003) (concluding a broad reading of the language of § 853(*o*), which instructs that the criminal forfeiture statute should be liberally construed to effectuate the statute's purpose, permits the government to claim a relation-back interest in substitute property).

property.[8] The statute, therefore, imposes specific preconditions on the

government's ability to claim title to the defendant's substitute property,

preconditions which can only be satisfied once the defendant has been convicted.

*See, e.g., United States v. Misla-Aldarondo*, 478 F.3d 52, 75 (1st Cir. 2007)

(explaining forfeiture of substitute assets or the ability to reach additional assets

to satisfy a money judgment requires the government to show "the principal

forfeitable assets . . . are unavailable at the end of the trial"); *United States v.*

*Casey*, 444 F.3d 1071, 1076–77 (9th Cir. 2006) (holding money judgment for

substitute assets may be ordered when tainted assets are insufficient to satisfy a

forfeiture order); *United States v. Parrett*, 469 F. Supp. 2d 489, 493 (S.D. Ohio

2007) (stating government has no "proprietary interest" in § 853(p) substitute

assets prior to judgment ordering substitute assets forfeited). As a consequence,

the United States does not have a ripened interest in § 853(p) substitute property

until (1) after the defendant's conviction and (2) the court determines the

---

[8]The Fourth Circuit is the only federal court of appeals to conclude the
statute permits pre-trial restraint of substitute assets. *See United States v.*
*McKinney (In re Assets of Billman)*, 915 F.2d 916, 921 (4th Cir. 1990) (permitting
pre-trial restraint of assets under RICO's protective order provision). *In re Assets*
*of Billman* relies for support on the necessity of "liberally constru[ing]" the RICO
forfeiture provisions. 915 F.2d at 921 (quoting *Russello v. United States*, 464
U.S. 16, 26-27 (1983)). All other courts of appeals to consider the issue have
ruled substitute assets are not subject to pre-trial restraint. *See United States v.*
*Gotti*, 155 F.3d 144, 148–49 (2d Cir. 1998); *United States v. Field*, 62 F.3d 246,
248–49 (8th Cir. 1995); *United States v. Ripinsky*, 20 F.3d 359, 364–65 (9th Cir.
1994); *In re Assets of Martin*, 1 F.3d 1351, 1359–61 (3d Cir. 1993); *United States*
*v. Floyd*, 992 F.2d 498, 500–02 (5th Cir. 1993).

defendant's § 853(a) forfeitable property is out of the government's reach for a reason enumerated in § 853(p)(1)(A)-(E).

There is no dispute the Mora properties are § 853(p) substitute property. Jarvis obtained these properties prior to the beginning of the drug conspiracy in which he allegedly participated; there is no allegation these properties were used to commit or facilitate the conspiracy. Moreover, the properties are specifically listed as substitute assets in the indictment. As a consequence, the United States had no interest in the title to or a claim upon the Mora properties at the time of the indictment or the recording of the *lis pendens* on the properties.[9] The government's interest in the Mora properties, if any, is only a potential and speculative future interest. Because that interest cannot mature into an actual interest until after conviction and does not relate back to a pre-conviction date, it cannot satisfy the prerequisites for the recording of a *lis pendens*. *See* 14 Powell § 82A.01[2], at 6 (stating property interest must exist at the initiation of the underlying legal action). As a result, it cannot be said the United States has a

---

[9]Section 853(a) property might provide a different case. There may be a credible argument that the criminal action against Jarvis would "affect title" to the indicted § 853(a) real property because of the federal relation-back policy articulated in § 853(c) and the ability to restrain § 853(a) assets prior to trial pursuant to § 853(e). The same cannot, however, be true of § 853(p) substitute property because the United States may gain title to or an interest in the Mora properties, if at all, only (1) after a conviction and, even then, only after (2) Jarvis' § 853(a) forfeitable property is determined to be out of the government's reach for the reasons enumerated in § 853(p)(1)(A)-(E).

-17-

"cause of action which involves or affects the title to" the Mora properties.[10]

*Linnerooth*, 712 P.2d at 1381. The United States' filing of *lis pendens* notices on

the Mora properties was therefore improper under New Mexico law. *Accord*

*United States v. Kramer*, No. 1:06-cr-200, 2006 WL 3545026, at *10 (E.D.N.Y.

Dec. 8, 2006) (concluding *lis pendens* notice was similarly improper under New

York *lis pendens* statute).

In essence, the United States seeks to use the *lis pendens* mechanism to

preserve the substitute property in anticipation of a conviction and a

determination by the court that the § 853(a) forfeitable property is beyond the

government's reach to satisfy the accompanying money judgment or forfeiture

order. Although the government recognizes that, under New Mexico law, "[t]he

filing of a notice of lis pendens in anticipation of a money judgment is

prohibited," *Hill*, 884 F.2d at 1322, it attempts to distinguish the scope of a so-

---

[10]By way of contrast with the instant criminal forfeiture action, causes of
action in which *lis pendens* notices have been deemed by New Mexico courts to
"affect title to real property" include a quiet title action in which the plaintiff
recorded a *lis pendens* against the disputed property, *Title Guar. & Ins. Co. v.
Campbell*, 742 P.2d 8, 9 (N.M. Ct. App. 1987), a breach-of-contract action
involving construction on a lot on which a *lis pendens* was recorded, *Superior
Constr., Inc. v. Linnerooth*, 712 P.2d 1378, 1379 (N.M. 1986), and a writ of
attachment to secure priority in probate court proceeding, *Bell v. Gaylord*, 27 P.
494, 495 (N.M. Terr. 1891). These are, of course, all actions in which "the
pending litigation directly involves the property" and "[t]he judgment sought
[will] affect the title to the property or the right to possess, use or enjoy it."
Richard R. Powell, Powell on Real Property § 82A.02[2], at 9 (M. Wolf ed.,
2000); *cf. Ruiz v. Varan*, 797 P.2d 267, 268, 269 (N.M. 1990) (holding nominal
damages are available in New Mexico for the tort of abuse of process where a *lis
pendens* is recorded but a "claim of title was never involved in the litigation").

called "general" *in personam* money judgment from a money judgment arising

from a criminal forfeiture action. It argues the indictment's identification of the

specific substitute property from which a money judgment would be satisfied

permits the use of the *lis pendens* in this situation. The case the government

relies upon, which has nothing to do with a chain of title to substitute property,

creates a distinction between the two types of money judgments, but does so for a

reason wholly unrelated to the argument advanced here by the United States.[11]

*See Vampire Nation*, 451 F.3d at 202–03. The United States cannot convert

§ 853(p) substitute property to § 853(a) forfeitable property merely by identifying

the former in the indictment. There is, therefore, no reason the usual prohibition

on using a *lis pendens* in anticipation of a money judgment would not apply in

this situation.

## IV.    CONCLUSION

Because we determine the United States made improper use of New

Mexico's *lis pendens* statute when placing *lis pendens* notices on Jarvis' Mora

---

[11]In *Vampire Nation*, the defendant asserted the court could not issue a
forfeiture order for an *in personam* money judgment in an amount exceeding the
assets the defendant had on hand at the time of sentencing. *United States v.
Vampire Nation*, 451 F.3d 189, 201 (3d Cir. 2006). Rejecting the defendant's
argument, the court held that the forfeiture statutes specifically authorize a money
judgment equivalent to the sum of the proceeds of the defendant's criminal
activity, even when the defendant lacks such assets at the time of conviction. *Id.*
at 202–03. The court distinguished the limited nature of the money judgment
sought in a forfeiture proceeding with the unlimited nature of an *in personam*
money judgment arising from other types of actions. *Id.* at 202.

properties, we **REVERSE** the order of the district court and **REMAND** to the district court with direction to order the *lis pendens* notices removed.