U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION

FORM APPROVED
OMB NO. 2120-0043

THIS FORM SERVES TWO PURPOSES
PART I acknowledges the recording of a security conveyance covering the collateral shown.
PART II is a suggested form of release which may be used to release the collateral from the terms of the conveyance.

**PART I CONVEYANCE RECORDATION NOTICE**

NAME (last name first) OF DEBTOR
REID DAVID C

NAME and ADDRESS OF SECURED PARTY/ASSIGNEE

AL EIDE DBA
ALCAR COMPANY
1300 SOUTH WASHINGTON
GRAND FORKS ND 58204

NAME OF SECURED PARTY'S ASSIGNOR (if assigned)

Do Not Write In This Block
FOR FAA USE ONLY

| FAA REGISTRATION NUMBER | AIRCRAFT SERIAL NUMBER | AIRCRAFT MFR. (BUILDER) and MODEL |
|---|---|---|
| 754TW | LJ-754 | BEECH C90 |

| ENGINE MFR. and MODEL | ENGINE SERIAL NUMBER(S) |
|---|---|

| PROPELLER MFR. and MODEL | PROPELLER SERIAL NUMBER(S) |
|---|---|

THE SECURITY CONVEYANCE DATED    4/19/2005    COVERING THE ABOVE COLLATERAL WAS RECORDED BY

THE CIVIL AVIATION REGISTRY ON    5/24/2005    AS CONVEYANCE NUMBER    DD025487

*Charlene Adams*
Charlene Adams
LEGAL INSTRUMENTS EXAMINER

**PART II - RELEASE** - (This suggested release form may be executed by the secured party and returned to the Civil Aviation Registry when terms of the conveyance have been satisfied. See below for additional information.)

THE UNDERSIGNED HEREBY CERTIFIES AND ACKNOWLEDGES THAT THEY ARE THE TRUE AND LAWFUL HOLDER OF THE NOTE OR OTHER EVIDENCE OF INDEBTEDNESS SECURED BY THE CONVEYANCE REFERRED TO HEREIN ON THE ABOVE DESCRIBED COLLATERAL AND THAT THE SAME COLLATERAL IS HEREBY RELEASED FROM THE TERMS OF THE CONVEYANCE. ANY TITLE RETAINED IN THE COLLATERAL BY THE CONVEYANCE IS HEREBY SOLD, GRANTED TRANSFERRED, AND ASSIGNED TO THE PARTY WHO EXECUTED THE CONVEYANCE, OR TO THE ASSIGNEE OF SAID PARTY IF THE CONVEYANCE SHALL HAVE BEEN ASSIGNED: PROVIDED, THAT NO EXPRESS WARRANTY IS GIVEN NOR IMPLIED BY REASON OF EXECUTION OR DELIVERY OF THE RELEASE.

This form is only intended to be a suggested form of release, which meets the recording requirements of the Federal Aviation Act of 1958, and the regulations issued thereunder. In addition to these requirements, the form used by the security holder should be drafted in accordance with the pertinent provisions of local statutes and other applicable federal statutes. This form may be reproduced. There is no fee for recording a release. Send to Aircraft Registration Branch, P.O. Box 25504, Oklahoma City, Oklahoma 73125.

DATE OF RELEASE _____

_____
(Name of security holder)

SIGNATURE (In Ink) _____

TITLE _____
(A person signing for a corporation must be a corporate officer or hold a managerial position and must show his title. A person signing for another should see parts 47 and 49 of the Federal Aviation Regulations (14 CFR))

ACKNOWLEDGMENT (If Required By Applicable Local Law):

AC Form 8050-41 (4/01)


GOVERNMENT EXHIBIT A

# PROMISSORY NOTE
(Aircraft Loan)

$330,000.00                                                                                                                     Mesa, Arizona
April 19, 2005

FOR VALUE RECEIVED, the undersigned, DAVID C. REID ("Maker"), does hereby promise to pay to the order of AL EIDE, doing business as ALCAR COMPANY ("Holder"), at its office at 1300 South Washington, Grand Forks, North Dakota 58201, or such other place as Holder may designate in writing, in lawful money of the United States of America, the principal sum of THREE HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($330,000.00), together with interest thereon from the date of disbursement hereunder.

1. Interest. The Principal Sum outstanding from time to time shall bear interest at the rate of ten percent (10%) per annum.

2. Default Interest. The foregoing notwithstanding, following an Event of Default the total unpaid principal shall, at the option of the holder of this note, bear interest at the rate of fifteen percent (15%) per annum (the "Default Rate") until the Event of Default is cured (the "Default Interest").

3. Amortizing Payments. Monthly payments of principal and interest based on a twenty (20) year amortization schedule, in the sum of not less than Three Thousand One Hundred Eighty Four and 57/100 Dollars ($3,184.57) shall be made on the first day of each month, commencing on June 1, 2005, and continuing thereafter on the first day of each month until paid in full.

4. Prepayment. shall have the right to prepay this Note, in full or in part, without any prepayment penalty whatsoever.

5. Maturity Date; Balloon Payment. All obligations of Maker hereunder shall be fully paid, and all remaining principal and interest shall be due and payable, on May 1, 2007 (the "Maturity Date").

6. Application of Payments. All payments made on this Note, including without limitation, any prepayments, shall be applied first to the payment of the interest then accrued and due on the unpaid principal balance of this Note and any remainder of each installment shall be applied to the reduction of the unpaid principal. All interest referred to herein shall be calculated on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months.

7. Collateral. This Note is secured by that certain Aircraft Security Agreement (the "Security Agreement") of even date herewith, encumbering that certain aircraft, more particularly described therein (the "Collateral").

8. Events of Default. Each of the following will constitute an event of default ("Event of Default") under this Note:

(a) Maker's failure to pay any installment of principal or interest due under this Note within 10 days of the date due.

(b) Maker's (i) assignment for the benefit of its creditors, or (ii) application for, consent to or acquiescence in, the appointment of a trustee, receiver or other custodian for Maker, the property of Maker or any part thereof, or in the absence of any application, consent or acquiescence, the appointment of a trustee, receiver or other custodian for Maker or a substantial part of the property of Maker, which appointment is not discharged within forty-five (45) days.

(c) Commencement of any case under Title 11 of the United States Code or any other bankruptcy, reorganization, receivership, custodianship, or similar proceeding under any state or federal law by or against Maker, with respect to any such case or proceeding that is involuntary, such case or proceeding is not dismissed within sixty (60) days of the filing thereof.

(d) The occurrence of an Event of Default under the Estimated Purchase Price Adjustment Promissory Note, the Purchase Price Adjustment Promissory Note, or any instrument at any time securing the obligations of Maker under this Note.

9. Time of Essence. It is agreed that time is of the essence in the performance of all obligations hereunder and under the Security Agreement.

10. Acceleration. If an Event of Default shall occur, and such default shall not have been cured within any applicable grace period, if any, provided for herein or in the Deed of Trust, then, or at any time thereafter, the entire principal of this Note, irrespective of the Maturity Date specified herein, together with the then accrued interest thereon shall, at the election of Lender, and without written notice of such election, become immediately due and payable.

11. Late Charges. It is recognized by Maker that, should any installment payment provided for herein not be paid within ten (10) days after the same becomes due and payable, Holder will incur extra expenses for the handling of delinquent payments, the loss of the use of the money due and inability to meet financial commitments of Holder, the exact amount of such extra expense being impossible to ascertain, but that a charge of five percent (5%) each payment of delinquent principal or interest ("Late Charge") would be a fair approximation of the expense so incurred by Holder for handling of delinquent payments, the loss of the use of the money due and inability to meet financial commitments of Holder. Therefore, in such event, without further notice, and without prejudice to the right of Holder to collect any other amounts provided to be paid herein or to declare a default hereunder, a Late Charge shall be paid by Maker to Holder in addition to such delinquent payment or shall be deducted from the amount of such delinquent payment when made.

12. Concurrent Remedies. The rights and remedies of Holder as provided in this Note and the Security Agreement shall be cumulative and concurrent, and may be pursued singly, successively, or together against Maker, the Collateral, any guarantor hereof and any other funds, property or security held by Holder for the payment hereof or otherwise at the sole discretion of Holder. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release of such rights and remedies or of the right to exercise them at any later time.

13. <u>Waiver</u>. The Maker, endorsers, guarantors, sureties and accommodation parties hereof and all other persons liable or to become liable for all or any part of the indebtedness evidenced hereby, jointly and severally waive diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor and of maturity and also recourse to suretyship defenses generally.

14. <u>Attorneys' Fees and Costs</u>. The Maker, endorsers, guarantors, sureties and accommodation parties hereof and all other persons liable or to become liable on this Note, agree, jointly and severally, to pay all costs of collection, including reasonable attorneys' fees and all costs of suit, in case the unpaid principal sum of this Note, or any payment of interest or principal and interest thereon or premium, is not paid when due, or in case it becomes necessary to protect the security for the indebtedness evidenced hereby, or for the foreclosure by Holder of the Security Agreement.

15. <u>Modification</u>. This Note may not be amended, modified or changed, nor shall any waiver of any provision hereof be effective, except only by an instrument in writing and signed by the party against whom enforcement of any amendment, modification, change or waiver is sought; provided, however, that all endorsers, guarantors, sureties and accommodation parties hereof and all other persons liable or to become liable on this Note, agree that, without notice to or consent from any of them, and without affecting their obligations hereunder (a) this Note may from time to time be extended or renewed or its terms (including the terms of payment of principal and interest) otherwise modified; (b) any of the provisions of this Note or the Security Agreement may be amended or any requirement thereof or default thereunder waived or any departure therefrom consented to or any other forbearances or indulgence exercised with respect thereto; and (c) any collateral now or hereafter securing this Note may be exchanged, substituted, realized upon, released, compromised, extended or otherwise dealt with or disposed of.

16. <u>Binding Effect</u>. Whenever used herein, the words "Maker" and "Holder" shall be deemed to include their respective heirs, personal representatives, successors and assigns.

17. <u>Governing Law; Venue</u>. This Note shall be governed by and construed in accordance with the laws of the State of Arizona. Any action brought to interpret, enforce or construe any provision of this Agreement shall be commenced and maintained in the Superior Court of the State of Arizona in and for the County of Maricopa. The parties irrevocably consent to jurisdiction and venue in such courts for such purposes and agree not to seek transfer or removal of any action commenced in accordance with the terms of this section.

IN WITNESS WHEREOF, Maker has executed this Note as of the date first above written.

Carrie Janeal 4/19/05

*[Notary seal: CARRIE JANEAL, NOTARY PUBLIC-ARIZONA, MARICOPA COUNTY, My Commission Expires Feb. 5, 2006]*

David C. Reid

PROMISSORY NOTE                                                                                      Page 3 of 3

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
AIRCRAFT REGISTRATION BRANCH
P.O. Box 25504
Oklahoma City, Oklahoma 73125
AIRCRAFT SECURITY AGREEMENT

| NAME & ADDRESS OF DEBTOR<br><br>DAVID C. REID<br>9227 West Weaver Circle<br>Casa Grande, Arizona 85222 | RECORDED<br>Federal Aviation Administrator<br>Date 5-24-05  Time 10:34 AM<br>Conveyance Number DD025487 |
|---|---|
| NAME & ADDRESS OF SECURED PARTY<br><br>AL EIDE, doing business as<br>ALCAR COMPANY<br>1300 South Washington<br>Grand Forks, North Dakota 58204 | |
| ASSIGNEE & ADDRESS OF ASSIGNEE<br><br>None | ABOVE SPACE FOR<br>FAA USE ONLY |

This SECURITY AGREEMENT is dated as of April 19, 2005, and is entered into by and between DAVID C. REID ("Debtor") and AL EIDE, doing business as ALCAR COMPANY ("Secured Party").

RECITALS

A.   Debtor has delivered a Promissory Note dated of even date herewith in the amount of THREE HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($330,000.00) (the "Note") in favor of Secured Party.

B.   Debtor, to induce Secured Party to accept the Note, has agreed, as security for the payment of the Note, to grant to Secured Party a security interest in and to certain of Debtor's assets.

AGREEMENT

THEREFORE, in consideration for the mutual agreements of the parties and other good and valuable consideration, the receipt and sufficient of which is acknowledged, the parties agree as follows:

2.   Definitions.

2.1   The "Liabilities" shall mean and any and all obligations of Debtor under the Note.

1

2.2    The "Collateral" shall mean all of Debtor's right, title and interest in and to the following:

1978 Beechcraft King Air C-90 Turboprop Aircraft, Registration Number N754TW, Serial Number LJ-754, LH Engine Serial Number PCE-24530, RH Engine Serial Number PCE-24480, LH Propeller Serial Number BU4012, RH Propeller Serial Number BU3911. Under 750 h.p.

3.    Security Interest. Debtor hereby grants to Secured Party a lien on, and a continuing security interest in, and pledges and assigns to Secured Party the Collateral, including all of the foregoing now in existence and all thereof hereafter acquired by Debtor at any time or times regardless of whether prior to, simultaneous with, or subsequent to the incurring of any of Debtor's Liabilities to Secured Party. The security interest created herein shall attach without the execution or delivery to Secured Party of any instruments, documents, assignments, or other agreements of transfer, and in the event that any such instruments, documents, or other agreements of transfer are or will be delivered to Secured Party, the same are and will be in furtherance of and in addition to the security interest created by virtue of this Agreement.

4.    Validation of Security Interest; FAA Filings. At any time, and at reasonable intervals, upon request of Secured Party, Debtor will (a) give, execute, deliver, file or record, as appropriate, any notice, statement, instrument, document, agreement, or other papers, including without limitation filing this Aircraft Security Agreement with the FAA at Oklahoma City, Oklahoma, that Secured Party may reasonably request in order to create, preserve, perfect, or validate any security interest granted pursuant hereto or to enable Secured Party to exercise and enforce its rights hereunder or with respect to such security interest if requested by Secured party; and (b) permit Secured Party or Secured Party's representatives, at reasonable intervals during normal business hours, to inspect and make abstracts from Debtor's books and records pertaining to the Collateral.

5.    Sale or Transfer of Collateral and Other Assets. Debtor hereby represents and warrants that while there remains an outstanding indebtedness to Secured Party with regard to the Liabilities, Debtor will not sell, transfer, convey, or assign the Collateral without the prior written consent of Secured Party.

6.    Judicial Encumbrances and Defense of Title. Debtor shall not, after the effective date of this Agreement, create any lien, pledge, mortgage, encumbrance, or security interest to be reached by any judicial process relating to the Collateral. Debtor will pay and discharge promptly all taxes, assessments, and governmental charges or levies imposed upon Debtor or Debtor's income or the Collateral, as well as all judgment liens and all claims for labor and materials which, if unpaid, may constitute a lien or charge upon the Collateral, unless and only to the extent that the same shall currently be duly contested in good faith.

7.    Events of Default; Acceleration. An Event of Default shall have been deemed to have occurred: (a) if Debtor fails to pay any of the Liabilities, or any installment or payment due thereunder, as and when due; (b) if any lien is filed against Debtor relating to the Collateral (unless paid or bonded within thirty (30) days); or (c) if a petition in bankruptcy or for any relief under any law relating to the relief of Debtor's or Purchase's indebtedness, readjustment of indebtedness, reorganization, composition, or extension shall be filed, or any proceeding shall be instituted under any such law or by or against Debtor which remains undismissed for a period of sixty (60) days thereafter; or (d) if Debtor defaults in the performance of any of its obligations under this Agreement or any other agreement at any time securing the payment of the Liabilities. Upon the occurrence of an Event of Default and at any time thereafter so long as such Event of Default has not been cured, Secured Party shall have the right, at its option, without notice, to declare all of the Liabilities to be immediately due and payable in full.

8. <u>Rights and Remedies on Default.</u>

8.1 Secured Party shall have the rights and remedies with respect to the Collateral of a Secured Party under the UCC as is from time to time in effect.

8.2 Without limiting the generality of the foregoing, Secured Party, upon the occurrence of an Event of Default, may sell or cause the Collateral to be sold, in one or more sales, at such price and terms as Secured Party may deem best, at public or private sale, upon reasonable notice of intention to sell and of time and place of sale (except under circumstances which require immediate action to preserve or protect the Collateral), and Debtor agrees that, in any case, ten (10) calendar days notice constitutes reasonable notice, and Secured Party or anyone else may be the purchaser of any or all of the Collateral so sold and thereafter hold the same absolutely free from any claim or right of whatsoever kind, including any equity of redemption, of Debtor, any such demand, notice or right and equity being hereby expressly waived and released.

8.3 Secured Party may exercise all of any number of Secured Party's rights and remedies (and they shall be cumulative and not alternative) which Secured Party may have hereunder and under the Notes and any other paper delivered by Debtor in connection with any of the Liabilities, and the UCC or any other law, or otherwise, at any time or times, and in whole or in part.

9. <u>Notices.</u> All notices, consents, approval and waivers made or given by Debtor or Secured Party in connection with this Agreement must be in writing to be effective. All notices required to be given hereunder or by operation of law in connection with the performance or enforcement hereof shall be deemed given upon delivery if delivered personally (which includes notices delivered by messenger, telecopy [including telephone facsimile] or overnight courier) or, if delivered by mail, shall be deemed given three (3) calendar days after being deposited by certified mail in any duly-authorized United States mail depository, postage prepaid. All such notices shall be addressed as stated on the first page of this Agreement or to such other address or addresses as the parties may from time to time specify in writing delivered as provided in this Section.

10. <u>Assignment.</u> Secured Party may not transfer the whole or any part of Secured Party's interest in the Collateral.

11. <u>Non-Waiver.</u> No failure or delay on the part of Secured Party in exercising any power or right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any power or right hereunder preclude other or further exercise thereof or the exercise of any other power or right. No waiver shall be enforceable against Secured Party unless in a writing signed by Secured Party, and shall be limited solely to the one event. The rights, remedies, and benefits herein expressly specified are cumulative and not exclusive of any rights, remedies, or benefits which Secured Party may otherwise have.

12. <u>Waiver by Debtor.</u> Debtor hereby waives protest of all instruments included in or evidencing the Liabilities or the Collateral whether or not relating to such instruments.

13. <u>Severability.</u> In the event any Section or part of this Security Agreement should be adjudged invalid or unconstitutional, such adjudication shall in no manner affect the other Sections, which shall remain in full force and effect as if the Section so declared or adjudged invalid were not originally a part hereof.

14. <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute but one and the same instrument.

15. <u>Construction.</u> Whenever the context of this Agreement requires so, the singular shall include the plural, and the masculine shall include the feminine. This Agreement shall be construed according to its fair meaning and neither for nor against any party hereto, irrespective of who caused same to be drafted. Unless otherwise indicated, all references to sections and subsections are to this Agreement.

16. <u>Captions.</u> The headings and other captions in this Agreement are for convenience of reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement.

17. <u>Time.</u> Time is of the essence of each and every provision of this Agreement.

18. <u>Time Periods.</u> All time periods contained herein shall refer to calendar days, except when specific reference is made to business days. Should any time period contained herein expire on a Saturday, Sunday or legal holiday, then such period shall be extended to the first subsequent day that is not a Saturday, Sunday or legal holiday.

19. <u>Necessary Acts.</u> Each party to this Agreement shall perform all acts and execute and deliver any documents which may be reasonably necessary to carry out the provisions of this Agreement.

20. <u>Governing Law.</u> This Agreement shall be construed and enforced in accordance with the laws of the State of Arizona.

SIGNED as of the date first set forth above.

_____
David C. Reid
                                          Debtor

ALCAR COMPANY

By: _____
Al Eide
                                    Secured Party

- 4 -

2005 NOV -7 PM 3:56