IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      Plaintiff,

v.

      No:    05-CR- 1849 (JH)

**DANA JARVIS,**

      Defendant.

## SEALED DOCUMENT

### DEFENDANT DANA JARVIS' MOTION TO QUASH SUBPOENA OF ROBERT J. GORENCE, ESQ.

Defendant, Dana Jarvis, through counsel of record Joe M. Romero, Jr. and Jody Neal-Post, hereby moves this Court to quash the subpoena served by the United States on Robert J. Gorence, Esq., who was Mr. Jarvis' former counsel in this same case,[1] under Rule 17 of the Rules of Criminal Procedure, and the rights of Due Process, and the Sixth Amendment right to counsel, to counsel of choice, and to have an unadulterated attorney-client relationship. As grounds, counsel states:

I.

### Mr. Gorence Was Mr. Jarvis' Former Counsel in this Case

Filed herewith is a privilege log, *Exh. A*, attached, as per Tenth Circuit law.[2] This log details

---

[1] This document is filed under seal because it has appended to it the privilege log supporting Mr. Jarvis claims of an attorney-client relationship with Mr. Gorence. Furthermore, sealing is necessary as this brief contains references FBI Investigative Reports released only to Mr. Jarvis discussing Mr. Gorence as Defendant Jarvis' "attorney" and the US Marshall's surveillance of Mr. Gorence in the federal court hearing underlying Mr. Jarvis' *Gonzalez-Lopez* claim herein, on January 19, 2006. *Ex. C*, Bates Nos. 8.125, 8.126, 8.167 & 8.168.

[2] *See, e.g., Phalp v. City of Overland Park*, 2002 U.S. Dist. LEXIS 9684, May 8, 2002(attorney's motion to quash a subpoena requesting documents related to his representation of former clients requires attorney to provide a list of the disputed materials and the specific reasons for the privilege claims).

the evidence obtained by counsel that is information exchanged between Mr. Gorence and Mr. Jarvis in late 2005 and early 2006 relevant to this criminal case, in a way that does not disclose the content of the communications. The log demonstrates the evidentiary basis of Mr. Jarvis' assertion of an attorney-client relationship with Mr. Gorence. Among other things, the log describes an FBI agent's reports on surveillance of Mr. Gorence, *because* he was Mr. Jarvis' counsel. It also describes a ten page document by Mr. Jarvis on notebook paper, addressing strategy with regard to the government wiretap evidence, given to Mr. Gorence. It describes a hand-written list of names culled from the indictment and discovery about which Mr. Jarvis made indication as to whether or not he recognized the names. The log describes work product of writing counsel for Mr. Jarvis' CJA counsel before and after Mr. Gorence represented Mr. Jarvis, concerning the ends of the representation that Mr. Gorence had undertaken.

Completely independent of the privilege log, this Court has before it the record in this case, which includes the record of Mr. Gorence filing a motion on behalf of Mr. Jarvis and arguing Mr. Jarvis' wishes to have assets freed to hire counsel of choice. Whether or not the legal ethics expert opinion of Professor Rodney Uphoff, Esq., is considered, the privilege log demonstrates Mr. Jarvis expressed confidences to Mr. Gorence, and had the kind of relationship with Mr. Gorence that Mr. Gorence is legally and ethically required to protect, regardless of whether he was formally hired, ever paid or entered an appearance. "The purpose behind the attorney-client privilege is to preserve confidential communications between attorney and client." *In re Grand Jury Subpoenas (United States v. Anderson),* 906 F.2d 1485, 1492 (10th Cir. 1990). Any privilege resulting between a client and an attorney belongs to the client. *See United States v. International Bhd. of Teamsters,* 119 F.3d 210, 215 (2nd Cir. 1997); *Hunter v. Kenney*, 77 N.M. 336, 339 (1967). The fact of a confidential attorney-client relationship renders a subpoena unreasonable and oppressive under Rule 17. *See generally United States v. Bergeson*, 425 F.3d 1221 (9th Cir. 2005).

## II.

### The Government Cannot Subpoena Mr. Gorence Because It Irrevocably Damages the Sanctity of Attorney-Client Relationships

The Department of Justice recognizes that subpoenas directed at criminal defendants' counsels are damaging to the integrity of our system of justice. The United States Attorneys Manual has dedicated an entire section to the pitfalls involved when such a subpoena is contemplated Section 9-13.410 is entitled "Guidelines for Issuing Grand Jury or Trial Subpoena to Attorneys for Information Relating to the Representation of Clients." The section provides: "Because of the potential effects upon an attorney-client relationship that may result from the issuance of a subpoena to an attorney for information relating to the attorney's representation of a client, the Department exercises close control over such subpoenas." United States Attorney Manual 2000, § 9-13.410(1). "All such subpoenas (for both criminal and civil matters) must first be authorized by the Assistant Attorney General for the Criminal Division before they may issue." *Id.*

The United States Attorneys Manual gives very specific direction to an AUSA considering a defense counsel subpoena, including clearance of such a subpoena with Washington, as per above. In a sub-section entitled "Preliminary Steps," the Manual instructs AUSAs that "When determining whether to issue a subpoena to an attorney for information relating to the attorney's representation of a client, the Assistant United States Attorney must strike a balance between an individual's right to the effective assistance of counsel and the public's interest in the fair administration of justice and effective law enforcement." The instructions require that an AUSA make *every attempt to obtain the needed information some other way*: "To that end, *all reasonable attempts shall be made to obtain the information from alternative sources before issuing the subpoena to the attorney*, unless such efforts would compromise the investigation or case." *Id.* (emphasis added). There is no meaningful distinction between a defense attorney's past and current clients for this section.

The Manual instructs AUSAs to seek in writing the authorization of the Attorney General in Washington, and that the AUSA must send a completed draft of the subpoena to Washington for prior approval. § 9-13.410(4). Approval of DOJ Main in Washington for a defense counsel

3

subpoena is based on the following factors:

> 3. Evaluation of the Request. In considering a request to approve the issuance of a subpoena to an attorney for information relating to the representation of a client, the Assistant Attorney General of the Criminal Division applies the following principles:
>
> * **The information sought shall not be protected by a valid claim of privilege**.
>
> * **All reasonable attempts to obtain the information from alternative sources shall have proved to be unsuccessful**.
>
> * In a criminal investigation or prosecution, there must be reasonable grounds to believe that a crime has been or is being committed, **and that the information sought is reasonably needed for the successful completion of the investigation or prosecution. The subpoena must not be used to obtain peripheral or speculative information.**
>
> * In a civil case, there must be reasonable grounds to believe that the information sought is reasonably necessary to the successful completion of the litigation.
>
> * **The need for the information must outweigh the potential adverse effects upon the attorney-client relationship.** In particular, the need for the information must outweigh the risk that the attorney may be disqualified from representation of the client as a result of having to testify against the client.
>
> * The subpoena shall be narrowly drawn and directed at material information regarding a limited subject matter and shall cover a reasonable, limited period of time.
>
> See also the Criminal Resource Manual at 263.

United States Attorney Manual 2000, § 9-13.410(3). Because it appears that the United States Attorney did not follow this procedure in this case[3], Mr. Jarvis respectfully submits that this Court may choose to employ these factors to determine whether the subpoena should be quashed.[4]

---

[3] As detailed in the *Reply to the Motion to Dismiss*, when counsel for Mr. Jarvis approached AUSA Braun to remind him that Gorence held client confidences from Mr. Jarvis in this case, Mr. Braun responded by letter that this was no concern, and it was his practice to leave it to Mr. Gorence to determine what he could and could not say.

[4] As with the rest of the United States Attorney Manual, this section contains the disclaimer, " 5. No Rights Created by Guidelines: These guidelines are set forth solely for the purpose of internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural; enforceable at law by any party in any matter, civil or criminal, nor do they place any limitations on otherwise lawful investigative or litigative prerogatives of the Department of Justice." § 9-13.410(5).

Applying the United States Attorney's own "principles," the subpoena to Mr. Gorence should be quashed. Any information Mr. Gorence could provide is not "reasonably needed for the successful completion of the investigation or prosecution." *Id.*

The Manual also directs that "The subpoena must not be used to obtain peripheral or speculative information." Yet, counsel has learned, the government intends to call Mr. Gorence in this proceeding to testify to what Mr. Gorence thought about the nature of his relationship with Mr. Jarvis, and whether he really planned to represent Jarvis, this when the existing evidence shows in Mr. Gorence's own filings and statements in court, that should the assets be released, he would enter his appearance. *See Limited Entry of Appearance, appended as Ex. A to Doc 1095.* Mr. Gorence is also expected to be asked by the United States whether, in hindsight, it appears the assets were sufficient to provide enough money to retain Mr. Gorence's firm. These facts, however they might come out, are all of a peripheral and speculative nature, and not legally relevant to the two legal issues that are to be decided by this court.

Mr. Gorence's proffered testimony is not relevant to the threshold question of whether Mr. Jarvis and Mr. Gorence exchanged confidences, as is most often the case when attorneys meet potential clients. The United States admitted in its Rule 44c Motion as to understanding the forfeiture or assets issues herein, "it is simply not possible to neatly separate the issue of guilt from the issue of forfeiture in this case. Because this case involves criminal forfeiture, Mr. McIntyre [Gorence] cannot effectively represent Jarvis on the forfeiture allegation without having a clear understanding of Jarvis' culpability for the underlying crimes and at least some involvement in formulating Jarvis' defense to those charges." *Doc.* 226 at 5. Similarly, no attorney can argue for release of assets for payment for fees without determining whether the source of payment is from an allegedly clean or tainted source, i.e., whether the property has a nexus to the criminal charges, or is "clean" to be used for legal fees. *See e.g. Caplin & Drysdale v. United States*, 491 U.S. 617, 628 (1989)("forfeiture is a substantive charge in the indictment against a defendant.").

If Mr. Gorence asserts he didn't make these inquiries, as his Motion asserted he did not discuss the indictment, potential defenses, nor investigative strategy," then he would merely be

5

substituting violation of one ethical and legal norm for another. *See. Doc.* 1098, ¶ 5; *contra Privilege Log, attch* as Ex. A. As Justice Blackmun opined in his dissent in *Caplin* regarding counsel not sourcing assets and the conflicts likely to result when assets for payment of fees may be subject to forfeiture:

> Perhaps the attorney will be willing to violate ethical norms by working on a contingent fee basis in a criminal case. *See Caplin & Drysdale*, ante, at 633, n. 10. But if he is not -- and we should question the integrity of any criminal-defense attorney who would violate the ethical norms of the profession by doing so -- the attorney's own interests will dictate that he remain ignorant of the source of the assets from which he is paid.
>
> Under § 853(c), a third-party transferee [retained counsel] may keep assets if 'the transferee establishes . . . that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.' The less an attorney knows, the greater the likelihood that he can claim to have been an 'innocent' third party. The attorney's interest in knowing nothing is directly adverse to his client's interest in full disclosure. The result of the conflict may be a less vigorous investigation of the defendant's circumstances, leading in turn to a failure to recognize or pursue avenues of inquiry necessary to the defense. Other conflicts of interest are also likely to develop. The attorney who fears for his fee will be tempted to make the Government's waiver of fee forfeiture the *sine qua non* for any plea agreement, a position which conflicts with his client's best interests.

*Caplin & Drysdale v. United States*, 491 U.S. 617, 649 (1989).

The United States, for its part, is estopped from arguing that what is said 2 years ago regarding the inability of defense counsel to separate discussion of the criminal forfeitability of assets from criminal culpability, was somehow magically accomplished less than three months later by Mr. Gorence. The United States was correct in its Rule 44c motion two years ago showing it fully understands confidences were necessarily passed by Mr. Jarvis to Mr. Gorence.

Further, Mr. Gorence's testimony is not relevant to the question of the denial of counsel of choice under the Sixth Amendment. The entire factual basis this Court needs to make the legal determination of that issue is available without Mr. Gorence's testimony, in the form of the record of this case made on paper and in open court.   Whether in hindsight it appears that there was not

sufficient value to the assets to retain Mr. Gorence's firm, or because Mr. Gorence may have otherwise decided not to take the case, despite his representations in court, is all speculation at this point.  It is simply speculative and legally irrelevant.  What is certain regarding the Sixth Amendment claim is the actual conflict that exists now, as Mr. Gorence could not ethically take on Mr. Jarvis' representation now, having subsequently opted to take Mr. Wilson's retainer, and that is the extent of the facts that are relevant to the matter.

DOJ Main would make the decision to let the AUSA issue a subpoena to a defendant's attorney only if issuing such a subpoena *would not interfere with the attorney-client relationship*: "The need for the information must outweigh the potential adverse effects upon the attorney-client relationship."  The Manual goes on: "In particular, the need for the information must outweigh the risk that the attorney may be disqualified from representation of the client as a result of having to testify against the client."

The Manual states clearly: "The Department's policy applies whenever a subpoena will issue for information relating to representation of a client. Accordingly, authorization must be obtained even for the 'friendly subpoena' where the attorney witness is willing to provide the information, but requests the formality of a subpoena." United States Attorney Manual  2000, § 263.   The Manual provides a form, Section 264 of the United States Attorney Manual, for AUSAs to use when seeking written authorization from Washington to issue a subpoena to a defendant's counsel.   United States Attorney Manual  2000, § 264.

Under the United States' own standards, both in its own Manual and through its Rule 44 pleading, its own arguments as to Mr. Gorence do not support the subpoena it has served. As oppressive and unreasonable, it must be quashed.

### III.

### The Subpoena Must Be Quashed Under Rule 17 Because Mr. Gorence's Testimony Adverse to Mr. Jarvis' Motion to Dismiss Will Irrevocably Damage The Former Attorney-Client Relationship

Federal Rule of Criminal Procedure 17(c)(2) states:

7

> Quashing or Modifying a Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Compliance with this subpoena is both oppressive and unreasonable, and the additional curiosity here is that Mr. Gorence has not sought to quash it to protect his former client, despite the attorney's duty, "upon any attempt to require him to testify or produce documents within the confidence, to make assertion of the [attorney-client] privilege, not merely for the benefit of the client, but also as a matter of professional responsibility." *Hunter v. Kenney*, 77 N.M. 336, 339 (1967) In *United States v. Bergeson*, 425 F.3d 1221 (9th Cir. 2005), the Ninth Circuit held that the trial court *should* quash a subpoena directed at a criminal defendant's former counsel, even thought the factual matter the government sought was not strictly covered by the attorney-client privilege, because to compel a counsel to testify against a criminal defendant would destroy the attorney-client relationship, and chill the critical free-flow of information between attorneys and their clients in criminal cases, if defendants believed that their attorneys could later be compelled to take the stand against them.

"[I]ssuing a subpoena to a lawyer to testify against a client is an unusual step that always raises serious concerns, even absent any privilege." *Bergeson*, 425 F.3d at 1224-25. Even though the attorney in *Bergeson* conceded that the information the government sought was not privileged (it had to do with the fact of communication of a trial date, not the content of any confidences), the Ninth Circuit agreed that enforcing the subpoena would be "unreasonable or oppressive" because of the wedge it would drive between counsel and her former client. "The government is not automatically entitled to subpoena a lawyer to testify against his client merely because the Constitution does not prohibit it and the material is not privileged." *Id.* at 1225-26.

The United States fails to appreciate this point, that even unprivileged information as far as the Rules of Evidence regard privileges, is still entitled to protection by this Court. In *Bergeson*, the AUSA had followed United States Attorney Guidelines and obtained approval for the subpoena. *Id.* at 1223. The court cited to *United States v. Perry*, 722 F.2d 591 (9th Cir. 1983), where "[w]e took note

8

of the Justice Department's policy against such subpoenas that the district court considered in the case at bar, requiring high-level approval for a subpoena of attorneys to testify against their clients and requiring prosecutors to show that the need for the information outweighs the risk that the attorney will be disqualified." *Id.* at 1225.

"A client's confidence in his lawyer, and continuity of the attorney-client relationship, are critical to our system of justice." *Id.* at 1226. The *Bergeson* court held that the Justice Department restraints on issuing subpoenas to lawyers (discussed *infra*) were helpful to its legal decision to quash the subpoena: "Though these Justice Department directives are directions by an employer to its employees and not law, they demonstrate the recognition that the government has given to this fundamental interest. Issuing subpoenas to lawyers to compel them to testify against their clients invites all sorts of abuse." *Id., citing United States v. Perry,* 857 F.2d 1346, 1347-48 (9th Cir. 1988).

Support for the continuing protection of even unprivileged *per se* materials exists in the Tenth Circuit. In *Gonzalez,* our circuit found it so important for attorneys and their criminal clients to be assured of the confidentiality of their communications that even after a criminal case is over it is improper to release detailed billing records (CJA 20 worksheets and supporting documentation) to the public. *United States v. Gonzalez,* 150 F.3d 1246 (10th Cir. 1998). Even though the documentation and billing records were not *per se* covered by the privilege, they did reflect the internal workings of the attorney-client relationship, and thus, the Court of Appeals held, it would be chilling to all attorney-client relationships if they were disclosed to the public. *Id.* If this Court allows Mr. Gorence's testimony pursuant to this subpoena, the practical reality is that the news of his doing will travel like wildfire through the inmate population of the State of New Mexico, effectuating an immediate chill in state wide attorney client trustworthiness in the confidentiality of a defendant's communications with his counsel.

"Without an assurance that the information revealed at CJA hearings and in documents submitted to the court will not be disclosed, a defendant and his or her counsel would be discouraged from fully disclosing the information to the court." *Id.* at 1259 , *citing State v. Ballard,* 333 N.C. 515, 428 S.E.2d 178, 183 (N.C. 1993)"); *also United States v. Huckaby,* 43 F.3d 135, 138 (5th

9

Cir. 1995) The Tenth Circuit held that, after litigation was over, all that could properly be disclosed to the media asserting a first amendment right was the cover form, containing mere totals in categories, none of the worksheets or supporting documentation. *Id.* Certainly Mr. Gorence is not able to disclose more here.

### IV.

### Mr. Gorence Cannot Testify In This Matter Because An Attorney Should Not Be Called As A Witness in the Same Proceedings Wherein He is Both A Prior Attorney for Mr. Jarvis *In This Case* And the Present Attorney For Mr. Wilson

The Restatement (Third) of Law Governing Law. § 108 (2000), provides that "A tribunal should not permit a lawyer to call opposing trial counsel as a witness unless there is a compelling need for the lawyer's testimony." *See also* NMRA 16-307. The Restatement goes on to provide that "A lawyer may not represent a client in a litigated matter pending before a tribunal when the lawyer or a lawyer in the lawyer's firm will give testimony … materially adverse to a former client of any such lawyer with respect to a matter substantially related to the earlier representation, unless the affected client has consented." Restatement (Third) of Law Governing Law. § 108(3).

Mr. Gorence cannot become a witness in this case, even without regard to Mr. Gorence's attorney-client relationship with Mr. Jarvis, because he currently represents a co-defendant in the same case, Mr. Wilson. The analysis is "in two dimensions: one in evidence and one in law." *Cottonwood Estates, Inc. v. Paradise Builders, Inc.,* 128 Ariz. 99, 624 P.2d 296, 299 (Ariz. 1981). Under the Rules of Evidence, Mr. Gorence is a competent witness, although he has no relevant evidence to offer. Rule 403 would prohibit his testimony "because of the dangers and prejudice inherent in the practice" of allowing attorneys dual roles in proceedings, as "it is generally considered a serious breach of professional etiquette and detrimental to the orderly administration of justice for an attorney to take the stand in a case he is trying." *Id.* at 299-300.

*Cottonwood Estates* is again instructive. *Cottonwood* addressed whether a trial court abused its

10

discretion by disqualifying an attorney in a breach of contract action where he could also be a witness. *Cottonwood*, 624 P.2d at 298. The court held that when an attorney is to be called *other than on behalf of his client*, the attorney will be disqualified when there is a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and the testimony is or may be prejudicial to the testifying attorney's client. *Cottonwood*, 624 P.2d at 302 (emphasis added). Applying this standard, the court disqualified the attorney because his testimony would be prejudicial to his client and because he would testify as to his state of mind contrary to his client's interests. *Id.*

Here, the United States specifically seeks to use Mr. Gorence's testimony today as to his state of mind almost two years ago, in contradiction of an existing record of his statements and filings in this court twenty-two months ago *reflecting his state of mind*, and to the detriment of the his then client, Mr. Jarvis. *See also Chappelle v. Cosgrove*, 121 N.M. 636, 639 (1996)(demonstrating the same rule analysis under the New Mexico rules). In *Chappelle*, the court determined that the attorney's testimony was available from other sources, as it is here, and so found it unnecessary to have the attorney testify. *See id* at 639.

> When an attorney persists in acting both as witness and advocate, ordinary procedural safeguards designed to give the parties a full and fair hearing become problematic. For example, the familiar mechanics of question-and-answer interrogation become impossible. The rule excluding witnesses from the courtroom may be invoked, yet the advocate-witness obviously must be allowed to remain. The advocate who testifies places himself in the position of being able to argue his own credibility. This special witness can take the stand, objectively state the facts from personal knowledge, then press home those facts by argument to the jury. Our belief is that an adversary system works best when the roles of the judge, of the attorneys, and of the witnesses are clearly defined. Any mixing of those roles inevitably diminishes the effectiveness of the entire system. The practice not only raises the appearance of impropriety, but also disrupts the normal balance of judicial machinery.

*Cottonwood*, 624 P.2d at 300 internal citations omitted).

That the judicial machinery here is disrupted is obvious. "Sitting at counsel table constitutes sufficient participation" in the proceedings to find it more prejudicial than probative to call an attorney as a fact witness unless "all other sources of possible testimony have been exhausted." *United States v. Torres*, 503 F.2d 1120, 1126, (2nd Cir. 1974). Here, Mr. Gorence sat at *two* counsel tables. The United States' calling of Mr. Gorence to testify concerning Mr. Jarvis, in Mr. Jarvis' capacity as Mr. Gorence's client's co-defendant, aside from his status as former client, is simply too procedurally convoluted.  In *Torres*, the Court warned the United States to "determine whether it wished to take the risk of infecting the record with error." *Id.* at 1126. In *Torres,* the United States assumed the risk and caused reversible error. *Id.* at 1127.

## Conclusion

The United States continues to operate recklessly in regard to Mr. Jarvis' Sixth Amendment rights to counsel, now having gone so far as to subpoena Mr. Jarvis' former counsel as a witness against him.  The United States has never made any showing based in law as to how this is legitimate, citing not one single case in its own support; the United States has made no showing of materiality, no showing of a compelling need for evidence otherwise unavailable, no showing of cognizance of the government's actions on the overall integrity of these criminal proceedings.

The existing paper record is sufficient to inform this Court as to whether Mr. Gorence was intending to enter his formal appearance *but for* the denial of his Motion to Release Assets on January 19, 2006. Likewise, the record amply evidences the actual conflict of interests existing now between Mr. Gorence and Mr. Jarvis. There is no relevant testimony justifying the extraordinary measure of allowing Mr. Jarvis' former counsel to testify adversely to him.  There is, furthermore, nothing extraordinary enough to allow Mr. Wilson's counsel to testify in this proceeding against Mr. Wilson's co-defendant wherein this Court has no record of Mr. Wilson's informed consent as to what is contemplated and its potential for leaving Mr. Wilson without representation. The

complications of even just possibly conflicted representations are evident from this now voluminous record devoted to Mr. Gorence's multiple roles in this case. The situation need not be unnecessarily and further complicated by allowing Mr. Gorence to testify.

  WHEREFORE, Defendant Jarvis moves this Court for an Order of Quashing the subpoena served on counsel Robert Gorence to secure his testimony against Mr. Jarvis.

                Respectfully submitted:

                *Electronically filed 11/19/07*
            By: _____
              Joe M. Romero, Jr.
              Attorney for Defendant Jarvis
              1905 Lomas NW
              Albuquerque, NM 87104
              (505) 843-9776

                *Electronically filed 11/19/07*
            By: _____
              Jody Neal-Post
              Attorney for Defendant Jarvis
              317 Amherst SE
              Albuquerque, NM 87106
              (505) 268-7263

I hereby certify that a true and correct copy of the
foregoing was served on opposing counsel, AUSAs
James Braun and Stephen Kotz, on November 19, 2007.

*Electronically filed 11/19/07*
_____
Joe M. Romero, Jr.

13