IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        No:    05-CR- 1849 (JH)

DANA JARVIS,

        Defendant.

**SEALED DOCUMENT**

**DEFENDANT DANA JARVIS' RESPONSE TO UNITED STATES' MOTION TO STRIKE AFFIDAVIT OF PROFESSOR RODNEY UPHOFF**

Defendant, Dana Jarvis, through counsel of record Joe M. Romero, Jr. and Jody Neal-Post, hereby responds to the United States' Motion to Strike the expert affidavit of Professor Rodney Uphoff. As grounds, Mr. Jarvis responds as follows.

**I. The Government's Argument**

The United States argues that Professor Uphoff's affidavit is usurping the role of the court by providing "legal conclusions," but then never explains where courts are to get learned expertise on the ethics and norms of the profession of law, if not from legal ethics scholars. Secondly, the United States urges that the affidavit is based upon "conjured facts." However, while Professor Uphoff has never seen Mr. Jarvis' privileged documents nor the privilege log filed today at Doc. 1129-2, the facts as "conjured" by Professor Uphoff find support in the log, probably because the "facts" were based upon the common functioning of criminal defense attorneys with their clients. Finally, the United States demonstrated with utter clarity at its paragraph 3 that legal ethics experts are useful because even when attorney duties may appear clear, attorneys may act contrary to clear ethical and legal norms where no published guidance exists. If all were so clear, all attorneys would

1

come to the same conclusion. But the record here belies the clarity, unless the Court finds it to be as perfectly clear as Mr. Jarvis asserts- so clear that this Court could have simply taken judicial notice of the record herein that Mr. Gorence represented Mr. Jarvis for a period of time, and proceeded to resolve the Motion to Dismiss as a matter of law. *See, e.g. Garrick v Weaver*, 888 F.2d 687, 691 (10th Cir. 1989).

## II.

### The Government has Failed to Provide Binding Circuit Authority on Whether a Legal Ethics Expert May Testify, When Such Authority Exists in this Circuit

The United States makes an overbroad assertion that that the law disfavors legal experts. But to the contrary, the courts of the Tenth Circuit have not only permitted, but appear to encourage, the testimony of experts in legal specialties. *See e.g., Simler v. Conner*, 352 F.2d 138 (10th Cir. 1965) ("Two experienced, qualified and outstanding members of the Oklahoma Bar, Mr. Paul Brown and Mr. Gus Rinehart, testified as experts for Conner.")

*Maimi International Reality v. Paytor,* for example, specifically demonstrates the use and approval of a legal ethics expert, the same manner of expert Mr. Jarvis has tendered in Professor Uphoff:

> The expert witness here stated that he was on the state ethics committee for twelve years, on the Colorado Supreme Court Grievance Committee for years, and recited that the Code was a court rule. The witness compared defendant's conduct to particular Code provisions… and concluded that defendant's action was 'substandard' as attorneys in Colorado were guided by the Code. The witness testified that certain specific acts of defendant (and inaction) were 'substandard.'

*Maimi International Reality v. Paytor,* 841 F.2d 348, 352-53 (10th Cir. 1988).

In the extreme, the Tenth Circuit has required a party to present an expert in the specific legal field in which a party asserts that attorney action was outside the scope of proper attorney conduct, if the party is to be found to have properly supported her claim. *See, e.g., Grace United*

*Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006)(bishop with no legal training or expertise was not qualified to give legal opinions); *Fitzpatrick v. Davidson*, 2007 U.S. Dist. LEXIS 71663 (D. Colo. Sept. 26, 2007) (requiring that legal malpractice plaintiff obtain and present a legal expert to survive dismissal).

Prevailing standards in the legal field "must generally be established by expert…testimony," unless "situations may arise in which the proof is so clear and obvious that a trial court could, with propriety, rule as a matter of law on whether the attorney met the standards." *Garrick v Weaver*, 888 F.2d 687, 691 (10th Cir. 1989)( regarding fees), *citing Walters v. Hastings,* 84 N.M. 101, 107 500 P.2d 186, 192 (1972). The *Garrick* court held that the party disputing the attorney had properly presented expert testimony in that case. *Id.* Clearly, Professor Uphoff's proposed testimony falls within the parameters this Circuit has approved and, in some cases, even required.

The United States fails to cite any of this Tenth Circuit law, fails to even make an effort to distinguish these available and binding authorities. Instead, the authorities that the government cites for the over-broad proposition that it is improper to present legal expert testimony actually held that a very different kind of legal expert testimony is improper—attorneys testifying *to a jury* and telling the jury what its deliberations should look like.

The main concern of the authorities cited by the Government is the use of a legal expert to tell a jury how to do its job, something not at issue in this case. This Court can clearly make its own legal determinations, properly utilizing the expert only for his intended purpose- his testimony in a specialized area of expertise as to proper practice norms under the Rules. For example, in *Specht v. Jensen* in this Circuit, the plaintiffs in a civil rights suit called an attorney as an expert in a search and seizure fact pattern. *Specht v. Jensen*, 853 F.2d 805, 806-810 (10th Cir. 1988). The attorney expert was brought in to tell the jury what constituted a "search" under the law, and to tell the jury that a search without a warrant, consent or an exigency was an "illegal" search. *Id.* The key to the jury finding

liability was the jury finding an "illegal" search. *Id.*

This kind of legal expert testimony which did no more than instruct the jury on the law, which is the judge's job, was correctly found improper in *Specht*. *Specht*, 853 F.2d at 806-07. *Specht v. Jensen* was a very narrow ruling, and the Court therein made it clear that it did not reach to other types of legal expertise that did not set invade the jury's responsibilities in deliberations. *Id.* at 809. The court went so far as to provide examples of what proper legal expert testimony would be, including use of the government's legal expert on what weapons must be registered with the ATF, and a defendant's legal expert in securities law. *Id.* "These cases demonstrate that an expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Id.*

Specifically, the Tenth Circuit noted that testimony on a discrete point of law, analogous to medical expert testimony on what constitutes medical malpractice, would be proper. *Id.* at 810. That is exactly the type of testimony proffered by the Defendant in Professor Uphoff in this matter. The government's concerns are wrongly focused upon inapplicable and out of Circuit authorities, ignoring what the Tenth Circuit allows and even requires. Professor Uphoff's testimony is relevant and available to this Court in a hearing on questions requiring legal ethics expertise: when an attorney-client relationship forms, what fiduciary and other duties attach and the professional consequences of the existence of such a relationship, including whether an attorney can testify adversely to his former client in a substantially related matter.

### III.

**The Government's Concerns with the Factual Bases of Professor Uphoff's Testimony Are Mooted by Revelation of the Privilege Log & <u>Addressed Through Cross-Examination</u>**

The government makes no challenge to Professor Uphoff's expertise in this area of the law, as is to be expected given his experience and expertise in the field. What the government does

4

challenge is the factual basis upon which Professor Uphoff bases his opinions, which the government terms "entirely speculative" and facts "as he conjures them." *Doc.* 1123, ¶ 2, pp. 3-4. In fairness, at the time of the Government's filing, it had not yet seen Mr. Jarvis' privilege log, filed just today, which supports many of the factual suppositions made by Professor Uphoff in his affidavit. Certainly had the government viewed the privilege log before filing, its argument would be differently structured. As it is, though, Professor Uphoff's experience and expertise in criminal ethics has borne him out in his "conjuring," as what the existing record had led him to believe likely occurred, appears mostly so in the privileged documentary record. The government's remaining concerns about factual suppositions in the expert's affidavit are best addressed by vigorous cross-examination of the witness, not exclusion.

Federal Rules of Evidence Rule 702 provides that a witness may qualify as an expert by knowledge, skill, experience, training, or education. The courts have been clear that a trial court's role as gatekeeper, as set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), is not intended to serve as a replacement for the adversary system. As the court in *Daubert* stated, "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attack…." *Daubert,* 509 U.S. at 595. Rejection of an expert's testimony is the exception rather than the rule. *Id.*

### IV.

### The Government Misunderstands the Distinction Between the Advocacy of the Defendant's Attorneys & the Neutrality of the Legal Ethics Expert

The government argues that the appointment of Professor Uphoff merely provides another lawyer for Mr. Jarvis, not an expert witness. However, an expert witness plays a far different role in a case than does counsel. Counsel argue the position of the party to the Court, whereas a expert

5

witness is sworn to tell the truth, and is subject to cross-examination.[1]

"Usually, the witness' expertise should be in the area of law in which the error allegedly occurred." 4 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* 226 (4th ed. 1996). "It is reasonable to believe that someone who has written a treatise in the field or has taught the subject for many years is better able to effectively convey the subtleties of the law than are the most competent practicing attorneys." Steven I. Friedland, *Expert Testimony on the Law: Excludable or Justifiable?* 37 U. MIAMI L. Rev. 451, 459 n.49 (1983) (stating that the Federal Rules of Criminal and Civil Procedure have essentially identical rules which allow courts to consider multiple sources, including expert testimony, in determining foreign law questions).

The ethics scholar proposed as an expert witness is not in an attorney-client relationship with Mr. Jarvis. The expert has never seen nor been apprised of the substance of any privileged attorney-client communications between Mr. Jarvis and Mr. Gorence, but has, instead, worked from

---

[1] The government contends that "*Even if* the [C]ourt determines that Mr. Gorence and Jarvis had an attorney-client relationship under the Rules of Professional Conduct, that does not preclude the United States from calling Mr. Gorence to testify about non-privileged facts relating to Jarvis." (Motion to Strike Affidavit of Professor Uphoff at 5.) Yes, it does, most of the time. "Because service of a subpoena on an attorney implicates the attorney-client relationship, and thus raises ethical issues for prosecutors, the United States Department of Justice issued guidelines for federal prosecutors seeking to subpoena an attorney." *Whitehouse v. United States District Court*, 53 F.3d 1349; (1st Cir. 1995); United States Attorney Manual 2000, § 9-13.410(3); § 9-13.410(4). In addition, the American Bar Association (the "ABA") adopted an ethical prohibition against subpoenaing a lawyer/witness without a showing of need, an adversary hearing, and prior judicial approval. See Model Rules of Professional Conduct Rule 3.8. In *United States v. Colorado Supreme Court,* 189 F.3d 1281, 1288-89 (10th Cir. 1999), the Tenth Circuit cited to this as as a matter of good judicial policy.

That the United States may seek testimony outside of strictly evidentiary privileges does not make it proper to have Mr. Jarvis' former counsel testify against him. In *United States v. Bergeson*, 425 F.3d 1221 (9th Cir. 2005), the Ninth Circuit held that a subpoena directed at a criminal defendant's former counsel for not strictly attorney-client privileged testimony should be quashed, because the adverse testimony would destroy the attorney-client relationship, and chill the critical free-flow of information between attorneys and their criminal clients. "[I]ssuing a subpoena to a lawyer to testify against a client is an unusual step that always raises serious concerns, even absent any privilege." *Bergeson,* 425 F.3d at 1224-25. "The government is not automatically entitled to subpoena a lawyer to testify against his client merely because the Constitution does not prohibit it and the material is not privileged." *Id.* at 1225-26.

the pleadings and transcripts in this case. In his expert role, Professor Uphoff is a neutral to the party for whom he is testifying for, and cannot, therefore, justify presenting conclusions that are biased in favor of the party, even though the ethics codes may allow such conduct on the part of advocates. *See id.* Further, because an expert witness on the law testifies under oath, he may testify only to what he believes is true. Testifying to a legal conclusion that the witness does not believe is true or correct is carries a potential of perjury, just as for every non-truthful and testifying witness.

Perhaps the government takes such issue with Professor Uphoff's opinion because the opinion comes down so sharply against the government's unorthodox ethical choices. Yet, Mr. Jarvis has provided the United States and this Court a literal mountain of authority showing the United States' path is not only unsupported in authorities provided by the government, it is so entirely contrary to law and ethics as to be subject to this Court's finding it to be frivolous. The government's remedy here is to properly argue a basis in this Circuit's law. If Professor Uphoff testifies before the court, the government has further remedy in fully cross-examining him as that is how an expert's opinions are to be tested. In contrast, when the court simply hears the parties and retreats to law review articles or books written by that same expert, cross-examination is not available and it is more difficult to attack the reliability of the opinions expressed.

Professor Uphoff will be available for testimony via telephone during the hearing.

### V.

**The Ethics Of Prosecutors Calling Former Counsel Of A Defendant As A Witness Has Been Held By The Tenth Circuit To Be "Somewhat Vague and Tautological," And "Being Subject to Influences As Mutable As 'the lore of the profession,'" Thus <u>Validly Warranting Expert Opinion</u>**

It is recognized under modern practice, such as Federal Rules of Evidence Rule 702, that experts may testify if they can "assist the trier of fact in understanding the evidence or in determining the facts in issue." In certain cases, there may be some uncertainty whether experts can offer much beyond what the judge and lawyers already know. *See generally* Michael Ambrosio &

7

Dennis McLaughlin, *The Use of Expert Witnesses in Establishing Liability in Legal Malpractice Cases*, 61 Temp.L. Rev. 1351 (1988); Charles Ehrdardt, *The Conflict Concerning Expert Witnesses and Legal Conclusions,* 92 W.VA. L. Rev. 645 (1990). This is not, however, such a case.

In *United States v. Colorado Supreme Court*, 189 F.3d 1281 (10th Cir. 1999), the Tenth Circuit Court of Appeals examined this particular very narrow area of the law—the ethical problems involved when a prosecutor attempts to all the former counsel of a defendant as a witness for some legal proceeding other than the grand jury. The case originated from a state rule, Colorado Rule of Professional Conduct 3.8(f), that was adopted into the local rules of the District Court of Colorado. See D. COLO. LR 83.6. The rule restricted prosecutors in criminal proceedings from subpoenaing attorneys to give information about a past or present client, unless the prosecutor reasonably believed that the information was not protected by a privilege, *and* the evidence sought was essential to an ongoing investigation or prosecution, *and* there was no feasible alternative to obtain the information.. The United States Attorney for the District of Colorado argued that the rule was inconsistent with federal law, and must give way under the Supremacy Clause, U.S. Const. art. VI, cl.2.

The Tenth Circuit, in a voluminous opinion, discussed at length the Colorado rule of professional conduct forbidding a prosecutor from calling a party's former counsel as a witness before the grand jury, and the wisdom of such a rule, and its place among the many professional responsibility obligations on counsel. In doing so, the Tenth Circuit noted the many sources of authority on questions of ethics, and the complexity of making any particular determination. *Id.* at 1284-85. *Colorado Supreme Court* recognized that legal and ethical issues are not subject to an easy resolution based on the language of the several applicable codes, and the tension between the various principles in the same code. The court noted the "somewhat vague and tautological descriptions of legal ethics as normative professional conduct, and professional conduct as legal

8

ethics," and that the principles were "subject to influences as mutable as 'the lore of the profession,'" *Id.* at 1285.    Case law was not seen as a sufficient source of additional clarity: "Although the relevant caselaw offers some guidance, it is slightly amiss in responding to our inquiry…." *Id.*

Finally, the Court centered on the public policy value of the rule of ethics at issue, which was designed to protect the attorney-client relationship, and to promote healthy and full disclosure between clients and their attorneys.   The importance of the attorney-client relationship is evidenced by the various privileges which protect it:

> The attorney-client privilege is 'one of the oldest recognized privileges for confidential communication known to the common law' and works to foster the underlying relationship. [citation omitted]. Similarly, the work product privilege fosters ' the general policy against invading the privacy of an attorney's course of preparation [which] is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.' The legal profession's 'ethical obligation' of confidentiality is a corollary to these privileges.

*Id.* at 1287 (citations omitted).

The extended discussion of this very narrow area of the law in *United States v. Colorado Supreme Court,* illustrates that legal ethics is an area of the law wherein expert testimony will be of assistance.  The Circuit cited Justice Brennan for the reality that there is an "interplay of due process in a violation of a rule of ethics," and "'given the traditions of the legal profession and an attorney's specialized professional training, there is unquestionably some room for enforcement of standards that might be impermissibly vague in other contexts.'" *Id.* (citation omitted); *see also* CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 3.3-1 at 87 (1986).

Here, we have the contrast- a factual scenario so perfectly clear that the Defendant believed the Court could take judicial notice of the fact of Mr. Gorence's representation of Mr. Jarvis, and the

9

collorary fact that of course, a defendant's counsel cannot testify adversely to his former client in the very same proceedings. What has become "impermissibly vague" are the grounds upon which the United States continues to argue its unsupportable position to the Court, attempting to obfuscate the simple truth- the United States has no defense to Mr. Jarvis' Motion to Dismiss and so has contrived this charade, forgetting perhaps, that it is also an ethical responsibility to argue *only* upon a good faith basis in law and fact. *See* NMRA 16-303; 16-304.

Professor Uphoff is available to this court under Tenth Circuit precedent to assist in untangling the ethical questions presented historically in this case, and presently in the manufacture of the United States' defense to Mr. Jarvis' Motion to Dismiss.

## Conclusion

WHEREFORE, and based upon the binding Circuit authorities and argument presented above, Defendant Jarvis respectfully requests that this Court allow the affidavit of Professor Uphoff, further requesting that should this Court find the expert testimony of Professor Uphoff of assistance to this Court's execution of its duties, that the testimony of Professor Uphoff be allowed telephonically at hearing November 20, 2007.

Respectfully submitted:

*Electronically filed 11/19/07*
By: _____
Joe M. Romero, Jr.
Attorney for Defendant Jarvis
1905 Lomas NW
Albuquerque, NM 87104
(505) 843-9776

*Electronically filed 11/19/07*
By: _____
Jody Neal-Post
Attorney for Defendant Jarvis
317 Amherst SE
Albuquerque, NM 87106
(505) 268-7263

I hereby certify that a true and correct copy of the
foregoing was served on opposing counsel, AUSAs
James Braun and Stephen Kotz, on November 19, 2007.

*Electronically filed 11/19/07*

_____

Joe M. Romero, Jr.