IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                No:    05-CR- 1849 (JH)

DANA JARVIS,

    Defendant.

SEALED DOCUMENT

DEFENDANT DANA JARVIS' MOTION TO DISQUALIFY HIS FORMER COUNSEL, ROBERT GORENCE, AS COUNSEL FOR CO-DEFENDANT WILSON

Defendant, Dana Jarvis, through counsel of record Joe M. Romero, Jr. and Jody Neal-Post, hereby requests, pursuant to the Chief Magistrate's Order at Doc. 1138, ¶¶ 10 & 11 and the authorities cited herein, that Mr. Robert Gorence, Mr. Jarvis' former counsel in these same proceedings and now a government witness against Mr. Jarvis here as well, be disqualified from further representation of Co-Defendant Wilson in these proceedings. As grounds, Mr. Jarvis states as follows.

Introduction

On November 20, 2007, Chief Magistrate Judge Garcia, sitting by designation, orally entered his findings and conclusions on Co-Defendant Wilson's *Motion to Determine Whether an Alleged Conflict of Interests Exists. Motion* at *Doc.* 1098; *Written Order* at *Doc.* 1138. In summary, Judge Garcia found "indisputable" that an attorney-client privilege existed between Attorney Robert Gorence and Defendant Dana Jarvis. Despite this finding of privilege, Mr. Gorence persisted in testifying adversely to Mr. Jarvis two and a half hours later in hearing before Judge Herrera, wherein Mr. Gorence did not claim Mr. Jarvis' unwaived privilege, Mr. Gorence tendered no consent from Co-Defendant Wilson, and Mr. Gorence was under no court order to testify over Mr. Jarvis' privilege.

1

Chief Magistrate Judge Garcia found, prior to this Gorence testimony, that there was a conflict arising out of Mr. Gorence's sequential representations of Mr. Jarvis and Mr. Wilson in this single proceeding, but that Mr. Jarvis "unreasonably delayed in raising the issue." The Memorandum Order at Doc. 1138 found in pertinent part, at findings paragraphs 10 and 11 that "no party filed a motion to disqualify Mr. Gorence based upon a possible conflict of interest" and "the issue of a possible conflict was not raised for approximately 18 months." The Order found further that Mr. Jarvis "is conversant with the law on conflict of interest and waiver based upon prior experiences in this criminal proceeding." The Court concluded that Mr. Jarvis had no present intention as of an October 11, 2007 correspondence between Mr. Jarvis' current counsel and Mr. Gorence to raise issues of conflict. *Order,* p. 6, ¶ 3.

In light of the adverse testimony of Mr. Gorence against his former client Mr. Jarvis *subsequent to* the Magistrate's ruling, and the information obtained by Mr. Jarvis' counsel since the October 11, 2007 correspondence cited by the Chief Magistrate, Mr. Jarvis now seeks disqualification of Mr. Gorence from these proceedings for an actual conflict of interests rendering maintenance of the integrity of these proceedings constitutionally impossible. "There is no need to add to the challenges of our criminal justice system, or to increase the public's distrust, by making it permissible for lawyers to act in concert with the government to investigate [or testify against] their own clients." *United States v. Sabri*, 973 F. Supp. 134, 148 (D.N.Y. 1996); fundamental fairness protections of the Fifth Amendment.

### Relevant Historical Background

The context of the delay the Chief Magistrate found in raising the issue of conflict here is relevant to understanding this new and timely request for disqualification of Mr. Gorence, based upon his numerous roles in this case as well as his newest role of government witness against his former client. Counsel respectfully suggest the context of this case is more complicated and unusual than the accurate recitation that the delay in raising conflict amounted to "18 months," and therefore provide the following detail of the procedural sequence herein to facilitate understanding

Mr. Jarvis' new request for disqualification of Mr. Gorence.

On May 5, 2006, the date of Mr. Gorence's entry of appearance for the Co-Defendant Wilson in these proceedings, Mr. Jarvis was in solitary confinement in what was later found by this court to be confinement conditions that violated his Sixth Amendment rights to the assistance of his counsel. *Doc.* 654. Mr. Jarvis remained in these constitutionally deficient conditions of confinement until approximately late August 2006, when the District Court found the Sixth Amendment violation and adjusted the confinement conditions. The Court's Order reflects that during this time of solitary confinement, Mr. Jarvis' mental health deteriorated to the point that he was unable to fully participate with his counsel in preparing his defense. *Id.*

Therefore, while true that Mr. Jarvis was familiar with the matter of conflicts in representation when Mr. Gorence entered his appearance, it is also true that it is law of this case that Mr. Jarvis was unable to participate in his own defense due to conditions created by the United States *at the precise time* Mr. Gorence entered for Mr. Wilson. *Doc.* 654. Mr. Jarvis' inability to fully participate in his own defense apparently extended to rendering him unable to be fully cognizant of potential conflict issues of which he would otherwise appear knowledgeable. Mr. Jarvis' inability to fully participate in his own defense extended as well to his inability to communicate the conflict issue to his counsel at that time and for the ensuing months that the deficient confinement conditions continued.

Also relevant to the totality of this finding of implied waiver is the sequence of counsel Mr. Jarvis has had on this case, in that impression might otherwise be that defense counsel simply ignored the events defense counsel had participated in. Additionally, each new counsel for any defendant must establish a relationship of trust with the client, such that matters can be freely communicated, and this relationship building takes time. Following is the sequence of counsel Mr. Jarvis has had in this case, demonstrating that *dis*continuity of counsel has been an obvious factor in

Mr. Jarvis' representation, with a sequence of 7 counsels representing Mr. Jarvis in the past 28 months:

 a. Initial CJA counsel was Ms. Judy Rosenstein, who was counsel for record approximately August 26, 2005 through January 19, 2006 and personally participated as Mr. Jarvis' counsel during Mr. Gorence's involvement at the January 19, 2006 hearing (*See Minutes Doc. 1140, Ex. B, Affidavit*);

 b. Mr. Cliff McIntrye was retained "forfeiture counsel" for approximately three weeks in October 2005, conflicted out by the United States on a Rule 44 motion [Doc. 226], prior to Mr. Gorence's involvement;

 c. Ms. Hope Eckert was CJA appointed legal consultant on forfeiture approximately November 2005 through April 2006, and was legal consultant during Mr. Gorence's involvement. Ms. Eckert had only two personal contacts with Mr. Jarvis, with Ms. Judy Rosenstein on November 7, 2005 and being present at counsel table with Mr. Romero and Mr. Jarvis for the hearing on February 23, 2006. Other than these two occasions, Ms. Eckert had no other contact---in person, on the phone, or otherwise---with Mr. Jarvis. Ms. Eckert's last CJA billing reflects she discontinued billing on this case April 31, 2006;

 d. Mr. Robert Gorence and Mr. Paul Kennedy were counsel in January 2006 for filing a Motion to Release Assets, and never formally terminated their relationship with Mr. Jarvis;

 e. Mr. Joe Romero was "temporary CJA counsel" appointed late January 2006 to file the release of assets motion drafted by Ms. Eckert and continues presently as counsel of record. Mr. Romero was *not* counsel for Mr. Jarvis when Mr. Gorence filed and argued his Motion in January 2006, but picked up as CJA counsel attempting to get the Mora properties released for the hiring of Mr. Gorence in February 2006;

 f. Ms. Sharon Hawk was CJA law clerk approximately May 2006 until December 2006;

g.     Ms. Jody Neal-Post was appointed outside expert on forfeiture, filling Ms. Eckert's previous role, on or about September 1, 2006, and her status was changed to co-counsel *sua sponte* approximately early November, 2006; Ms. Neal-Post remains co-counsel with Mr. Joe Romero at present; and

h.     Ms. Trace Rabern replaced Ms. Hawk as law clerk approximately December 2006, and continues at present.

In contrast, the United States has had the same two counsels, AUSAs James Braun and Steve Kotz, throughout the prosecution. Both of these AUSAs had personal knowledge of Mr. Gorence's appearances in this case in January 2006, while *neither* of Mr. Jarvis' present counsels was yet appointed in January 2006. Despite the AUSAs personal knowledge, the United States made no Rule 44 request at the time Mr. Gorence entered his appearance even though these AUSAs had correctly assumed the government's duty to raise conflicts of which it was aware in its Rule 44 motion filed October 11, 2005.  *See Doc.* 226, p. 3.

Mr. Jarvis' case was stayed in February 2007, due to his expedited and successful Tenth Circuit appeal. *Doc.* 924. On August 28th, 2007 the Tenth Circuit reversed the District Court's erroneous denial of Mr. Jarvis' Motion to Release, and ordered the *lis pendens* on his Mora properties released. On September 7, 2007 Mr. Jarvis reviewed the Tenth Circuit decision with counsel and instructed his counsel to seek Robert Gorence as retained counsel of choice when his assets were released. *See Ex. A, attch.* To undersigned counsels' profound surprise, Mr. Gorence informed on September 20, 2007 of his assertion, in error [*see Doc.* 1138], that he had never been Mr. Jarvis' counsel, nor had ever intended to represent Mr. Jarvis.

Notably, during this period of stay there were no district court hearings in this case involving Mr. Jarvis and Mr. Wilson, from February 2007 until the status conference on October 11, 2007. Therefore, over 13 months of the 18 months the court found Mr. Jarvis was inactive in

relation to the conflict issue are excludable months for delay attributable to Mr. Jarvis, in a case in which Mr. Jarvis has had 7 counsels' sequential representation. Of the five months of arguably unhampered active proceedings herein, the very first day of this period was the first day of Ms. Neal-Post's appointment, so this counsel and Mr. Jarvis had yet to develop a relationship of confidence.

During the status conference on October 11, 2007, Mr. Gorence spoke in contravention of his duty as Mr. Jarvis' former counsel to maintain Mr. Jarvis' confidences unless the client waived or it was ordered by the Court, instead revealing confidences of Mr. Jarvis in the form of Mr. Jarvis' attorney to attorney correspondences to him. Mr. Gorence expressly denied what the Chief Magistrate found to be an "indisputable" attorney-client relationship with Mr. Jarvis, rather than assert Mr. Jarvis' privilege as requested by current counsel. *Transcript of Proceedings*, October 11, 2007.

Due to Mr. Gorence's and the United States' positions that Mr. Gorence had not even provided Mr. Jarvis the short representation that seemed apparent on the record, Mr. Jarvis met with his investigator at counsels' request on October 16, 2007 to provide the details and extent of the relationship that had existed between Mr. Gorence and Mr. Jarvis. Investigator Mares learned from Mr. Jarvis that Mr. Jarvis had given Mr. Gorence a significant amount of confidential documents during the short representation. Mr. Jarvis provided the actual envelope, shown at Ex. 7 of the privilege log appended to Doc. 1129, to Investigator Mares. *See Ex. B, attached, Affidavit of Albert Mares.*

On October 19, 2007, Investigator Mares returned to visit Mr. Jarvis and collected the remaining documents in the privilege log. The documents which had been given to Mr. Gorence in the envelope contained significant defense strategy and confidential financial information. The documents also included the documents shown in the log as Items 22- 31 & 1A-6A, the contents of the "Jarvis, Dana" file which had been maintained by Mr. Gorence in his law office and returned to Mr. Jarvis, sometime after March 2006, according to Mr. Jarvis' affidavit.

Furthermore, it is known that the United States and Mr. Gorence have been in contract regarding Mr. Gorence's former client, Mr. Jarvis, despite Mr. Jarvis' assertion of privilege directly to Mr. Gorence and the United States. The proffer made by the United States of Mr. Gorence's testimony, filed October 22, 2007 as part of the United States' response to Mr. Jarvis' Motion to Dismiss, leads to the inescapable inference of prohibited contacts between Mr. Jarvis' former counsel and the government. Exhibit A, the government's subpoena to Mr. Gorence to testify, filed during the November 20, 2007 hearing, confirms the inference of contacts on the face of the fax cover letter: "per our phone conversation…." It also confirms voluntary compliance with the subpoena, despite the assertion of privilege: "Thank-you for agreeing to honor the subpoena by fax." Mr. Gorence never notified Mr. Jarvis' current counsel that he had been subpoenaed nor moved to quash the subpoena, nor of the contacts being made with the government. Nor has the United States made such disclosures, nor *Jencks* nor *Giglio* disclosures regarding the testimony pursuant to this "friendly" subpoena.

In sum, Mr. Jarvis' counsel came into possession of evidence substantiating the passing of confidences between Mr. Gorence and Mr. Jarvis six days before Mr. Gorence filed his motion to determine conflict. In contrast, Mr. Gorence, the recipient of the confidential communications, was always aware that the communications had passed and the nature of the communications, and was communicating with the United States adverse to Mr. Jarvis' interests, at least as of October 12, 2007, and without notice to Mr. Jarvis.

At present, Mr. Jarvis' counsel have been in possession of the entirety of the physical evidence for merely a month before this filing, during which time Mr. Jarvis has raised the issues in various briefings related to the then pending Gorence Conflict Motion itself, in letters to the United States asserting privilege, as well as in Mr. Jarvis' Reply to his Motion to Dismiss. Mr. Jarvis has been in possession of a copy of the subpoena for a week, since the November 20, 2007 hearing.

**Legal Authority and Argument**

As shown in the detail above, it is not so clear cut that the issue of possible conflict was sufficiently known and unaddressed by Mr. Jarvis for "18 months." What is clear is the fact that there is an actual conflict now, since the Chief Magistrate found attorney-client confidences had passed between Mr. Gorence and Mr. Jarvis and Mr. Gorence has become the government's witness against his former client.

The Chief Magistrate relied upon Restatement (Third) of the Law Governing Lawyers § 122 (2002) in concluding that Mr. Jarvis had "unreasonably delayed" raising the conflict issue. Indeed, in the detailed review of the enormous record here that the Chief Magistrate performed, there reflects a long period of time that passed from Mr. Gorence's entry on Co-Defendant Wilson's behalf and the present, which the Chief Magistrate seemed to have relied heavily upon, and which is given context above. In the only case citing the Chief Magistrate's authority, the Restatement's "implied waiver" is explained as follows:

> Waiver of the conflicts of interest may also be implied by the former client's delay in moving for disqualification. MODEL RULES OF PROF 'L CONDUCT R. 1.9 (1999) ('A former client's delay may act as implied waiver of the conflict ….'); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 cmt. c(i) (2002) (requiring a delay of an 'unreasonable period of time' for waiver to apply). However, mere 'acquiescence of a client without informed consent is tantamount to no consent at all.' *Selby v. Revlon Consumer Products Corp.*, 6 F. Supp. 2d 577, 582 (N.D. Tex. 1997). Thus, for any waiver of conflicts of interest to be effective, the waiver must be made with 'informed consent' based on 'full disclosure.' *Horaist*, 255 F.3d at 268; *Selby*, 6 F. Supp. 2d at 582; TEX. GOV'T CODE ANN. T. 2, Subt. G App. A, Art. 10, § 9, Rule 1.09 n.10 (Vernon 2002); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 (2002). 'Informed consent requires that the client or former client have reasonably adequate information about the material risks of such representation to that client or former client.' RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 122 (2002). *See also FDIC v. United States Fire Ins. Co.,* 50 F.3d 1304, 1314 n.13 (5th Cir. 1995). Finally, full disclosure requires 'disclosure of the circumstances, including the lawyer's intended role [on] behalf of the new client.' MODEL RULES OF PROF'L

>CONDUCT R. 1.9 n.12(1999); TEX. GOV'T CODE ANN. T. 2,
>Subt. G App. A, Art. 10, § 9, Rule 1.09 n.10 (Vernon 2002).

*Woolley v. Sweeney*, 2003 U.S. Dist. LEXIS 8110, 20-21 (D. Tex. 2003).

The time factor in *Woolley v. Sweeney* closely resembles the time span relied upon by the Chief Magistrate. In *Sweeny*, however, the court found implied waiver *in*appropriate, even finding two oral waivers to be ineffective as informed consent. Here, there was no advisement by Mr. Gorence to Mr. Jarvis at all, and no oral or written waiver by either Mr. Jarvis or Mr. Wilson, as Mr. Jarvis' affidavit reflects.

In *Sweeney*, the disqualification motion was filed December 22, 2002 upon information of conflict determined in August 2002. The opposing party responded alleging notice of conflict in a pleading asserting a particular defense filed 13 months prior. The court rejected the implied notice of conflict from 13 months prior and found the former counsel to have been the primary party responsible to raise the conflict as the party in the civil action having the most information upon which to raise the issue, both factually and as the trained lawyers for the former client, a non-lawyer. *But see Doc.* 226, p. 3. *USA Rule 44 Motion* (correctly placing the primary responsibility in the United States in a criminal case). The Court concluded a "significant" "appearance of impropriety" existed, that the impropriety in the representation gave rise to intolerable public suspicion of the judicial process, and finding also that the fact the client was a "sophisticated and knowledgeable" litigant did nothing to support an otherwise uninformed waiver of conflict. The attorneys and their entire firm were disqualified. *Sweeney*, 2003 U.S. Dist. LEXIS 8110, 20-21 (D. Tex. 2003).

*Sweeney,* in the civil context, had nothing to do with the multiple constitutional issues present here, the rights to liberty without deprivation absent due process and the various Fifth and Sixth Amendment rights attendant in the criminal trial process. Further, not only do the constitutional issues weigh heavier for disqualification in this criminal case than in *Sweeny*, *Sweeny* boasts little in comparison to the stunningly unusual facts and procedural posture in Mr. Jarvis' case.

Clearly, the finding of an implied waiver had a basis in law, although on the complete factual record it was a tenuous finding when entered by the Chief Magistrate. Two and a half hours later when Mr. Gorence testified as a government witness against his former client, while simultaneously representing Co-Defendant Wilson herein, a defendant not present in the court room and for whom the record reflects no consent as to Mr. Gorence's status as government witness, the conflict moved from tenuously waiveable to an actual conflict, constitutionally unwaivable in law in this criminal case.

The procedural integrity of the case cannot be maintained here, and is now, in fact, without replication or guidance as to its procedural posture in published federal case law. Mr. Gorence now holds tri-parte roles in these proceedings, being simultaneously Mr. Jarvis' former counsel who received confidences and defense strategies related to this very prosecution; Co-Defendant Wilson's current counsel; and government witness adverse to his former client Mr. Jarvis in the hearings of November 20, 2007.

"The high potential for the [previously identified] nascent conflicts" to ripen into full-blown and unmanageable conflicts that could fatally taint any trial" has materialized. *United States' position in McIntrye Rule 44 Motion, Doc.* 226, p. 5. "These types of concerns obviously could become even more problematic if either defendant wanted to explore cooperating with the United States." *United States' position in McIntrye Rule 44 Motion, Doc.* 226, p. 6. It is procedurally impossible now to conduct these proceedings with predictability, and procedurally impossible for this Court to ensure a constitutionally fair proceeding unless Mr. Gorence is disqualified.

> When an attorney persists in acting both as witness and advocate, ordinary procedural safeguards designed to give the parties a full and fair hearing become problematic. For example, the familiar mechanics of question-and-answer interrogation become impossible. The rule excluding witnesses from the courtroom may be invoked, yet the advocate-witness obviously must be allowed to remain. The advocate who testifies places himself in the position of being able to argue his own credibility. This special witness can take the stand,

10

>objectively state the facts from personal knowledge, then press home those facts by argument to the jury. Our belief is that an adversary system works best when the roles of the judge, of the attorneys, and of the witnesses are clearly defined. Any mixing of those roles inevitably diminishes the effectiveness of the entire system. The practice not only raises the appearance of impropriety, but also disrupts the normal balance of judicial machinery.

*Cottonwood Estates, Inc. v. Paradise Builders, Inc.,* 128 Ariz. 99, 624 P.2d 296, 300 (Ariz. 1981).

One need not look further than the proceedings of November 20, 2007 for examples of the disruption of the "normal balance of judicial machinery" due to Mr. Wilson's counsel's several roles in these proceedings. Mr. Wilson's counsel, a government witness in Mr. Jarvis' Motion to Dismiss hearings, conflated his roles of advocate and witness by addressing the court directly instead of through the party calling him, the United States, as any ordinary witness would, when he sought to advise the Court that he had a flight to catch.  Mr. Wilson's counsel again conflated his roles of witness and advocate by making legal argument in support of the United States *from the witness stand* regarding his legal interpretation of Mr. Jarvis' successful Tenth Circuit appeal, *USA v. Jarvis*, 499 F.3d 1196 (10th Cir. 2007). Such actions create confusion all around as to the structure of the proceedings and status of the participants. *See e.g. Cottonwood; transcript requested, not yet available.*

The United States argued accurately in its Rule 44 Motion and is now estopped from arguing otherwise:

>The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.'  In interpreting that constitutional guarantee, the Supreme Court has made clear 'that there is a correlative right to representation that is free from conflicts of interest.' Wood v. Georgia, 450 U.S. 261, 271 (1981).
>
>For this reason, the United States has a duty to bring to the Court's attention any potential conflicts of interest of which it may become aware. United States v. Tatum, 943 F.2d 370, 380 (4th Cir. 1991). **In turn 'a court when confronted with and alerted to possible conflicts of interest must make adequate steps to ascertain whether the conflicts warrant separate [unconflicted] counsel'** Wheat v. United States, 486 U.S. 153, 160 (1988); see also United

11

>States v. Winkle, 722 F.2d 605, 611 (10th Cir. 1983)('The 'court should itself make an inquiry' whenever 'the trial judge knows or reasonably should know that a particular conflict exists')….
>
>**When the trial court has notice of a potential conflict of interest but fails to make inquiry, the reviewing court will presume a violation of the defendant's Sixth Amendment right to counsel**. See e.g. United States v. Cook, 45 F.3d 388, 393-94 (10th Cir. 1995)(violation of right to counsel when trial court failed to inquire following defendant's possible conflict.

United States' own motion, *Doc.* 226 (emphasis added).

The United States has recognized and put this Court on notice that it is a Sixth Amendment violation of the right to conflict-free counsel for this Court to fail now, after notice, to resolve Defendant Jarvis' claim of a conflict of interest. The United States is correct. It is reversible error.

Mr. Jarvis requests this Court make this determination of disqualification on the existing record and without an evidentiary hearing, as the record is factually and legally complete. If, however, a hearing is determined to be necessary, Mr. Jarvis respectfully requests it be held before December 17, 2007 such that Mr. Romero will be present.

Co-Defendant Wilson's counsel has been provided the Motion and opposes.

The United States opposes the disqualification of Mr. Gorence without the court first holding a hearing, inexplicably contrary to the United States' own assertions of duties and the duties of this Court at its own filing, Doc. 226, in the face of the overwhelming and conclusive evidence in the existing record.

WHEREFORE and based upon the above facts and exhibits submitted herewith, Mr. Jarvis requests that this Court find disqualification of Mr. Jarvis' former counsel, Mr. Gorence, necessary to protect Mr. Jarvis' Sixth Amendment right to conflict free representation.

               Respectfully submitted:

               *Electronically filed 11/29/07*
             By: _____

                                                        Joe M. Romero, Jr.
                                                        Attorney for Defendant Jarvis
                                                        1905 Lomas NW
                                                        Albuquerque, NM 87104
                                                        (505) 843-9776

                                                        *Electronically filed 11/29/07*
By:    _____
                                                        Jody Neal-Post
                                                        Attorney for Defendant Jarvis
                                                        317 Amherst SE
                                                        Albuquerque, NM  87106
                                                        (505) 268-7263

I hereby certify that a true and correct copy of the foregoing was served on opposing counsel, AUSAs James Braun and Stephen Kotz, and Co-Defendant Wilson's counsel on November 29, 2007.

*Electronically filed 11/29/07*
_____
Joe M. Romero, Jr.

13