**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        **Plaintiff,**

v.                                 **Cr.  No. 05-1849 JH**

DANA JARVIS, et al.,

        **Defendants.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on *Defendant Dana Jarvis' Motion for Clarification, Findings, Authorities and Conclusions Regarding Rulings of November 20, 2007* [Doc. No. 1139], as well as his motion to exceed page limits on his reply brief in support of his motion to dismiss [Doc. No. 1112].

In the motion for clarification, Defendant asks for two forms of relief.  First, he seeks clarification of the Court's denial of his ex parte *Motion to Quash Subpoena of Robert J. Gorence* [Doc. No. 1129], which the Court denied on the record at the hearing held November 20, 2007. While the Court sufficiently explained its ruling at the hearing, and while it denied the motion to quash the subpoena on the record at that hearing, the Court offers further explanation here.

In his underlying motion to dismiss the indictment with prejudice [Doc. No. 1076], Defendant argues, *inter alia*, that the United States, through this Court, violated his Sixth Amendment right to counsel of choice by striking his January 9, 2006 [Doc. No. 314][1] motion for

---

[1] The Court did not rule upon the merits of this motion, but rather struck it from the record because it was filed not by Defendant's counsel of record, but rather by attorneys Robert Gorence and Paul Kennedy, who had not entered their appearance for Defendant in this case. Thus, the motion violated Local Rule 83.4.

release of various assets, including several bank accounts and several parcels of real property, including land in Mora County, New Mexico, as well as land in other New Mexico counties. That motion expressly asserts that Mr. Gorence and Mr. Kennedy would represent Defendant if the Court released all of those assets. Defendant claims that the Sixth Amendment violation continued when the Court denied his February 3, 2006 [Doc. No. 338], and May 29, 2006 [Doc. No. 500] motions, which requested the release of only one subset of Defendant's assets—the real property in Mora County, New Mexico. For reasons which Defendant has not explained, he did not pursue the release of the entire list of assets that were the subject of Messrs. Gorence and Kennedy's motion. In his motion to dismiss, Defendant contends that if the Court had granted his subsequent motions to release the Mora County property only, he could have hired his counsel of choice, Mr. Gorence and Mr. Kennedy. On September 1, 2006, Defendant appealed this Court's Order [Doc. No. 654] denying Doc. No. 500. The Tenth Circuit Court of Appeals reversed this Court's decision on grounds not argued before this Court and ordered that the United States remove the notice of lis pendens it recorded against Defendant's property in Mora County. Although he now has assets with which to retain private counsel, Defendant contends that his right to choice of counsel has been irrevocably violated because Mr. Gorence, who entered his appearance for co-defendant Dennis Wilson, is no longer available to represent him. Defendant contends that had the Court granted his motions [Doc. Nos. 338 and 500] in early 2006 to release the Mora County property, he could have retained Mr. Gorence and his right to choice of counsel would have been preserved. Accordingly, Defendant has moved to dismiss the indictment on grounds of irreparable structural error.

In responding to Defendant's motion to dismiss, the United States subpoenaed Mr. Gorence to testify as to whether he and Mr. Kennedy would have accepted the representation of Defendant based upon the release of the Mora County property alone. The United States proffered Mr.

Gorence's testimony that he and Mr. Kennedy would not have proceeded with the representation unless all of Defendant's assets listed in Doc. No. 314 had been released. The Defendant objected to Mr. Gorence's testimony and moved to quash the subpoena on grounds of attorney-client privilege (*see* Doc. No. 1129).[2] At a hearing held November 20, 2007, the Court denied the motion to quash but ruled that the United States could question Mr. Gorence only as to one narrow question that would not reveal confidential attorney-client communications—whether he would have continued with his representation of Defendant if only the Mora County property had been released, or if he would have required the release of all the property listed in Doc. No. 314. *See* Transcript of November 20, 2007 hearing at pp. 26, 40-41. Mr. Gorence's answer to this question is relevant because the Sixth Amendment right to choice of counsel is not limitless; one's chosen counsel must also be willing and available to accept the representation. *See, e.g., Wheat v. United States*, 486 U.S. 153, 159 (1988) ("[A] defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant."); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-625, 109 S.Ct. 2646 (1989) ("[T]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney *whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.*") (emphasis added). In other words, a defendant has no right to "choose" an attorney who is not willing to undertake the representation for financial or other reasons, and there can be no improper

---

[2]Just before the November 20, 2007 hearing, Chief United States Magistrate Judge Lorenzo Garcia ruled that Mr. Gorence and Defendant did engage in privileged communications made for the purpose of securing legal representation; that after their motion for release of assets was stricken, Mr. Gorence and Mr. Kennedy took no further action on behalf of Mr. Jarvis and never entered into an agreement to represent Mr. Jarvis; that Mr. Gorence and Mr. Kennedy offered no legal advice, filed no pleadings, conducted no investigation for Mr. Jarvis and did not correspond with him further; and that neither attorney told Mr. Jarvis that they were representing him.

interference with a defendant's unilateral choice.  Here, the evidence in the record, including Doc. No. 314 and Mr. Gorence's own words at the January 19, 2006 hearing, suggests that as a prerequisite to embarking on the representation of Defendant, Mr. Gorence and Mr. Kennedy required the release of <u>all</u> the property listed in Doc. No. 314, not just the Mora County property.[3] However, Defendant chose not to pursue, either in this Court or in the Tenth Circuit, the release of the various bank accounts and other real property outside of Mora County that ostensibly would have been required in order to retain Mr. Gorence and Mr. Kennedy.  Thus, the question is whether this Court's failure to release only the Mora County property by ordering the United States to cancel the lis pendens—the improper state action to which Defendant points—actually interfered with Defendant's choice of counsel.  Mr. Gorence's testimony as to his intentions on that question bear directly on the issue of a possible Sixth Amendment violation.

In denying the motion to quash the subpoena, the Court also reasoned that Mr. Gorence's testimony on this narrow question would not violate the attorney-client privilege, which prohibits disclosure of confidential communications between attorney and client.  *See In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir. 1990).  As the Court noted at the hearing, the privilege does not foreclose inquiry into the general nature of the lawyer's activities on behalf of the client, the conditions of the lawyer's employment, or any external trappings of the relationship.  Transcript of November 20, 2007 hearing at p. 41.  *See Schein v. Northern Rio Arriba Elec. Co-op., Inc*., 1997 -NMSC- 011, ¶ 19-20, 122 N.M. 800 (attorney-client privilege does not preclude discovery of the instructions given to the attorney by the client, the nature and scope of an attorney's authority, or

---

[3] Indeed, Mr. Gorence expressly stated at the hearing held on January 19, 2006 that he would not undertake to represent Defendant as an appointed attorney under the Criminal Justice Act.

information about the purpose for which an attorney is retained or the steps an attorney took in fulfilling his obligations). Although Defendant argued that he might need to raise privileged communications in cross examination of Mr. Gorence, he also conceded that such communications could be reviewed in camera. *Id*. at p. 21.

Thus, the Court concluded that Defendant had not shown that the subpoena was either unreasonable or oppressive as required by Fed. R. Crim. Pro. 17(c)(2). Mr. Gorence and Defendant no longer have an attorney-client relationship, and therefore Mr. Gorence's narrowly limited testimony as described above could have no adverse impact upon such a relationship. The information to which Mr. Gorence testified was not protected by the attorney-client privilege, as it disclosed no communications between Mr. Gorence and Defendant made for the purpose of obtaining legal advice, and the information is reasonably necessary for the full analysis of Defendant's motion to dismiss. Further, Defendant relies upon *United States v. Bergeson*, 425 F.3d 1221 (9th Cir. 2005), which is distinguishable. In *Bergeson*, the Ninth Circuit upheld the district court's decision to quash a subpoena of the defendant's attorney to testify before the grand jury regarding what she told her client about his trial date. Thus, in that case the attorney was asked to disclose specific discussions with her client, albeit non-privileged discussions. Reasoning that disclosure of such attorney-client communications could undermine confidence in the attorney-client relationship, the Ninth Circuit found that the district court did not abuse its discretion in quashing the subpoena of the attorney. Further, in *Bergeson* the attorney-client relationship was ongoing and almost certainly would have been destroyed had the attorney been required to testify against her client. In this case, by contrast, Mr. Gorence was asked to testify not about his communications with Defendant, but rather only as to his own subjective intentions regarding the prerequisites for continuation of his representation of Defendant. In addition, his attorney-client relationship with

5

Defendant ceased some time ago, unlike the ongoing relationship in *Bergeson*.

Finally, at the hearing the Court observed that fairness demanded that the United States be permitted to ask Mr. Gorence about his intentions with regard to the representation of Defendant. Transcript of November 20, 2007 hearing at p. 26.  Defendant filed a motion to dismiss with prejudice on the grounds that the United States has interfered with his Sixth Amendment right to choice of counsel, resulting in irreparable error.  As such, he has directly raised the question of the nature of his attorney-client relationship with Mr. Gorence, and the question of whether the representation was contingent, or if it would have gone forward but for the actions of this Court and the United States.  At the same time, Defendant wishes to silence Mr. Gorence on that issue and effectively prevent the Court from making the factual findings necessary to that determination. However, the privilege cannot be used as both a shield and a sword in this manner.  *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("The attorney-client privilege cannot at once be used as a shield and a sword.  A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.  Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.") (internal citations omitted).  In  light of the fact that this information could be obtained without revealing privileged communications, the Court concluded that the motion to quash should be denied.

Second, in his motion for clarification Defendant asks the Court to "clarify" its Order of November 20, 2007 [Doc. No. 1135], in which it granted the United States' motion for leave to file a surreply to Defendant's motion to dismiss.  Defendant contends that the Order is unclear because it does not state whether the Court considered Defendant's response to the motion for leave to file

surreply before granting that motion.[4]  In fact, the Court did read and consider Defendant's response before granting the United States' motion for leave to file surreply.  In light of the fact that Defendant had filed a reply brief in support of the motion to dismiss that was in excess of the page limit set by the local rule (as well as a motion for leave to do so, which the Court had intended to grant), and the fact that Defendant's reply raised a new legal issue (which Defendant admits), the Court exercised its considerably wide discretion to grant the motion for leave to file surreply.  *See* D.N.M. LR-Civ. 7.6(b); *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (district court's decision on whether or not to allow surreply reviewed for abuse of discretion).  Defendant's contention that the Court should have cited legal authorities in support of its decision to do so is unfounded.

---

[4] Defendant also complains that "the Court docket e-notice [does not] reflect a link showing the defendant's response to the surreply in the Motion package."  Defendant's language is unclear, so it is difficult to ascertain the nature of his argument.  If Defendant contends that his response brief is not linked to the government's underlying motion for leave to file surreply, then that is a problem of his own making.  Under our current CM/ECF system, it is up to counsel to properly link their responses and replies to the motion to which they pertain.  On the other hand, if Defendant is arguing that the docket text describing the Court's November 20, 2007 Order improperly omitted a citation to his response, then Defendant's argument is simply without merit.  It has always been the Court's practice to link its Orders to the motion only, rather to an entire briefing package.  The docket sheet in this case, as well as docket sheets in cases throughout the District of New Mexico, is replete with examples of this practice.

   **IT IS THEREFORE ORDERED** that *Defendant Dana Jarvis' Motion for Clarification, Findings, Authorities and Conclusions Regarding Rulings of November 20, 2007* [Doc. No. 1139] is **GRANTED IN PART and DENIED IN PART** as explained herein, and *Defendant Dana Jarvis' Motion to Exceed the Page Limit for His Reply to the United States' Response To His Motion to Dismiss for Irreparable Structural Error & Additional Fifth & Sixth Amendment Violations* [Doc. No. 1112] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**