IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                    No:    05-CR- 1849 (JH)

DANA JARVIS,

        Defendant.

<u>SEALED DOCUMENT</u>

**DEFENDANT DANA JARVIS' RESPONSE IN OPPOSITION TO DEFENDANT WILSON'S MOTION FOR RECONSIDERATION OF CHIEF MAGISTRATE GARCIA'S PROPOSED FINDINGS AND RECOMMENDATIONS [Doc. 1145]**

    Defendant, Dana Jarvis, through counsel of record Joe M. Romero, Jr. and Jody Neal-Post, hereby submits this response in opposition to Defendant Wilson's Motion, noting his position was incorrectly stated as "none" due to what appears an unintentional miscommunication between Ms. Oliveros' paralegal and Mr. Jarvis' counsel.

    Mr. Jarvis explains below that Mr. Wilson's Motion is premised on an error of law arising out of Mr. Wilson's misunderstanding of the manner of designation ordered by this Court; consequently the Motion fails on that ground alone. The Motion also fails upon its factual basis, and fails simply in its lack of support in the substantive law of the issues addressed.

    Mr. Jarvis respectfully requests Mr. Wilson's motion be denied without hearing.

**I. Magistrate Judge Garcia Did Not Make Proposed Findings and Recommendations Under § 636(b)(1)(B); He Made A Determination Under § 636(b)(1)(A). Likewise, This Court Does Not Review His Ruling As Mr. Wilson Requests.**

    This Court designated to Chief Magistrate Garcia to "hear and determine" Mr. Wilson's motion under the authority of 28 U.S.C. § 636(b)(1)(A). [Doc. 1125, Order; Doc. 1098 Wilson

1

Motion]. Chief Magistrate Judge Garcia did so hear and determine the motion. [Doc 1138.] Under the statute, this court may revisit the magistrate's determination of the motion if the movant (Mr. Wilson) shows "that the magistrate's [magistrate judge's] order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

Counsel for Mr. Wilson incorrectly asserts that this Court's designation to Chief Magistrate Garcia, and Judge Garcia's determination, resulted in recommended findings and conclusions, not a determination of the Motion. Counsel for Mr. Wilson argues that these findings are factually wrong, assuming they would be reviewed *de novo* by this Court, apparently under 28 U.S.C. § 636(b)(1)(B) and (C). To this end, Counsel for Mr. Wilson appears to re-litigate factual issues Mr. Wilson apparently believes relevant to Judge Garcia's determination. This Court, however, does not conduct such a review of a Magistrate's determinations under 28 U.S.C. § 636(b)(1)(A); *Denver by Board of Water Comm'rs v. ITT Grinnell Corp.*, 603 F. Supp. 259 (D. Colo. 1985) (the provision of the statute allowing for written objections to proposed findings and recommendations does not apply to a Magistrate's determination under § 636(b)(1)(A)). Instead of a *de novo* review of the facts, as urged by Mr. Wilson, this Court under the law of the Tenth Circuit only revisits the Magistrate's final ruling if and when Wilson proves that the ruling was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Mr. Wilson does not argue that Chief Magistrate Judge Garcia's order is "clearly erroneous or contrary to law." Failing to argue it, Mr. Wilson has unsurprisingly failed to establish it.

Nonetheless, to maintain the case record in the face of assertions of fact Mr. Jarvis asserts are simply and sometimes grossly inaccurate, and should it be informative to the Court to have such corrections of record, Mr. Jarvis provides the following. The Court may choose to review Chief Magistrate Judge Garcia's determination point-by-point on a factual level, as advocated by Mr. Wilson's counsel, and Mr. Jarvis suggests that this may be useful to inform the Court's eventual determinations of credibility as to Mr. Wilson's testimony as a witness. Mr. Wilson's Motion does not otherwise advance the purpose for which it was submitted, Mr. Wilson's desire to reverse the Chief Magistrate's detailed Order.

Mr. Wilson's Motion is presented by paragraph and Mr. Jarvis responds by corresponding paragraph for continuity. Mr. Jarvis states as follows:

### A. Response in Opposition to Mr. Wilson's "Background" Section

1.  Mr. Wilson's paragraph one is correct.

2.  Mr. Jarvis disputes the characterizations in Mr. Wilson's paragraph 2. Mr. Gorence did not merely "attend" the January 19, 2006 hearing in this matter. Mr. Gorence sat at counsel table and addressed the court on Mr. Jarvis' behalf, as only a licensed attorney representing another individual may do in our federal courts. Mr. Gorence represented Mr. Jarvis after Ms. Rosenstein had been allowed to withdraw. Mr. Gorence did not "attempt" to file a motion to release assets in open court; he filed the motion on January 9, 2006, ten days before the hearing, of which court records show he was duly noticed in his capacity as counsel filing on behalf of Mr. Jarvis.

It is true that the record herein does not reflect an entry of appearance for either Mr. Gorence or Mr. Kennedy on Mr. Jarvis' behalf, but while true, evidence of an attorney's successful circumvention of a filing rule cannot be used as an affirmative defense; this is akin to a defendant claiming he cannot be cited for driving without "his" driver's license because "he" does not have a driver's license. Equivocal attorney statements as to their representation of a client will be construed toward finding representation. *Vesco v. Snedecker*, 236 F. Supp. 2d 1272, 1275 (D. N.M. 2002).

3.  Mr. Jarvis disagrees with Mr. Wilson's paragraph 3, and states that the evidence of the filing of Doc. 314 and court appearance alone are sufficient to show that Mr. Gorence represented Mr. Jarvis for at least a short period of time and for at least these specific purposes. *See also Doc.* 1109, *Ex.* B, *Affidavit of Professor Rodney Uphoff*; D.N.M. LR-Cr 57.2 (2007) ("In all criminal proceedings, attorneys will comply with the Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico…"). A client "undoubtedly placed confidence and trust in Attorney when they agreed to have him" seek representation and file motions on his behalf. *See* N.M. Bar Advisory Opinion 1984-8; *see also* New Mexico Rule Evidence 11-503(A)(1), Lawyer-client privilege ("a 'client' is a person…*who consults a lawyer or a representative of a lawyer with a view to obtaining*

*professional legal services.*").[1]  "A lawyer may not enter into a contract with a client that makes the lawyer better off for terminating the agreement than pursuing the original ends of the agreement." N.M. Bar Advisory Opinion 1995-2. "As the ABA Comment to Rule 16-107 reminds us, the lawyer's need for income may not allow the lawyer to place the lawyer's interests before the client's interests." *Id.*

    4.    Mr. Jarvis does not dispute paragraph 4.

    5.    Mr. Jarvis does not dispute paragraph 5.

    6.    Mr. Jarvis cannot affirm or deny paragraph 6 but notes that Mr. Wilson has failed to support his assertion with anything like an affidavit and so the record reflects no evidence in support.

    7.    Mr. Jarvis disputes paragraph 7, and will submit his affidavit forthwith.  Upon information and belief, Mr. Jarvis' counsel believes Mr. Jarvis' affidavit will state that Mr. Jarvis was placed in solitary confinement shortly after denial of the Gorence motion on January 19, 2006, and that even so, once in a while Mr. Jarvis saw Mr. Gorence at RCC in the area where Mr. Jarvis was allowed to use a computer for discovery purposes. Mr. Jarvis spoke to Mr. Gorence on occasion in this area.  At some point Mr. Gorence advised Mr. Jarvis that he had spoken to AUSA Braun about a plea range and Mr. Gorence advised Mr. Jarvis of a specific number of years, which Mr. Jarvis understood to have come through Mr. Gorence from AUSA Braun.  Mr. Jarvis understood that Mr. Gorence was awaiting the outcome of the Romero motion to release the Mora properties such that

---

[1] The New Mexico Rule of Evidence goes on to define confidential communication to include "[t]he act of contacting or retaining a lawyer for the purpose of seeking professional legal services":

> (4) a communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication. **The act of contacting or retaining a lawyer for the purpose of seeking professional legal services is a 'confidential' communication if not intended to be disclosed to third persons.**

New Mexico Rule Evidence 11-503(A)(1), Lawyer-client privilege.  In N.M. Bar Advisory Opinion 2000-2, the New Mexico Ethics Committee d that the information contained in detailed legal service bills constitutes 'information relating to the representation of a client' that cannot be disseminated absent client consent. *Id.*

4

retainer money would be available. As the privilege log details demonstrate, Mr. Gorence returned the "Jarvis, Dana" file to Mr. Jarvis through the RCC system after the Romero motion was denied.

8. Mr. Jarvis' counsel admit knowing about the January 19, 2006 hearing, but assumed, without possession of any testamentary or documentary evidence, as Chief Magistrate Garcia apparently found, that the conflict at the time was a waiveable conflict arising from a short representation. Mr. Jarvis' counsel and Mr. Jarvis never discussed the details of the previous Gorence representation prior to Mr. Jarvis' request for the availability of Mr. Gorence on September 7, 2007, after Mr. Jarvis prevailed on his Tenth Circuit appeal.

9. Mr. Wilson's contentions at paragraph 9 are unclear. Mr. Wilson is correct that he filed such a motion and that Mr. Jarvis did not raise any issue of conflict in October 2006, as Mr. Jarvis' counsel were unaware of the conflict. However, conflict issues evolve throughout a proceeding as more evidence is released, discovery is reviewed, and defendants become informants and the like. Potential conflicts tend to ripen into clearer and oftentimes actual conflict from what was previously perceived as only potential conflict. At this pre-trial stage, even a previous and actual waiver is irrelevant as to what should occur now, as the focus is appropriately on the constitutional integrity of the proceedings. *See, e.g., State v. Martinez,* 2001-NMC-0 59, 130 N.M. 744, 31 P.3d 1018 (when a very unusual conflict became obvious at trial and the prosecution chose to pursue a theory that made the impact of the conflict even worse, it became the duty of the government and the trial court to step in and protect the client); *Rael v. Blair,* 2007-NMSC-006; 153 P.3d 657 (court displeasure with prosecution knowledge of the potential conflict early and before defense counsel's knowledge; "Defendant was deprived not only of the knowledge of the conflict but also the opportunity to waive the conflict."), as the prosecutor knew that counsel's former client was the snitch before he was put on the witness list). "Further, we would like to note that prosecutors do have a duty to disclose, earlier rather than later, potential conflicts of interest." *Rael v. Blair*, 2007-NMSC-006, ¶ 27; Bruce A. Green, *Her Brother's Keeper: The Prosecutor's Responsibility When Defense Counsel Has A Potential Conflict of Interest*, 16 Am. J. Crim. L. 323, 335-38 (1989); s*ee Wheat v. United States,* 486 U.S. 153, 161-64 (1988) (The Government's timely disclosure of potential conflicts of

5

interest can avoid problems arising later in trial or retrials); *Mannhalt v. Reed,* 847 F.2d 576, 583-84 (9th Cir. 1988); *United States v. Iorizzo,* 786 F.2d 52, 59 (2d Cir. 1986); *United States v. Mitchell,* 572 F. Supp. 709, 714 (N.D. Cal. 1983).

10.     Mr. Wilson's paragraph 10 is accurate.

11.     Mr. Wilson's paragraph 11 is erroneous.  Mr. Jarvis' counsel began investigating the relationship between Mr. Jarvis and Mr. Gorence after September 7, 2007 at the behest of Mr. Jarvis and made a few contacts with Mr. Gorence before filing the Motion to Dismiss.  It was in mid-September that Mr. Jarvis was advised of Mr. Gorence's position that he had never represented Mr. Jarvis.  Mr. Jarvis' counsel perceived the conflict to be in Mr. Gorence being barred *presently* from representing Mr. Jarvis due to the Wilson representation, rather than the Wilson representation having been a prohibited representation from the outset.

Mr. Jarvis' counsel has no record nor recollection of asking Mr. Wilson's counsel *not* to file a motion regarding conflict.  Accurately, counsel requested in writing that Mr. Gorence not volunteer any information regarding Mr. Jarvis to the United States, as counsel by then understood Mr. Gorence to be speaking to the United States adverse to Mr. Jarvis and without claiming Mr. Jarvis' privilege, also in violation of an attorney's continuing duty of loyalty to even former clients. [*See* Doc. 1098 exhibits];  N.M. Bar Advisory Opinion 1992-2 ("New Mexico law holds that attorneys have no option to waive privilege for a client, and are obligated to assert it.").   N.M. Bar Advisory Opinion 1984-8 (For an attorney to invite the confidence of two adverse co-defendants in the same conspiracy case "discourage[s] clients to place confidence and trust in attorneys and will not enhance the dignity and reputation of the legal profession.").  "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interests of the client with respect to which confidence has been reposed."  N.M. Bar Advisory Opinion 1984-8 (quoting  *E.F. Hutton & Company v. Brown*, 305 F. Supp. 371 (S.D. Tx. 1969) (citations omitted)).

The alleged communication at paragraph 11 regarding "sandbagging" and "jeopardy" never occurred. Mr. Gorence did state something about cross-examination of Mr. Jarvis at trial if he had

been Mr. Jarvis' counsel, just before the status conference on October 11, 2007 commenced.

12. Mr. Jarvis agrees with Mr. Wilson's paragraph 12.

13. Mr. Jarvis agrees that his Doc. 1109 filing was initially made November 5, 2007. Mr. Wilson is in error that it was hand served on Sunday November 18, 2007. In contrast, Mr. Gorence advised Judge Garcia that the Motion was served as it was, on November 15, 2007 TP 11/20/07 (Magistrate Garcia), 5:16-20. Accurately, it was hand served on November 15, 2007 by paralegal Matt Lopez after a series of email exchanges wherein AUSA Braun, Mr. Gorence and Ms. Neal-Post discussed the ex parte e-filing problems and Ms. Neal-Post raised the issue of whether Mr. Gorence could confirm he had received service. Ms Neal-Post advised Mr. Gorence and AUSA Braun that if service had not been made on Mr. Gorence, he should be allowed a continuance until sometime in December. The United States was in agreement. Mr. Gorence's contention that he was deprived time to respond is flatly in error. Mr. Gorence was offered time as a continuance and refused the continuance, only to raise it again before Magistrate Garcia and here now:

> I oppose a continuance to my motion for two reasons: First, I start an SEC hearing on 12/10/07 involving Mr. Riordan that will last a minimum of a week. I have a sentencing in Chicago on 12/19/07 and I am departing with the family for Australia on 12/26/07. In other words, I have no time in the month of December. Second, it is Mr. Wilson's desire to find out with some alacrity if I will remain his lawyer. As such, I will oppose a continuance with regard to my motion.

Correspondence from Mr. Gorence showing November 15, 2007 date and 9:38 am time.

14. Mr. Jarvis disputes Mr. Wilson's allegation that untimely service prohibited his reply, as his response to paragraph 13 above details. A continuance was offered due to the problems in e-filing and service and Mr. Wilson's counsel refused the offer of the continuance which would have allowed time for reply.

15. Mr. Jarvis agrees with paragraph 15.

16. Mr. Wilson correctly presents in his paragraph 16 that Judge Garcia did not allow evidence to be taken at the November 20, 2007 hearing. Neither did Mr. Jarvis present evidence, so

the magistrate provided uniform treatment to the parties. Mr. Wilson waived adequate time offered him to reply, even though offered by Defendant Jarvis and the United States in the form of a continuance. Mr. Wilson *chose* not to present evidence, he was not denied his right to present evidence.

17.     Mr. Wilson's paragraph 17 is an accurate rendition of his counsel's request.

18.     Mr. Wilson's paragraph 18 is complete as to Mr. Wilson, but does not reflect that Judge Garcia did consider Mr. Jarvis' submissions on the same basis as Mr. Wilson's- on the basis of what the defendants had chosen to place in the record.

19.     The paragraph 19 is substantially correct, but the waiver found by Judge Garcia was an *implied* waiver. Mr. Jarvis has never orally nor in writing waived any conflict related to Mr. Gorence.

20.     Mr. Jarvis agrees a hearing was held immediately after by Judge Herrera and that Mr. Gorence was subpoenaed by the United States. Mr. Jarvis disputes that Mr. Gorence was compelled to testify. A subpoena is not a court order and Mr. Gorence did not seek to be relieved from the subpoena, did not join in Mr. Jarvis' Motion to Quash, nor invoke Mr. Jarvis' privilege against compelled testimony. Mr. Gorence instead testified contrary to New Mexico law as adopted by the District of New Mexico over his former client's claim of privilege. 28 U.S.C. § 530B ("An Attorney for the government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State…"); D.N.M. LR-Cr 57.2 (2007) ("In all criminal proceedings, attorneys will comply with the Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico"); *United States v. Colorado Supreme Court,* 189 F3d 1281, (10th Cir. 1999) (State Rule of Professional Conduct binds AUSAs and does not abrogate power of courts to hold attorney to broad normative principles of attorney self-conduct.). Mr. Gorence's primary obligation in the face of an adverse subpoena was to move to quash it, and refuse to violate his ethical responsibilities unless and until he was under court order to testify. "In New Mexico, an attorney may not represent a party in a matter in which the adverse party is that attorney's former client and the subject matter of the two representatives are substantially related." N.M. Bar Advisory Opinion 1984-8 (citing

8

*United Nuclear Corporation v. General Atomic Corporation*, 96 N.M. 155, 629 P.2d 231 (1980)). The determination of whether there is a substantial relationship turns on the *possibility*, or *appearance thereof*, that confidential information might have been given to the attorney, and that information is possibly relevant to the subsequent matter in some way.[2] N.M. Bar Advisory Opinion 1984-8. "The rule ... involves the realistic appraisal of the *possibility* that confidences had been disclosed in the one matter which will be harmful to the client in the other." *Id.* As the ethics committee has held in advisory opinions, a reviewing court is "to restrict the inquiry to the *possibility* of disclosure and not whether actual confidences were disclosed." *Id.* (quoting *Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311 (7th Cir. 1978)). Even then, the District Court could have refused to compel him to testify. The Restatement (Third) of Law Governing Law. § 108 (2000), provides that "A tribunal should not permit a lawyer to call opposing trial counsel as a witness unless there is a compelling need for the lawyer's testimony.").

This explained, the matters here are not simply "substantially related." The case is the very same case.

21. Mr. Jarvis disputes that Mr. Gorence can truthfully testify as he represents at paragraph 21, on the basis of the documentary evidence of communications much to the contrary in Mr. Jarvis' privilege log, and Mr. Jarvis' affidavit and that of Ms. Rosenstein, already in the record.

### B.  Response in Opposition to Objections to Findings of Fact

1. Mr. Jarvis disagrees that the magistrate erred in his Order at para. 3. As noted above, the standard of review is "clearly erroneous or contrary to law." The Magistrate's conclusion of an "indisputable" attorney client relationship is the only possible conclusion commensurate with the Rules of Professional Conduct and Mr. Gorence's actions on behalf of Mr. Jarvis. *See e.g. Affidavit of Uphoff, Doc.* 1109, *Ex.* B.

Mr. Gorence is simply testifying here without submitting an affidavit. There is no citation

---

[2] "[T]he burden of proving that the matter is the same or is substantially related is upon the party asserting disqualification; the burden of proving the absence of actual knowledge of confidential information, or of information which would disadvantage the prior firm's client, is upon the party resisting disqualification." Advisory Opinion 1986-3.

following the assertion that "The communication between Mr. Jarvis and Mr. Gorence was not confidential because there was no attorney client relationship," because it is erroneous in law. The New Mexico Rule of Evidence define a lawyer's client explicitly as one "*who consults a lawyer or a representative of a lawyer with a view to obtaining professional legal services.*" New Mexico Rule Evidence 11-503(A)(1). The rule of privilege goes on to define confidential communication to include "[t]he act of contacting or retaining a lawyer for the purpose of seeking professional legal services":

> (4) a communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication. *The act of contacting or retaining a lawyer for the purpose of seeking professional legal services is a 'confidential' communication if not intended to be disclosed to third persons.*

New Mexico Rule Evidence 11-503(A)(4), Lawyer-client privilege. A client "undoubtedly placed confidence and trust in Attorney when they agreed to have him" seek representation and file motions on his behalf. *See* N.M. Bar Advisory Opinion 1984-8. In New Mexico, ["a]ttorneys are also admonished to avoid even the appearance of impropriety." N.M. Bar Advisory Opinion 1984-8 (citing Code of Professional Responsibility, Canon 9; Model Rules of Professional Conduct, Rule 1.9 (August 2, 1983)).

The nature of an attorney's relationship and his conduct are not viewed subjectively, as the attorney perceived them, but from the point of view of a reasonable client in this client's position. As *Restatement Third* § 59(b) indicates:

> [A] client's approach to a lawyer for legal assistance implies that the client trusts the lawyer to advance and protect the interests of the client. The resulting duty of loyalty is the predicate of the duty of confidentiality.

Indeed, the protection of confidential client information is "a fundamental principle" of the attorney-client relationship because it promotes the trust and open communication that is essential to effective representation. *See* Model Rule 1.6. cmt [2]. Not only is a lawyer obligated not to use or

10

disclose client information except in very limited circumstances, the lawyer must also take positive steps to safeguard confidential client information and the client's interests. *Restatement Third* § 60.2.

As the Restatement (Third) of the Law of Lawyering (2000) § 14 states, a client-lawyer relationship arises when "a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person" and "the lawyer manifests to the person consent to do so." As comment (e) to § 14 observes, "a lawyer may explicitly agree to represent the client or may indicate consent by action, for example by performing services requested by the client."

An attorney-client relationship is created, therefore, when an attorney and client *discuss* that lawyer taking on the representation of the client, exchange information relevant to that representation, and then the lawyer takes steps to achieve that end of assuming representation of the client. *See, e.g., In re S. Anita Ryan*, 760 A.2d 375 (D.C. Ct. App. 1995). In N.M. Bar Advisory Opinion 2000-2, the New Mexico Ethics Committee determined that the information contained in detailed legal service bills constitutes "information relating to the representation of a client" that cannot be disseminated absent client consent. *Id.* If billing information is confidential and privileged, certainly Mr. Jarvis' discussions with Mr. Gorence as a potential client about billings are as well.

Mr. Wilson has presented no argument or authorities as to how the Magistrate was clearly erroneous or contrary to law in finding an "undisputable" attorney-client relationship between Mr. Gorence and Mr. Jarvis. Mr. Wilson did even less to explain how the disputed finding, specifically that the communications were made for the purpose of securing legal representation and were privileged can be other than true. Mr. Jarvis thought it was so evident as to be a fact capable of legitimate judicial notice. Clearly this is a correct finding supported both in the facts of this case and by the authorities cited by the magistrate augmented by Mr. Jarvis above.

2. Mr. Wilson contests the Magistrate's finding at paragraph 5, but submits that his

same argument as to finding 3 applies and he submits no more. The contested finding is "the fact that an attorney-client privilege exists does not resolve the question of whether a conflict arisen."

Mr. Wilson's argument is a mere conclusion- "because there was no attorney-client relationship…, there is no conflict." Without support in law or further explanation of a literal universe of authorities to the contrary of this bald assertion, Mr. Wilson's counsel asserts "Mr. Jarvis understood…." Where exactly does this knowledge of what Mr. Jarvis understood emanate from? It is not a relevant what M.r Gorence as his previous counsel thought, it is what Mr. Jarvis thought. Mr. Jarvis thought Mr. Gorence was his counsel.

Absent clear communication by counsel, a client is likely to believe that the lawyer with whom he *has been* dealing is still his lawyer. As the oft-cited case of *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W. 2d 689 (Minn. 1980) demonstrates, a lawyer has a duty to clearly apprise a client that he will not act as the client's attorney. Any ambiguity in the creation or termination of an attorney-client relationship will be resolved against the attorney because he or she as a professional is in a better position to clarify the situation. Hazard & W. Hodes, *The Law of Lawyering* (2d ed. 1990) § 2.5. An attorney-client relationship is created, therefore, when an attorney and client discuss that lawyer taking on the representation of the client, exchange information relevant to that representation, and then the lawyer takes steps to achieve that end of assuming representation of the client. *See, e.g., In re S. Anita Ryan*, 760 A.2d 375 (D.C. Ct. App. 1995).

The Magistrate understood that after finding the attorney-client relationship, there are other concerns to be addressed before finding conflict. Here, the main concern was obvious- it was not merely a substantial relationship between both representations, it is the *same case*. The Magistrate was clearly correct.

3.   Mr. Wilson also reiterates his objection to the Magistrate's paragraph 6, where the Magistrate found a conflict did exist. A conflict clearly existed, which the authorities above support.

12

## C.  Response in Opposition to Conclusions of Law

The Chief Magistrate found that an attorney-client relationship existed between Mr. Jarvis and Attorneys Gorence and Kennedy and that a conflict exists. Doc. 1138, p. 6.  In the face of contesting this finding, Mr. Wilson asserts that the Magistrate erred because he did not first analyze whether there was an attorney client relationship.  The argument simply does not track, as the exact words of the contested conclusion show the required finding Mr. Wilson asserts is missing.

Again, Mr. Wilson asserts what Mr. Jarvis was thinking, without authority in support for this novel argument, as the authorities cited above fully demonstrate it is the client's or lay person's reasonable viewpoint that matters. The points Mr. Wilson argues further also have no legal support, as payment of fees or execution of a formal contract are unnecessary to establish the attorney client relationship.  *See Professor Uphoff's Affidavit.* Furthermore, even if every single thing Mr. Gorence said were true, a matter hotly disputed in these proceedings, Mr. Gorence would still be found to have been Mr. Gorence's former counsel on the filing of Doc. 314 and the court appearance alone. A random and informal survey of lay people will confirm that; ask anyone in a mall "Does an attorney represent you if he files papers for you and sits with you at the counsel table in federal court and then gets up and tells the judge what he wants the judge to do for you?" Everyone says "yes" to this question. This is the applicable reasonable person standard here.  The "real" reasonable person who matters here is Mr. Jarvis, and he, along with everyone else understood Mr. Gorence's actions to mean Mr. Gorence was his attorney.

Mr. Wilson finds it incredulous that Mr. Jarvis seeks "now" to have Mr. Gorence represent him.  It would be. Mr. Jarvis *sought* to have Mr. Gorence and Mr. Kennedy represent him in January of 2006, understood Mr. Gorence to be awaiting the outcome of Mr. Romero's Motion to Release Funds through March 2006 such that he could be retained, and again after he prevailed at the Tenth

Circuit in September 2007. It was in the "seeking" post appeal that the full extent of the perceived "potential" conflict was revealed to be an actual conflict. Accurately characterized, Mr. Jarvis cannot seek now what is impossible due to an actual conflict, and so he does not seek Mr. Gorence's representation now.

Respectfully, Mr. Wilson misses the point. Mr. Jarvis is not fighting to have Mr. Gorence's representation now and he agrees that it would be an incredulous assertion to ask for counsel who has turned government witness against you. No, Mr. Jarvis is not and has not asked that. The point is that when the Court wrongfully denied motions that were for the purpose of releasing funds for retaining counsel, Mr. Gorence and Mr. Jarvis were prevented from contracting if they had so chosen. Subsequently, and without Mr. Jarvis' consent and during his unconstitutional conditions of confinement, his previous and still desired counsel entered an appearance for a co-defendant. No. Mr. Jarvis no longer would hire Mr. Gorence and this is of no consequence presently. When Mr. Jarvis might have hired him, *but for* the Court's error, is the *point in time that matters* to Mr. Jarvis.

What should matter to Mr. Wilson is the answer to the question of why Mr. Gorence didn't seek a waiver of conflict from Mr. Jarvis to fully protect Mr. Wilson, *even if Mr. Gorence was not certain it was necessary*. Conservatism in regard to the Rules of Professional Conduct simply avoids situations such as this. *See e.g. In re Gorence,* 810 F. Supp. 1234 (D.N.M. 1992). In *Gorence*, "[a]pparently, Gorence [then as AUSA] contacted Brian Ellzey in an effort to persuade Brian to testify against his father." *Id.* at 1235. Mr. Ellzey was a defendant who had been prosecuted and convicted by Mr. Gorence and whom Mr. Gorence knew had counsel. The recurrent thread here is Mr. Gorence's individualized viewpoint of what the Rules allow surrounding the attorney-client relationship and its attendant duties and responsibilities. It is not the majority viewpoint, hence the lack of cited authorities in Mr. Gorence's submissions on Mr. Wilson's behalf.

Mr. Jarvis declines to respond in kind to Mr. Wilson's projections of evil motive and complex strategizing to achieve dismissal of his case. *Gonzalez-Lopez* claims are simple, as Mr. Jarvis' Motion to Dismiss pointed up, as they require no showing of prejudice and were here being asserted on an historic record. Mr. Wilson alleges through Mr. Gorence that Mr. Jarvis has a motive here that he does not, perhaps because Mr. Gorence wrongly assumes he is important to this *Gonzalez-Lopez* violation when, in fact, it is quite the contrary.

Mr. Gorence is irrelevant to establishing the *Gonzalez-Lopez* error, which is why Mr. Jarvis argued Mr. Gorence's testimony would be irrelevant to that claim. The Sixth Amendment violation is already complete. All the Court has yet to determine is the date of violation, January 19, 2006 or March 13, 2006 or continuing, and the remedy in relation to the other claims of error.

It is flattering for Mr. Wilson's counsel to believe in the immense strategic capabilities of Mr. Jarvis' counsel, but counsel can only act on what they are aware of. In October 2006 when Mr. Wilson alleges Mr. Jarvis' counsel "knew" of this Wilson conflict and impliedly, chose to "sandbag" it, Ms. Neal-Post had been appointed for only 7 weeks as forfeiture counsel, not yet co-counsel, and Mr. Romero had had approximately 4 meetings with Mr. Jarvis outside the period of unconstitutional conditions of confinement. *Gonzalez-Lopez* was four months old. The appellate brief wasn't to be filed for another 3 months to come.

Mr. Wilson's objections to Chief Magistrate Garcia's conclusions of law are argument, and curiously devoid of legal support in attacking "law." They are certainly far short of demonstrating the magistrate's order to be "clearly erroneous or contrary to law." Mr. Jarvis' expert affidavit, more than 20 pages in length, has not had a single citation nor authority distinguished nor controverted. The Magistrate's citations in support of his conclusions of law are similarly ignored, rather than distinguished so as to lead the court to what Mr. Wilson believes is clearly erroneous and contrary to law.

As Mr. Wilson has failed to meet his burden to demonstrate where the Magistrate's careful review returned clearly erroneous facts, and Mr. Wilson has failed also to alert the Court to where the Chief Magistrate's conclusions were clearly contrary to law, Mr. Wilson's Motion has failed to even raise enough substantive concern to support his request for a hearing.

WHEREFORE, Mr. Jarvis respectfully requests this Court deny Mr. Wilson's request for hearing as well as his Motion, instead entering its Order adopting Chief Magistrate Judge Garcia's Order at Doc. 1138 as its own.

Respectfully submitted:

*Electronically filed 12/06/07*
By: _____
Joe M. Romero, Jr.
Attorney for Defendant Jarvis
1905 Lomas NW
Albuquerque, NM 87104
(505) 843-9776

*Electronically filed 12/06/07*
By: _____
Jody Neal-Post
Attorney for Defendant Jarvis
317 Amherst SE
Albuquerque, NM 87106
(505) 268-7263

I hereby certify that a true and correct copy of the foregoing was served on opposing counsel, AUSAs James Braun and Stephen Kotz, as well as Mr. Gorence and Ms. Oliveros on December 6, 2007.

*Electronically filed 12/06/07*
_____
Joe M. Romero, Jr.