# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          No. CR 05-1849 JH

DANA JARVIS, et al.,

        Defendants.

## MAGISTRATE JUDGE'S REPORT
## ON ORDER OF DESIGNATION

THIS REPORT is submitted in accord with the Order of Designation [Doc. 1158] filed in this case on December 7, 2007 by United States District Judge Judith Herrera. The undersigned Magistrate Judge was designated to make an *in camera* inspection of certain materials for the purpose of determining whether the materials impeach particular testimony of Robert Gorence ("Gorence"), given at a hearing before Judge Herrera on November 20, 2007. On December 12, 2007, Defendant Dana Jarvis ("Jarvis") made his submission of materials [*see* Doc. 1163] as directed in the Order of Designation.

The parties and the Court are familiar with the facts and procedural history of this case, and this Report will not restate that history at any length, except as necessary to explain the findings and conclusions herein.

**Background and Analysis**

At the November 20 hearing, Robert Gorence testified under subpoena by the United States. Questions posed to Gorence did not touch on confidential communications between Gorence and Jarvis, but rather were carefully limited to the issue of whether Gorence would have undertaken to represent Jarvis if the lien on the Mora, New Mexico property had been released while other assets remained frozen. Gorence testified that he would not have undertaken the defense of Jarvis if the Mora property alone were released, because the value of that one piece of property would not have been sufficient to pay the legal fees for himself and his co-counsel, Paul Kennedy. His testimony on this matter was unequivocal.

Substantial property owned by Jarvis, including real property, bank accounts, and a liquor license, were seized and frozen by the Government following Jarvis's arrest. The issue of whether release of the Mora property alone would have secured the services of Mr. Gorence on behalf of Mr. Jarvis is relevant to Defendant Jarvis's Motion to Dismiss. In that Motion, Jarvis argues that the Court's refusal to release the Mora property, a decision later reversed by the Tenth Circuit, prevented Jarvis from hiring the counsel of his choice – *i.e.*, Gorence – and as a result, his Sixth Amendment right to counsel was violated. Thus, it was critical to determine if Gorence would have represented Jarvis. In no uncertain terms, Gorence stated that he would not have entered an appearance as Jarvis's defense counsel solely for the release of the Mora property. [Transcript of Proceedings before Judge Herrera, November 20, 2007, at p. 57, lines 24-25; p. 58, lines 1-12; hereinafter referred to as "Transcript"].

Joe Romero and Jody Neal-Post, Jarvis's counsel, told the Court at the November 20 hearing that it was impossible to effectively impeach Gorence on his statement, because potentially

impeaching materials were included in Jarvis's privilege log, and revelation of these materials would violate attorney-client confidentiality. Thus, all parties agreed to submit the privilege log documents for *in camera* inspection by a Magistrate Judge for the limited purpose of determining whether Gorence's testimony was impeached by these materials.

The undersigned made a careful inspection of the materials submitted, including the transcript of the November 20 hearing. While the Court takes note of counsel's thoroughness in submitting a number of pleadings already filed in this case, the Court finds them irrelevant to the narrow issue it must determine. In addition, the undersigned Magistrate Judge has already read these pleadings and is familiar with the factual background of the case.[1]

As for the documents indexed in the privilege log and submitted for *in camera* inspection, these materials support, rather than rather than impeach, Gorence's testimony that release of the Mora property alone would not have sufficed to induce him to take on the full defense of Jarvis in this criminal prosecution.

The documents submitted indicate that Jarvis wished to hire Gorence as his criminal defense counsel, although Gorence was not the only attorney he considered hiring at the outset of the case. The materials indicate that Jarvis and Gorence had conversations with respect to the value of his Mora property, as well as the value of other holdings including additional real property, bank accounts and a liquor license. The materials submitted support Gorence's testimony, to the extent

---

[1] Many of Jarvis's submissions include pleadings and affidavits relating to the Motion to Dismiss currently pending before Judge Herrera. *See, e.g.*, Docs. 1076, 1090, 1095, 1111 (and Exs. A, C, and D thereto), 1112, Doc. 1130 (and Attachment thereto), 1154, 1155, 1161 (Attachment thereto), 1163 (Attachment thereto), all of which were submitted to the Court as material for *in camera* inspection. While relevant to the issue before Judge Herrera, they are not relevant to the issue of impeachment involved in this Report.

they establish that communications between Gorence and Jarvis were aimed at ascertaining the value of all of Jarvis's seized property, not only the Mora real estate.

The materials further show that Gorence and Paul Kennedy filed a motion and appeared in Court in an effort to have all of Jarvis's property, not only the Mora real estate, released so that Jarvis could hire Gorence and Kennedy. That motion was stricken by the Court because Jarvis was represented by other counsel, and neither Gorence nor attorney Paul Kennedy was authorized to file pleadings on Jarvis's behalf.

The materials also indicate that some individuals thought that Gorence was Jarvis's attorney at an early point in this prosecution, that is, when Kennedy and Gorence unsuccessfully sought to file a motion to release property on Jarvis's behalf. The materials also contain hearsay statements reflecting on Gorence's status or non-status as Jarvis's counsel. For example, the affidavit of Judith Rosenstein contains hearsay evidence as to Ms. Rosenstein's discussion of what other members of the defense team "understood." [Rosenstein Affidavit, Item 2 in Jarvis Privilege Log, at ¶ 5].

Much of the information submitted for *in camera* review is already part of the record in this case. None of it, whether heretofore public or private, impeaches Gorence's statement that release of the Mora property alone would not have resulted in sufficient funds to enable Jarvis to hire him. The fact that Jarvis wanted to hire Gorence does not establish that Gorence would have taken on full representation if the Mora property alone had been released. Nor do the hearsay statements of various individuals, to the effect that they thought Gorence was Jarvis's attorney, establish that proposition. While it appears that Jarvis did deliver an envelope to Gorence, the contents of the

envelope were concerned primarily with information concerning ownership and value of properties or assets.[2]

Much of the information in the materials submitted goes to the question of whether an attorney-client relationship existed between Gorence and Jarvis. The Court has already found that an attorney-client relationship between Jarvis and Gorence, sufficient to impose on Gorence a duty of confidentiality with respect to any communications between the two which were intended to be confidential, existed at the time Gorence and Kennedy were attempting to achieve release of all of the property. The Court will not re-visit that determination. The existence of such a duty of confidentiality does not bear on the question of whether Gorence would have signed on to defend Jarvis in this case, beyond the release of assets attempt, on the strength of the Mora property alone.

Finally, it appears that there may be a conflict between what Jarvis believes Gorence would have done had the Mora property been released, and Gorence's own unequivocal testimony contradictory to Jarvis's assumption. The Court, as fact finder, would determine that Jarvis's subjective belief as to Gorence's state of mind or intention is not sufficient to rebut Gorence's clear testimony as to his own state of mind.

---

[2]Gorence testified that he did not recall receipt of the envelope. [Transcript, at p. 62, line 23 to p. 63, line 7]. Evidence that Jarvis gave an envelope to Gorence, which contained information on Jarvis's properties and other documents, including a copy of the indictment on which handwritten notes appear dealing solely with the properties and values, does not impeach the key point of Gorence's testimony that he would not have undertaken representation of Jarvis even if the Mora property, by itself, had been released.

**Finding of Fact and Conclusion of Law**

The Court finds that Robert Gorence's testimony at the November 20, 2007 hearing before Judge Herrera, to the effect that he would not have taken on representation of Jarvis if the Mora property alone were released, is not impeached by the materials submitted for *in camera* inspection.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge