**JODY NEAL-POST, ESQ.**
317 Amherst SE
Albuquerque, New Mexico 87106
Phone (505)268-7263 Fax (505) 255-2782
jodynealpost@gmail.com

December 1, 2007

**Via Email at james.braun@usdoj.gov; steve.kotz@usdoj.gov**

AUSA James Braun
AUSA Steve Kotz
PO Box 607
Albuquerque, New Mexico  87103-0607

       Re: *USA v. Dana Jarvis,* Dist Ct 05cr1849

Dear Mr. Braun & Mr. Kotz,

      By this letter, Mr. Jarvis is seeking disclosure of information related to the contacts made by the United States with Mr. Jarvis' former counsel, Mr. Gorence. Before the November 20th hearing, the contacts were implicit in the proffers of Mr. Gorence's testimony made by the United States; revelation of the subpoena, now Exhibit A, Doc. 1140, confirms the actual contacts.

      Mr. Gorence was an attorney who represented Mr. Jarvis for a period of time in the present proceedings and the United States has contacted him without notice to Mr. Jarvis' current counsel and in secret, akin to the ethical violations underlying *In re Gorence. In re Gorence,* 810 F. Supp. 1234 (D.N.M. 1992). In *Gorence,* "[a]pparently, Gorence [then as AUSA] contacted Brian Ellzey in an effort to persuade Brian to testify against his father." *Id.* at 1235. Mr. Ellzey was a defendant who had been prosecuted by Mr. Gorence and whom Mr. Gorence knew had counsel.  The thread is the disregard for the attorney-client relationship and its attendant duties and responsibilities.

      The matter of these contacts is material and relevant to two pending Motions, the Motion to Disqualify and the Motion to Dismiss.  As to the Motion to Dismiss, Mr. Jarvis has established on the record already existing that the United States has made intentional contacts without notice to or the consent of Mr. Jarvis. The Sixth Amendment violation therefore is complete, and the continuing nature of the United States' disregard for Mr. Jarvis Sixth Amendment rights in connection to Mr. Gorence now goes to the determination of the remedy.

      Mr. Jarvis seeks disclosure of:

1.      Dates and durations of all contacts between the United States and Mr. Gorence related to Mr. Jarvis and or his Motion to Dismiss;

    2.      Identification of the party who initiated the contacts;

    3.      Persons present at the meetings or in the phone contacts;

    4.      Communications in any form, letter or email or otherwise regarding or memorializing the communications;

    5.      Rough and or contemporaneous notes of same;

    6.      Communications regarding inducements offered to Mr. Gorence or Mr. Wilson, including plea reductions, withdrawal of enhancements, etcetera, in exchange for the testimony or Mr. Wilson's waiver of conflict, if one exists;

    7.      Any written agreements between Mr. Gorence and or Mr. Wilson and the United States, including drafts as well as final agreements, if existing; and

    8.      Documentation confirming the assertion to the Court that the DOJ subpoena process for obtaining the Gorence subpoena followed.

    The situation created by the United States' use of Mr. Jarvis' former counsel as adverse witness places the United States in an appearance of impropriety at minimum. At most, the transcript is expected to reflect intentional misrepresentations induced by the United States in the face of evidence (the Defendant's privilege log) in the United States' possession to the contrary. Mr. Jarvis is entitled to know the specifics of entire situation, as it all simply makes no sense in the face of the problems caused. Disclosure silences the questions, human and constitutional.

    Certainly, the United States can withdraw Mr. Gorence as a witness and strike his testimony, alleviating much of this problem, as corrective measures go far as to remedies for ethical violations. Such would begin to normalize these wayward proceedings and move the focus back to resolution of the remaining issues in the Motion to Dismiss, sufficient for the relief requested regardless, apart and aside, from the single issue of Mr. Gorence.

    In the alternative of disclosure now, and in line with the United States' unusual tack of using attorney testimony, we can call the AUSAs to testify as to the contacts, which of course, would conflict both out. It seems there are more reasonable routes than this.

    Please think about the possibilities here as the complications multiply. In my letter of almost exactly a year ago, December 1, 2006, I "attached an October 19, 2006 DOJ Memorandum on *Brady* and *Giglio* disclosures, which directs reasoned disclosures by US Attorneys of materials exceeding the scope of facial constitutional requirements, to the companion constitutional end of the prosecutor seeking justice through a fair trial." I trust the memorandum still resonates with the duties of the prosecution.

      Mr. Jarvis will expect a response in writing to maintain the record, but always invites resolution by negotiation, whether as to a single issue or the bigger picture.

                                  Sincerely,

                                    /s/
                              Jody Neal-Post

Cc:    Dana Jarvis
         Joe M. Romero, Jr.