IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 05-1849 JH |
| | ) | |
| DANA JARVIS, et al, | ) | |
| | ) | |
| Defendants. | ) | |

UNITED STATES' RESPONSE TO DEFENDANT DENNIS WILSON'S
MOTION TO DISMISS INDICTMENT ON THE BASIS THAT THE CURRENT
UNITED STATES ATTORNEY HAS BEEN UNCONSTITUTIONALLY APPOINTED

I.    Introduction

The defendant seeks dismissal of the indictment in this case, arguing that this

Court's recent appointment of Gregory J. Fouratt, under 28 U.S.C. § 546(d) ("Section

546(d)"), as United States Attorney for the District of New Mexico, is unconstitutional.[1]

The defendant specifically contends that Mr. Fouratt's appointment offends the

Appointments Clause of the Constitution, Art. II, § 2, cl. 2, and violates the constitutional

principle of separation of powers, both facially and as applied.

Mr. Fouratt's appointment as United States Attorney is constitutionally sound.

The avenue of appointment the defendant is challenging is within the plain language of

---

[1]  The defendant styles his motion as a "Motion to Dismiss Indictment Without Prejudice
on the Basis That the Current United States Attorney has Been Unconstitutionally Appointed."
Throughout this response, the United States will refer to this document as "Defendant's Motion."
The defendant's motion has been joined by co-defendants Greg Hill and Bill Jones.  The United
States is filing this single response with regard to defendants Wilson, Hill, and Jones.

the Constitution, and has been provided for by statute for more than half the life of our Republic.  The challenged statute has withstood constitutional scrutiny.

The defendant's legal arguments appear to flow from a fundamentally flawed understanding of how the statutes governing United States Attorneys actually work.  The primary legal authority upon which the defendant relies to support his errant position –which the defendant urges this Court to adopt– is the dissenting opinion in *Morrison v. Olson*, 487 U.S. 654, 697-734 (1988) (Scalia, J., dissenting), a position which seven of eight Justices rejected.[2]  Further, the defendant has altogether ducked addressing the well-reasoned merits of decisions squarely on point from both the First and Ninth Circuits, which have also both rejected the defendant's arguments.  Finally, even if the defendant were somehow able to overcome the dearth of legal support for the defendant's claims of constitutional infirmities, there is no basis for dismissing the indictment in this case.

## II.    Background

### A.    Statutory Background

Congress has vested the appointment of United States Attorneys in the President of the United States, with the advice and consent of the Senate.[3]  28 U.S.C. § 541(a).  The power to remove a United States Attorney is vested exclusively in the President, who may exercise that power for any reason.  28 U.S.C. § 541(c); *see Parsons v. United States,* 167

---

[2]  Justice Kennedy took no part in the *Morrison* decision.

[3]  The President may also appoint a United States Attorney under the Recess Appointments Clause of the Constitution.  *See* U.S. Const., Art. 2, § 2, cl. 3.

U.S. 324 (1895).

In the event a United States Attorney's position is vacant, an interim United States

Attorney may be appointed.  Congress has divided the responsibility for making interim

appointments between the Attorney General and the district courts, as follows:

>   (a) Except as provided in subsection (b), the Attorney General may appoint
>   a United States attorney for the district in which the office of United States
>   attorney is vacant.
>
>   (b) The Attorney General shall not appoint as United States attorney a
>   person to whose appointment by the President to that office the Senate
>   refused to give advice and consent.
>
>   (c) A person appointed as United States attorney under this section may
>   serve until the earlier of--
>
>   >   (1) the qualification of a United States attorney for such district
>   >   appointed by the President under section 541 of this title; or
>
>   >   (2) the expiration of 120 days after appointment by the Attorney
>   >   General under this section.
>
>   (d) If an appointment expires under subsection (c)(2) of this section, the
>   district court for such district may appoint a United States attorney to serve
>   until the vacancy is filled.  The order of appointment by the court shall be
>   filed with the clerk of the court.

28 U.S.C. § 546.

An appointment under Section 546(d) confers upon the appointee all the powers of

a United States Attorney.  *See In re: Doyle*, 839 F.2d 865, 866 (1st Cir.1988); *see also In

re: Grand Jury Proceedings*, 673 F.Supp. 1138, 1142 (D. Mass. 1987)(appointment under

Section 546(d) results in an "actual, fully empowered United States Attorney.").

Nonetheless, an interim United States Attorney must relinquish the position when a

Presidential appointee becomes qualified, either through the nomination and confirmation

process or through a recess appointment. *In re: Farrow*, 3 F. 112, 116 (C.C. N.D. Ga.

1880) (predecessor statute authorizing judicial appointment of interim United States

Attorney "was not to enable the circuit justice to oust the power of the president to

appoint, but to authorize him to fill the vacancy until the president should act, and no

longer").

      B.    <u>Statutory History</u>

Congress first authorized the judicial appointment of interim United States

Attorneys in 1863, vesting the Circuit Justice with power to fill a vacancy "until an

appointment shall be made by the President, and the appointee has duly qualified, and no

longer." Act to Give Greater Efficiency to the Judicial System of the United States of

March 3, 1863, 12 Stat. 768. In 1898, Congress transferred this authority to the district

courts because "the circuit justice is not always to be found in the circuit and time is

wasted in ascertaining his whereabouts." H. R. Rep. No. 1317, 55th Cong., 2d Sess. 1

(1898).

With the exception of a very brief hiatus from 2006 to 2007, Congress has

continuously and intentionally vested the federal judiciary with a role in interim

appointments of United States Attorneys since the Civil War.

For example, in 1985, the Department of Justice requested that the Attorney

General be authorized to fill vacancies in the Offices of the United States Attorneys, but the statute that Congress adopted the next year only permitted the Attorney General to make a 120-day appointment, while retaining the judiciary's power to make appointments after this 120-day period had expired. *Compare* 131 Cong. Rec. 18247, *with* Pub. L. No. 99-646, Sec. 68, 100 Stat. 3616.

The only brief break in the judiciary's appointment power since the Civil War came in 2006, with the passage of the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub.L.No. 109-177, 120 Stat. 246. That year Congress struck the 120-day limitation of Section 546(c)(2) and struck Section 546(d) altogether. In 2007, however, Congress quickly reversed course and restored both the 120-day limitation upon the Attorney General's authority and the judiciary's power to make appointments of interim United States Attorneys under Section 546(d). *See* Preserving United States Attorney Independence Act of 2007, P.L. 110-34 (June 14, 2007).

C.     Mr. Fouratt's Appointment as United States Attorney

Former United States Attorney David C. Iglesias resigned his position effective February 28, 2007. In the immediate wake of Mr. Iglesias's resignation, First Assistant United States Attorney Larry Gomez became Acting United States Attorney under the Vacancies Reform Act, 5 U.S.C. § 3345(a)(1). On September 26, 2007, Acting Attorney General Peter Keisler appointed Mr. Gomez as United States Attorney pursuant to 28 U.S.C. § 546(a). By law, Mr. Gomez's appointment as United States Attorney expired

after 120 days.  28 U.S.C. § 546(c)(2).  On January 25, 2008, this Court appointed Mr.

Fouratt as United States Attorney pursuant to Section 546(d).

As these changes have occurred, of course, the Assistant United States Attorneys

have continued to carry out their duties, including presenting cases to the grand jury.  In

the instant case, the superseding indictment was returned on April 25, 2006, during Mr.

Iglesias' term as United States Attorney.  The indictment was signed by an Assistant

United States Attorney who was duly appointed to that position by the Attorney General.

As part of the defendant's motion, the defendant does not argue that the return of the

indictment was in any way invalid.

III.    Argument

A.    There is no Appointments Clause violation

1.    The Appointments Clause

The Appointments Clause of the Constitution reads, in pertinent part, as follows:

> [The President] shall nominate, and by and with the Advice and Consent of
> the Senate, shall appoint Ambassadors, other public Ministers and
> Counsels, Judges of the Supreme Court, and all other Officers of the United
> States, whose Appointments are not herein otherwise provided for, and
> which shall be established by Law: *but the Congress may by Law vest the*
> *Appointment of such inferior Officers, as they think proper, in the President*
> *alone, in the Courts of Law, or in the Heads of Departments.*

U.S. Const., Art. II, § 2, cl. 2 (emphasis added).

"On its face, the language of this 'excepting clause' admits of no limitation on

interbranch appointments [of inferior officers].  Indeed, the inclusion of 'as they think

proper' seems clearly to give Congress significant discretion to determine whether it is 'proper' to vest appointment of, for example, executive officials in the 'courts of Law.'" *Morrison*, 487 U.S. at 673. Yet notwithstanding this sweeping constitutional language, the Supreme Court has stated that even the Appointments Clause has limits if Congress decides to vest the appointment power of an "inferior" officer in a branch which creates an "incongruity" between the functions normally performed by that branch and its inter-branch power of appointment. *Id.* at 675-76 (citing *Ex parte Siebold*, 100 U.S. 371, 398 (1880)).

As discussed below, no Appointments Clause concerns are present here because: (1) United States Attorneys, however they are appointed, are "inferior" officers within the meaning of the Appointments Clause, and; (2) the Supreme Court has already concluded that the judicial appointment of prosecutors is not "incongruous" with the functions courts normally perform. *Morrison*, 487 U.S. at 676-77.

### 2.    United States Attorneys as "inferior" officers

The defendant does not contest that United States Attorneys are "inferior" officers under the Appointments Clause. Defendant's Motion at 7, 9. Indeed, the Supreme Court has already said as much. *See Myers v. United States*, 272 U.S. 52, 159 (1926)(stating that *Parsons v. United States*, 167 U.S. 342 (1895), "conclusively establishe[d]" that a "United States attorney [was] an inferior officer"). Moreover, in rejecting Appointments Clause arguments nearly identical to the one the defendant makes here, both the Ninth

Circuit in *United States v. Gantt*, 194 F.3d 987, 998-1000 (9th Cir. 1999) and the First

Circuit in *United States v. Hilario*, 218 F.3d 19, 24-26 (1st Cir.), *cert. denied*, 513 U.S.

1014 (2000) have held that United States Attorneys, and specifically interim United States

Attorneys, are "inferior" officers under the Appointments Clause.

Notwithstanding these authorities and the defendant's concession, the defendant

still attempts to make an Appointments Clause argument on the basis that, as an interim

United States Attorney, Mr. Fouratt is somehow "ultimately supervised" by the Court.

Defendant's Motion at 2 and 6 (describing district judges as "Mr. Fouratt's bosses").  The

defendant's argument is unavailing.

In *Morrison*, the Supreme Court reviewed the constitutionality of the independent

counsel provisions of the Ethics in Government Act of 1978.  It held the independent

counsel to be an "inferior" officer, but demurred on delineating any specific test for

"decid[ing] exactly where the line falls between" principal and inferior officers.

Subsequently, however, in *Edmond v. United States*, 520 U.S. 651, 663 (1997), the

Supreme Court defined an "inferior" officer as one "whose work is directed and

supervised at some level by others who were appointed by Presidential nomination with

the advice and consent of the Senate."

Under the *Edmond* standard, there can be no doubt that the United States Attorney

is an "inferior" officer.  Although only the President can discharge a United States

Attorney, the Attorney General's supervision of United States Attorneys in the modern

8

era is pervasive. This control began in 1861 when Congress first charged the Attorney

General with the "general superintendence and direction duties" over United States

Attorneys. Act of August 2, 1861, Ch. 37, 12 Stat. 185. The Attorney General's control

was consolidated further in 1870, when the Department of Justice was established. Act of

June 22, 1870, Ch. 150, 16 Stat. 164. By 1888, the Supreme Court had observed that the

Attorney General "has the authority, and it is made his duty, to supervise and conduct all

suits brought by or against the United States ... and his district attorneys who do bring

them in the various courts are placed under his immediate supervision and control."

*United States v. San Jacinto Tin*, 125 U.S. 273, 278-79 (1888).

As for the Attorney General's continued control over United States Attorneys in

modern times, the First Circuit's trenchant observations in *Hilario* bear repeating:

> Congress has ceded to the Attorney General plenary authority over
> United States Attorneys. *See* 28 U.S.C. § 519; *see also id.* § 516 (reserving
> litigation on behalf of the United States to officers of the Department of
> Justice "under the direction of the Attorney General"). They are subject to
> much closer supervision by superiors than, say, the judges of the Coast
> Guard Court of Criminal Appeals, whom the *Edmond* Court classified as
> inferior officers "by reason of the supervision [of others] over their work.
> 520 U.S. at 666, 117 S.Ct. 1573. The Attorney General can remove a
> United States Attorney from participation in particular cases whenever she
> believes that it would be "in the interests of the United States" to do so. 28
> U.S.C. § 518(b). Indeed, she is empowered to determine the location of a
> United States Attorney's offices, *see id.* § 545(b), to direct that he file
> reports, *see id.* § 547(5), to fix his salary, *see id.* § 548, to authorize his
> office expenses, *see id.* § 549, and to approve his staffing decisions, *see id.*
> § 550. Under so pervasive a supervisory regime, United States Attorneys
> plainly pass the *Edmond* test. *Accord Gantt*, 194 F.3d at 999-1000.

*Hilario*, 218 F.3d at 25.[4]

In light of the President's sole power of removal, 28 U.S.C. § 541(c), and the Attorney General's "pervasive" supervisory authority over United States Attorneys noted above, it is plain that Section 546(d) is not weighted with the freight that the defendant contends dooms the statute constitutionally. The defendant asks the Court to read far more into the statute than is actually there, notwithstanding that an opposite approach should apply, as "it is the duty of federal courts to construe a statute in order to save it from constitutional infirmities." *Morrison*, 487 U.S. at 682 (citations omitted).

---

[4] The United States Attorney's Manual ("*USAM*") further outlines specific activities of the United States Attorneys that require approval from the Attorney General or his subordinates. A few examples include: 1) recusal of a United States Attorney from a case, *USAM* § 3-2.170; 2) accepting or rejecting settlement offers in many civil cases, *USAM* § 4-3.000, *see also* 28 C.F.R. § 0.160, *et seq.;* 3) initiating a grand jury investigation limited to tax violations, *USAM* § 6-4.120; 4) bringing a RICO prosecution, *USAM* § 9-110.101; 5) obtaining immunity to compel a witness to testify, *USAM* §§ 9-23.130, 9-90.020; 6) obtaining search warrants in specified circumstances, *USAM* §§ 9-13.420, 9-19.220, 9-19.600, 9-90.020, 9-90.210; 7) bringing a federal prosecution based on acts involved in a prior state proceeding, *USAM* § 9-2.031; and 8) seeking the death penalty in a criminal case. *USAM* § 9-10.020. Department of Justice policy sets forth numerous other actions that require consultation with Department of Justice officials. *See generally, USAM* § 3-1.200 (Prior Approvals Chart re: Executive Office); § 4-1.600 (Prior Approvals Chart re: Civil Matters); § 5-2.000 (Prior Approvals Chart re: Environment and Natural Resources Matters); § 6-2.000 (Prior Approvals Chart re: Tax Matters); § 7-2.000 (Prior Approvals Chart re: Antitrust Matters); § 9-2.400 (Prior Approvals Chart re Criminal Matters). Furthermore, with respect to appellate matters, the Solicitor General exercises substantial control over the United States Attorneys. For example, no United States Attorney may prosecute an appeal without obtaining the Solicitor General's permission. *See* 28 C.F.R. § 0.20; *USAM* § 2-1.000. And in Supreme Court matters, the Solicitor General must either conduct the litigation on behalf of the United States, or assign and supervise the matter. 28 C.F.R. § 0.20(a). In addition, the Tax Division, the Civil Rights Division, and the Civil Division of the Department of Justice possess substantial authority to handle appellate litigation in civil matters that fall within their respective areas of responsibility. *See USAM* §§ 2-3.200, 2-3.210 and 2-3.220.

For example, contrary to the defendant's alarmist suggestion,[5] nothing in the plain language of Section 546(d) grants district judges any power to infringe upon the President's prerogative and remove an interim United States Attorney after he is appointed. Likewise, nothing in Section 546(d) confers upon district judges any supervisory power over an interim United States Attorney after his appointment. Rather, these controls plainly remain where they have resided for more than a century, and the defendant cites no authority even remotely suggesting anything contrariwise.

       3.      <u>The implied requirement of "congruity"</u>

The Supreme Court has also expressly rejected the idea that "there is an inherent incongruity about a court having the power to appoint prosecutorial officers." *Morrison*, 487 U.S. at 676. "Indeed," the Court declared, "in light of judicial experience with prosecutors in criminal cases, it could be said that courts are especially well-qualified to appoint prosecutors." *Id.* at 676 n.13.

In fact, in *Morrison*, the Justices specifically cited the district court's authority to appoint interim United States Attorneys under Section 546(d) in rejecting the contention that judicial appointment of prosecutors was "incongruous" with court functions:

> We have recognized that courts may appoint private attorneys to act as prosecutor for judicial contempt judgments. *See Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787 (1987). In *Go-Bart Importing Co. v. United States*, 282 U.S. 344 (1931), we approved court appointment of

---

[5]  As the defendant posits in one of a series of rhetorical questions: "[W]hat if Mr. Fouratt does not toe a perceived judicial line? 28 U.S.C. 546(d) does not bar the District Court from replacing him with its next Judicial choice." Defendant's Motion at 7.

United States commissioners, who exercised certain limited prosecutorial powers. *Id.*, at 353, n. 2 .... In *Siebold,* as well, we indicated that judicial appointment of federal marshals, who are "executive officer[s]," would not be inappropriate. *Lower courts have also upheld interim judicial appointments of United States Attorneys, see United States v. Solomon, 216 F. Supp. 835 (SDNY 1963), and Congress itself has vested the power to make these interim appointments in the district courts, see 28 U.S.C. § 546(d) (1982 ed., Supp. V).*

487 U.S. at 676-77 (emphasis added).

This passage therefore effectively forecloses any argument that the judicial appointment of interim United States Attorneys is "incongruous" under the Appointments Clause.

B.    There is no separation-of-powers violation

1.    A "bifurcated inquiry"

"[T]he doctrine of separated powers serves to eliminate arrangements that threaten to permit one branch either to aggrandize its power or to encroach on functions reserved for another branch." *Hilario*, 218 F.3d at 26 (citing *Mistretta v. United States*, 488 U.S. 361, 381-82 (1989)). "Of course, section 546(d) cannot be said to violate the separation-of-powers principle simply because it requires two branches of government to interact." *Hilario*, 218 F.3d at 26. "[T]he Framers did not require –and indeed rejected– the notion that the three Branches must be entirely separate and distinct." *Mistretta*, 488 U.S. at 380. The Framers' rejection of the absolutist position the defendant urges upon the Court is enshrined in the Appointments Clause itself, which authorizes the Congress to make inter-branch delegations of the inferior officer appointment power "as they think proper." U.S.

Const. Art. II, § 2, cl. 2.

For good reason, Congress's decision to make a limited inter-branch delegation of the power to appoint United States Attorneys is entitled to substantial deference. *See Siebold*, 100 U.S. at 397-98 ("As the Constitution stands, the selection of the appointing power, as between the functionaries named, is a matter resting in the discretion of Congress"). The Framers well understood that changed circumstances would likely result in changed delegations of the appointing power.

The mere fact that the Court appointed Mr. Fouratt as interim United States Attorney thus does not give rise of a separation of powers violation. Rather, the district court's appointment power under Section 546(d) "is not unconstitutional unless Congress has vested in the [judges] powers that are more appropriately performed by other Branches or that undermine the integrity of the Judiciary." *Mistretta*, 488 U.S. at 385. In *Hilario*, the Court interpreted this language from *Mistretta* to mean that courts must therefore engage in a "bifurcated inquiry":

> First, we must ask whether Congress, in vesting the power to appoint interim United States Attorneys in the district court, conferred upon the judges a power that usurped the prerogatives of another branch of government and, thus, 'effected an unconstitutional accumulation of power within the Judicial Branch.' [*Mistretta*, 488 U.S. at 383.] Second, we must ask whether the exercise of the power to appoint someone somehow impedes the proper functioning of the Judicial Branch. *See id.*

*Hilario*, 218 F.3d at 27.

Here, the defendant has failed to satisfy either side of the "bifurcated inquiry."

2.     The lack of any unconstitutional accumulation of power within the
Judicial Branch

"[O]ur system of government rests on the assumption that officers can be independent of their appointers." *Hilario*, 218 F.3d at 27 (citations omitted). "Were this not so, all interbranch appointments would be barred."[6] The independence of an interim United States Attorney from the district court is not merely customary, but is protected by a series of statutes preserving the executive power. While Section 546(d) gives the district court a limited power of appointment, it does not grant the district court any authority to supervise or to remove an interim United States Attorney. Neither does Section 546(d) give the district court any power to influence how the appointee will enforce the laws. "Under [these] circumstances, it is unreasonable to think that merely making an interim appointment impermissibly entangles judges in the functioning of the Executive Branch." *Hilario,* 218 F.3d at 27.

Section 546(d) is a single thread of a statutory fabric clothing the executive with the resources to prosecute offenses against the laws of the United States. The fabric as a whole enfolds judicially appointed interim United States Attorneys within the Executive Branch. For example, as stated above, even after the judicial appointment of an interim United States Attorney, the President retains the power to override the district court's appointment and remove the appointee. *See* 28 U.S.C. § 541(c). The President further

---

[6] This is undoubtedly one reason why the absolutist position the defendant advocates, as arguably encapsulated in Justice Scalia's dissent in *Morrison*, did not become the law of the land.

retains the power to nominate a United States Attorney whose confirmation by the Senate automatically will oust the interim appointee. *See* 28 U.S.C. § 546(d). Moreover, the Attorney General has the power to divest the interim United States Attorney of authority to act in any given case. *See* 28 U.S.C. § 518. Thus, notwithstanding the judicial appointment, "insofar as interim United States Attorneys are concerned, the Executive Branch holds all the trump cards ... [as t]hese features make it crystal clear that the district court's appointment of an interim United States Attorney is not an unconstitutional encroachment on executive authority." *Hilario*, 218 F.3d at 27-28.

The statutory framework setting out the relationship among United States Attorneys, the Attorney General, and the President thus ensures that a judicially appointed interim United States Attorney remains under the supervision and control of the Executive Branch. Because judicially appointed interim United States Attorneys remain under the supervision and control of the Executive Branch, Congress's decision to grant a limited power of appointment of United States Attorneys to the district courts does not result in an unconstitutional accretion of power in the Judicial Branch. Section 546(d) accordingly comports with the first part of the bifurcated inquiry suggested by *Mistretta* and mandated by *Hilario*.

      3.    <u>The lack of impediment to the proper functioning of the Judicial Branch</u>

The second part of the bifurcated inquiry asks whether the power to appoint the interim United States Attorney impedes the proper functioning of the Judicial Branch. As

previously noted, "the Supreme Court has indicated in straightforward terms that having judges appoint prosecutors will not, in and of itself, impugn the judiciary's institutional integrity." Rather, the First Circuit found that the judicial appointment of interim United States Attorneys is not incompatible with judicial functions. *Hilario*, 218 F.3d at 28 (citing *Morrison*, 487 U.S. at 676-77 (rejecting claim of inherent incongruity for Appointments Clause purposes and citing Section 546(d) in support thereof)). The *Morrison* court further observed in this connection "the longstanding judicial practice of appointing defense attorneys for individuals who are unable to afford representation." *Id.* at 677 n.14; *see also* 18 U.S.C. § 3006A(g)(2)(A) (providing for appointment of Federal Public Defender by Court of Appeals of the Circuit). The First Circuit commented that "the appointment of defense counsel for indigent criminal defendants would seem to be a necessary step for judges to take in order to provide for fair process. That rationale applies to the appointment of interim United States Attorneys with equal force." *Hilario*, 218 F.3d at 28-29.

Far from impeding the proper functioning of the Judicial Branch, "[i]t is in keeping with the institutional integrity of the judiciary that judges, faced with an indefinite vacancy in the office of United States Attorney, seek out a . . . lawyer to represent the government." *Hilario*, 218 F.3d at 29. An interim United States Attorney appointed by the Attorney General may serve no longer than 120 days. 28 U.S.C. §§ 546(a) and (c)(2). The district court's limited power of appointment takes effect only upon the expiration of this 120 day

16

period.  28 U.S.C. § 546(d).  In the absence of Executive Branch action, the court's

exercise of the appointment power "assists the functioning of the court: at bottom, it

assures the skillful processing of cases in which the United States is a party."  *Hilario*, 218

F.3d at 29.  *Compare*, *Mistretta*, 488 U.S. at 407-08 (judges' participation in Sentencing

Commission assists the functioning of the court); *see also Young v. United States ex rel.*

*Vuitton et Fils*, 481 U.S. 787, 800-01 (1987) (when Executive Branch defaults, district

court has authority to appoint prosecutor for contempt proceedings "to preserve respect for

the judicial system itself").

　　　Because the judicial appointment of interim United States Attorneys results

neither in an unconstitutional accumulation of power in the Judicial Branch, nor impedes

the proper functioning of that branch, Section 546(d) is consistent with the doctrine of

separation of powers.  Defendant's Motion should accordingly be denied.

　　　　　　　4.　　　The failure of the defendant's "as applied" claim

　　　The defendant asserts that Section 546(d) is "patently unconstitutional" "on its face,

and as applied in this case...."  Defendant's Motion at 4.  By way of "as applied"

challenge, the defendant notes that the Court appointed Mr. Fouratt on January 25, 2008,

and argues that "Mr. Fouratt is now exercising the fundamental power of the Executive to

prosecute alleged violations of federal law, yet has been appointed by, and in essence is

accountable to the Article III judges who constitute the United States District Court for the

District of New Mexico."  Defendant's Motion at 1-2.  The defendant's "as applied" claim

fails as a matter of law, because, as described above, Mr. Fouratt is accountable to the Executive Branch, not to the Court.

Again, Section 546(d) confers no authority upon the Court to supervise Mr. Fouratt, to influence his enforcement of the laws of the United States, or to remove him. These powers remain with the Executive Branch. The President retains the power to remove Mr. Fouratt. *See* 28 U.S.C. § 541(c). The President further retains the power to nominate a United States Attorney whose confirmation by the Senate automatically will oust Mr. Fouratt. *See* 28 U.S.C. § 546(d). Moreover, the Attorney General has the power to divest Mr. Fouratt of authority to act in any given case. *See* 28 U.S.C. § 518. Mr. Fouratt is subject as well to the entire litany of Department of Justice controls recited in this Memorandum at footnote 4, above.

The Court appointed Mr. Fouratt, but he is not, as the defendant claims, "in essence ... accountable to the Article III judges" who appointed him. Defendant's Motion at 1-2. The Court is, by contrast, much more robustly engaged in the on-going supervision of the Federal Public Defender[7] and of private attorneys appointed to represent indigent

---

[7] For example, the court of appeals appoints the Federal Public Defender even though he and his subordinates regularly represent clients in appellate cases. 18 U.S.C. § 3006A(g)(2)(A). Moreover, unlike interim United States Attorneys appointed under Section 546(d), who are supervised exclusively by the Executive Branch, Federal Public Defenders are subject to oversight by the court of appeals *after* their appointment. The courts of appeals set their salaries, direct how many attorneys may work in their offices, and determine whether they will be reappointed after their four year terms expire. 18 U.S.C. § 3006A(g)(2)(A). Indeed, the court of appeals may even remove Federal Public Defenders from office for "incompetency, misconduct in office or neglect of duty." *Id.*

defendants under the Criminal Justice Act,[8] without damage to the Court's independence or to the public's perception of the administration of justice. The authority of the Court in this matter is limited to the appointment power, which the Court exhausted upon its appointment of Mr. Fouratt. The defendant's "as applied" challenge to the constitutionality of Section 546(d) should accordingly be denied.

      C.      <u>There is no basis for dismissing a validly obtained indictment</u>

      The defendant seeks dismissal of the indictment on the grounds that there is no constitutionally appointed United States Attorney for the District of New Mexico. *See* Defendant's Motion at 2. The defendant does not explain why the alleged infirmity in Mr. Fouratt's appointment should entitle him to this remedy. The indictment in this case was filed prior to Mr. Fouratt's appointment as United States Attorney. The defendant offers no explanation as to why a validly obtained indictment, filed during the tenure of a duly appointed United States Attorney, should be dismissed if a subsequent United States Attorney is defectively appointed. The defendant has described no cognizable injury. Indeed, the defendant has provided no meaningful legal discussion as to why the defendant should be entitled to any remedy at all, even assuming *arguendo* that the United States

---

[8] For example, this Court's Order Adopting [Criminal Justice Act] Plan, Misc. No. 1426, dated May 10, 2004, provides that the Court determines membership on the CJA Panel and retains removal power, *id.* at 10-11 ("The court shall approve attorneys for membership on the CJA Panel .... Membership on the CJA Panel is a privilege and not a right and members of the CJA Panel serve at the pleasure of the court"); exercises its discretion whether to appoint CJA counsel in individual cases, *id.* at 7; and reviews and approves CJA panel attorneys' billings for legal services, going so far as to permit *in camera* hearings as to whether a claim for payment "should be cut or reduced," *id.* at 25-26.

Attorney's appointment was invalid.

In fact, the constitutionality of an appointment under Section 546(d) has no bearing upon the validity of an indictment. "The constitutionality of Section 546(d) would not affect the validity of indictments ... as indictments need only be signed by 'an attorney for the government'." *Gantt*, 194 F.3d at 998 (*citing* Fed. R. Crim. P. 7(c)(1)). Rule 54(c) of the Federal Rules of Criminal Procedure goes on to define the phrase "attorney for the government" as "the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, [or] an authorized assistant of a United States Attorney." Assuming *arguendo* that the appointment of an interim United States Attorney pursuant to Section 546(d) violated the constitution, indictments filed during the tenure of the appointee would still be valid if an authorized Assistant United States Attorney signed them. Neither would a defect in the appointment of a United States Attorney divest this Court of jurisdiction to hear this criminal case. *United States v. Suescun*, 237 F.3d 1284 (11th Cir. 2001).

While 28 U.S.C. § 547(1) authorizes the United States Attorney to "prosecute for all offenses against the United States" in his or her district, this authority is not exclusive. All the functions of the United States Attorney, including the power to prosecute, are also vested in the Attorney General, and the Attorney General has the power to supervise and direct United States Attorneys and Assistant United States Attorneys in the discharge of their duties. *See* 28 U.S.C. §§ 509, 515 and 519. Moreover, Assistant United States

Attorneys are appointed (and removed) by the Attorney General, not by the United States Attorney.  28 U.S.C. § 542 ("The Attorney General may appoint one or more assistant United States attorneys in any district where the public interest so requires").

Assistant United States Attorneys accordingly derive their power to prosecute directly from the Attorney General, not from a United States Attorney.  While United States Attorneys supervise and direct the Assistant United States Attorneys assigned to their offices, it does not follow that Assistant United States Attorneys lack the power to prosecute in the absence of a duly appointed United States Attorney.  To the contrary, in the event of a vacancy, Assistant United States Attorneys retain prosecutorial authority, as originally delegated to them by the Attorney General, subject to the supervision of the Attorney General and of the Department of Justice.  *See* 28 U.S.C. § 519 (granting Attorney General the power to supervise Assistant United States Attorneys in the discharge of their duties).

The Court should accordingly reject the defendant's implicit claim that a defect in the appointment of the United States Attorney would extinguish the government's power to prosecute this case, and should in all events deny the motion to dismiss the indictment.

D.    Conclusion

For the reasons stated above, this Court should find that Mr. Fouratt's appointment as United States Attorney was constitutional because Section 546(d) comports with the Appointments Clause and with the doctrine of separation of powers.  This Court should

reject the defendant's facial and as applied challenges to the statute and deny the motion to

dismiss the indictment.

Respectfully submitted,

GREGORY J. FOURATT
United States Attorney

*/s/ James R.W. Braun*

JAMES R.W. BRAUN
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 13th day of February 2008 that a copy of this document was filed electronically through the Court's CM/ECF system, which is designed to serve copies of this document to all counsel of record.

*/s/ James R.W. Braun*

JAMES R.W. BRAUN
Assistant United States Attorney

22