## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

         **Plaintiff,**

**vs.**

                                                **CR No. 05-1849 JH**

**DANA JARVIS,**

         **Defendant.**

## DEFENDANT JARVIS' MOTION TO RECONSIDER THE COURT'S ORDER AT DOC. 1236 REGARDING MR. JARVIS' MOTION FOR RELIEF FROM INTERFERENCE WITH HIS RIGHT TO PRESENT HIS DEFENSE DUE TO CONTINUOUS IRREGULARITIES IN THE ELECTRONIC CASE DOCKETING, INCLUDING DEFENDANT'S INACCESSIBILITY TO HIS <u>OWN DOCKET</u>

COMES NOW the Defendant DANA JARVIS, by and through co-counsel of record, Gary Mitchell and Jody Neal-Post, and hereby requests this Court reconsider its order upon the following grounds.

### <u>The Order</u>

The Court found, based upon its own investigation, that Mr. Jarvis' Motion was "frivolous" and "baseless." The Order, on its face, denies the motion in its entirety. Pursuant to an investigation not reflected in the record, the Court found that "both counsel's CM/ECF accounts and the docket in this case are working properly" and that Mr. Jarvis' two counsels have failed in their duties to the court to "learn and understand the CM/ECF and PACER systems." Both counsels were sanctioned with forfeiture of their CJA fees for time spent in preparing the motion [Doc. 1226] and were similarly sanctioned their fees in attending a court ordered training on the CM/ECF system, "together and in person." The

Court concluded with finding no irregularities in the CM/ECF "that have interfered with [Mr.] Jarvis' rights."

The Order does not reveal to Mr. Jarvis any information regarding the "investigation" upon which the Court found his motion baseless. The Order does not reveal the authority upon which the Court relied to issue, *sua sponte*, fee sanctions against Mr. Jarvis' Criminal Justice Act counsels without advance notice and an opportunity to be heard. The Order does not detail that the Court did, in fact, respond to three deficiencies Mr. Jarvis asserted making efforts to correct them, including re-filing Doc. 1216 to correct the service issue Mr. Jarvis raised in his motion at Doc. 1226, p. 5, ¶ 2. *See e.g.* Doc. 1230 p. 1, n.1 ("This Order was originally filed and assigned a document number [1216] on February 7, 2008. However, a Notice of Electronic Fling (NEF) was not properly generated in connection with that filing. The inadvertent omission of the NEF is hereby corrected through this amendment."). Instead of the Motion being denied, the Court's three efforts at resolution of issues raised by the Motion would seem to have actually resulted in the Motion having been granted in part and denied in part.

Neither undersigned counsel objects to participating in training. Ms. Neal-Post has scheduled training for March 26, 2008. Mr. Mitchell is attempting to schedule training in compliance with the Order and will attend training in person, but with his trial litigator schedule and the short compliance period of the Order, has not yet been able to reschedule his existing court commitments. Mr. Mitchell will notify the Court when he can confirm his training date, and may seek leave to attend separately from his co-counsel based only upon scheduling difficulties.

Both counsels do object to being ordered to training upon the findings of a violation of their ethical duties to Mr. Jarvis. The Order reflects no specific duty or rule found violated by defense counsels.

### Legal Authorities

There is no express authority for fee sanctions against federal criminal defense counsel, unlike the civil provisions of Fed. R. Civ. P. 11 available to the Court as a sanction authority in federal civil proceedings. In fact, sanctions against federal criminal defense attorneys rarely appear in American law.

To be valid, such sanctions against CJA counsel must by necessity be based upon some stated authority and also conform with the Criminal Justice Act itself and the individual federal district CJA plan. It is beyond question that any sanctions entered against counsel acting on behalf of a client must also conform with procedural due process:

> the power of the court should never be exercised without notice to the offending party of the grounds of complaint against him, and affording him ample opportunity of explanation and defense. This is a rule of natural justice, and is as applicable to cases where a proceeding is taken to reach the right of an attorney to practice his profession as it is when the proceeding is taken to reach his real or personal property.

*Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 354-55, 20 L. Ed. 646 (1871).

In *Roadway*, the United States Supreme Court confirmed that such due process protections apply to attorney sanctions: "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-67, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980); *also United States v. Seltzer & Rosario*, 227 F.3d 36, 42-43 (2nd Cir. 2000)(sanctions imposition requires notice of source of authority and on the record revelation of information court relies upon, and opportunity to rebut such information).

Sanctions pursuant to the court's inherent powers require an explicit finding of bad faith. *See Golden v. Bartholow*, 166 F.3d 710, 722, 23 (5th Cir. 1999). There was no finding of bad faith against counsels here. The threshold findings justifying sanctions are "extremely high" with the court required to find that the "very temple of justice has been defiled by the sanctioned party's conduct." *Id.*

### Analysis

Court appointed counsel for indigent defendants occupy a revered aspect of the protections of the Sixth Amendment. Even before *Gideon v. Wainwright* the United States Supreme Court described the role of indigent defense counsel as demanding and essential:

> Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision. And nowhere is this service deemed more honorable than in case of appointment to represent an accused too poor to hire a lawyer, even though the accused may be a member of an unpopular or hated group, or may be charged with an offense which is peculiarly abhorrent.

*Von Moltke v. Gillies*, 332 U.S. 708, 725-726 (1948). Post-*Gideon*, the Supreme Court continued to clarify the role of appointed defense counsel, advising appointed counsel that "[t]o satisfy the Constitution, counsel must function as an advocate for the defendant, as opposed to a friend of the court." *Jones v. Barnes*, 463 U.S. 745, 758 (1983). This tension for appointed counsel is further enhanced by the differences in constitutional "satisfaction" of their duties to their indigent clients and the mandates of ethical satisfaction of counsel duties under existing codes of conduct. *See e.g. ABA Criminal Justice Section Standards; Standard 4-1.2 The Function of Defense Counsel.* ("Defense counsel should seek to reform and improve the administration of criminal justice. When inadequacies or injustices in the substantive or

procedural law come to defense counsel's attention, he or she should stimulate efforts for remedial action.").

In the present circumstance, the accused, Mr. Jarvis, has sought for months to have his counsel rectify the docket access issues detailed in his Motion. In response to these requests that Mr. Jarvis' past and present counsel agreed to be legitimate, Mr. Jarvis' counsel attempted to resolve the access issues through primarily administrative methods with court personnel. The affidavit of Mr. Jarvis' counsel since September 2006 is attached, which details the efforts she personally has documentary record of having made. When the administrative efforts failed to provide access of the Defendant to his entire docket, present counsel sought court assistance though the Motion filed. Such court assistance has been greatly helpful.

## The Court Provided Remedies in Response to Mr. Jarvis' Motion

Mr. Jarvis gave as example in his motion, five instances of difficulty with electronic system access or function. Approximately three days after the Motion was filed, the Court did come to the aide of the Defendant through contact with Mr. Mitchell's office advising of a single magic directive- the direction to seek access to the docket report with counsel of record's CM/ECF identification, rather than, as the CM/ECF manual and FAQS seemingly direct, using the PACER ID to access the docket reports. Manual (July 2007) p. 6, 11; CMECF FAQS. The relief sought with the Motion seeking access to Mr. Jarvis' docket was largely achieved with this single sentence of advice. The attached affidavit of counsel reflects that in over 25 contacts with various arms of the court system and opposing counsels, no one provided this information to Mr. Jarvis until after the formal Motion sought just such relief.

Perusal of the court's online reference materials, including the CM/ECF Manual, FAQS regarding the filing system, Administrative Procedures Manual dated 9/20/07,CM/ECF Overview,  and the Administrative Order itself reflects that this single helpful sentence appears nowhere in these court provided materials. As the Court responded to the Defendant's request by providing a significant remedy in the form of information largely achieving the Motion's goal of access, the Motion was not frivolous.

At his paragraph 2, Mr. Jarvis noticed the Court that he appreciated the Court's and United States' efforts as workarounds of access and service, but that the work around efforts were less than effective to effectuate constitutionally adequate service of Doc. 1216.  This problematic service was corrected by the Court six days later when the Court filed an amended Doc. 1216 at Doc. 1230.  The amended filing states in footnote 1 "this Order was originally filed and assigned a document number [1216] on February 7, 2008.  However, a Notice of Electronic Filing (NEF) was not properly generated in connection with that filing.  The inadvertent omission of the NEF is hereby corrected through this amendment." As the amended filing reflects responsibility for the error in service as a system error and provided the remedy the Defendant sought, the Defendant's request for such assistance cannot be frivolous and baseless.

Similarly at the Defendant's paragraph 5, the Court responded to the Defendant's motion with efforts to correct Defendant's concerns about the confidential information revealed at Docket 1225.  Mr. Jarvis erroneously indicated docket number 1224 after commencing argument regarding document 1225, which appeared to reveal confidential CJA information in the title.  *See* Doc. 1226, p. 2.  However, the Defendant correctly requested the Court's attention to Doc. 1225 in the specific paragraph devoted to the issue of

confidential CJA information in document titles and service on terminated counsel of record at his page 5.

The important sum of this is that the Court acted on the Defendant's request to delete improper service on terminated counsel, again responding to and providing remedy to the Defendant in response to his motion and consistent with the prohibition on public release of confidential CJA information. *United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998). Again, the provision of remedy in response to the Motion indicates the Motion was not frivolous nor baseless, and was in fact, granted in part.

### Investigation Off the Record

At page one of the Order, the Court indicates it conducted an investigation of certain aspects of the CM/ECF system and of counsels' respective accounts, finding them to be functional. While counsels fully agree that an investigation was a reasonable endeavor under the circumstances, due process does not allow counsels to be sanctioned pursuant to information not contained in the record and upon which counsels were not provided notice and an opportunity to be heard upon. *See Seltzer*, 227 F.3d at 43 (sanction reversed where court relied upon "unidentified information communicated by the clerk to the judge"). Procedural due process protections do not allow the sanctions of fee forfeiture to stand based upon information outside the record. *Id.*

### The *Ex Parte* Document 1109

The Court's Order states that "if [Mr.] Jarvis' counsel wished to serve…electronically, they should not have filed their motion *ex parte*." Doc. 1236 at 3.

At Doc. 1090, Mr. Jarvis' counsel had sought leave to filed sealed motions as related to attorney-client issues that had arisen in the case. On November 5, 2007, Mr. Jarvis' counsel filed Doc. 1109 noticing the Court that Mr. Jarvis had received no notice of a

hearing set on co-defendant Wilson's motion regarding conflict, to which Mr. Jarvis was a necessary party.  Mr. Jarvis noted in the response to Mr. Wilson's Motion that his motion filed 10 days earlier for leave to file sealed pleadings regarding the attorney client issues had not yet been ruled upon, and Mr. Jarvis then filed sealed *ex parte* as no electronic filing option existed at that time for legitimate cross defendant filings in our district's criminal docket configuration.  Record indication that the filing system was unable to accommodate the unique filing is in the text entry of Doc. 1109, modified by the clerk's office after it was found that Mr. Wilson's counsel had likewise never received electronic notice:  "Modified on 11/15/2007 to reflect document originally filed as motion due to CM/ECF unable to link using specific events and to term as motion (dmw) (Entered: 11/05/2007)); *see also* Affidavit, ¶¶ c-h. . Mr. Jarvis also requested at ¶ 15 of his Doc. 1109 that the Court re-issue a corrected Notice of Hearing.

While the Court is certainly correct in theory as to the purpose and intended service of an *ex parte* filing, what occurred in this case is resultant from a legal posture so unique that the electronic system was not configured to accept the necessary filing.  At its simplest, the attempts to fit a necessary document into the filing system capabilities just came up with no avenue for effective filing.

This is a designated complex case. This case designation recognizes that the manner and magnitude of the United States' choices in how it structured the Indictment are expected to result in unique and novel issues. *See CJA Plan* at p. 11, § 5(d)(2). Indeed, a full panoply of unique issues has *not* surprisingly resulted in this case, which is the United States' most ambitious criminal forfeiture indictment the District has likely ever seen.

The District Court materials available as to restricted access filings do not address anything near the unusual nature of the filing requirements of this novel case posture.  The

entire information in the User's manual regarding sealed or restricted access documents is never more than is found at, for example, page 32, consisting only of one paragraph telling the filer to "select which document restrictions" the user is requesting. There is no information counsel have found in the sources already identified as available on the court website that discuss access into restricted documents by counsel of record or resolved these matters. Defendant's counsels' multiple contacts with the court clerks and staff were similarly unavailing of remedy, until Mr. Jarvis filed his Motion.

    As to Doc. 1109, when the system could not accommodate the electronic filing, the court clerk's office was contacted by Mr. Romero's office and the clerks were similarly unable to find an immediate remedy.  Staying with the problematic situation, eventually the clerk identified in the text notes to the docket entry advised that she had figured out a way to accommodate as best as possible. Mr. Jarvis' counsels were advised that the Court was notified of the system inabilities, consistent with the docket text entry.

    Many federal district courts do not allow electronic filing of sealed documents.  In this district, electronic filing is required, yet the system would not allow the Defendant to do what it required the Defendant *to* do. Counsel cannot be found deficient in their duties based upon an inability to file a document that the system is not configured to identify and accept.

### **Counsel Have Failed No Duties to this Court or the Bar**

    The Court found that both counsels have failed in their duties as members of the Federal Bar, State Bar of New Mexico and the CJA panel "to learn and understand the CM/ECF and Pacer systems."  Doc. 1236 at 3.

    While both counsels are members of the federal and state bars, neither counsel was a CJA district court trial panel attorney when appointed to this case by the Court. Ms. Neal-Post was initially appointed as an outside expert, and was at the time of appointment only a

CJA panel member for appellate appointments of record. Her status change to co-counsel was effectuated by the Court entry at Doc. 780 without prior notice to her (counsel had been a signatory on pleadings pursuant to *Duran v. Carris*, 238 F.3d 12682 (10th Cir. 2001) requiring drafting counsel to sign or risk sanctions for ghost writing).

Mr. Mitchell, appointed at Doc. 1212, is not on the CJA panel at all, although qualified to be if he so chose. The "chose" portion is essential to the determination of duty pursuant to the CJA- complex case panel members certify pursuant to the CJA Plan in this district that they are "willing" and capable to handle complex and multi-defendant criminal cases. *CJA Plan* at 10. Once selected by the committee to be a panel member, the Clerk's Office of the Court is the entity which selects counsel from the Panel for appointment. There is no requirement in the Plan that an attorney *on the Panel* certify anything regarding CM/ECF capabilities, and neither Mr. Mitchell nor Ms. Neal-Post ever represented anything of that nature to the Court. In fact, Ms. Neal-Post never personally filed a document in this case or in this District until co-counsel Romero was withdrawn on short notice due to his National Guard activation to Guantanamo Bay.

Additionally, this particular district again deviates from many other districts in that this district issues filing IDs to counsel *without* requiring CM/ECF training, contrary to the practice elsewhere where training is a prerequisite to issuance. Because there is no CM/ECF training requirement of this District Court or incident to their bar memberships, neither counsel violated any express duty to this Court. Both current counsels were simply called upon by the Court to represent an indigent defendant and have done their best to do so in a difficult circumstance.

Even though both counsels point out that they violated no express duty nor represented capabilities to the Court they did not have, both counsels agree that training is

welcome. Even though training is welcome as an opportunity to better represent Mr. Jarvis, counsels cannot, however, be ordered to training as a punishment for failing in an unnamed duty to the Court. The duty allegedly failed by counsel must be clear and of record and counsel must have the notice required by due process of the duty allegedly violated, such that counsel can respond and correct any alleged deficiencies. Counsels here have responded to the Court without delay as to the training upon the Court's notice of an alleged deficiency.

The Court's Order should be amended to reflect that counsels were not on notice of any specific duty and there is no express duty counsels have failed. Thus, counsels have failed no duty under the particular circumstances here of neither counsel being a panel attorney upon the moment of appointment coupled with the documented inabilities of the system to accommodate the docketing requirements of this particular complex case.

### Counsels Agree to Training

As noted in various places above, both counsels agree to the usefulness of training and appreciate the opportunity. Training has been scheduled with Mr. Stephen Wright for March 26, 2008 at 8:30 a.m. per direction of the Court Order at p. 3, as to Ms. Neal-Post.

Mr. Mitchell's practice operates in a more difficult scheduling posture than Ms. Neal-Post's, and although Mr. Mitchell is endeavoring to reschedule his court appearances to attend training with his co-counsel, he cannot in this filing advise the Court of a scheduled date of training.

### Continuing Concerns

While the Court effectuated many corrections of difficulties in the docketing for this case, difficulties remain. Mr. Jarvis cannot yet obtain a complete printout of his docket to designate his record for his appeal. Even with the much enhanced docket access obtained

with the use of CM/ECF IDs to review the docket, docket numbers are still missing such that counsel cannot certify a complete docket designation to the Tenth Circuit.

On March 12, 2008 undersigned counsel logged into CM/ECF with her filing ID, and printed two docket versions back through February 20, 2007. One version included only Mr. Jarvis while the other version seleted all defendants. Between the two printouts, counsel believes 68 documents were unaccounted for. Counsel assumes the missing document numbers should be *ex parte* CJA documents of the other defendants, but cannot verify to the Tenth Circuit the record is complete as to Mr. Jarvis. No publication that appears available on the court website seems to address this problem in multi-defendant cases, and the problem will not exist in single defendant CJA cases. The clerk's office has not yet notified Mr. Jarvis of any identified solution to this problem, but gives the appearance of diligently addressing it.

In the process of drafting this Motion, counsel bumped into document titles retrieved through use of her CM/ECF ID and the selection of all defendants that appeared to be sealed documents of other defendants with a "live" link. Two such documents counsel attempted to open relating to other defendants were Doc 687 regarding another defendant's CJA matters and a plea of another defendant, noted as "SEALED" at Doc. 734. Perhaps some of these documents were initially sealed and then unsealed, but no indication appears on the docket advising of such. What is occurring with CJA information remains troublesome and unclear, however, as CJA information should not be unsealed until the conclusion of the proceeding. *United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998).

## Hearing and Leave to Supplement Post Training Requested

Mr. Jarvis respectfully requests a hearing as required by due process if the Court is not inclined to vacate the sanctions and findings inconsistent with the record. Mr. Jarvis further requests leave to file a supplement to this Motion within 7 days post training.

## Conclusion

Mr. Jarvis has respectfully pointed out that the Court did indeed grant his motion in part, rather than denying all his requests for relief. On this basis alone, the sanctions of fee forfeiture and the finding of violations of counsels' ethical duties cannot stand. No Motion that exacts relief can be baseless or frivolous.

Furthermore, even had the Motion been entirely unremedied by the Court's subsequent actions, sanctions may not be imposed against criminal defense counsel without notice of the authority upon which the sanctions are based, full disclosure of all investigations on the record and notice and an opportunity to be heard. As Mr. Jarvis' counsels were not afforded the requisite due process, the sanctions fail upon constitutional infirmity. The Court's Order at Doc. 1236 must be amended to reflect the vacating of sanctions against counsels consistent with the assistance the Court actually came forth and properly provided the Defendant.

Difficulties remain, as noted above. Hopefully, the opportunity to attend the training with Mr. Wright will ameliorate or eliminate most or all the remaining problems. Additionally, the training is likely to serve the entire Court's purposes by helping identify where modifications to our present system are required or where changes may be preferable in this District's choice and manner to require electronic filing of sealed documents. Either or both outcomes are positive.

WHEREFORE, Mr. Jarvis respectfully requests the Order at Doc. 1236 be amended to:

1.      Vacate the fee sanctions against counsels;

2.      Correct the factual record;

3.      Vacate the findings of counsels' violation of duties to the Court;

4.      Address the incomplete docket issue such that Mr. Jarvis may meet his April 1, 2008 deadline to designate the docket at the Tenth Circuit; and

5.      Verify access to the appropriate individuals of sealed documents available to counsel other than the individual defendants, as indicated above.

Mr. Jarvis also seeks all other such relief as this Court deems just.


Respectfully submitted by:


*Electronically Filed*
                */s/*
                *March 19, 2008*
By_____
Gary Mitchell, Esq.
P.O. Box  2460
Ruidoso, NM 88355-2460
575.257.3070


*Electronically Filed*
                */s/*
                *March 19, 2008*
By_____
Jody Neal-Post, Esq.
317 Amherst SE
Albuquerque, NM 87106
505.268.7263

I hereby certify that a true and correct copy of
the foregoing pleading was delivered to opposing
counsel via the CM/ECF system this 19th of March, 2008.

***Electronically Filed***

_____

Jody Neal-Post