IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

vs.

                                        **CR No. 05-1849 JH**

**DANA JARVIS,**

        **Defendant.**

### DEFENDANT JARVIS' RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION FOR THIS COURT TO FIND IT HAS *NOT* LOST JURISDICTION [DOC. 1301]

COMES NOW the Defendant DANA JARVIS, by and through co-counsels of record, Gary Mitchell and Jody Neal-Post, and hereby requests this Court decline the perilous invitation of the United States to proceed concurrently in the District Court in the face of present jurisdiction in the Tenth Circuit on this near identical government Motion.

Furthermore, the United States "has failed to argue before the district court that [Mr. Jarvis'] appeal was either frivolous or forfeited," which is the only means recognized by the Tenth Circuit to maintain jurisdiction in a district court post filing of a notice of appeal. Consequently, the district court was divested of jurisdiction by Mr. Jarvis' filing of his notice of appeal. *McCauley v. Halliburton Energy Servs.*, 413 F.3d 1158, 1162-63 (10th Cir. 2005).

Mr. Jarvis states as follows.

### The Present Case Posture

On March 7, 2008, Mr. Jarvis filed his Notice of Appeal of this Court's denial of his Motion to Dismiss. Doc. 1238. Mr. Jarvis asserted collateral order jurisdiction in the Tenth Circuit Court of Appeals based upon *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).

The United States filed its untimely Motion to Dismiss for Lack of Jurisdiction in the Tenth Circuit on April 3, 2008, without any effort to provide good cause for the delay. Fed. R. App. P 27(A)(3). Before Mr. Jarvis responded in the Tenth Circuit, the United States filed its Motion at issue here at Doc. 1301, unabashedly stating at footnote 1 that "The United States has filed a motion to dismiss [Mr.] Jarvis's appeal with the Tenth Circuit based *upon the same argument made herein*." Doc. 1301 p.2, n.1 (emphasis added).

Nowhere does the United States provide this Court any authority or reasoning explaining how this inferior court is able to assume concurrent jurisdiction over the same issue currently pending before the Circuit Court in this very same case. Nowhere does the United States explain how this Court's ruling in its favor would be secure when the United States has failed to assert the necessary grounds of frivolousness pursuant to *McCauley v. Halliburton*. The United States asserting such grounds now would be a transparent attempt to exceed the scope of reply. Any frivolousness finding by this court would be immediately reviewable by the Tenth Circuit as " a question of law and thus subject to *de novo* [appellate] review."*United States v. Brooks*, 145 F.3d 446, 456 (1st Cir. 1998).

Mr. Jarvis provides the discussion and authorities missing from the government's motion and further refutes the United States' mis-focused District Court argument below.

### The United States' District Court Motion, Doc. 1301

The United States frames its argument that "the notice of appeal does not divest this court of jurisdiction because the order it references is non-appealable." Doc. 1301, p.1. Then, inexplicably in the face of citing the correct authority, which is *Stewart*, the United States relies upon the earlier Tenth Circuit case of *Arthur Anderson* which had allowed a district court to simply "ignore" an obviously deficient notice of appeal and proceed. *Id.* p. 2.

*Stewart*, post-dating *Anderson* by 14 years, clearly states that once a Notice of Appeal is filed, the district court has lost jurisdiction to proceed. *Stewart v. Donges*, 915 F.2d 572, 577 (10th Cir. 1990). "[T]he status quo is that the district court has lost jurisdiction to proceed. To regain jurisdiction, it must take the affirmative step of certifying the appeal as frivolous or forfeited, and *until that step is taken* it simply lacks jurisdiction to proceed with the trial." *Id.* (emphasis added). The United States' brief does not even use the word "frivolous," and thus never even sought the necessary finding from this court for the outcome it seeks.

It should be clear that the District Court's task is not synonymous with the task before the Circuit Court, and it follows that the legal argument cannot then be the same in both courts and effective to disparate ends. The District Court would have determined whether the appeal is facially or obviously frivolous, *if* the United States had properly asked for such finding. In contrast, the Circuit Court determines whether collateral order jurisdiction colorably or actually exists, such that appellate briefing on the merits will be ordered. Had the United States properly analyzed the respective tasks of both courts, the United States would not have asked this District Court to usurp jurisdiction from the Circuit Court over virtually the same motion the government has filed concurrently in both courts. Likewise, had the United States assessed the respective roles of the two courts, the United States would have sought the frivolousness finding necessary to override the divestiture of jurisdiction here. Such governmental failure is fatal to their relief requested in this District Court.

### The Prohibition Against Shared or Concurrent Jurisdiction

"[J]urisdiction is power to act, and it is essential to have clear rules that define who, if anyone, possesses this power." *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995), *citing Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202, (1988). The Tenth Circuit, reflecting

3

widely accepted black-letter law, cautions against shared or concurrent jurisdiction, again in *Stewart*, as resulting in "confusion or waste of time resulting from having the same issues before two courts at the same time." *Stewart*, 915 F.2d at 578-579, *citing United States v. Salerno*, 868 F.2d 524, 540 (2nd Cir. 1989). The prohibition against shared jurisdiction has substantial basis:

> It derives from the notion that shared jurisdiction almost always portends a potential for conflict and confusion, *see United States v. Ienco*, 126 F.3d 1016, 1018 (7th Cir. 1997), and although there has been some movement in the direction of a more flexible approach, see 9A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3949.1, at 45 n.23 (2d ed. 1996), the principle that jurisdiction over a single case ordinarily should reside in a single court at any single point in time still has widespread applicability, *see Griggs*, 459 U.S. at 58; *Apostol v. Gallion*, 870 F.2d 1335, 1337 (7th Cir. 1989). Allowing more than one court to take charge of a case at any given moment often disserves the interests of comity and judicial economy. *See Shewchun v. United States*, 797 F.2d 941, 943 (11th Cir. 1986).

*United States v. Brooks*, 145 F.3d 446, 456 (1st Cir. 1998).

Moreover, there is no reason for this Court to take the risk the United States invites it to take in proceeding potentially contrary to what the Tenth Circuit may decide when procedures exist at the Circuit level to "weed out frivolous claims." *Abney v. United States,* 431 U.S. 651, 662 n. 8. This is the very summary procedure the United States has invoked with its Motion to Dismiss in the pending appeal, *United States v. Jarvis*, 08-2066. *See also Richardson v. United States*, 468 U.S. 317, 322 (1984).

The first risk the United States asks this Court to take is the risk of finding this Court maintains jurisdiction despite the government's failure to seek the requisite findings of frivolousness. This risk compounds if the Tenth Circuit finds appellate jurisdiction shortly thereafter, or simply defers ruling on jurisdiction and orders full appellate briefing, the quintessential conundrum the prohibition against dual jurisdiction is designed to prevent.

The subsequent risk is worse; that the United States convinces this Court to proceed to trial while the Tenth deliberates on the government's appellate Motion to Dismiss. This is the risk of a trial conducted without jurisdiction, which obviously would mandate reversal of any conviction obtained, as a trial held by the district court without jurisdiction "is a nullity." *Stewart*, 915 F.2d at 583.

Our Circuit precedent clearly explains what would have occurred without the risks the United States entices this Court to take, had the government properly sought this Court's finding of frivolousness:

> That is, upon the filing of a motion to stay litigation pending an appeal from the denial of a motion to compel arbitration, the district court may frustrate any litigant's attempt to exploit the categorical divestiture rule by taking the affirmative step, after a hearing, of certifying the § 16(a) appeal as frivolous or forfeited. *Stewart*, 915 F.2d at 576-77, 915 F.2d at 576-77. That certification will prevent the divestiture of district court jurisdiction. *Id.* at 576 at 576. Appellant may then move this court [of Appeals] for a stay pending appeal, asserting that the district court's finding of frivolousness is not supported by the record. *Hines*, 689 F.2d at 937. If this court determines that the appeal is not frivolous, we will stay the litigation in the district court pending the appeal of the denial of the motion to compel arbitration. *Id.*

*McCauley v. Halliburton Energy Servs.*, 413 F.3d 1158, 1162 (10th Cir. 2005).

No finding of frivolousness having been sought, this Court has simply lost jurisdiction and has no choice other than to sit procedurally by, so to speak, and allow the appellate court to resolve its own matters while this case remains stayed by operation of law.

### The Appeal is Not Frivolous

Had the United States sought the requisite ruling to prevent the present stay, the appeal would not be found frivolous by this Court. The standard of frivolousness is as applied by the Supreme Court in *Anders v. California*: to wit, a matter is *not* frivolous if any of the legal points are arguable on their merits. *Anders v. California*, 386 U.S. 738, 744, 87 S. Ct.

5

1396, 1400, 18 L. Ed. 2d 493 (1967), *reh'g denied*, 388 U.S. 924, 87 S. Ct. 2094, 18 L. Ed. 2d 1377 (1967). As Mr. Jarvis demonstrates below, his legal points are more than merely arguable on the merits, and he has fulfilled his duty to provide thoughtful legal reasoning and "cogent argument" accompanying his citations to controlling authorities in arguing for application of recent United States Supreme Court precedent. *See* NMRA 16-301; *In the Matter of Richards*, 986 P.2d 1117 (N.M. 1999). The fact that no published decision in the country has determined that a *Gonzalez-Lopez* claim fits into the *Cohen* doctrine does not make it frivolous; it is simply a new claim based upon new law. The Supreme Court has explained:

> Legal issues do not come prepackaged with the labels 'frivolous' or 'arguably meritorious.' If such characterizations were typically unanimous or uncontroversial, we could freely permit defense counsel to decide finally whether an appeal should proceed, or to advise the court without any advocacy on their clients' behalf that an appeal is frivolous, *but see Anders*. It by no means impugns the legal profession's integrity to acknowledge that reasonable attorneys can differ as to whether a particular issue is arguably meritorious.

*McCoy v. Court of Appeals, Dist. 1*, 486 U.S. 429, 451 (1988). And the standard here is not predicting meritoriousness, the standard is present frivolousness.

An appeal is frivolous if established law clearly forbids the result sought by the litigant without "cogent argument" for a good faith reversal or extension of existing law, or argument for which no factual basis exists in support. The absence of law in clear support, without more, does not equate to frivolousness:

> The government argues, in effect, that unless the right asserted by the criminal defendant is one that has a positive and well established basis in the law, the court of appeals should not exercise jurisdiction over the interlocutory appeal.
>
> We do not accept the government's argument. Even though this appeal involves rights not heretofore recognized in our jurisprudence, the assertion of those rights involves

6

> significant issues…, the resolution of which is at least the subject of fair debate. These issues have yet to be resolved definitively by the Supreme Court or by this circuit. *Cf. Fountain v. Metropolitan Atlanta Rapid Transit Authority*, 678 F.2d 1038, 1042 (11th Cir. 1982) (claim based upon federal law is not frivolous where, inter alia, no controlling authority negates the claim).

*United States v. Hastings*, 681 F.2d 706, 709 (11th Cir. 1982); *also United States v. Bobo*, 419 F.3d 1264, 1267 (11th Cir. 2005)("arguments that have already been squarely decided by precedent" adverse to the appellant are foreclosed).

Returning to the *Anders* standard in the Tenth Circuit, "The determination of the frivolousness of a direct criminal appeal is the responsibility of the court of appeals in its determination on the merits of the appeal." *United States v. Osuna*, 141 F.3d 1412, 1415 (10th Cir. 1998). Mr. Jarvis suggests it is also the responsibility of the Court of Appeals here, in the face of the United States' pending appellate Motion to Dismiss, to make the first determination regarding its own jurisdiction in the present case.

### Collateral Order Jurisdiction & the Underlying Claims

Only the finding that Mr. Jarvis' appeal is frivolous, the finding that the United States never sought, would allow this court to *re*assume jurisdiction and proceed. Yet Mr. Jarvis' claim is demonstrably not frivolous and all that is required at the Circuit Court level for an order to full briefing is a "colorable" claim to jurisdiction. *See e.g. Richardson v. United States*, 468 U.S. 317, 322 (1984).

The United States argues that the denial of Mr. Jarvis' Motion to Dismiss is not appealable, adopting the government arguments presented at the Tenth Circuit, including the fatal omissions in the Tenth Circuit briefing. Mr. Jarvis provides the following condensation of his Tenth Circuit response to the United States' Motion to Dismiss in opposition to the government's insistence that jurisdiction rests simultaneously in this District Court, while

7

maintaining that the government's argument here entirely misses the decisive issue-frivolousness.

The United States' overview of the collateral order doctrine gives a basic recitation of the doctrine, which allows appellate review of collateral orders. The doctrine requires meeting *Abney v. United States'* summary of the *Cohen* factors as three requirements: "1.) The district court had fully disposed of the question . . .; in no sense did it leave the matter 'open, unfinished, or inconclusive;' 2.) The decision was not simply a 'step toward final disposition of the merits of the case' . . .; rather, it resolved an issue completely collateral to the cause of action asserted;' and 3.) 'The decision had involved an important right which would be 'lost, probably irreparably,' if review had to await final judgment . . . .." *United States v. Sell*, 539 U.S. 166, 189 (2003)(J. Scalia dissent); *P.H.E.* at 658, *quoting Abney* at 658, *quoting Cohen*, 337 U.S. at 546.

In the United States' formulation of the three-part *Cohen* factors, the third element factor is shorthanded, such that the *Cohen* portion requiring the right sought vindicated to be "an important right" is dropped from the test. Doc. 1301 at 3. What remains is the rest of the third factor, that the right "be effectively unreviewable on appeal from a final judgment." This third factor is also called "the right not to be tried," meaning that the right must be vindicated pre-trial or will be irrevocably lost. When the United States chose this formulation of the *Cohen* factors, it lost the cornerstone of the collateral order jurisdictional analysis- "whether the right is important enough to be vindicated pre-trial." *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 502-03 (1989). Herein lies the source of the government's error in failing to analyze the Sixth Amendment right the Appellant seeks vindicated based upon *Gonzalez-Lopez*.

### **Jurisdiction is Colorable Pursuant to the *Cohen* Factors**

The United States concedes that the first factor of *Cohen* is met and Mr. Jarvis agrees. Doc. 1301, p.4, n.2.

The second factor, the United States argues, is not met here as the matter appealed is not "completely separate" from the merits of the action. *Id.* at 4. The government bases this on *Flanagan*, a 1984 Supreme Court case involving disqualification of criminal defense counsel, that the government asserts "is controlling." *Id.*

*Flanagan*, however, involved a right to choice of counsel in the context of disqualification that requires the showing of prejudice post-trial in order to evaluate it; *i.e.*, it is an alleged *trial* error, akin to *Strickland* or ineffective assistance claims. *Gonzalez-Lopez* error, in contrast, is structural error, an error "affecting the very framework of the trial itself," requiring no showing of prejudice as the error "is complete" upon establishing that it occurred. Deprivation of the *Gonzalez-Lopez* right

> is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice--which is the right to a particular lawyer regardless of comparative effectiveness--with the right to effective counsel--which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

*Gonzalez-Lopez*, 126 S. Ct. 2557, 2563 (2006).

Thus, the Government's argument that *if* Mr. Jarvis must show prejudice *then* he fails the second *Cohen* factor is resolved in Mr. Jarvis' favor by review of *Gonzalez-Lopez*, the United States Supreme Court's twenty-two-years- *newer* oration on the contours of the various aspects of the Sixth Amendment.

Easier still to resolve the second prong is the simple question as *Flanagan* put it, as whether the order resolves an issue separate from guilt or innocence. *Flanagan v. United States*,

9

465 U.S. 259, 266 (1984). Mr. Jarvis' right to retained counsel of choice has nothing to do with the merits of guilt or innocence. *Abney v. United States*, 431 U.S. 651, 659 (1977). What it does have to do with is the very constitutional framework or "structure" within which the case itself proceeds.

Here, the facts of this case turn it arguably as far from the merits as it can be. On August 28, 2007, the Tenth Circuit reversed and remanded Mr. Jarvis' previous interlocutory appeal in his favor. *Jarvis*, 499 F.3d at 1200. The appeal had resolved the alleged illegality of the *lis pendens* the United States had placed on Mr. Jarvis' substitute assets, the "Mora properties," which Mr. Jarvis had repeatedly sought released such that he could retain counsel of choice with his own assets. *See Jarvis*, 499 U.S. at 1199 and underlying Tenth Circuit briefs at *USA v. Jarvis Brief in Chief*, 06-2066, pp. 3-17; *Aplee's Brief* at 3; Doc. 293; Doc. 294; Doc. 314, Opening paragraph, ¶¶ 2, 3, 4, n.1,6, 7; Doc. 320; Doc. 338, pp. 1-7, 7; Doc. 500; Doc. 574.

On October 4, 2007, Mr. Jarvis filed the *Motion to Dismiss for Irreparable Structural Error,* at issue currently in the Tenth Circuit appeal, 08-2066. Doc. 1076. Mr. Jarvis alleged that the erroneous denial of his Motion to Release Assets, by then reversed by this Court, was a *Gonzalez-Lopez* error. *Id.* The record is replete with at least 51 filings regarding the curious factual scenario that developed subsequent to the filing of Mr. Jarvis' Motion to Dismiss. *See e.g.* Doc. 454; Doc. 1161, "Relevant Historical Background" pp. 2-5; Doc. 1160-4, ¶ 5 (Defendant's Affidavit); Doc. 1116-4 at ¶¶ 20-24; Doc. 1109-3; Doc.1114 at pp. 19-21; Doc. 1116-3 at ¶ 26; Doc. 1160-3 (Defendant Affidavit) ¶ 3; *TP* 10/27/05 at 14:6-32:23, 34:19-39:22; Doc. 1109, ¶¶ 12-15; TP 11/20/07 (J. Herrera), 54:7- 63:25; Doc. 1116-3 at ¶ 27-28, & 30.

Within days of the filing of the Motion to Dismiss, the United States mounted a defense to the Motion which involved using Mr. Jarvis' former counsel, the counsel on Mr. Jarvis' first formal motion to release assets, Doc. 314, to testify for the United States. *See* Doc. 1114 "Developments" at pp. 2-4. The United States commenced contact with this counsel over Mr. Jarvis' assertions of privilege and refused to cease contact. Doc. 1116-6 (*USA Ltr*); *also see e.g.* Doc. 1114 at pp. 21-26; Doc. 1116-3 (Uphoff Affidavit) ¶¶ 19, Doc. 1095 at 8; Doc. 1098 at ¶ 5; Doc. 1129 & 1129-1 (Motion to Quash).

By the time the current appeal was filed the litigated issues arising from the Motion to Dismiss included Mr. Jarvis' allegations of a third Sixth Amendment violation of intentional interference with counsel for the government's contacts with and use of Mr. Jarvis' former counsel as government witness, [Doc. 1114 at 6-10], a still undecided *Brady* Motion filed by Mr. Jarvis regarding this former counsel and deals he or his client may have received in exchange for his testimony against his former client [Doc. 1155, 1171, 1179, 1185], and multiple issues regarding disqualifications of this former counsel, as well as *in camera* review of attorney-client privileged documents once possessed by this former counsel. *See e.g.* Docs. 1109, 1109-2, 1109-3, 1125, 1144, 1157, 1159, 1162, 1166, 1169, 1182, 1230, & Designated Notebook of actual privileged documents (all these citations refer to filings on attorney-client privilege or disqualification issues); *United States v. Chapman*, 2008 U.S. App. LEXIS 9700, *25-26 (9th Cir. May 6, 2008)(finding "flagrant" disregard of *Brady* obligations by the United States warranted dismissal).

Just as clearly as the fifty-one docket entries show the second requirement of *Cohen* was met as to the "separateness" of the collateral order to guilt and innocence, these filings also demonstrate the pervasiveness of the United States' preoccupation with Mr. Jarvis' Sixth Amendment rights in all their various manifestations.

The third requirement of *Cohen* is the shorthanded "right not to be tried." The United States holds to its characterization of the right *sans* inquiry into the right asserted, fatal to any proper analysis of the right to collateral order appeal.

The most recent Supreme Court discussion of the collateral order doctrine is in *Will v. Hallock,* 546 U.S. 345 (2006). *Hallock* distills "the right not to be tried" or non-reviewability upon direct appeal element down to *Digital Equipment's* concept that the importance of such right must be determined as a "judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Hallock*, 546 U.S. at 351-52, *citing Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878-79 (1994).

*Hallock* further explained that the allowance of collateral appeal for vindication of double jeopardy rights is more than an explicit "right not to be tried." *Hallock,* 546 U.S. at 352. It is the immense value of this constitutional right, "the substance of the rights entailed," combined *with* recognition of the "enormous prosecutorial power of the government to subject an individual…to live in a continuing state of anxiety; the only way to alleviate these consequences of the government's superior position was by collateral order appeal." *Hallock*, 546 U.S. at 353; *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269 (1982). Proceeding with the trial must "not cause or compound the deprivation already suffered." *Id.* at 267.

Here, going forward right now is simply a risk without a reward. The Tenth Circuit is poised to make its own determination, a determination this lower court can choose to wait for with no chance of reversible error. In contrast, haste in proceeding now at the Government's invitation without jurisdiction, if such is the eventual finding, is unquestionably reversible error.

The constitutional right sought vindicated in the appeal is the Sixth Amendment right to retained counsel of choice. "The right to select counsel of one's choice ... has been regarded as the root meaning of the constitutional guarantee." *Gonzalez-Lopez*, 126 S. Ct. at 2563. This right is so powerfully revered that its abrogation is structural error, joining the tiny class of structural errors in criminal cases that consist of denial of counsel, denial of self-representation, denial of the right to a public trial and denial of the right to trial by jury through the giving of a defective reasonable doubt instruction. *Gonzalez-Lopez,* 126 S. Ct. at 2564. It is structural precisely because of "the difficulty of assessing the effect of the error." *Id.* n.4.

In this case, the "root" of the Sixth Amendment protections has been alleged violated, an allegation with the substantial underlying support of a Circuit court reversal. The concern underlying the double jeopardy exception- checking the immense power of the government- is not simply theoretical here, as the power of the government has already been established in this case as *twice* wrongfully applied against Mr. Jarvis: in the previous appeal, "as the United States made improper use of New Mexico's *lis pendens* statute when placing *lis pendens* notices on Jarvis' Mora properties…", and in the Sixth Amendment violation found by this Court regarding solitary confinement. *Jarvis*, 499 F.3d at 1200; Doc. 654.

It is not, then, that Mr. Jarvis seeks a mere avoidance of trial with his appeal, as this would be insufficient to warrant collateral appeal jurisdiction. It is the "avoidance of a trial that would imperil a substantial public interest that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Hallock*, 546 U.S. at 353. Surely, vindicating a root protection guaranteed by the Bill of Rights is a "substantial public interest" to be weighed against the policies of finality underlying the limiting of collateral appeals.

The United States argues again that *Flanagan* controls as to evaluating the third *Cohen* prong, a case decided twenty-two years before *Gonzalez-Lopez* determined that the right here asserted is structural error, the very "root" of the Sixth Amendment. The United States urges reliance on *Flanagan* that even if prejudice need not be shown, the remedy of a reversal and new trial awaits the Defendant to vindicate his rights.

Perhaps this argument would have resonance in a different and more recognizable case posture where chosen counsel remained available and the Defendant had not already prevailed on appeal, and perhaps where the Defendant was not already nearly three years into pre-trial incarceration. But these *are* the facts of this case. The government provides no reconciliation of its *Flanagan* argument against the very right asserted from *Gonzalez-Lopez*, and no analysis of any authorities in the context of the collateral order doctrine from the Supreme Court post 1989. Notably, *Flanagan's* appearance in the dissent to *Gonzalez-Lopez* suggests *Flanagan* may well need reconsideration in this very context. *Gonzalez-Lopez*, 126 S. Ct. at 2571.

An overview of the cases where collateral order review has been allowed shows similarities. The rights protected are "fundamental rights" as so described by *Gideon v. Wainright*, 372 U.S. 335, 341-42 (1963). These fundamental constitutional rights include First, Fifth and Eighth Amendment rights involving the speech and debate clause, property takings, double jeopardy and the excessive fines clause. *Sell v. United States* found the liberty interest in not being forcibly medicated a fundamental right whose violation was subject to collateral order review. *Sell*, 539 U.S. 166, 178 (2003). Overlay upon these classes of appealable orders the matter of structural error allegations and one finds that structural errors are few, and yet three of them regard defects in representation; deprivation of the right to retained counsel of choice, the denial of appointed counsel, and the denial of self

14

representation. *Gonzalez-Lopez*, 126 S. Ct. at 2564. Clearly, deprivations related to representation are constitutional deprivations of the most serious concern. Just as clearly, the weightiness of the rights alleged violated here being the "root" of the Sixth Amendment, also a defect in constitutionally adequate representation, and a right the deprivation of which is structural error causes pause. Add to this the government's established violation of its immense power in already abrogating this right to choice of counsel for more than thirty-two pre-trial months and all the prerequisites for collateral order jurisdiction are established.

The *Cohen* doctrine is a "practical construction" of the jurisdictional statute 28 U.S.C. §1291, rather than an exception to it. *Digital Equipment*, 511 U.S. at 848. The doctrine serves the interest of "achieving a healthy legal system" when the rights asserted are simply "too important to be denied review." *Id.* at 849; *Lauro Lines*, 490 U.S. at 556 (J. Scalia concurring), *citing Cohen* at 546. Pursuant to *Cohen* and the subsequent cases of the United States Supreme Court, the Tenth Circuit court has at least colorable jurisdiction to hear Mr. Jarvis' present appeal concerning the "root" protection of the Sixth Amendment.

## **Appellate Jurisdiction Pursuant to P.H.E.**

The rationales underlying the practical construction of *Cohen* come to the forefront in *P.H.E.,* where the Tenth Circuit accepted jurisdiction over a collateral order which implicated First Amendment rights, and where, analogous to this appeal, the defendant had already secured a judgment against the United States. *P.H.E.*, 965 F.2d at 852. The similarities are striking between *P.H.E.* and *United States v. Jarvis* as to a pattern of conduct reflecting "substantial evidence of an extensive government campaign" chilling the exercise of a constitutional right.

*P.H.E.* involved a unified national prosecution strategy by the Department of Justice to attack companies selling obscene materials. *Id.* at 850. The strategy required multiple

15

prosecutions at all levels of government across the states, suggesting that if thirty-five or more prosecutions were simultaneously commenced against the same producer, the endurance of the producers would wane, undermining the profitability of the businesses and eventually putting the businesses *out* of business. *Id.* The government acknowledged that the First Amendment protected activities of the businesses would also suffer or fail. *Id.* at 851.

P.H.E. was targeted and its businesses searched, yet no federal charges were levied against P.H.E., who expended $700,000.00 in the aftermath of the searches. *Id.* at 851. Meanwhile the United States began a grand jury investigation in Kentucky and commenced investigation in Utah. *Id.* P.H.E. sought and was granted an injunction in the District of Columbia against indictments in more than one federal district. *Id.* Despite the injunction, the United States proceeded to bring suit again in the District of Utah, the action underlying the Tenth Circuit decision on collateral order jurisdiction. *Id.*

In Mr. Jarvis' case, the targeted constitutional right is the Sixth Amendment. At only six weeks into this case, Mr. Jarvis hired a forfeiture counsel against whom the United States filed a Rule 44 motion six days after counsel's filed entry. Docs. 214 & 226. The United States successfully conflicted this counsel out in the face of valid waivers of conflict. Doc. 259. While Mr. Jarvis alleges no misconduct by the United States or error by this Court as to this defense counsel, the incident and briefing are relevant later in the proceedings when the United States fails and refuses to conflict out another former counsel of Mr. Jarvis who instead becomes the government's witness, as described elsewhere and in detail in the briefs. *See* Doc. 1109-3; Doc.1114 at pp. 19-21; Doc. 1116-3 at ¶ 26; Doc. 1160-3 (Defendant Affidavit) ¶ 3; *TP* 10/27/05 at 14:6-32:23, 34:19-39:22; Doc. 1109 at 12-16.

Next, the United States commenced surveillance of Mr. Jarvis' counsel and a former counsel based upon snitch allegations that Mr. Jarvis was planning a "hit" on the case agent

and lead prosecutor. *See e.g.* Doc. 1114 at 124-15; Doc.1116-5 at pp. 2-5. As in *P.H.E.*, no charges were ever asserted based upon these allegations, although these allegations were the grounds for Mr. Jarvis' six months of unconstitutional solitary confinement. This Court found in its Order of release that "The government maintains that it intends to keep Defendant in administrative segregation for the foreseeable future, despite the fact that it does not intend to charge Defendant for the alleged crime that is the basis of this segregation." Doc. 654, pp. 2-3. Former counsel of Mr. Jarvis' who became a government witness was actually himself surveilled in the January 19, 2006 hearing on the first formal Motion to Release Assets for retained counsel. *See* Doc. 1116-5. The motion to release assets to retain counsel was, of course, denied, and CJA counsel then appointed, counsel who witnessed Mr. Jarvis being taken into segregation on their second or third meeting.

The governmental pattern of involvement directed at Mr. Jarvis' Sixth Amendment expression continued, with the United States inexplicitly refraining from filing a Rule 44 motion regarding the conflict arising out of former counsel's entry of appearance for co-defendant Wilson, despite having done so earlier against another of Mr. Jarvis' counsel and despite Mr. Jarvis refusing to waive the conflict. *See citations above.* By September 1, 2006 Mr. Jarvis had been newly released from solitary by Court order, his Sixth Amendment rights found violated by this District Court. Doc. 654. That same day Mr. Jarvis filed his successful appeal. Doc. 666.

On August 7, 2007 the United States enhanced former counsel's new client, Mr. Wilson, to a mandatory twenty year charge. Doc. 1056. Two weeks later the decision from the Tenth Circuit came down in Mr. Jarvis' favor. The mandate was entered in this Court on September 24, 2007 and a status conference was immediately set for October 11, 2007. Docs. 1065 & 1066. Before the status conference on October 4th, Mr. Jarvis filed the motion

17

at issue here. By October 8th, 2007 it was known that the former counsel was working with the United States to prepare the Government's defense to Mr. Jarvis' Motion to Dismiss. Doc. 1114 at 2.

The Sixth Amendment intrusions are heavily detailed in the record as well as described superficially herein. *P.H.E.* required a showing of a record pattern of conduct that chilled a constitutional right. Mr. Jarvis has presented such a record here. *P.H.E.* and cases since in this Circuit, including the April 15, 2008 decision in *Quaintance,* insist upon an unusual, even unique confluence of circumstances to even consider jurisdiction pursuant to *P.H.E. United States v. Quaintance,* 2008 U.S. App. LEXIS 8120, *6-7 (10th Cir. 2008). National case law review verifies the fact pattern herein as a thankfully unreplicated sequence of events which demonstrate "a unique and critical thread run[ning] through the [ ] errors in this case"- a "one-sided prejudice" obliterating a particular constitutional right. *See Parle v. Runnels,* 505 F.3d 922, 930 (9th Cir 2007); *P.H.E,* 965 F.2d at 857. *P.H.E.* dictates that this showing establishes the third *Cohen* prong. *Id.* at 855.

Finally, *P.H.E.* provides an alternative basis for immediate appellate jurisdiction applicable here:

> The priority of the First [Sixth] Amendment rights asserted here, in the context of an uncontroverted, coordinated campaign of questionable prosecutorial activity, also supports appellate jurisdiction under our teachings in *Bender v. Clark*, 744 F.2d 1424 (10th Cir. 1984). We recognized that instances arise 'where the issue is not 'collateral but justice may require immediate review,' and the court should assert jurisdiction if 'the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review.' *Id.* at 1427. Considering the important rights at stake and the extensive evidence adduced by the appellants, this is an appropriate case in which to apply the principles of *Bender* and assert jurisdiction.
>
> Accordingly, whether based on the *Cohen* or *Bender* doctrines,

18

> we hold that this court has proper jurisdiction to hear this appeal.

*United States v. P.H.E.*, 965 F.2d 848, 857 (10th Cir. 1992).

## Conclusion

The United States has asked this court to "find that it has not lost jurisdiction to proceed," without providing this Court the correct legal framework within which to evaluate the government's request. The standard this court must apply, a determination of frivolousness *or not,* is not even mentioned by the government, resulting in no guidance offered this Court to frame its task; nothing from the United States but an invitation to proceed on the government's demand alone. Furthermore, the United States has failed to provide an analysis of collateral order jurisdiction complete with the controlling authorities relevant to this court's determination, the most concerning of which is the United States' failure to even discuss the right at issue, Mr. Jarvis' *Gonzalez-Lopez* right.

Even the United States must proceed pursuant to controlling precedent. This Court may deny the government's motion simply because of the government's failure to fully advise the Court. The Defendant has met his obligation to show in authority and in the present record, that his appeal is not frivolous. This Court should deny the government's perilous invitation to assume concurrent jurisdiction with the Tenth Circuit Court of Appeals, when the Circuit Court is clearly proceeding on the very same arguments the government has simultaneously placed before both courts.

"'Haste makes waste' is an old adage. It has survived because it is right so often." *Kusay v. United States*, 62 F.3d 192, 195 (7th Cir. 1995). It is right here, too.

WHEREFORE, Mr. Jarvis respectfully requests this Court find the Government's request to proceed with assumed concurrent jurisdiction ill-framed, and as such, is denied.

Instead, this Court should enter a stay until such time as the Tenth Circuit rules on the United States' appellate Motion to Dismiss or enters its order for full briefing, in which event the district court proceedings should remain stayed until final Circuit Court resolution.

Respectfully submitted by:

*Electronically Filed*
*/s/*
*May 8, 2008*
By_____
Gary Mitchell, Esq.
P.O. Box 2460
Ruidoso, NM 88355-2460
575.257.3070

*Electronically Filed*
*/s/*
*May 8, 2008*
By_____
Jody Neal-Post, Esq.
317 Amherst SE
Albuquerque, NM 87106
505.268.7263

I hereby certify that a true and correct copy of
the foregoing pleading was delivered to opposing
counsel via the CM/ECF system this 8th of May, 2008.

*Electronically Filed*
_____
Jody Neal-Post