### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

    **vs.**                         **CR 05-1849 JH**

**DANA JARVIS,** *et al.,*

        **Defendant.**

### MOTION FOR RELEASE ON CONDITIONS
### PURSUANT TO THE FIFTH AMENDMENT REQUIREMENTS OF DUE PROCESS

COMES NOW Defendant Dana Jarvis, by and through co-counsels of record, Gary C. Mitchell and Jody Neal-Post, pursuant to the Due Process Clause of the United States Constitution, hereby requesting release from pretrial custody with appropriate conditions pending the trial of this matter.  In support, Mr. Jarvis states the following.

#### Introduction

Mr. Jarvis has been in pretrial detention since August 25, 2005. He has been in confinement for over 1000 days, despite never having been convicted of any crime.  By the time this motion is heard, pretrial incarceration will have extended for over three years.  If unreleased on conditions, by the time Mr. Jarvis' trial can reasonably be completed, his pretrial incarceration will be nearly four years. The Fifth Amendment does not allow such extended detention.

Mr. Jarvis was initially denied pretrial release under the federal detention statute, 18 U.S.C. § 3142.  The statute presumes that someone charged as Mr. Jarvis should be detained, and thus the statute placed the burden on Mr. Jarvis to overcome the presumption, instead of requiring the government to prove why Mr. Jarvis should be detained. *See* 18 U.S.C. § 3142(e).  Moreover, in the

1

initial hearing on Mr. Jarvis' pretrial release, the government relied largely upon three unauthorized wiretapped phone conversations, each of which had *nothing* to do with the underlying case against Mr. Jarvis, but concerned personal family matters. The magistrate judge concluded that, under the statute, Mr. Jarvis should be detained. Doc. 248.

Presently, almost three years later, it is the Due Process clause and not the federal statute that governs whether Mr. Jarvis should be released. The Fifth Amendment requires the new decision be made under much greater scrutiny upon a different legal standard than the initial detention decision. The government must now show, by clear and convincing evidence, that (1) special circumstances indicate that defendant's release, even with conditions, would pose an extraordinary threat to the government's interests, *and* (2) the government was not responsible for any significant portion of the delay to date. *E.g., United States v. Cos* [*Cos II*], 2006 U.S. Dist. LEXIS 95275 (D.N.M. 2006) (Browning, J.) (detailing due process analysis) *on remand from  United States v. Cos* [*Cos I*], 198 Fed. Appx. 727, (10th  Cir. 2006); *also United States v. Cos* [*Cos III*], 2007 U.S. Dist. LEXIS 33917 (D.N.M. 2007) (Browning, J.) (release after 22 months required as the continued detention was punitive, not regulatory).

The government's previous evidence of dangerousness is insufficient to meet the clear and convincing standard required of the government now to prove Mr. Jarvis an extraordinary threat to the interests of the United States. In fact, the previous evidence should never have been introduced in the initial detention hearing *at all* as the three wiretaps the government used to persuade the magistrate court may not be used or considered in detention hearings. *See* 18 U.S.C. § 2515.

Section 2515 expressly precludes the use of these wiretaps in "any judicial proceeding," because these three taps were clearly outside the scope of the government's warrant to wiretap, record and retain in this case. Furthermore, the United States is responsible for a significant portion

of the delay prolonging Mr. Jarvis' pretrial incarceration in this case. *E.g. U.S.A. v. Jarvis*, 499 F.3d 1196 (10th Cir. 2007)(reversal of government's position); Doc. 654 (reversal of government's actions as to unconstitutional conditions of confinement).

Mr. Jarvis must be released now to allow him to participate meaningfully in preparing his trial defense. This Court's latest budget Order denies lead counsel sufficient funds to meet in person with Mr. Jarvis as lead counsel determines necessary, despite Mr. Jarvis' immediate motion in opposition to his Estancia move on September 5, 2006, on grounds which included the prohibitively large increased transportation expense of visits to that distant facility. Doc. 667. Mr. Jarvis' motion was denied in 2006. The harm alleged in that motion, interference with his Sixth Amendment rights, is now reality with budgeting halved for lead counsel's personal client visits. *See* Doc. 1353 (Sealed).

The Defendant's continued confinement forward is constitutionally impermissible under the Fifth and Sixth Amendments to the Constitution of the United States.

I.    **The Due Process Clause Shifts The Burden To The Government To Prove An *Extraordinary Necessity* of Continued Pretrial Detention By Clear and Convincing Evidence, Also Proving That The Necessity Cannot Be Mitigated By Conditions of Release**

Liberty is the norm in our society. "Detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also Zadvydas v. Davis,* 533 U.S. 678 (2001) (indefinite detention unconstitutional for non-citizens facing prolonged deportation). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 522 U.S. at 690.

An individual charged with a crime is presumed innocent, and may only be detained before trial when, after an adversary hearing, the individual is found "to pose a threat to the safety of individuals or to the community which no condition of release can dispel." *Salerno*, 481 U.S. at 755.

3

When assessing the validity of a pretrial detention, the central issue is the detainee's right, in accordance with due process, to be free from punishment before the adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir. 1981).

Pre-trial confinement threatens to swallow the bedrock principle of the presumption of innocence, and so pretrial detention is permissible only so long as it serves a regulatory, as opposed to a punitive, purpose. *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986). But even "valid pretrial detention assumes a punitive character when it is prolonged significantly." *Id.* At some point in time, a prolonged pretrial confinement becomes unconstitutional. Mr. Jarvis' confinement has reached this point.

### A.     This Court Decides The Due Process Challenge To Continued Confinement On A Blank Slate

The requirements of due process were not addressed in the initial detention hearing as the passage of time had not made the argument ripe. *See United States v. Tortora*, 922 F.2d 880, 889 (1st Cir. 1990); *United States v. Accetturo*, 783 F.2d 382, 388 (3rd Cir. 1986); *United States v. Portes,* 786 F.2d 758, 768 (7th Cir. 1985). Therefore, no court has yet ruled on whether Mr. Jarvis' lengthy pretrial incarceration violates due process.

Under 18 U.S.C. § 3142, the court does not, and did not in this case, consider the length of pretrial detention in its initial detention decision. With the incarceration now at three years, however, Mr. Jarvis is entitled to "a fresh proceeding at which more is required of the government than is mandated by Section 3142," if not ultimately entitled to release with conditions on pure constitutional grounds. *Accetturo*, 783 F.2d at 388. Thus, "a determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for release at a subsequent time on due process grounds." *Id.*; *see also United States v. Shareef*, 907 F. Supp. 1481, 1483-84 (D. Kan. 1995)(reopening detention hearing on due process grounds of extended detention).

4

An extended detention is one lasting 8 months to a year or more. *Tortora*, 922 F.2d at 889. To justify an extended detention, the government must prove more than what 18 U.S.C. § 3142 requires, instead meeting the strict requirements of the due process protections guaranteed regarding an individual's liberty rights. *United States v. Millan*, 4 F.3d 1038, 1043-7 (2nd Cir. 1993) (cited by the Tenth Circuit in *Cos I*, 198 Fed. Appx. at 732, that Due Process requires greater than statutory justification); *Accetturo*, 783 F.2d at 388 (same); *Shareef*, 907 F. Supp. at 1483-4 (the government "must be subjected to more careful scrutiny" with increased detention).

### B.     The Burden On The Government Upon Proof To A Clear and Convincing Standard

In light of the extreme length of Mr. Jarvis' pretrial detention, the Due Process clause requires the greater justification for continued detention in proof by clear and convincing evidence. *See United States v. Ailemen,* 165 F.R.D. 571, 582-3 (N.D. Cal. 1996) (standards of proof); *United States v. Millan*, 4 F.3d 1038, 1043-47 (2nd Cir. 1993); *also United States v. Cisneros,* 328 F.3d 610, 616 (10th Cir. 2003; *Cos II,* 2006 U.S. Dist. LEXIS 95275 at *35. (adopting *Cisneros*, that the clear and convincing standard was the most appropriate of the three available levels of scrutiny for Due Process analysis in *United States v. Motamedi*, 767 F.2d 1403, 1413-14 (9th Cir. 1985).

### C.     The Three Levels of Scrutiny:  What The Government Must Prove Is More Difficult As The Length Of Detention Increases

### Mr. Jarvis' Detention Requires The Highest Tier Of Scrutiny

In Due Process cases, there are three levels of scrutiny depending on the length of the confinement, and each heightened level requires the government to meet a more austere burden to justify continued detention. *Ailemen,* 165 F.R.D. at 582-589 (adopted by Judge Browning in *Cos II,* at *18-*21, *35).  The lowest scrutiny applies in cases with detentions between six months to a year, wherein due process challenges are generally viewed as premature. *See id.*, *citing Tortora*, 922 F.2d at

889, *Accetturo,* 783 F.2d at 388, *United States v. Portes,* 786 F.2d 758, 768 (7th Cir. 1985). In these cases, courts recognize that the exigencies of complex, modern litigation may often extend the term of a defendant's detention without fault attributable to any party. *See Accetturo*, 783 F.2d at 387-8.

An intermediate level of scrutiny arises in the second group, involving pretrial detentions of between one to two years. *See Ailemen,* 165 F.R.D. at 583. The Court performs a balancing of factors in evaluating these intermediate length detentions, with special emphasis and attention upon the government's role in causing the delay. *Compare United States v. Orena,* 986 F.2d at 631-32 (cause of the extended detention heavily determinative and not attributable to government) *and United States v. Zannino*, 798 F.2d 544, 548-9 (1st Cir. 1986)(similar) *with United States v. Chen,* 820 F. Supp. 1205, 1210-11 (N.D. Cal. 1992) (ordering release after one year where delay was attributable to government).

The highest scrutiny applies when pretrial detention is *very* long—about two years or more. In these cases, continued detention is allowable only if special circumstances indicate that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention, and the government was not responsible for any significant portion of the delay. *See Ailemen,* 165 F.R.D. at 582-3. The few cases allowing detention exceeding two years have involved defendants posing an extreme risk of probable and *not* speculative harm, and where such probable risk cannot be mitigated by strict conditions of release, such as in terrorist cases. *E.g., United States v. El-Gabrowny,* 35 F.3d 63 (2nd Cir. 1994 (1993 World Trade Center bombing plan).

> **D.    The Government Must Show Continued Detention Is *Extraordinarily Necessary, And* That Government Needs Cannot Be Met By Conditions of Release, *And* That The Government Is Not Responsible For Significant Part Of The Delay In This Case, All By Clear and Convincing Evidence**

Mr. Jarvis' case requires the highest level of constitutional scrutiny because the duration of his pretrial confinement is almost twice the detention triggering due process. The three year pretrial

confinement requires the government to prove, by clear and convincing evidence, that: (1) there are special circumstances that indicate Mr. Jarvis' release would "pose and extraordinary threat to the government's regulatory interests," (2) that cannot be mitigated by conditions of release, and (3) the government was not responsible for any significant portion of the delay. *Ailemen,* 165 F.R.D. at 582-3. The rarity of evidence meeting this extraordinary standard is illustrated by the terrorist case of *El-Gabrowny. El-Gabrowny,* 35 F.3d at 64-5 (2nd Cir. 1994).

The evidence in *El-Gabrowny* which was extraordinary enough to support a two-plus year pretrial detention was no less than the defendant being a terrorist suspect in the 1993 World Trade Center bombings, who had a history of flight, had assaulted police officers when confronted by law enforcement, and was in possession of five fraudulent passports when arrested. *Id.* Nothing of the sort exists as to Mr. Jarvis. In cases such as Mr. Jarvis' where no such extraordinary evidence exists and the government's responsibility was significant in causing delay, government caused delay outweighed even significant risk of flight, requiring release. *See United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2nd Cir. 1986).

In pretrial confinements as excessive as Mr. Jarvis', even if the United States had not caused the delay by its refusal to release Mr. Jarvis' properties, the detention must be terminated as release would not unduly infringe on government's regulatory interests. *United States v. Gatto*, 750 F. Supp. at 675-6. As Judge Browning noted in *Cos*, Mr. Jarvis' case is one equaling "the level of detention that is seen in cases such as *United States v. Millan* where, regardless of the reasons for delay, only an *extraordinary* showing of flight risk or danger to the community will justify continued detention." *Cos II,* at *35.

Moreover, the government must show that *confinement* is extraordinarily necessary, and that its extraordinary needs cannot be met by conditions of release. *See United States v. Ojeda Rios*, 846 F.2d

167, 169 (2nd Cir. 1988). Release conditions mitigate any threat that the defendant's release may pose to the government's regulatory interests, and where, as here, the defendant has neither violent history nor charges and agrees to sufficient conditions, the defendant's agreement is support in favor of release. *Id.*; *Gatto,* 750 F. Supp. at 676 (same).

  **E.**  **Employing the Due Process Analysis**

    *1. The Cos Decisions*

  The three *United States v. Cos* opinions, two from the District of New Mexico and one from the Tenth Circuit, are instructive. In *Cos I,* Defendant Cos moved for release after 16 months pretrial confinement and was denied. In the unpublished opinion now known as *Cos I,* the Court of Appeals affirmed that Cos' pretrial detention was proper under 18 U.S.C. §§ 1342-1343, but remanded because the district court had not done a proper analysis of whether the continued detention was proper under the Due Process Clause. *Cos I,* 198 Fed. Appx. at 732 (citing *United States v. Millan,* 4 F.3d 1038, 1043-1047 (2nd Cir. 1993). The Tenth Circuit directed the district court to apply the Due Process analysis, finding this issue "must be subjected to more careful scrutiny" than required by the statute, and to consider *Millan, United States v. Shareef,* 907 F. Supp. 1481, 1485 (D. Kan. 1995) and *United States v. Accetturo,* 783 F.2d 382 (3rd Cir. 1986). *Cos I,* 198 Fed. Appx. at 732.

  In *Cos II,* Judge Browning very carefully discussed and applied the three levels of scrutiny in the Due Process analysis. *Cos II,* 2006 U.S. Dist. LEXIS 95275 at *35. At that point, in *Cos II,* defendant Cos had been confined for 19 months. Judge Browning concluded that the second, intermediate level of scrutiny applied as Cos' detention was "at the upper-end of the intermediate range," and that the government had met its burden, based on Cos' violent underlying crimes, firearm use, and criminal history of conviction and repeated parole violations. *Id.* at *29. Judge Browning warned, however, that if the detention extended more than a few additional months, the

third level of scrutiny would apply, and that "only an **_extraordinary showing_** of flight risk or danger to the community will justify continued detention." *Id.* at *35.  This was late in 2006.  "If, however, the delay goes deep into 2007, for whatever reason, the United States will need to justify detention with **_strong evidence that Cos is an extreme flight risk and/or a serious danger to the community_**." *Id.* at *36.

Less than four months later, Cos renewed his motion for release. In *Cos III*, after defendant Cos had been confined for 22 months, Judge Browning in fact applied that third, highest level of scrutiny as he had warned. *Cos III*, 2007 U.S. Dist. LEXIS 33917 (D.N.M. 2007) at *10-*11. Adopting by reference the language and authorities concerning the burden on the government from *Cos II* ("extraordinary showing," "extreme flight risk or danger"), the district court held that the government had not and could not meet its burden, concluding that Cos' detention was becoming punitive, rather than regulatory, and thus a violation of due process. *Cos III*, 2007 U.S. Dist. LEXIS 33917 at *10-*11. Cos was ordered released from custody on due process. *Id.*

### 2.  *Applying The Cos-Type Analysis To Jarvis*

The decisions in the *Cos* trilogy are legally persuasive and factually on point.  Defendant Cos' detention started almost the same time as Mr. Jarvis'—Mr. Cos was first confined on June 19, 2005, and Mr. Jarvis has been confined since August 25, 2005.  In late 2006, at the time of *Cos II* when defendant Cos had been detained for 16 months and it appeared the would be detained for at least 19 months before trial, the district court applied the intermediate level of scrutiny, and found further detention was justified, because of the evidence the government produced to show the violent nature of the underlying state charges, Cos' criminal history of trafficking convictions and repeated parole violations, and the significance of his possession of a handgun together with the present drug charges.  Mr. Jarvis had been detained 14 months at that time, with no criminal history.

9

By April of 2007, however, when the district court again reviewed the Due Process issue in *Cos III*, Cos had been confined in jail for 22 months. Twenty-two months pretrial incarceration violated due process. The government's evidence that was sufficient to meet its burden under the intermediate level of scrutiny at 19 months was no longer sufficient to meet the higher level of scrutiny required at 22 months. In *Cos III*, Judge Browning ordered defendant Cos' release, despite the risk of flight and harm to the public, because at that point the extraordinary confinement time had ripened into a Due Process violation. The court noted that this was true even though "there [] very little information about Mr. Cos' family, about what he is doing in the community, about his employment, and about his finances," and also that "he has a prior state court conviction for drug trafficking and he violated the terms of his parole for that violation on several occasions." *United States v. Cos*, 198 Fed. Appx. at *11. At the time of Cos' release, Mr. Jarvis had been confined 20 months, and favorably distinguishable from Mr. Cos, has *never* violated any conditions at any time. Additionally, the government here has extensive information as to Mr. Jarvis regarding all that was lacking in *Cos*, family connections, finances, and community connectedness.

Presently Mr. Jarvis' detention has lasted almost a year longer than Mr. Cos'. Mr. Jarvis' detention *is a year longer already* than the cases requiring the highest level of scrutiny—Cos' case reached that level at 22 months, and Mr. Jarvis is at 35 months, and will be at 37 months by the time this Motion is heard. The government simply does not have the manner of evidence to meet the clear and convincing standard to continue to detain Mr. Jarvis.

The government must prove *extraordinary necessity* of continued detention—an "extraordinary showing" and "extreme risk" of flight or danger. And, the government must prove that the "extreme" and "extraordinary" risk cannot be mitigated by imposing conditions of release. In *Cos II* and *Cos III,* the Court required that the government prove the *extraordinary necessity* of continued

10

detention through "evidence … similar in nature to the facts applicable to Smith and Brown in *United States v. Shareef,* or the defendants in *United States v. Millan,*" *Cos II,* at * 66, or the evidence in *United States v. Orena* and *Millan*, *id.* at * 71. The rare case in which a detention of 27 months was permissible, and this heightened level of scrutiny met, was the alleged terrorist case of *El-Gabrwony.*

Mr. Jarvis' case is nothing like any of these extraordinary necessity cases.

**F.      Mr. Jarvis' Case Is Nothing Like *Orena, Millan*, and *El-Gabrowny* and the cases of Smith and Brown in *Shareef***
**Mr. Jarvis' Case Is More Like *Cos, Shareef, Gonzales Claudio, Gatto,* and Archambroux, Which Mandate Release**

The government cannot show evidence as to Mr. Jarvis on par with *Orena, Millan,* and *El-Gabrowny* and the cases of Smith and Brown in *Shareef* in this case.  Rather, this case is on par with *Shareef, Gonzales Claudio, Gatto,* and *Cos III*, with the profound distinction that of all these Defendants, Mr. Jarvis **alone** has no criminal history.

**1.      *The Few Cases That Have Met The Highest Level Of Scrutiny Have Been Terrorism or Mafia Cases***

In *El-Gabrowny*, the defendant was accused of the 1993 terrorist bombings of the World Trade Center, and the conspiracy to effect thousands of deaths.  *El-Gabrowny,* 35 F.3d at 65. The violent terrorist nature of case and planned flight led the Second Circuit to conclude that El-Gabrowny was an extremely high risk of flight, and an extremely high risk of dangerousness to the community. *Id.* at 65.  Thus the government met the legal test for the highest level of scrutiny, and justified his confinement beyond 27 months.

The *El-Gabrowny* facts were found to justify more than 27 months of detention, but Mr. Jarvis' detention exceeds even Mr. *El-Gabrowny*'s by eight months. Mr. Jarvis' facts justify *less* than *El-Gabrowny*, and he has been incarcerated *more.*

In *Millan*, one defendant had been convicted of homicide, and evidence showed the other

had "ordered numerous shootings, beatings, and a contract murder." *Id.* at 1047. These defendants were found to be both an extreme risk of flight and extreme danger to the community, such danger unable to be mitigated by any conditions of release. *Id.* at 1049. Mr. Jarvis has been convicted of nothing.

Finally, in *Orena*, defendant Amato had only been in confinement for nine months—one-quarter of Mr. Jarvis' time in confinement. *United States v. Orena*, 986 F.2d 628, 631-2 (2ⁿᵈ Cir. 1993). The Second Circuit found sufficient evidence to support, at a lower level of scrutiny, that Amato was an extraordinary risk to the community. *Id.* The government proved that Amato was the "right hand man" to the acting boss of the Colombo Family crime organization and that that Amato's efforts "were responsible for the bloody, fratricidal war" of the organization. *Id.* at 631. The "fratricidal war" included over twenty shootings and the injury and deaths of innocent bystanders, supporting the Court's conclusion that the government's evidence "proves the deadly nature and seriousness of the danger to any person or the community that would be posed by Amato's release." *Id.* at 631-632 (quotation omitted). Again, the disparity in incarceration lengths between Amato and Mr. Jarvis and the profound extremes between Amato's violence and Mr. Jarvis' lack thereof make Mr. Jarvis' case a far cry from factual equivalency to support a constitutionally acceptable three to four year pretrial incarceration.

These three cases, *El-Gabrowny*, *Millan*, and *Orena,* illustrate what equates to clear and convincing evidence that confinement is *necessary* because of an *extraordinary* risk of flight or *extraordinary* risk of harm to the community, which cannot be mitigated by conditions of release. In each case, the government met that burden by showing that the defendants had been implicated in homicides, attempted murders, soliciting murders, were Mafia operationals, or were alleged engaged in acts of terrorism designed to kill or maim tens of thousands of people as in the 1993 World Trade

Center bombing plan. Indeed, what the government proved in each of these cases was that the defendant was involved in what can fairly be called acts of terrorism.

Mr. Jarvis' indictment alleges marijuana crimes, not terrorism or Mafia murders. The allegations against the defendant here concern serious but non-violent victimless crimes whose impacts were of an economic, rather than violent, nature. Mr. Jarvis has no criminal history, let alone a history of convictions for any violent acts or murders. In fact the government's entire case against Mr. Jarvis is centered on the economic workings of an alleged organization. Today, however, because of the extensive seizures of his bank accounts and encumbrances of his other assets, the economic reaches of Mr. Jarvis can be nothing more than remote speculation of government. Similarly, the United States has nothing more than speculation regarding Mr. Jarvis' possibility of flight or of causing the type of violent harm to the community that would support this three to four year detention, and purely speculative concerns are inadequate to meet proof as clear and convincing evidence. Upon his release, Mr. Jarvis will receive appropriate conditions mitigating any real, but less than clear and convincing evidence the United States may muster, which is what the Fifth Amendment requires.

2. **Mr. Jarvis' Case Is On Par With Those Cases Finding A Violation of Due Process—*Ailemaen, Theron, Archambault, Shareef,* and less extreme than *Gonzales Claudio*—All Of Which Mandate Release**

Absent clear and convincing proof of terrorist activities, there simply are no cases allowing a 36 month jail confinement of someone presumed innocent. *See Zannino*, 798 F.2d at 548. Instead, the presumption is "that in many, perhaps most, cases sixteen months would be found to exceed the due process limitation on pretrial confinement." *Id.* Factoring in detention through trial confinement will surely reach four years.

Mr. Jarvis' case is instead akin to those cases finding that further detention violates due

process. *See, e.g., United States v. Theron,* 782 F.2d 1510 (10th Cir. 1986); *Ojeda Rios,* 846 F.2d at 168-69; *United States v. Gonzales Claudio,* 806 F.2d 334, 341-43 (2nd Cir. 1986); *United States v. Zannino,* 798 F.2d 544 (1st Cir. 1986); *Ailemen,* 165 F.R.D. at 572-601; *United States v. Archambault,* 240 F. Supp. 2d 1082 (D.S.D. 2002); *United States v. Shareef,* 907 F. Supp 1481, 1482-85 (D. Kan. 1995); *United States v. Chen,* 820 F. Supp. 1205, 1210-11 (N.D. Cal. 1992); *United States v. Gatto,* 750 F.Supp 664, 672-76 (D. N.J. 1990); *United States v. Gallo,* 653 F. Supp 320, 334-45 (E.D. N.Y. 1986).

"What we must recognize as we proceed with our analysis in this matter is that these indisputably fundamental rights—the right to a speedy trial, the protection against excessive bail, the presumption of innocence—all would be empty pronouncements, full of sound and fury but signifying nothing, for a defendant who could be imprisoned indefinitely while awaiting trial." *United States v. Ailemen,* 165 F.R.D. at 578.

In our Circuit an extensive pretrial jail confinement violates due process, and was found so in the context of a speedy trial case. *Theron,* 782 F.2d at 1516. *Theron* held that it would violate due process to continue detention of a defendant for eight additional months, when the last four months would be caused by the request of his two co-defendants, who were not in pre-trial detention. Such delay in trial could be constitutionally accommodated only if the accused was released pending trial. *Theron* clarifies that in complex, multi-defendant cases, *un*constitutionality in the context of pretrial detention for due process purposes comes *sooner in time* than constitutional infirmity under speedy trial principles. *See id.*

In *Ailemen,* the defendant sought release under the Due Process Clause after 26 months pretrial detention. *Ailemen,* 165 F.R.D. at 578. The court agreed. The trial would add another nine months, due to the large volume of wiretap evidence. *Id.* at 578-80. Here, we have over six 40 hour weeks just of recorded conversations. Explaining that the right to a speedy trial, the excessive bail

14

protections, and the presumption of innocence would be empty if defendants could be imprisoned indefinitely while awaiting trial, the Court distinguished the defendant from a terrorist suspected of an infamous crime and released him with conditions. *Id.*

*Ailemen* reminds of the District Court's duty to ensure only the least restrictive infringement upon a constitutional right, and the directive that a district court carefully consider imposing conditions of release mitigating any government's concerns. *Ailemen,* 165 F.R.D. at 580.

> It also is extremely important to emphasize here a point that seems to have been overlooked in some of the reported opinions. When courts assess the magnitude of the threat that an individual defendant poses to the government's regulatory interests, we think that the proper focus is not on how big that threat would be if the defendant were released on no conditions, but, instead, the focus should be is on how big that threat would be if the defendant were released on stringent conditions aimed at reducing as much as possible the likelihood of harm to the threatened regulatory interests. In other words, the issue is not how much threat the defendant would pose if he were as free as any law-abiding citizen, but how much threat he would pose if he were released …. It is only by focusing on the actual conditions of release, and what those conditions would contribute to reducing the threat of harm to the government's regulatory interests, that courts can accurately assess how much continued imprisonment would contribute to achieving the government's regulatory goals.

*Id.*

In *United States v. Archambault*, due process required release from pretrial confinement after 20 months. *Archambault*, 240 F. Supp. 2d 1082 (D.S.D. 2002). Archambault was facing violent assault charges and his trial was delayed indefinitely due to his two interlocutory appeals of a double jeopardy issue. *Archambault's* appeals "were far from frivolous," a similar situation as in Mr. Jarvis' case, except more favorably for Mr. Jarvis, Mr. Jarvis won his first interlocutory appeal. *Archambault*, 240 F. Supp. 2d at 1087. Mr. Archamboult was released with conditions despite his alleged violence and his alcohol problem, as "further detention of Archambault would exceed the permissible limits of due process and would become punitive." *Id.* at 1088. Again, Mr. Jarvis' demand for release is

even stronger, having won one appeal and having been detained almost twice Archambault's 20 months.

Even more extreme is comparing Mr. Jarvis' case with *Gonzales Claudio,* wherein the appellate court ordered release yet again in the face of extreme violence and upon a shorter pretrial incarceration than Mr. Jarvis has suffered. *United States v. Gonzales Claudio,* 806 F.2d 334 (2nd Cir. 1986). The defendants were indicted for a $7.6 million bank robbery, with responsibility for the robbery claimed by a group calling itself Los Macheteros, (the Machete Wielders), a paramilitary, terrorist organization dedicated to achieving independence for Puerto Rico. *Id.* The government's evidence for continued detention strongly indicated responsibility for other violent acts of terrorism, including the killing of two United States servicemen and the destruction of several military planes on a government air base. The district court had made the finding that "no conditions of release [would] reasonably assure the presence of these appellants at trial." *Id.* at 343.

The Second Circuit reversed and ordered the defendants' release from jail. Such facts were sufficient to detain the defendants for the initial 14 months but due process did not allow longer with trial months away and likely to consume months itself. *Id.* at 343-44. Key to reversal was the court's examination of what the government could have done differently to expedite the case and the recognition that 16 months pretrial detention was surely violative of the Fifth Amendment. *Id.* at 342-43, *citing Zannino,* 798 F.2d at 548. The court found it outrageous that at 14 months into the case, the defense had still not been given full access to a portion of the discovery. *Id.* at 343.

In Mr. Jarvis case, it will be over three years before a single pretrial motion is even heard, and this is primarily due to the government's decision to illegally place *lis pendens* on Mr. Jarvis' substitute assets. In *Gonzales Claudio*, government cause of significant delay weighed strongly in favor of a due process violation, even despite the terrorist nature of the defendants and their past acts and

future plans.  The court essentially held that if the government wanted to prove the necessity of such

a long detention pretrial, it needed to come to the table with completely clean hands—having done

everything in its power to fulfill its obligations to facilitate speedy trial. *Id.* at 343-44.  The delays for

Mr. Jarvis case are all government induced, from the illegal *lis pendens* to illegal solitary confinement.

Finally, Mr. Jarvis deserves at least the treatment of Mr. Cos, released *14 months sooner* than

Mr. Jarvis if Mr. Jarvis were released today. Twenty-two months was too long for Cos with a violent

criminal history, and the Due Process Clause cannot allow Mr. Jarvis, with no criminal history, to be

detained nearly twice as long.  The government could not present clear and convincing evidence to

support such extraordinary detention of Cos at 22 months. It will be impossible as to Mr. Jarvis at

36 months pretrial detention or more, as will be the case when this motion is heard.

### G.    Due Process Summation

Mr. Jarvis has been in 35 continuous months of pretrial detention, six months of which were

in solitary confinement. Pretrial incarceration will exceed 3 years before this motion is heard. Before

the earliest anticipated trial date, he will be incarcerated another 6 months and then for as long as

trial takes.  At the upper end of pretrial detention, *Cos* informs that 22 months pretrial incarceration

exceeded the protections of Due Process; upwards toward four years *obliterates* the constitutional

protections.

The government cannot show as it must now by clear and convincing evidence, that (1)

special circumstances indicate that Mr. Jarvis' release, even with conditions, would pose an

extraordinary threat to the government's interests, *and* (2) that the government was not responsible

for any significant portion of the delay to date.

Instead, Mr. Jarvis' extended detention violates due process because: (i) the excessive length

of his detention has caused the pretrial incarceration to become punitive in nature; (ii) this court has

already found illegal conditions of confinement regarding Mr. Jarvis' unparalleled six months in solitary confinement upon non-violent marijuana charges; (iii) the government's success in an illegal course of action necessitated the winning interlocutory appeal to correct it, a primary reason for the significant delay in the resolution of this case; (iv) the evidence upon which detention was based is weak, and much of it is illegal and cannot be considered; and (iv) Mr. Jarvis cannot meaningfully assist with his defense when jailed hours away from his lead counsel who is denied budgeting to met as needed with the defendant. These factors make it impossible for the government to prove by clear and convincing evidence that it is extraordinarily necessary to incarcerate Mr. Jarvis, rather than free him under reasonable and appropriate conditions.

In these very long detention cases, which include pretrial detentions exceeding two years detention can be upheld **only if the government was not responsible for any significant portion of the delay** and special circumstances indicated that **the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention**. *See United States v. Ailemen*, 165 F.R.D. at 582-83. The case of *United States v. El-Gabrowny,* 35 F.3d 63 (2d Cir. 1994) is an example of the kind of case were continued lengthy detention is upheld—a terrorist bombing suspect who had assaulted officers and made elaborate flight plans. *See id.* at 65.

II.   **The Government Cannot Use The Recorded Wiretapped Conversations Showing Mr. Jarvis Angry To Prove His Continued Detention is Necessary, As Those Recordings Violate The Warrant: They Should Have Been Minimized, And § 2515 Prohibits Use of Illegally Taps in *Any* Judicial Proceeding**

At the initial detention hearing in this matter, the government relied largely on three recorded wiretap communications, which showed Mr. Jarvis angry over family matters regarding his two daughters. The recordings have nothing to do with the allegations in this case, and do not meet the criteria for recording and retention in the wiretap warrant, with one regarding his eldest daughter

18

having been assaulted at a party, and the others concerning his dismay with his girlfriend over visitation with their baby daughter.  None of these recordings can be used for detention purposes, nor can the content of the recordings be part of the government's case for detention, as use of these recordings in a judicial proceeding violates federal statute.

The recorded wiretaps introduced by the government in the initial detention hearing are inadmissible, because each clearly should have been minimized.  Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.   §§2510-2522 (Title III). Title III, as amended, generally prohibits electronic eavesdropping on telephone conversations, face-to-face conversations, or computer and other forms of electronic communications. 18 U.S.C. § 2511.7 At the same time, it gives authorities a narrowly defined process for electronic surveillance to be used as a last resort in serious criminal cases. When approved by senior Justice Department officials, law enforcement officers may seek a court order authorizing them to secretly capture conversations concerning any of a statutory list of predicate offenses. 18 U.S.C.  § 2516. Title III court orders come replete with instructions describing the permissible duration and scope of the surveillance as well as the conversations which may be seized and the efforts to be taken to minimize the seizure of innocent conversations, 18 U.S.C. § 2518.

When conducting electronic surveillance, Title III requires federal agents to minimize the interception of communications irrelevant to the investigation. This is called the "minimization requirement."  Fishman & McKenna, WIRETAPPING AND EAVESDROPPING (2d ed. 1995 & 2001 Supp.).  Title III requires exclusion of wiretapping evidence and any of its fruits improperly obtained or retained, and has a much broader *statutory* exclusionary rule than the Fourth Amendment's judicially-created exclusionary rule.  *See Gelbard v. United States,* 408 U.S. 41 (1972); *United States v. Giordano*, 416 U.S. 505 (1974).

19

The failure to minimize these particular conversations makes these taps illegally obtained and illegally *re*tained. It means that these particular conversations cannot be used by the government to Mr. Jarvis' detriment, just as if they didn't exist, because they *are not supposed to exist* but for government illegality.   In fact, Title III makes it illegal to use improperly recorded and intercepted communications in *any* judicial proceeding, not just trial. *Compare* 18 U.S.C. § 2511(1)(a)(concerning the interception of communications) *with* 18 U.S.C. § 2511(1)(d)(concerning the use of intercepted communications)*; also Quigley v. Rosenthal*, 327 F.3d 1044, 1066-1070 (10th Cir. 2003).

The exclusion of improperly recorded and intercepted evidence is so broad that there is no good-faith exception for warrants obtained pursuant to Title III, 18 U.S.C. §§ 2510 et seq.   *United States v. Rice,* 478 F.3d 704 (6th Cir. 2006).

Section 2515 specifically prohibits the use of improperly recorded and intercepted communications in a judicial proceeding like Mr. Jarvis' detention hearing:

> § 2515.  Prohibition of use as evidence of intercepted wire or oral communications
>
> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter [18 USC §§ 2510 et seq.].

18 U.S.C. § 2515.

The Supreme Court has given wide scope of Title III's exclusionary rule provision. *E.g. Gelbard v. United States,* 408 U.S. 41 (1972). "In a detention hearing a defendant may, relying on § 2515, object to the introduction of evidence on the ground that the information was obtained by a warrant that did not comply with the requirements of [Title III's]" requirements of particularity, or

minimization.  *See, e.g., United States v. Samuels*, 436 F. Supp. 2d 280, 283 n.2 (2006).  Section 2515's language is unequivocal in requiring noncompliant taps be excluded in *all* judicial and administrative proceedings: "no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof…." 18 U.S.C. § 2515.

"Good faith" is irrelevant.  Even a monitoring agent acting in good faith, and communications intercepted in good faith *but outside the scope of the warrant* and 18 U.S.C. § 2510 must be excluded from judicial proceedings. 18 U.S.C. §§ 2515 and 2518 (10)(a)(iii); *United States v Borch* 695 F. Supp. 898 (E. D. MI 1988), *revd on other grounds, remanded* 903 F2d 1068 (6th Cir. 1990).

### III.  Release With Conditions Is Necessary Because The Presumption Of Innocence And Due Process Right to Liberty Outweigh The Government's Interests In Detention

Correcting "fundamentally unjust incarceration" is a judicial "imperative." *Engle v. Isaac,* 456 U.S. 107, 135 (1982); *accord Murray v. Carrier*, 477 U.S. 478 (1986) (quoting *Engle*); *see also Schlup v. Delo,* 513 U.S. 298, 316-17 (1995). *Mathews v. Eldridge* provides the framework for ascertaining the standard of proof for due process analysis, requiring a balancing of three factors: the private interest affected by the proceedings; the risk of error in the State's chosen procedure; and the countervailing government interest supporting the procedure at issue. *Mathews*, 424 U.S. 319, 335 (1976).

The private interest affected is Mr. Jarvis' constitutional liberty interest in pretrial release. There is only one private interest that is more valued in our justice system than liberty, the interest in life itself. *See Barker v. Wingo*, 407 U.S. 514, 533 (1972). Here, other constitutionally sacred private interests compound the risk of deprivation that *Mathews* protects: the presumption of innocence and the right to meaningfully participate in one's own defense.  The presumption of innocence is a

21

principle so deeply ingrained in America that it is "the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law," "implicit in the concept of ordered liberty." *Coffin v. United States*, 156 U.S. 432, 453 (1895); *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). Under *Mathews,* Mr. Jarvis' private interests at stake here are at their zenith.

Mr. Jarvis' continued detention presents a grave risk of error. Every day liberty is denied is irreplaceable, and this in the face of his presumption of innocence.  The risk of error is also high because the detention analysis, thus far, was largely based upon impermissible wiretap evidence and the charges appearing in the indictment, a document supported only by probable cause.

The government's interest in continued detention is an important regulatory interest, but not compelling after 35 months.  The government's concerns are speculative, and neither concrete nor individualized to Mr. Jarvis.  The government's interests will be served by conditions mitigating the speculated risks, and these are risks society must bear to counterbalance preservation of the revered liberty interest.  This must occur, because the speculative risk cannot outweigh the fundamental rights at stake and the high risk of error in forever irremediable loss of liberty.

Mr. Jarvis' continued detention grossly fails in a *Matthews v. Eldridge* balancing. The government's legitimate interest is merely regulatory, which diminishes as the length of detention increases.  The government has already been found punitive in its placement of Mr. Jarvis in solitary confinement, actions this Court corrected. Mr. Jarvis' rights at stake, liberty, the presumption of innocence, the right to defend, added to the high risk of error in unconstitutional detention, clearly outweigh the regulatory interests of the government, requiring his release.  *See* Jeffrey Manns, *Liberty Takings:  A Framework For Compensating Pretrial Detainees*, Harvard Law School Discussion Paper 512, http://www.law.harvard.edu/programs/olin_center/)(Apr. 2005).

IV.    **Pre-trial Detention Away From Court and Counsel Location Impinges On Mr. Jarvis' Sixth Amendment Rights To Assist His Counsel In Preparing His Defense**

Oppressive pretrial incarceration is a devastating form of prejudice, because it is destructive to the self, and because lengthy incarceration inevitably impairs the ability of an accused to defend herself. *Barker v. Wingo*, 407 U.S. at 533. More recently the Supreme Court has recognized that that lengthy pretrial detention "presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett v. United States,* 505 U.S. 647, 655-56 (1992) (internal citations omitted).

Scholars agree that the ease of gaining a rather long pretrial detention is harmful to the American criminal justice system—long pretrial detention makes the system reach inaccurate results, reduces public respect, and drains system resources. Indeed, here the resource drain seems factored into the cutting of Mr. Jarvis' trial budget 45%, despite no companion court inquiry into nor monitoring of the taxpayer costs of the government's case or recognition that "the due process guarantee of fundamental fairness derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Ake v. Oklahoma,* 470 U.S. 68, 76 (1985).

The prosecution knows prolonged pretrial detention increases probability of resolution by plea, because any human being eventually falters in his belief in justice after six months of solitary confinement and three years of incarceration in the absence of any conviction, with no ned in sight over the upcoming year. *See* Stephanos Bibas*, Plea Bargaining Outside the Shadow of Trial,* 117 HARV. L. REV. 2463, 2491-93 (2004); Gerald E. Lynch, *Our Administrative System of Criminal Justice,* 66 FORDHAM L. REV. 2117, 2146 (1998) (discussing meaningful checks on executive authorities in the context of pretrial detention).

The case of Wen Ho Lee in this federal district illustrates the tendency for an accused held in oppressive pretrial conditions to plead guilty to gain release, unfairly, in a prosecution which in hindsight appears to have been entirely unsupported. *See* Matthew Purdy & James Sterngold, *Under Suspicion: The Prosecution Unravels: The Case of Wen Ho Lee*, N.Y. TIMES, Feb. 5, 2001, at A1. Mr. Lee pled to a minor offense that ended an over one-year detention and resolved a fifty-nine count indictment. Prosecutors could not have detained Mr. Lee *for more than one day* if they had only raised the single charge to which they ultimately agreed to plead him. The detention was so extreme that United States District Court Judge Parker apologized to Mr. Lee upon his release, and apologized on behalf of the third branch of government, the judiciary, for the actions of the Executive:

> I might say that I am also sad and troubled because I do not know the real reasons why the Executive Branch has done all of this. We will not learn why because the plea agreement shields the Executive Branch from disclosing a lot of information that it was under order to produce that might have supplied the answer.
>
> Although, as I indicated, I have no authority to speak on behalf of the Executive Branch, the President, the Vice-president, the Attorney General, or the Secretary of the Department of Energy, as a member of the Third Branch of the United States Government, the Judiciary, the United States Courts, I sincerely apologize to you, Dr. Lee, for the unfair manner you were held in custody by the Executive Branch.

Transcript at http://cicentre.com/Documents/DOC_Judge_Parker_on_Lee_Case.htm.

Mr. Jarvis has been held ten times longer than a usual pretrial detention. Periods of detention for federal detainees average approximately one month for individuals who are eventually able to meet bail, eighty-one days for those never able to meet bail, and one- hundred-and-ten days for those denied bail. *See* BUREAU OF JUSTICE STATISTICS, COMPENDIUM OF FEDERAL JUSTICE STATISTICS, 2001, 40 (2003) (at http://www.ojp.usdoj.gov/bjs/pub/pdf/cfjs0103.pdf).

In addition to being held ten times longer than normal and his solitary confinement exceeded in this federal district only by Wen Ho Lee's, Mr. Jarvis is confined, at the government's

insistence and over his formal filed objections, outside of Albuquerque where it is difficult for him to participate in his defense, and difficult for his lawyers to use his help or communicate confidentially enough to put forth his concerns. Presently, lead counsel is denied budgeting for sufficient client visits to render what he knows effective assistance of counsel requires in client visits, based upon his 30 years of experience in complex criminal defense.

The prejudice of lengthy pre-trial incarceration is increased when the defendant is incarcerated far from where he faces trial- Mr. Jarvis' situation is the same with his court chosen and appointed counsel 200 miles away and denied sufficient funds for client visits:

> [I]t is self-evident that "the possibilities that long delay will impair the ability of an accused to defend himself" are markedly increased when the accused is incarcerated in another jurisdiction. Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to  keep track of their whereabouts, is obviously impaired. And, while "evidence and witnesses disappear, memories fade, and events lose their perspective," a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time.

*Smith v. Hooey,* 393 U.S. 374, 379-80 (1969).

Even the Department of Justice recognizes that it is improper to house federal detainees away from their court process. "Detention space needs to be in or close to Federal court cities, as detainees are highly involved in the court process. If they are housed too far away, deputy marshals spend excessive amounts of time (and money) transporting them back and forth for court." Department of Justice, USDOJ: FY 1999 Annual Accountability Report: Chapter 5, avail. Online at http://www.usdoj.gov/ag/annualreports/ar99/chapter5.htm.    Surely the expense of these proceedings is design and cause of the United States.  The extensive and unconstitutional pretrial detention has not only denied Mr. Jarvis his liberty without due process of law, the place of

detention and cutting of counsel budgeting for confidential attorney visits and communications makes all the more obvious the unconstitutionality of this extreme detention.

"A man isolated in prison is powerless…." *Smith*, 393 U.S. at 379-80.

## CONCLUSION

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992), *citing Youngberg v. Romeo,* 457 U.S. 307, 316 (1982). "As incarceration of persons is the most common and one of the most feared instruments of state oppression and state indifference, we ought to acknowledge at the outset that freedom from this restraint is essential to the basic definition of liberty in the Fifth and Fourteenth Amendments of the Constitution" *Foucha v. Louisiana*, 504 U.S. at 90 (Kennedy, J., dissenting). "[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Jones v. United States,* (1983) 463 U.S. 354, 361 (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)).

The government met its initial burden to show that Mr. Jarvis should be confined to jail three months after his incarceration began.. However, things have now changed significantly.  Now, when Mr./ Jarvis has been incarcerated for nearly three years, increasing to four years by completion of trial, the government bears the burden to justify any further detention upon clear and convincing evidence. The government does not have clear and convincing evidence that keeping Mr. Jarvis in jail is *extraordinarily* necessary, because of *extreme* risk of flight or danger to the community, a standard met only after three years in cases of terrorism, all involving the substantial loss of life.  Moreover, the wiretapped conversations upon which the government relied at the initial hearing cannot be used to justify his further detention.

26

As the Supreme Court recently reminded us, "[s]ecurity subsists . . . in fidelity to freedom's first principles. Chief among these are freedom from arbitrary and unlawful restraint and the personal liberty that is secured by adherence to the separation of powers." *Boumediene v. Bush*, 553 U.S. at    , 128 S. Ct.  2229, 2277 (June 12, 2008).

Mr. Jarvis' three year pretrial detention at the hands of the Executive has violated his Fifth and Sixth Amendment rights.  Continuing pretrial incarceration for another year is constitutionally indefensible.

The United States has reviewed this motion and opposes it.

WHEREFORE, Mr. Jarvis respectfully prays that this Court enter an order releasing him from pretrial detention immediately, upon conditions.

Respectfully submitted by:

*Electronically Filed*
*/s/*
*July 29, 2008*
By_____
Gary C. Mitchell, Esq.
P.O. Box  2460
Ruidoso, NM 88355-2460
575.257.3070

*/s/*
*July 29, 2008*
By_____
Jody Neal-Post, Esq.
317 Amherst SE
Albuquerque, NM 87106
505.268.7263

I hereby certify that a true and correct copy of
the foregoing pleading was delivered to opposing
counsel via the CM/ECF system this 29th  of July, 2008.

*Electronically Filed*
_____
Jody Neal-Post

27