IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                                      CR 05-1849 JH

DANA JARVIS, *et al.*,

        Defendant.

**REPLY TO RESPONSE [Doc. 1367] TO
MOTION FOR RELEASE ON CONDITIONS
PURSUANT TO THE FIFTH AMENDMENT REQUIREMENTS OF DUE
PROCESS [Doc. 1360]**

    Mr. Jarvis has been in pretrial detention more than three years. Based upon the third amended trial setting, at least nine more months will add to this before his trial concludes. Doc. 1368. Realistically, this will be a 45 month incarceration before any possible finding of guilt. Despite this unprecedented and extraordinary pretrial incarceration for an alleged marijuana conspirator facing no charges of violence, the United States opposes Mr. Jarvis' release pending trial, even with significant conditions.

    In its response, the government asserts the same information that it relied upon at the initial detention hearing under 18 U.S.C. § 3142, without any acknowledgment that evidence sufficient in the face of the § 3142 statutory presumption is not the equivalent quantum of *proof* justifying continued detention in the constitutional due process scrutiny of a 45 month detention.

    Now the government must *prove* by clear and convincing evidence why Mr. Jarvis *cannot* be released, and why *no conditions of release are sufficient* to keep the public safe and ensure he will appear for trial. The government must *prove* these things by proving facts, not by

1

making speculative and unsupported assertions in the face of a rebuttable presumption. Nothing in the government's response does this. Nothing in the government's response indicates they even have sufficient evidence to do so if they tried.

### The Government's Confusion: A Speedy Trial Analysis is Not Equivalent to the Defendant's Due Process Challenge

The government argues at length that the United States is not responsible for all of the delay in bringing this case to trial. This is because the government conflates the due process analysis for *release from detention* with a speedy trial claim for *dismissal*. If Mr. Jarvis had argued that this lengthy delay was all or even mostly the government's fault, Mr. Jarvis would be entitled to not only release, but also to have the case dismissed with prejudice for violation of his speedy trial right. But this is not the Defendant's present argument.

Mr. Jarvis simply seeks release from excessive pre-trial incarceration, into reasonable supervision. No matter who can have "delay" attributable to them for each portion of the time passage pre-trial, the due process clause prohibits Mr. Jarvis from being held 45 months while presumed innocent, unless the government proves by clear and convincing evidence that (1) it had *no part* in any of the delay, and (2) the need to confine him in jail, as opposed to supervised release, is extraordinary. *Compare Barker v. Wingo*, 407 U.S. 514, 531 n32 (1972)(even in a speedy trial analysis, the ultimate responsibility for negligence "must rest with the government rather than with the defendant."). "Extraordinary" in terms of the need to confine as long as Mr. Jarvis, means a threat to the public so high that it ranks *beyond that* even associated with the first World Trade Center bombers. *See* e.*g., United States v. El-Gabrowny,* 35 F.3d 63 (2nd Cir. 1994).

The government's analytical focus on blame diverts this Court's attention into an

unsound legal analysis, which can only yet again result in error in these proceedings.[1] But even in the government's blame game, the United States cannot seriously contend that it was not responsible for any significant portion of the delay in this case. The government admits only the curiously chosen April 10, 2007 to September 24, 2007 time frame for accepting responsibility for its legal error with its *lis pendens,* but then takes back its concession of responsibility. Mr. Jarvis was responsible even for that delay, the government argues, because Mr. Jarvis brought the successful appeal against the United States, the entity whose sworn duty here is to seek justice rather than to win. Is the government's argument then, that when the government acts illegally, as confirmed here, that the defendant must still sit incarcerated indefinitely as penalty for besting the government?

Ironically, to support this blame-shifting, the government relies on Judge Browning's analysis in *Cos II*, where Judge Browning *declined* to hold the party who took the appeal responsible for the time eaten up by the appeal. Doc. 1367, at 8-9. Actually, the government's authority says "An appeal is not a delay, but the exercise of a right Congress has granted litigants." *See id., quoting Cos II,* 2006 U.S. Dist. LEXIS 95275 (D.N.M. 2006). Applying Judge Browning's analysis to this case, the defendant is obviously not to be blamed for time taken to correct a miscarriage of justice in his successful appeal of the government's wrongdoing. Clearly if it cuts any way, it cuts the other way, leaving the time lapse attributable to the government.[2]

---

[1] Apportioning "blame" for delay is bedrock *Barker v. Wingo* analysis, not due process analysis. In detention cases, such "blame" is a relevant factor in the cases exceeding one to two years detention. Responsibility for delay simply becomes moot, constitutionally intolerable, in the absence of extraordinary factors with the length of pre-trial incarceration exceeding three years.

[2] The government would also attribute blame to Mr. Jarvis for the appeal time because "despite obtaining the relief he sought," Mr. Jarvis has not subsequently retained private

3

**The Government Simply Relies On The Case It Presented Under the Statute**

The government also emphasizes the "evidence" presented to the Magistrate Judge at the initial detention hearing, and how "Judge Torgerson found that Jarvis had not rebutted that presumption." This is just as true as it is meaningless to prove what the government must prove now three years later. Three years ago under the statute, the statute imposed a presumption that Mr. Jarvis be detained, and Mr. Jarvis had the burden to overcome that presumption. At this point 36 months later, looking at 45 months before completion of trial, the Due Process Clause shifts the burden to the *government* to *prove* by clear and convincing evidence that no combination of conditions of release will serve the government's interests. The record at the initial detention hearing does not meet the government's present burden.

**The Government's Representations Omit Pivotal Facts, Obfuscating Its Lack of Extraordinary, Clear and Convincing Evidence for Detention**

The government characterizes the strength of its case on factual generalizations, giving this Court less information than it possesses, because the actual specific evidence paints quite the different picture *against* continued detention.

For example, the government splashes Mr. Jarvis' historic "multiple failures to appear" across its response, reasoning that because he "has prior failures to appear and has used an alias in the past, [this] demonstrates that, if released, Jarvis presents a very high risk of flight." This sounds serious to anyone, and indeed gave pause to Mr. Jarvis' defense team, none of whom knew a thing about "Mr. Jarvis' multiple failures to appear."

So, what are these heinous law-abiding failures? Late payment of two traffic citations,

---

counsel, so his appeal was "unreasonable." Surely the government realizes that Mr. Jarvis and this Court are in compliance with all obligations to maintain record basis of Mr. Jarvis' continuing qualification for CJA counsel, and have been. *Ex Parte* CJA filing, Doc. 1237.

one of which was an equipment ticket for a malfunctioning speedometer that Mr. Jarvis timely corrected and transmitted evidence thereof to the Court, which promptly committed administrative error in failing to record it, although the companion speeding fine was recorded and that charge resolved. The equipment ticket error triggered a court setting notice, Mr. Jarvis received it, wrote it down and his home burned down on May 7, 2005. Mr. Jarvis missed the erroneously set hearing he had already mailed in notice of compliance on. When recovered from the fire and his unburned possessions rounded up, he noted the missed hearing and resolved the case, paid the citation and court costs, and the case reflects closed with the notation: "All obligations met." The copy of the initial letter of repair of the speedometer is reportedly in the United States' custody as seized personal possessions of Mr. Jarvis. The second "FTA" is a 1999 traffic citation in the metropolitan court, which, after an initial "failure to appear" Mr. Jarvis indeed "appeared and paid citations." *Pre-trial report*.

The government attempts to frighten the Court by boldly informing that Mr. Jarvis has used an alias in the past. And what are the evidentiary details the United States of America would prove against the defendant?

The government could prove at hearing that, as to maintaining an alias, the United States has evidence of no more sinister behavior than accountable to countless American college students, and in fact less; the college students have fake IDs they illegally buy alcohol with, while Mr. Jarvis is not even alleged to have done as much with his. Instead, Mr. Jarvis bought car insurance such that he was in compliance with mandatory state insurance laws. This is the government's clear and convincing evidence in support of a "very high risk of flight" comparable to *El-Gabrowny,* where the 1993 World Trade center bombing suspect had 5 fraudulent passports, a history of flight and escape plans and record assaults of law enforcement officers. *El-Gabrowny,* 5 F.3d at 64-5.

As to dangerousness, the government continues to argue based upon statutory presumption when the extended detention argument is instead a due process argument: "[t]he nature of the charged crimes, … reflect the unacceptable danger that Jarvis poses to the community."

The point the government *invites the Court to miss* is the making of crucial reversible error: that the Due Process Clause does not allow this excessive detention based on bare charges alone. The Due Process Clause requires the government to prove probable flight, to prove probable dangerousness, because it requires the government to prove that no combination of conditions of release will mitigate the government's concern that Mr. Jarvis will "pose a danger to the community." The government flouts the presumption of innocence in misfocusing this Court's necessary inquiry, flouting exactly what the Due Process Clause is meant to protect in a detention hearing.

At the end of the day, the only thing offered by way of "proof" by the government is the very grave and serious speculation that there was a murder-for-hire plot, and an "investigation further revealed that Jarvis was attempting to have people outside of jail assist him in arranging for these murders-for-hire." The government admits in its Response that its assertion of "credible threat" is the only "proffer" the government brings forth: "[T]o the extent that due process requires more of the government at this stage than is mandated by section 3142, *Cos I*, [ ], the government has proffered the evidence relating to Jarvis' attempt to arrange for the murder of the case agent and a cooperating witness." Doc. 1367 at 11. Of course if the government were to prove, by clear and convincing evidence in an adversarial proceeding, that Mr. Jarvis in fact attempted murders-for-hire of a government agent and a witness, this would move toward meeting the government's burden to continue his detention. But the government has not proven these things—it has asserted them. The

government has proffered its conclusory *assertion* that these crimes occurred and its conclusory claim that the "threat" was "credible."

This Court will recollect its findings in Doc. 654 ordering release of Mr. Jarvis from over six months of solitary confinement based upon these same unfounded allegations. What has heretofore not been before the Court to undersigned counsels' knowledge are the actual facts upon which the United States asserts the "credibility" of these most serious and slanderous allegations; that the snitch was a violent felon and meth user facing federal charges, crazy to get out of lockup instead of facing up to ten years for gun and ammunition charges, crazy knowing his pregnant girlfriend was shacking up with his arch enemy, and was maybe just plain crazy, having been committed for diagnostic evaluation May 25, 1999. This is the felon who then became an agent of the United States government invading the Sixth Amendment protections of Mr. Jarvis in his fabrication of a fantastic murder-for-hire story sufficient to reduce his sentence to some three or less years.

What else has the Court not been advised? That the taint team counsel working the murder-for-hire matter from at least October 7, 2005 forward created a conflict of interests when she substituted out the AUSA prosecuting the felon/government agent on October 11, 2005 and substituted herself in as both prosecutor of the government agent and taint team leader. Perhaps the United States can tell this story to this Court of its "credible" witness, previously charged with extortion, bribery and retaliation/intimidation of a witness. Still, telling of the story is not enough to satisfy due process. The story "evidence" must meet the clear and convincing standard the Fifth Amendment now requires, subject to the crucible of Mr. Jarvis' counsel's cross examination. All the government really has are the facts: there are no murdered witnesses, no beat up witnesses, no record evidence of a plan.

**The Claim that Judge Browning's *Cos* Analysis is "Not A Legal Test"**

The government claims that the test carefully set out by Judge Browning in *Cos II* and *Cos III* for the third-level class of cases, those reflecting detentions of two years or more, is somehow inappropriate, because it was not explicitly adopted by the Tenth Circuit in *Cos I*.[3] *Cos I*, not unsurprisingly, doesn't explicitly support the test of *Cos II* since *Cos II* and its companion growing length of detention hadn't yet happened. A more sophisticated observation is that the *Cos II* test was not yet *relevant* in *Cos I*, because at that time in that case, the length of detention had not yet reached the third level—it was only 16 months. Similarly, the government's reliance on *United States v. Gonzales* leaves out just a speck of relevant information, that the case involved allegations of murders in execution style and was a death qualified case. *See Government Response*, Doc. 1367, n.4. Similarly, it is less than surprising that Judge Browning did not "rely" on *Peters. Id. Peters* is a *per curium*, unpublished 513 word conclusion with no analysis, the very manner of unreasoned decisions courts are admonished to ignore.

The government *is* correct that *Cos I* set out four factors. These factors make a sliding scale that becomes more difficult to meet as the length of detention increases. In *Cos II*, 19 months, and *Cos III,* >22 months, Judge Browning applied the sliding-scale analysis consistent with *Ailemen*, reflecting that this test comes out differently for shorter pretrial incarcerations of one year to two years, than for pre-trial incarcerations two years or more.

The government discounts that Judge Browning was employing a legal test at all in *Cos II* and *Cos III*. Instead, the government would have this Court believe Judge Browning's

---

[3] *See United States v. Cos* [*Cos II*], 2006 U.S. Dist. LEXIS 95275 (D.N.M. 2006) (Browning, J.) *on remand from United States v. Cos* [*Cos I*], 198 Fed. Appx. 727, 2006 U.S. App. LEXIS 25136 (10th Cir. 2006); *see also United States v. Cos* [*Cos III*], 2007 U.S. Dist. LEXIS 33917 (D.N.M. 2007) (Browning, J.)

8

careful and extensive analysis was just an "observation" that "does not constitute the articulation of a new test,"[4] while the 513 words of *Peter's* are weightier. The United States ignores *Cos II* and *III's* direct citations to *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("to pose a threat to the safety of individuals or to the community *which no condition of release can dispel.*"). The Circuit remanded *Cos I* because the government's case for detention "must be subjected to more careful scrutiny" than required by the statute, and ordered the district court to analyze the continued detention under *United States v. Millan*, 4 F.3d 1038, 1043-47 (2nd Cir. 1993), *United States v. Shareef*, 907 F. Supp. 1481, 1485 (D. Kan. 1995), *United States v. Accetturo*, 783 F.2d 382 (3rd Cir. 1986), and *Salerno*.  See *Cos I*, 198 Fed. Appx. 727, 732, 2006 U.S. Ap. LEXIS 25136 at * 14.

Judge Browning did exactly what the Tenth Circuit ordered: re-evaluate continuing detention under the Due Process Clause giving "more scrutiny" to the government's case for detention under *Salerno, Millan, Shareef,* and *Accetturo*.  Judge Browning was not making an "observation";  he employed the factors set out in *Cos I* in a 13,761 word analysis of detentions about two years or more, as modeled on *United States v. Ailemen,* 165 F.R.D. 571, 582-83 (N.D. Cal. 1996). *Cos II,* 2006 U.S. Dist. LEXIS 95275 at *18-*21. Judge Browning applied equal thoroughness in his conclusion that the clear and convincing standard was the burden the government must meet under this test, which the government notably does not contest. *Cos II,* 2006 U.S. Dist. LEXIS 95275 at *35,  adopting *United States v. Cisneros,* 328 F.3d 610, 616 (10th Cir. 2003).

---

[4] The test the government claims just an "observation" is actually a discussion on *Millan*:  of cases of such length where, "regardless of the reasons for delay, only an *extraordinary* showing of flight risk or danger to the community will justify continued detention." *Cos II,* at *35.

9

**The United States Failed to Even Argue Why Conditions of Release Are Insufficient**

The government made no effort to show why stringent conditions of release would not reduce the harms the government foretells sure from Mr. Jarvis' release. However, the Due Process principle of least restrictive means requires the Court consider *not* threats of flight and danger if a defendant is released with no conditions, *but* harm if the defendant were released on stringent conditions. In *Ailemen,* 165 F.R.D. at 580, the court cautioned:

> It also is extremely important to emphasize here a point that seems to have been overlooked in some of the reported opinions. When courts assess the magnitude of the threat that an individual defendant poses to the government's regulatory interests, we think that the proper focus is not on how big that threat would be if the defendant were released on no conditions, but, instead, the focus should be is on how big that threat would be if the defendant were released on stringent conditions aimed at reducing as much as possible the likelihood of harm to the threatened regulatory interests. In other words, the issue is not how much threat the defendant would pose if he were as free as any law-abiding citizen, but how much threat he would pose if he were released …. It is only by focusing on the actual conditions of release, and what those conditions would contribute to reducing the threat of harm to the government's regulatory interests, that courts can accurately assess how much continued imprisonment would contribute to achieving the government's regulatory goals.

*Id.*

***Mathews v. Eldridge* and Procedural Due Process: Not Only Relevant, But Required**

Contrary to the government's bald assertion that "*Mathews v. Eldridge*, [as] a procedural due process case…has no application to this case," this is a motion about procedural due process. (Doc. 1367 at 6, n. 4). The purpose of the Due Process Clause is to reduce error in deprivations of life, liberty, or property. *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Eighth Amendment protects post conviction rights arising from conditions of incarceration; the Fifth Amendment Due Process Clause protects pre-trial detainees.

Under *Mathews v. Eldridge*, the propriety of governmental actions that result in deprivations of life, liberty, or property depends on a balance of three factors: the private

10

interest that will be affected by the official action, the risk that existing procedures will result in an erroneous deprivation, and the probable value of additional procedural safeguards, against the government interest in relying on the challenged procedures. *Id.* at 335.    Liberty from incarceration without a finding of guilt is second only to life as the most protected private interest guaranteed by our constitution because of the terrible and irreparable risk of loss in erroneous incarceration. Under *Mathews,* the government has a significant burden to show that the deprivation of liberty and its inherent risk of irreparable harm are necessary to important government interests. The government here simply dismisses this heavy societal obligation, providing this Court no authority upon which to protect its reliance upon the government's representations of law.

This profound weight of protecting liberty is, of course, exactly what the Tenth Circuit was saying in *Theron*, what the Tenth Circuit remanded for in *Cos I,* and what Judge Browning did in *Cos II* and *Cos III*.  It was the analytical balancing that the district court undertook in *Ailemen*, and what every court must do in a due process detention challenge such at this one. The courts *must* balance the interests to protect individual constitutional guarantees against the tremendous power of the government.

A careful look at *Cos II* and *Cos III* reveals the analysis to actually be *Ailemen's* due process analysis, otherwise stated as *Mathews'* required proof that the deprivation of liberty and irreparable risk are *necessary* to *important* government interests. *Ailemen*, 165 F.R.D. 571, 582-83 (N.D. Cal. 1996). Because Mr. Jarvis' case falls within the highest scrutiny cases where pretrial confinement has stretched very long, the government must prove, as detailed in *Cos II* and *III*,  the *extraordinary necessity* of continued detention—an "extraordinary showing" of "extreme risk" of flight or danger.  Further, the government must prove the "extreme" and "extraordinary" risk cannot be mitigated by imposing conditions of release.

11

This is the constitutional protection *Mathews v. Eldridge* requires to ensure the government's justification is as compelling as the deprivation is harmful and as the risk is high.

This is an extremely difficult burden to meet, and perhaps that it is so daunting explains why the government just didn't even try. *Compare El-Gabrowny,* 35 F.3d at 64-65 (2nd Cir. 1994) (1993 World Trade Center bombings suspect, a known terrorist, with a history of flight, assault on police officers and possessed of five fraudulent passports met the "extraordinary threat" test) *and United States v. Orena*, 986 F.2d 628, 632-33 (2nd Cir. 1993)) *with United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2nd Cir. 1986) (releasing defendants alleged paramilitary terrorists responsible for other violent acts of terrorism including killing two American servicemen and destruction of several military planes on a government air base, where the detention length outweighed significant risk of flight and significant government discovery had not been disclosed); *and United States v. Gatto,* 750 F. Supp. 664, 675-76 (D.N.J. 1990) (released under strict conditions when prosecution delay not disproportionate).

The *Mathews* balancing test is not a burden the government can meet just by standing up and talking. The proffering of conclusory assertions such as "credible threat," "failures to appear," and "danger to the community" does not equate to clear and convincing proof.

**The Wiretapped Calls Used By the Government at the Initial Detention Hearing:**

**The United States has not rebutted the statutory prohibition on their use; nor are the taps clear and convincing evidence of an extraordinary risk that cannot be <u>mitigated by conditions of release</u>**

The government argues that Mr. Jarvis is "estopped" from making the argument now that 18 U.S.C. 2515 prohibits the government's use of these recordings "in any proceeding" because Mr. Jarvis did not raise this argument at the original detention hearing. "Estoppel" cannot apply: it requires a party to have taken the opposite factual position at a

prior proceeding, to his benefit. *Black's Law Dictionary,* 6th Ed., 551 (1990). Counsel for Mr. Jarvis opposed use of the recorded conversations at the original detention hearing, so he has never taken the opposite factual position.

Moreover, in context of what actually happened in the original detention hearing, it would be unreasonable to expect Mr. Jarvis' counsel to have made the Section 2515 argument. Counsel had no advance notice that the government intended to present any wiretap recordings. Just as the hearing was called to order, the AUSA gave defense counsel a slip of paper with four numbers written on it. When Ms. Rosenstein inquired what that was, she was told that these were the wiretapped calls that the government would be using. At this point in the case, on November 7, 2005, defense counsel had no transcripts of any of the recorded calls, much less the ability to discern these four calls from amongst the 11,478 calls the government had recorded. Counsel made record objection of the use of the calls because she had not had notice and the opportunity to review and so could not confront them. Even though her argument was not made under Section 2515, nothing in these facts "estoppes" Mr. Jarvis from making this argument now.

The government asserts that these specific calls were lawfully intercepted and recorded because the agent in the case says so. Not much of a surprise that the government says this, but what the government "says" is neither evidence nor the court's conclusion of constitutional compliance. The government says the agent assures that co-defendant Wilson was an "enforcer" for the alleged organization, so the call was related to the alleged organization and so lawfully intercepted. But the United States points to nothing other than "because our agent says so." If the Agent's "say so" is not supported with citable record instances in the discovery record, then the United States fails in its efforts to show the Dennis Wilson wiretap lawfully recorded and maintained, and thus fails to enter it into the

13

detention proceedings under Section 2515. The same proof is required for the rest of the government's wiretaps *before* this Court may consider them in the detention hearing. The United States' response has made no headway toward its required showing that the taps are *not* exactly what the Defendant says they are, wiretaps recorded and maintained in violation of § 2515, whose use is prohibited. *See Gelbard v. United States,* 408 U.S. 41 (1972); *United States v. Giordano*, 416 U.S. 505 (1974); 18 U.S.C. § 2511(1)(a); 18 U.S.C. § 2511(1)(d); *Quigley v. Rosenthal*, 327 F.3d 1044, 1066-1070 (10th Cir. 2003).

## Conclusion

Presently, Mr. Jarvis' detention has lasted a year longer than defendant Cos' when Judge Browning found it had violated due process. If detained until trial, Mr. Jarvis' detention will exceed 45 months, which is 21 months longer than the detention in *Cos*. There is no clear and convincing evidence, in fact, not even evidence establishing a preponderance of likelihood, that Mr. Jarvis poses a more significant risk of serious danger to the public than Cos did when released 21 months earlier than Mr. Jarvis. The government fails to even attempt to muster the quantum of extraordinary proof necessary for this Court to find that *no* conditions would keep the public safe and assure Mr. Jarvis' appearance at trial, in equipoise to the risk of error and irreparable harm to the defendant's liberty interests implicated in a 45 month pre-conviction confinement.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). Pretrial liberty is the norm in our society, and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "[T]hese indisputably fundamental rights—the right to a speedy trial, the protection against excessive bail, the presumption of innocence—

all would be empty pronouncements, full of sound and fury but signifying nothing, for a defendant who could be imprisoned indefinitely while awaiting trial." *United States v. Ailemen*, 165 F.R.D. 571, 578 (N. D. Cal. 1996).   Extensive pretrial incarceration violates due process. *United States v. Theron*, 782 F.2d 1510, 1516 (10th  Cir. 1986).

Mr. Jarvis respectfully requests that this court order his release under such conditions as are necessary to ensure his appearance at trial and protect the public.

WHEREFORE, Mr. Jarvis respectfully prays that this Court enter an order releasing him on conditions of release.

Respectfully submitted by:

*Electronically Filed*
*/s/*
*September 2, 2008*
By_____
Gary C. Mitchell, Esq.
P.O. Box  2460
Ruidoso, NM 88355-2460
575.257.3070


*/s/*
*September 2, 2008*
By_____
Jody Neal-Post, Esq.
317 Amherst SE
Albuquerque, NM 87106
505.268.7263

I hereby certify that a true and correct copy of
the foregoing pleading was delivered to opposing
counsel via the CM/ECF system this 2nd of September, 2008.

*Electronically Filed*
_____
Jody Neal-Post