IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                            No. CR 05-1849 JH

DANA JARVIS, et. al,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR RELEASE ON CONDITIONS
## PURSUANT TO FIFTH AMENDMENT REQUIREMENTS OF DUE PROCESS

THIS MATTER is before the Court on Defendant Dana Jarvis ("Jarvis")'s Motion for Release on Conditions Pursuant to the Fifth Amendment Requirements of Due Process [Doc. 1360]. The United States filed its Response [Doc. 1367] on August 12, 2008. A Reply, filed on September 2, 2008, after the deadline for Reply had expired, was considered by the Court. The Motion is now fully briefed. For the reasons given below, the Court denies the Motion.

Jarvis was charged in a multi-count indictment with conspiracy to distribute 1000 kilograms and more of marijuana, engaging in a Continuing Criminal Enterprise, and money laundering. He was arrested on August 25, 2005 and has been in continuous detention since that time, a period of approximately three years.

Trial is now set for March 23, 2009 [Doc. 1368]; thus, Jarvis's period of pretrial detention could stretch longer than three and a half years. Jarvis brings this motion seeking release from continuing detention pending trial, arguing that his lengthy pretrial detention violates the Due Process Clause of the Fifth Amendment.

## Factual and Procedural Background

At his initial appearance on the indictment, the United States moved to detain Jarvis [Doc. 10], asserting that he was a flight risk and a danger to the community. A detention hearing was conducted the following day. Given the nature of the offense, Jarvis's use of an alias, and his history of non-appearance at court proceedings, the Court's Pretrial/Probation Office recommended detention. After considering the parties' proffers, on August 29, 2005, United States Magistrate Judge Alan Torgerson ordered that Jarvis be detained pending trial pursuant to 18 U.S.C. § 3142. That statute provides a rebuttable presumption that detention is warranted in cases where the court finds probable cause to believe that the defendant committed an offense under the Controlled Substances Act which carries a maximum term of imprisonment of ten years or more. In his August 29, 2005 Order of Detention Pending Trial, Judge Torgerson noted as follows:

> Court takes judicial notice of the Pre-Trial Services Report. Based on defendant's past failures to appear on traffic citations and the use of aliases on state issued driver's licenses, the Court finds by a preponderance of the evidence the defendant is a flight risk. The Court also finds that defendant has not overcome the rebuttable presumption and finds by clear and convincing evidence that the defendant is a danger to any other person or the community. Court remands defendant Jarvis to the custody of the U.S. Marshal pending final disposition.

[Doc. 37, at 1]. Jarvis was thereupon confined at the Regional Correctional Center ("RCC") in Albuquerque.

On October 11, 2005, Jarvis filed a Motion for Release on Conditions [Doc. 205], arguing that "[t]he offense, while serious, concerns the distribution of marijuana. There are no allegations of violence, use of firearms or threats of any kind." [Id., at 7]. He characterized his past criminal history as minimal: two misdemeanor offenses for which he successfully completed a probationary period,

several motor vehicle violations, and a federal indictment for felony drug offenses 21 years before, which ended in dismissal of all charges. He noted that he has business and family ties to the Albuquerque and Santa Fe communities. Jarvis also explained his past failures to appear, noting that the failures were related to traffic tickets rather than to serious offenses, and on one occasion he failed to appear in court because his residence burned down, documents were lost, and he was in the hospital at the time of the hearing. He also discounted the alleged use of an alias, denying that he had any involvement in the creation of a driver's license which featured Jarvis's photograph under the name of "Todd Ward." For its part, the Government opposed release, noting that Jarvis "is charged in this case with being the kingpin of a drug trafficking organization that spanned several years and generated millions of dollars in profits." [Doc. 228, at 3].

At the bail review hearing on November 7, 2005, Jarvis presented the testimony of a proposed third party custodian and submitted various letters written to the Court on his behalf. The Government presented testimony of Special Agent Richard Stark ("Stark") of the Drug Enforcement Agency and Special Agent Mike Albers of the Internal Revenue Service, evidence of Jarvis's use of the alias "Todd Ward," and records of three telephone conversations intercepted pursuant to court-authorized wiretaps. [*See*, Doc. 247].

The evidence showed that in one of these intercepted calls, Jarvis told Melania Kerwin (the mother of his child and a co-defendant in this case) that he was aware she was selling marijuana stolen from him, and he talked about violent retribution for such activities. In another call, Jarvis spoke with co-defendant Dennis Wilson, allegedly an enforcer for Jarvis's drug trafficking organization, about "bring[ing] some boys down . . . to deal with the gang members" who beat up Jarvis's daughter, co-defendant Ayla Jarvis ("Ayla"). In another call, Jarvis spoke with Ayla and

3

requested that she obtain methamphetamine for him; they also discussed the seizure of large amounts of money in suspected drug proceeds. In his testimony, Agent Stark summarized an intercepted conversation between Ayla Jarvis and an unidentified person, in which Ayla stated that after her father "beat" criminal charges "they were on the run for 12 years of his life." [Transcript of November 7, 2005 bail review hearing, at 20-32].

On November 8, 2005, Judge Torgerson entered an order denying Jarvis's motion for release, finding that Jarvis had not overcome the presumption of 18 U.S.C. §3142(e), and there was no condition or combination of conditions which would reasonably assure Jarvis's appearance at court proceedings or would reasonably assure the safety of others or the community. [Doc. 248]. Jarvis did not file a motion for review of this ruling, although he was entitled to do so under 18 U.S.C. § 3145(b), (c).

The Government states that although it uncovered credible evidence, based on the testimony of an individual detained at RCC during Jarvis's time there, of a murder-for-hire scheme initiated by Jarvis and aimed at agent Stark and a cooperating witness, it did not present this evidence at the November 2005 detention hearing because an undercover investigation was ongoing at the time. The investigation was terminated in February 2006, the Government says, because Jarvis "was unable to the obtain the money needed to pay for the murders." [Doc. 1367, at 4]. The Government proffers this evidence now on the issue of danger to the community.

On February 7, 2006, Jarvis was placed in administrative segregation at RCC. On August 21, 2006, the Court granted Jarvis's motion to be placed back in the general population, and shortly thereafter he was transferred from RCC to the Torrance County Detention Center ("TCDC") in Estancia, New Mexico. He has remained at TCDC since that time.

4

**Discussion**

Standard for Determining Release Upon Lengthy Pretrial Detention

Jarvis argues that, after a defendant has been subjected to a lengthy period of detention, the Due Process Clause requires the Government to make a much higher showing to justify pretrial detention than was necessary at the initial detention hearing, or at earlier stages in the case.

The Court agrees. At the first detention hearing, the Court took notice of the pretrial report and recommendation for detention. Without consideration of the presumption under § 3142, Pretrial Services independently recommended detention due to the nature of the crime, Jarvis's prior drug charge, his use of an alias, his non-appearances and a prior domestic abuse charge. In addition, it was appropriate for Judge Torgerson, shortly after Jarvis's arrest, to apply the statutory presumption of 18 U.S.C. § 3142(e), given the nature of the offense for which the Grand Jury found probable cause.

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991).

"A district court is not required to consider the length of pretrial detention when making its initial detention decision." United States v. Cos, 198 Fed. Appx. 727, 732 (10th Cir. 2006) (hereinafter referred to as "Cos I").[1] However, after prolonged detention, "at some point due process

---

[1] Jarvis refers to this Tenth Circuit opinion as "Cos I" and to two later opinions by U.S. District Judge Browing in that case as "Cos II" and "Cos III"; this Court adopts that terminology.

may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142." Cos I, at 732, *quoting* United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986).

Jarvis proposes a stringent test for determining the propriety of detention when defendant raises a Due Process issue. Under this test, the Government would be required to present "clear and convincing evidence that keeping Mr. Jarvis in jail is *extraordinarily* necessary, because of *extreme* risk of flight or danger to the community [emphasis in original]" [Doc. 1360, at 26], and the government must also demonstrate that it was not responsible for any significant portion of the delay. [Id., at 2].

Jarvis points to United States v. Cos, No. CR 05-1619 JB, 2006 WL 4061168 (D.N.M. Nov. 15, 2006) ("Cos II"), and United States v. Cos, No. CR 05-1619 JB, 2007 WL 1302580 (D.N.M. Apr. 17, 2007) ("Cos III"), in which United States District Judge James Browning adopted a three-level framework for scrutinizing Due Process claims involving pretrial detention, as set forth in an opinion from the Northern District of California, United States v. Ailemen, 165 F.R.D. 571 (N.D. Cal. 1996).

Pursuant to the Ailemen scheme, detentions between six months to a year receive the lowest level of scrutiny, under which a court would normally hold that a Due Process challenge was premature. Pretrial detentions between one to two years should receive heightened scrutiny, under which the court is to balance various factors, often placing strong emphasis on the extent to which the Government is to blame for the delay and the extent to which the defendant is shown to be a danger to the community. When a defendant is held for more than two years, the highest level of scrutiny applies and requires the Government to demonstrate that release would pose an

6

extraordinary threat to the Government's regulatory interests in detention, and that the Government has not been responsible for any significant portion of the delay. Cos II, at * 6-7; Ailemen, at 583-89.

While Judge Browning found Ailemen useful in his analysis, the Court does not find it necessary in this case to apply a strict Ailemen scheme to Jarvis's situation nor to veer from the clear formula set out by the Tenth Circuit in Cos I, at 732, which provides that the Court is to make the Due Process determination as to release of a pretrial detainee who has already been subjected to a lengthy period of detention under the following standard:

> [T]he district court should consider: 1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based.

The Court now applies that three-part test to the circumstances of this case.

Consideration of the Three Factors

A.  *Length of Detention*

Pretrial detention, even lengthy pretrial detention, is permissible under the Due Process Clause as long as the confinement does not amount to "punishment of the detainee." United States v. Millan, 4 F.3d 1038, 1043 (2d Cir. 1993), *quoting* Bell v. Wolfish, 441 U.S. 520, 535 (1979). A constitutional violation occurs, however, when the detention appears excessive in relation to the nonpunitive purpose. Bell v. Wolfish, *supra*, at 538.

> Pretrial detention of a defendant, when of reasonable duration, serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual . . . . However, when detention becomes "excessively prolonged," it may no longer be reasonable in relation to the regulatory goals of detention, in which event a violation of due process occurs.

Millan, at 1043, *quoting* United States v. Salerno, 481 U.S. 739, 747 n.4 (1987).

As in Millan, the lengthy period of pretrial detention in this case – which may exceed three and a half years – constitutes "a factor in [Jarvis's] favor." However, "[l]ength of detention 'will rarely by itself offend due process.'" Rather, there must be an indication of a punitive result, or excessive delay caused principally by the prosecution. Id., at 1044 (finding a potential detention period of 31 months was not unconstitutional); Cos II, at *9 ("The Court acknowledges that prolonged detention weighs in favor of a detainee's release. Alone, however, it is not enough to mandate his release").

In this case, Jarvis stands accused of being the kingpin of a extensive drug trafficking operation for which he was charged along with 19 other defendants (and eight more defendants added later in a superseding indictment). The pretrial proceedings in this case have been lengthy because of the necessity of dealing with multiple defendants and because Jarvis's motion practice has been prolific and has involved more than one interlocutory appeal. In addition, considering that Jarvis faces a mandatory minimum sentence of 20 years and possible life imprisonment, the Court cannot say that he "has already served a meaningful portion of any sentence he might receive if he were to be convicted . . . ." Cos II, at *11. The Court notes also that Jarvis himself twice asked for a stay of proceedings and recently requested that the trial be delayed until summer of 2009.

Obviously, it is not usual for a defendant to remain confined for a multi-year period prior to trial, during a period when he is presumed to be innocent. The three-year period which has already elapsed in this case has undoubtedly been inconvenient and difficult for Jarvis, and the Court is aware that this period exceeds times of pretrial detention found to be unconstitutionally lengthy in other cases. However, the Court finds no punitive purpose to Jarvis's confinement. Rather, he was

confined based on clear and convincing evidence that he was a danger to the community and further evidence that he was a flight risk. Evidence presented to Judge Torgerson included ongoing efforts to acquire methamphetamines and threats of harm to others.

Judge Torgerson also found evidence that Jarvis could flee. Finally, Jarvis could not overcome the presumption that he should be detained. These findings, not an intent to punish, warranted his detention. Moreover, the amount of pretrial detention does not constitute a large proportion of the possible sentence Jarvis would face if convicted. Given the justification for Jarvis's detention, as discussed below, the Court does not find that the length detention in this case is excessive in relation to the regulatory purpose.

B. *Extent of Prosecution's Responsibility for Delay of the Trial*

Jarvis contends that his lengthy period of pretrial detention is "primarily due to the government's decision to illegally place *lis pendens* on Mr. Jarvis' substitute assets." [Doc. 1360, at 16]. Jarvis also comments on the Government's "illegal course of action" in placing the *lis pendens* and the fact that "[it took an] interlocutory appeal to correct it." [Id., at 18].

While the Tenth Circuit ultimately found that the *lis pendens* should be lifted, the Court cannot say this is a situation where the Government took an action which it knew from the outset to be illegal. The matter was not at all clear-cut, as evidenced by this Court's initial ruling in the Government's favor. To refer to the Government's action "illegal," while technically correct in light of the Tenth Circuit's ruling, is akin to saying this Court's ruling was "illegal" as well, when in reality the gap between this Court's ruling and the Tenth Circuit's decision resulted from a legitimate difference of legal opinion. This Court, of course, respects the Tenth's Circuit's decision and accepts the ruling that lifted the *lis pendens*. That does not mean the Government's action was

9

taken in order to delay these proceedings or to ensure that Jarvis would be kept in lengthy pretrial custody. Indeed, it was Jarvis's own actions that served to prolong the litigation. At the time the Government initiated the *lis pendens*, it did not know that the matter would challenged, and could not predict how the issue would work itself out, nor how long the process would take.

During pendency of Jarvis's interlocutory appeal on the *lis pendens* matter, the Court's scheduling order remained in effect. Jarvis continued to litigate the case, filing approximately 15 motions (not including motions for budget approval) and joining in seven others, during the five-month period between his notice of interlocutory appeal on September 1, 2006 and the date when he first asked the Court to stay proceedings pending resolution of the appeal.

Jarvis asked for the stay on February 6, 2007, on grounds that his choice of counsel depended on the outcome of the interlocutory appeal. Based on this request, the Court vacated the trial date, originally set for April 2007, and stayed the case. The stay lasted approximately seven months, until the Tenth Circuit issued its mandate in September 2007. However, after the *lis pendens* was lifted, Jarvis took no further steps to employ private counsel but rather continued with the CJA attorneys who had been appointed to represent him. Thus, while Jarvis was successful in having the Court lift the stay, the entire process produced no tangible benefit with respect to change of counsel, and Jarvis's own request to stay resulted in the Court vacating the trial.

While Jarvis cites the Government's action in placing a *lis pendens* on his property as the reason for the delay associated with the interlocutory appeal, the Government puts the delay at the doorstep of Jarvis, based on his decision to take the appeal. Just as the Court finds no fault on the part of the Government for exercising its option to place a *lis pendens* on property it thought was subject to such action, even if that action was later found to be invalid, neither does it fault Jarvis

for exercising his legal right to seek review of an adverse ruling. However, the delay occasioned by the stay of proceedings must be placed at Jarvis's door.

Without deciding whether fault or bad motive are necessarily relevant to the question of who is responsible for delay resulting in an unconstitutional pretrial detention, it is apparent that the United States was responsible for placing the *lis pendens* on the property, but Jarvis was responsible for delaying the proceedings while the *lis pendens* issue was litigated.

The Government also notes that on October 4, 2007, shortly after the Tenth Circuit's decision on the *lis pendens* issue, Jarvis filed a Motion to Dismiss [Doc. 1076]. That motion cited "irreparable structural error," allegedly occurring when Jarvis lost his first choice of counsel due to a conflict of interest arising in the interim between this Court's denial of Jarvis's motion to release funds and the reversal of that denial by the Tenth Circuit. Because Jarvis's Reply brief was lengthy and raised a new issue not presented in the original Motion, the Government sought leave to file a Surreply. Over Jarvis's partial opposition, the request was granted, and the Surreply was filed on November 20, 2007. Side issues arising from the Motion to Dismiss, including Jarvis's Motion for Clarification, Findings, Authorities and Conclusions Regarding Rulings of November 20, 2007 [Doc. 1139], and Jarvis's Motion to Quash Subpoena of Robert J. Gorence [Doc. 1129], were also litigated.

On Februrary 26, 2008, the Court entered an Order denying the Motion to Dismiss for Irreparable Structural Error. [Doc. 1231]. On March 7, 2008, Jarvis filed an interlocutory appeal of this Order. While Jarvis's interlocutory appeal was pending, the Government moved the Court to find it had not lost jurisdiction during pendency the appeal, because Jarvis was raising a non-appealable issue. [Doc. 1301]. Jarvis opposed this Motion, asking the Court to order another stay

11

of proceedings. [Doc. 1310, at 20]. Before the Court could act on the stay request, the Tenth Circuit dismissed the interlocutory appeal, finding it had no jurisdiction under the "collateral order" doctrine because the issue was capable of review on appeal from a final judgment. [Doc. 1328, Att. 1].

It is apparent that the length of pretrial proceedings in this case is due in large part to the litigation activities of Jarvis's counsel. Aside from filing an interlocutory appeal on an issue not subject to such appeal, Jarvis's pretrial motion practice has been enormously prolific. While a defendant facing a lengthy period of incarceration, or any period of incarceration, has the right to vigorously defend himself and pursue all available avenues of relief, in this case the Court found it necessary to admonish Jarvis's attorneys that their zealous advocacy had resulted in frivolous motions, and some motions bordering on the frivolous. *See*, Doc. 1236, and Doc. 1330, at 2-7, noting instances in which certain docketing issues could have been resolved relatively easily, without resort to motion practice.

"Defendant Jarvis' Motion for Relief from Interference With His Right to Present His Defense Due to Continuous Irregularities in the Electronic Case Docketing, Including the Defendant's Inaccessibility to His Own Docket" [Doc. 1226], was found by the Court to be frivolous, as it resulted from Jarvis's attorneys' lack of familiarity with the Court's electronic filing system. As part of its Order resolving this Motion, the Court directed Jarvis's counsel to attend a training session on use of the system. [Doc. 1236].

In sum, the Court concludes that the lengthy delays in this case were not primarily due to the actions of the Government.

    C. *Strength of Evidence on Which Detention is Based*

In analyzing this factor, the Court looks to "evidence concerning risk of flight and danger to the safety of any other person or the community." Millan, at 1043. First and foremost, a federal grand jury found probable cause to believe that Jarvis committed the offenses with which he was charged. Next, as to detention, at the initial bail hearing the Government proved risk of flight by a preponderance of the evidence and proved dangerousness by clear and convincing evidence. *See*, United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003).

As an initial matter, Jarvis contends that the evidence of wiretapped conversations, as described above, was inadmissible in the detention hearing and should have no bearing now on his eligibility for release, because the wiretaps were "unauthorized" and because the conversations "had *nothing* to do with the underlying case against Mr. Jarvis, but concerned personal family matters [emphasis in original]." [Doc. 1360, at 2].

The Court rejects this argument. In the first place, Jarvis did not object to introduction of the wiretap evidence at the time of November 7, 2005 hearing, and he failed to utilize available avenues for seeking review of Judge Torgerson's November 8, 2005 order. He is therefore estopped from excluding the evidence at this stage of the proceedings. Accetturo, at 389-90.

Secondly, the wiretaps were authorized by the Court, and the recorded conversations which were submitted at the bail review hearing did not exceed the warrant authority. While they did involve "family matters," it is incorrect to say that they had nothing to do with the underlying criminal charges. As noted above, one conversation in which Jarvis participated involved his making veiled threats of bodily harm to the mother of his child, who is also a co-defendant in this case, based on Jarvis's belief that she sold marijuana that had been stolen from him. Another call included a discussion with a co-defendant in the alleged drug trafficking operation concerning

13

Jarvis's intention to get "some boys" to "deal with" individuals who Jarvis thought had beaten up his daughter (another co-defendant). Another call recorded a conversation wherein Jarvis asked his co-defendant daughter to obtain methamphetamine for him, and in which they discussed paperwork related to the seizure of suspected drug proceeds.

The substance of these conversations was within the wiretap authorization, which permitted the Government to intercept calls relating to Jarvis's drug trafficking and money laundering activity. Judge Torgerson did not err in admitting this evidence at the November 7, 2005 hearing, and the evidence may appropriately be considered in connection with this motion.

After Jarvis's arraignment, and again on a hearing in connection with Jarvis's Motion for Release on Conditions, Judge Torgerson found by a preponderance of the evidence that Jarvis was a flight risk, based on his past failures to appear in court and his use of an alias. *See*, Docs. 37, 248. In addition, Agent Stark's testimony at the bail review hearing included intercepted conversations in which Jarvis's daughter spoke of being "on the run" with her father for 12 years, after he "beat" an earlier prosecution. Jarvis also has a passport.

While Jarvis contends he had no knowledge of a driver's license in the name of "Todd Ward" which featured Jarvis's photo, the Government presented evidence of Jarvis's use of the same alias on other occasions. [*See*, Transcript of November 7, 2005 bail review hearing and exhibits thereto]. Also bearing on the question of flight risk is the fact that Jarvis faces a lengthy sentence, including a substantial mandatory minimum and up to life imprisonment, if he is convicted on the charges herein. In Millan, at 1046, the court noted the defendant's "obvious incentive to flee in light of a potential life sentence." In earlier proceedings on the issue of release, Jarvis cited his family and business ties to the Albuquerque and Santa Fe communities. The Court notes, however, that Jarvis's

proposed third-party custodian was rejected by the Court earlier in this case, and some of the family ties are to persons who are co-defendants in this case, accused of participation in the drug trafficking operation.

Whether the standard of clear and convincing, or a preponderance of the evidence, is applicable to the question of flight risk at this stage of the proceedings, the Court finds the Government has presented substantial evidence sufficient to satisfy the highest burden and to conclude that Jarvis presents a risk of flight. The Government clearly satisfied the demands of Due Process and justified his continuing detention.

On the issue of dangerousness to the community, the Court notes the nature of the offenses with which Jarvis has been charged, including allegedly being the kingpin of a large drug conspiracy and Continuing Criminal Enterprise. Intercepted phone calls in which Jarvis participated while incarcerated demonstrate his willingness to use violence and intimidation to promote his interests and his active interest in drug use and in managing funds allegedly constituting drug proceeds. In addition, the Government now proffers evidence that Jarvis attempted to arrange for the murders of Stark and another individual, a cooperating witness in this case, during the period of detention.

Jarvis argues that he would agree to conditions of release which could "mitigate any threat that the defendant's release may pose to the government's regulatory interests." [Doc. 1360, at 8]. Jarvis has not suggested any particular conditions, nor has he described how such proposed conditions would reduce the perceived danger or risk of flight. The wiretap evidence demonstrates that the fear of incarceration did not deter Jarvis from attempting to obtain methamphetamine and to arrange various forms of physical punishment for persons he saw as opposed to his interests. His release, even on stringent conditions, would only serve to make such activities easier to conduct.

The Court is particularly concerned with the evidence of threats of violence directed toward co-defendants and potential witnesses. Aside from the danger such threats represent to the individuals involved, they also threaten the integrity of the judicial process.

### Conclusion

"Although liberty is the norm in our society, and 'detention prior to trial or without trial is the carefully limited exception,' an individual charged with serious felonies may be detained before trial when, after an adversary hearing, the individual is found 'to pose a threat to the safety of individuals or to the community which no condition of release can dispel.'" Cos II, at *2, *citing* Salerno, at 755.

Pretrial detention for a period of three-plus years is, on its face, constitutionally suspect. However, it does not necessarily constitute a violation of Due Process guarantees. Applying the requisite factors to this defendant's individual circumstances, the Court finds that the length of pretrial detention herein does not rise to the level of a constitutional violation. Jarvis's continued confinement serves a regulatory rather than punitive function, the Government is not primarily responsible for the delay, and sufficiently strong evidence exists to conclude that continued detention is necessary to avoid the risk of flight and potential danger to individuals and the community.

### **Order**

IT IS THEREFORE ORDERED that Defendant Dana Jarvis's Motion for Release on Conditions Pursuant to the Fifth Amendment Requirements of Due Process [Doc. 1360] is denied.

_____
UNITED STATES DISTRICT JUDGE