LAW OFFICES OF
**NASH & KIRCHNER, P.C.**
P.O. BOX 2310
TUCSON, ARIZONA 85702
Telephone (520) 792-1613
Fax (520) 628-1079
Pima County Computer No. 41636
State Bar No. 002893
walter.nash@azbar.org
bkirchner@azbar.org

Attorney for defendant David Reid

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,                                 CR-05-1849 JH

vs.

DAVID REID,

    Defendant.

MOTION FOR EVIDENTIARY HEARING AND TO SUPPRESS IN-COURT IDENTIFICATION OF DAVID REID BY INFORMANT "CW5"

Excludable delay under 18 U.S.C. §3161(h)(1)(F) will occur as a result of this motion or of an order based thereon.

The defendant David Reid, by his counsel undersigned, pursuant to the Fifth Amendment to the Constitution, moves this Court for an order

setting an evidentiary hearing and, at the conclusion of that hearing, precluding the prosecution from presenting evidence that informant "CW5" previously identified Mr. Reid or from identifying Mr. Reid during trial. This motion is based on the accompanying Memorandum of Points and Authorities, as well as the attached Exhibit.

RESPECTFULLY SUBMITTED this 2nd day of February, 2009.

                LAW OFFICES OF
                NASH & KIRCHNER, P.C.

                BY /S/ Walter Nash
                WALTER NASH
                Attorney for Defendant Reid

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Overview

The prosecution has disclosed reports of two interviews with informant "CW5", who will testify pursuant to a plea agreement. The informant claimed to have met Mr. Reid on one occasion by the side of a highway a year before the first interview and fifteen months before the second. The informant did not describe Mr. Reid and gave materially different descriptions of their meeting in the two interviews. Agents showed CW5 a single photograph of Mr. Reid, as well as single photographs of others allegedly involved in the marijuana enterprise. The informant told the agents that Mr. Reid's photograph "look[ed] familiar."

For more than forty years, courts have held that the Due Process Clause precludes unreliable witness identification evidence of an accused. Any evidence from CW5 identifying Mr. Reid, including any in-court identification, would be based on impermissibly suggestive procedures and would be unreliable. Such evidence must be precluded.

## II. Factual Background

"CW5" is a convicted felon with whom the prosecution struck a plea agreement in exchange for testimony. The prosecution has disclosed two

3

reports summarizing interviews of CW5. In the first, conducted on December 27, 2005, the informant described his history of drug dealing that began more than forty years ago. (Drug Enforcement Administration Report of Investigation, dated 1/14/05, attached as Exhibit "A", at 1-11). The report's only reference to David Reid is that CW5:

> [S]aid that he met Dave REID the pilot for the JARVIS DTO one time off Interstate 10 near Avre (*sic*) Valley, Arizona at the request of JARVIS. CW5 said that REID pulled up to meet CW5 with his whole family in the car and handed CW5 $50,000.00 to $80,000.00 in bulk U.S. Currency in a small duffel bag. CW5 said it was obvious what was in the bag and REID made no attempt to disguise the bulk cash transfer. CW5 thought he met Reid another time socially.

(*Id.* at 9). The informant did not describe Mr. Reid. CW5 was apparently shown single photographs of nineteen men and women - many of whom the informant knows well - who were allegedly involved in the charged enterprise. (*Id.* at 10-11). The informant said that Mr. Reid's photograph "looks familiar." (*Id.* at 11).

The second interview was conducted three months later, on March 26, 2006, in the presence of the informant's attorney. (Internal Revenue Service Memorandum, dated 4/11/06, Exhibit "A" at 12-14). In this version of the alleged meeting with David Reid, CW5 substantially altered the

4

amount of money and the container. The report summarizes:

> [The informant] stated that on or about December 26,2004, he met Reid on the side of the highway near a cement plant and airport on Avra Valley Road. [CW5] further stated that Reid arrived driving a vehicle with his daughter and his grandchildren carrying $15,000 in a paper bag from JARVIS.

(*Id*. at 13). The informant apparently did not describe Mr. Reid and was shown no photographs during the second interview.

III.    <u>Legal Analysis</u>

Beginning with *Stovall v. Denno*, 388 U.S. 293 (1967), the Supreme Court decided a series of cases establishing protections against unreliable witness identifications under the Due Process Clause. In *Manson v. Brathwaite*, 432 U.S. 98, 111-112 (1977), the Court explained:

> The driving force behind *United States v. Wade*, 388 U.S. 218 (1967), *Gilbert v. California*, 388 U.S. 263 (1967)(right to counsel at a post-indictment line-up), and *Stovall*, all decided on the same day, was the Court's concern with the problems of eyewitness identification. Usually, the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by later actions of the police. Thus, *Wade* and its companion cases reflect the concern that the jury not hear eyewitness testimony unless that testimony has aspects of reliability.

Research and experience have revealed further dangers of erroneous eyewitness identification. *See, e.g.,* Wells, et. al, "Eyewitness Evidence: Improving Its Probative Value", 7 Psychological Science in the Public Interest 45-75 (2006). These dangers are enhanced where, as here, the challenged identification is made by an admitted drug dealer and previously convicted felon who is seeking favor from the prosecution.

The Tenth Circuit holds, "When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." *United States v. Sanchez*, 24 F.3d 1259, 1261-1262 (10th Cir. 1994). *In accord United States v. Wiseman*, 172 F.3d 1196, 1208 (10th Cir. 1999). CW5's identification of Mr. Reid's photograph fails both prongs of this standard.

    A.    <u>The Photo Array was Impermissibly Suggestive</u>

In deciding whether a photo array is unduly suggestive, "Courts use a number of factors . . . , including the size of the array, the manner of its presentation by the officers, and the details of the photographs

6

themselves." *United States v. Sanchez*, 24 F.3d at 1262. Based on the only information available, the agent's report of the first CW5 interview, it appears that the informant was merely shown photographs of nineteen suspects, including men and women of widely different ages and ethnicities. (Exhibit "A" at 10-11). The agents neglected to show the informant photographs of other people who bear resemblance to Mr. Reid. Further, the informant was shown only photographs of people agents believed to be part of the alleged marijuana enterprise, many of whom CW5 had long known.

The impact of the agents' presentation was to advise the informant that every photograph was an offender. Further, the agents did not show the informant any photographs - other than the one of David Reid - similar to Mr. Reid. The impact was therefore no different than a "show up" of a single photograph with the clear message that the informant should identify the person portrayed.

In both *Sanchez*[1] and *Wiseman*[2], witnesses were shown six photographs, including the suspect's, of people who resembled each other.

---

[1] 24 F.3d at 1261.

[2] 172 F.3d at 1208.

7

The *Sanchez* Court noted that such a small number calls the suggestibility of the array into question, stating, "[C]ourts have held that a photo array with as few as six pictures is not per se unconstitutional." (citations omitted). 24 F.3d at 1262. The Court further recognized, "The lower the number of photographs used by officers in a photo array, the closer the array must be scrutinized for suggestive irregularities." *Id*. at 1263. Similarly, the *Wiseman* Court referred to six photographs as a "low number". 172 F.3d at 1209.

In *Wiseman*, the five photographs presented with the suspect's were selected due to similarity in "several characteristics, such as shape of the face, age, height, race and hair color." *Id*. at 1208. Regardless, the Court found the array to be impermissibly suggestive because Wiseman's photograph "stands out from the others" due to dark circles under his eyes and the unnatural pallor of his skin tone. *Id.* at 1209. The Court's finding was buoyed by the fact that officers told some witnesses that a suspect had been arrested, a message held to be "highly suggestive." *Id*. *See also Grubbs v. Hannigan*, 982 F.2d 1483, 1490 (10th Cir. 1993).

The suggestiveness of the presentation to CW5 was substantially greater than was presented by the facts in *Wiseman*. Here, the informant

8

was not shown any photographs - other than David Reid's - resembling the accused. Further, the informant was shown only photographs of suspects, many of whom he knew from his decades of drug dealing with Dana Jarvis and his associates. The agents sent a clear message to CW5 - who has a strong incentive to please the Government - that he should recognize each photograph put before him. It is therefore respectfully submitted that the Court must find that the presentation was unduly suggestive.

B.  The Informant's Tentative Out-of-Court Identification and Any In-Court Identification are Unreliable

The Court must next consider "whether the identification[] by the witness[] [was] reliable in spite of the 'corrupting influence' of the suggestive circumstances." *United States v. Wiseman*, 172 F.3d at 1210. This analysis must begin with the critical fact that the informant did not identify David Reid, but simply stated that his photograph "looks familiar." (Exhibit "A" at 10). Any in-court identification would be nothing more than a "show-up" in which it would be obvious to the informant that David Reid was the individual whose picture had previously been shown to CW5 and who was seated next to counsel undersigned.

Five elements are to be considered in determining whether a witness identification is reliable:

9

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*United States v. Wiseman*, 172 F.3d at 1210, *quoting Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). These factors demonstrate the unreliability of any identification of Mr. Reid by CW5.

The first two factors - the informant's opportunity to view the person on the side of the highway and the informant's degree of attention - cannot be analyzed in detail without an evidentiary hearing due to the paucity of information disclosed by the prosecution regarding the informant's alleged meeting with Mr. Reid. It appears, however, that the alleged meeting was quite brief in light of the fact that CW5 stated that the men met on the side of the road to exchange a bag.

The remaining factors strongly call for a finding that any previous or in-court identification are unreliable. The third factor - accuracy of the witness's prior description - cannot support a finding of reliability because the agents never asked the informant to describe the person he met on the side of the road. In addition, the informant's brief descriptions of the

10

meeting are materially inconsistent. In the first interview, CW5 said that he received between $50,000 and $80,000; in the second, he said that he received $15,000. In the first, the informant said the money was in a duffel bag; in the second, he said the money was in a paper bag.

The fourth factor - the level of certainty in the informant's identification - provides conclusive evidence that any identification will be unreliable. The informant did not identify Mr. Reid's photograph as the person he met on the side of the road. The informant only said that he thought Mr. Reid's photograph "look[ed] familiar." *Compare Grubbs v. Hannigan*, 982 F.2d at 1490 (when shown photo array, witness "immediately identified" defendant).

Finally, according to the second interview[3], CW5 said that the meeting occurred the day after Christmas, 2004. A year passed between the alleged meeting and the first interview, while fifteen months passed between the meeting and the second interview. Any in-court identification will take place more than four years after the meeting. These time gaps render the reliability of any identification highly unreliable. *Compare United States v. Wiseman*, 172 F.3d at 1211 (three months "not an extremely long

---

[3] No date is provided in the report of the first interview.

11

time . . .").

The informant's tentative statement that Mr. Reid's photograph looked familiar precludes any evidence of the alleged December 2004, meeting.  Further, the prosecution must be precluded from using an in-court "show-up" to elicit CW5's identification of Mr. Reid during trial.  Due process requires nothing less.

III.   Conclusion

For the reasons set forth above, it is respectfully submitted that the Court conduct an evidentiary hearing to determine whether evidence of CW5's out-of-court or in-court identification of David Reid comports with the standards of due process.  It is further submitted that, at the conclusion of the hearing, the Court preclude any such testimony.

RESPECTFULLY SUBMITTED this 2nd day of February, 2009.

        LAW OFFICES OF
        NASH & KIRCHNER, P.C.


        BY  /S/ Walter Nash
        WALTER NASH
        Attorney for Defendant Reid

12

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was delivered to opposing counsel and all other counsel of record *via* the CM/ECF system this 2nd day of February, 2009.

/s/ Walter Nash
Walter Nash

13