**LAW OFFICES OF**
**NASH & KIRCHNER, P.C.**
P.O. BOX 2310
TUCSON, ARIZONA 85702
Telephone (520) 792-1613
Fax (520) 628-1079
Pima County Computer No. 41636
State Bar No. 002893
walter.nash@azbar.org
bkirchner@azbar.org

Attorney for defendant David Reid

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,                                              CR-05-1849 JH

vs.

DAVID REID,

    Defendant.

MOTION TO SUPPRESS EVIDENCE SEIZED IN ILLEGAL SEARCH OF DAVID REID'S HOME

Excludable delay under 18 U.S.C. §3161(h)(1)(F) will occur as a result of this motion or of an order based thereon.

The defendant David Reid, by his counsel undersigned, pursuant to the Fourth Amendment to the Constitution, moves this Court for an order

suppressing all evidence seized during the search of his home on August 25, 2005.  The search was conducted pursuant to the warrant and affidavit attached hereto as Exhibit "A".  This motion is based on the accompanying Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 2nd day of February, 2009.

                                         LAW OFFICES OF
                                         NASH & KIRCHNER, P.C.

                                         BY  /S/ Walter Nash
                                         WALTER NASH
                                         Attorney for Defendant Reid

LAW OFFICES OF
NASH & KIRCHNER, P.C.
P.O. BOX 2310
TUCSON, ARIZONA 85702
Telephone (520) 792-1613

2

## MEMORANDUM OF POINTS AND AUTHORITIES

I. Introduction

This motion challenges the warrant on which the search of David Reid's home was based on two grounds. First, the warrant and supporting affidavit fail to establish probable cause that the search would uncover evidence of a crime. More particularly, the affidavit, at most, provides probable cause that Mr. Reid knowingly assisted Dana Jarvis and his associates in their marijuana enterprise by serving as their pilot in retrieving proceeds and otherwise carrying on business. The affidavit fails to provide probable cause that evidence of these crimes would be found in Mr. Reid's home. Second, the warrant is over broad in failing to delineate the documents to be seized. The warrant therefore fails to meet the core requirements of the Fourth Amendment and the fruits of the search must be suppressed.

II. Factual Background

On August 25, 2005, federal agents executed the challenged search warrant at Mr. Reid's home, located at 9227 West Weaver Circle, Casa Grande, Arizona. (The application and supporting affidavit are attached hereto as Exhibit "A".) The supporting affidavit, after listing the affiant-

3

agent's experience, in essence provides:

1. As an opening summary, that David Reid "control[s]" the Weaver Circle residence, that he is the pilot for the Dana Jarvis marijuana organization, that Mr. Reid "has knowledge of" the organization's trafficking activities, and that "evidence of [his] involvement" will be found in the residence. (Exhibit "A" at 1373).

2. Agents have been investigating Dana Jarvis and his associates for more than three years. The organization buys marijuana from Mexico and moves it to several states, returning with cash. (*Id*.). The opening summary also states that agents have seen David Reid fly Mr. Jarvis and his associates to cities where the organization "is known to deliver marijuana."[1] (*Id*. at 1374).

3. Mr. Reid operates "R.C. Computer & Graphics" from his home on Weaver Circle. He purchased "various telephones" for that business. Two of the telephones were used by Dana Jarvis for marijuana business and were the subject of authorized wiretaps. (*Id*.).

4. In May, 2005, an individual ("CDW-1") was arrested with a load of marijuana. CDW-1 admitted to having worked for Dana Jarvis for two

---

[1] Notably, the affidavit does not allege that Mr. Reid piloted any flight in which marijuana was transported.

4

and a half years. After becoming an informant, CDW-1 told agents that David Reid "would be stupid" if he did not know that Dana Jarvis was a drug trafficker. (*Id.* at 1375). The informant also said that Mr. Jarvis and Mr. Reid owned an airplane together. (*Id.* at 1377).

5. In October, 2004, David Reid flew Dana Jarvis' daughter, Ayla Jarvis, to Indiana, where she (alone) was stopped in a car from which $278,210 was seized. (*Id.* at 1375-1376). Mr. Reid called the seizing officer and offered to donate half the money to the police if the other half was returned. (*Id.* at 1376).

6. Twice in the Spring of 2005, David Reid flew Jarvis associate George Ripley to Ohio, where Mr. Ripley received money. Mr. Reid was not present when Mr. Ripley received the money. (*Id.* at 1376-1377).

7. On July 3, 2005, agents intercepted a call from Mr. Jarvis to Mr. Reid in which they discussed a particular individual who, Mr. Jarvis said, "stole close to half of a million from Bobby . . . in product." (*Id.* at 1378).

8. Russell Trujillo, a Jarvis co-conspirator, was arrested with a load of marijuana. In a subsequent call to Mr. Reid on July 16, 2005, Mr. Jarvis said that he was "getting rid of his telephone." Mr. Reid told

5

Mr. Jarvis to return the telephone to him and he would "take care of it." (*Id.* at 1378-1379).

9. The affiant-agent believed, based on his training and experience, that there was probable cause that evidence would be found in Mr. Reid's home. The affidavit provides a laundry list of items "often" kept by drug traffickers. The list includes that drug traffickers often put their assets in other peoples' or businesses' names, keep large sums of cash on hand, maintain records of drug transactions at their homes and businesses, keep drugs and information concerning drug associates at their homes and businesses, hide money, guns, financial instruments, and valuable personal property in their homes and businesses, use legitimate banks to launder drug profits, keep photos or films of their drug associates at their homes and businesses, keep records of their telephones and calls to other drug dealers at their homes and businesses, keep records of vehicles at their homes and businesses, have police scanners in their homes and businesses, and keep records of their drug deals, associates and assets on computers or other electronic storage devices. (*Id.* at 1379-1384).

6

The application and warrant target for seizure: 1) a long list of financial records without any specification as to whom the records pertain (*id.* at 1370); 2) correspondence or memoranda relating to "the above persons/entities" (*id.* at 1371 ¶10); 3) telephone records, computers or electronic devices, records of vehicles and travel records related to "Dana JARVIS and his associates" (*id.* ¶¶11-13, 15); and 4) evidence of occupancy. (*Id.* ¶14). The application does not seek and the warrant does not grant authority to search for drugs, drug proceeds or drug ledgers.

III.  Legal Analysis

    A.  The Warrant Application Does Not Establish Probable Cause that Evidence Would be Found in Mr. Reid's Home

The challenged affidavit and warrant allege that Mr. Reid was "a pilot for the Dana JARVIS" marijuana enterprise and that Mr. Reid "had knowledge of the [enterprise's] marijuana trafficking activities". (*Id.* at 1373). The affidavit does not allege that Mr. Reid possessed marijuana, proceeds or records. The affidavit does not allege that Mr. Reid used his home as the office for his flight business or maintained records there.

The Fourth Amendment explicitly provides, "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things

7

to be seized." The Courts therefore require that search warrant affidavits connect items to be seized with the locations to be searched, "A nexus between the objects to be seized and the place to be searched for them is established when the circumstances set out in the affidavit would warrant a person of reasonable caution to believe that the articles sought would be found at the place to be searched." *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). *See also United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000); *United States v. Reyes*, 798 F.2d 380, 382 (10th 1986)(affidavit must provide "a fair probability that evidence of a crime will be found in the place to be searched.").

More particularly, the Tenth Circuit holds:

> Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity.

*United States v. Rowland*, 145 F.3d 1194, 1203 (10th Cir. 1998). *See also United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999)(noting that the Court has "never held that the mere observation of repetitive illegal drug activity outside a suspect's residence by itself is sufficient to establish probable cause for a search of the residence.").

8

Admittedly, the standard for judging probable cause in a search warrant affidavit is not high, requiring only "probability, and not a prima facie showing of criminal activity . . ." *United States v.* Nolan, 199 F.3d at 1182-1183, *quoting Illinois v. Gates*, 462 U.S. 213, 236 (1983).  Even under this standard, however, the affidavit at issue fails to establish probable cause for the search.  At most, the affidavit establishes that Mr. Reid flew for Dana Jarvis and his associates, knowing that he was thereby assisting in their marijuana business.  The affidavit fails, however, to connect this illegal activity to Mr. Reid's home.  *Compare United States v. Hargus*, 128 F.3d at 1362 (probable cause for search of residence upheld where affidavit established Hargus operated small business and arranged illicit transaction from home); *United States v. One Hundred Forty Nine Thousand Four Hundred Forty Two and 43/100 Dollars*, 965 F.2d 868, 874 (10th Cir. 1992)("Where a suspect has no place of business separate from his residence, it is reasonable for an officer to conclude that evidence may be at the suspect's residence."); *United States v. Medlin*, 498 F.2d 407, 410 (10th Cir. 1986)(same); *United States v. Reyes*, 798 F.2d at 382 (upholding search of target's home based on evidence that target received large quantities of drugs, provided financial backing for drug deals, and that

9

members of conspiracy maintained records of associates).

In *United States v. Rowland*, 145 F.3d at 1199, agents obtained an anticipatory warrant to search Rowland's home for an illicit tape. Agents saw Rowland pick up the tape, go to his workplace, and then go home. Agents then executed the warrant and found the tape. *Id.* Rowland challenged the search, arguing that the warrant affidavit failed to provide probable cause that he would watch the illicit tape at his home. *Id.* at 1203. The Court of Appeals agreed, noting that the affidavit failed to provide any evidence that Rowland had previously taken contraband to his home versus "otherwise unlimited possible sites . . ." *Id.* at 1204-1205.

The same conclusion is required here. The affidavit does not allege that Mr. Reid ran his flight service or maintained records at his home. The only connection to the home made by the affidavit is that Mr. Reid used the address for "R.C. Computer and Graphics", a business the affidavit fails to otherwise describe, and purchased two telephones that were, at some point, in Dana Jarvis' possession. (Exhibit "A" at 1374). This meager reference to the residence falls short of providing probable cause that evidence of Mr. Reid's involvement in a marijuana conspiracy would be found in his home. Suppression is therefore required.

B. The Warrant is Overbroad

The challenged warrant calls for the seizure of a broad array of financial records without limitation as to ownership. (Exhibit "A" at 1370). The warrant also calls for the seizure of correspondence, memoranda and records related to "Dana Jarvis and his associates" without identifying the "associates". (*Id.* at 1371). The warrant failed to provide guidance to the agents in determining what should be seized and thereby "authorized the seizure of 'virtually every document that one might expect to find in a ... company's office,' including those with no connection to the criminal activity providing the probable cause for the search." *Davis v. Gracey*, 111 F.3d 1472, 1479 (10th Cir. 1997), *quoting United States v. Leary*, 846 F.2d 592, 602 (10th Cir. 1988).

The search was conducted pursuant to a general warrant in violation of the Fourth Amendment. *Marron v. United States*, 275 U.S. 192, 196 (1927). Suppression is therefore required.

IV. Conclusion

For the reasons set forth above, it is respectfully submitted that the search of David Reid's home violated the Fourth Amendment to the Constitution. All evidence seized in the search must therefore be

11

suppressed.

RESPECTFULLY SUBMITTED this 2nd day of February, 2009.

>LAW OFFICES OF
>NASH & KIRCHNER, P.C.


>BY /S/ Walter Nash
>WALTER NASH
>Attorney for Defendant Reid

12

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was delivered to opposing counsel and all other counsel of record *via* the CM/ECF system this 2nd day of February, 2009.

/s/ Walter Nash
Walter Nash

13