# UNITED STATES DISTRICT COURT
## *District of Arizona*

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

In the Matter of the Application for an Order Authorizing the Search of the residence located at 9227 West Weaver Circle, Casa Grande, Arizona.

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

Case Number: 05-00629M

I, Ivar Hella, being duly sworn depose and say:
I am a Special Agent of the Drug Enforcement Administration (DEA) agent and have reason to believe that /_/ on the person of or / X / on the premises known as (name, description and/or location)

**See Attachment B incorporated by reference herein.**

in the District of Arizona there is now concealed a certain person or property, namely, (describe the person or property)

**See Attachment A incorporated by reference herein.**

which is (give alleged grounds for search and seizure under Rule 41(b) of Federal Rules of Criminal Procedure):

[X] Property that constitutes evidence of the commission of a criminal offense; or
[X] Contraband, the fruits of crime, or things otherwise criminally possessed; or
[X] Property designed or intended for use or which is or has been used as the means of committing a criminal offense; or
[ ] Person for whose arrest there is probable cause, or who is unlawfully restrained.

in violation of Title(s) 21, United States Code, Section(s) 846 & 841and Title(s) 18, United States Code, Section(s) 1956 & 1957. The facts to support the issuance of a Search Warrant are as follows:

**See attached Affidavit incorporated by reference herein.**

Continued on the attached sheet and made a part hereof.   X  Yes    _ No

Reviewed by AUSA Anne E. Mosher /AM/

Ivar Hella
Signature of Affiant

Sworn to before me, and subscribed in my presence

8-24-05  4:50 P.M.                    at     Tucson, Arizona
Date                                          City and State

Magistrate Judge Hector C. Estrada
Name and Title of Judicial Officer         Signature of Judicial Officer

US v Jarvis et al   1367

## Attachment B

The residence located at 9227 W. Weaver Circle, Casa Grande, Arizona is described as a pitched roof single family dwelling with green stucco exterior walls and a three car garage that faces Weaver Circle. To the right of the garage is a light fixture with the numbers 9227 just below. Utility subscriber information is not available, as the power provider in the area is a co-op.



US v   vis et al   1369

05-0029M

Attachment A

1. Banking records to include: signature cards, ledger cards or records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, and checks issued for withdrawals, Forms 1099 issued, records pertaining to all debit and credit memos, Forms 1099 issued;

2. Loan applications, financial statements, loan collateral, credit and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda;

3. Safe deposit box records, including contracts, access records, and records of rental fees paid disclosing the date, amount, and method of payment (cash or check);

4. Monetary instruments to include: applications, actual instruments(s), records of purchases and redemptions, checks issued on redemption, checks used to purchase certificate, any correspondence and any Forms 1099 issued, records revealing the annual interest paid or accumulated, the dates of payment or date interest is earned, checks issued for interest payments;

5. Individual Retirement Accounts to include applications, signature cards, statements, records of earnings and payments, and any other information;

6. All records of the purchase of U.S. Treasury Bills and Notes and/or subsequent sale of such bills or notes, including interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, records of interest paid or accumulated revealing the dates and amount of interest paid or accumulated;

7. Credit card records, including customer's application, signature card, credit or background investigations conducted, correspondence, monthly billing statements, individual charge invoices, repayment records disclosing the dates, amounts and method (cash or check) of repayment, checks used to make repayments (front and back);

8. Purchases of bank checks, cashier, teller, travelers' check records, or money order records including the check register, file copies of the checks or money orders, records revealing the date and source of payment for said checks or money orders;

9. Records of certified checks, wire transfers, or collections, letters of credit, bonds and securities purchased through your bank, savings bond transactions, investment accounts, and CTRs and SARs. Such records that disclose the date and amount of the transaction, method (cash or check) and source of payment, instruments and statements of transactions;

10. All correspondence with the above persons/entities and/or with third parties regarding the above persons/entities. All memoranda, notes, files, or records relating to meetings or conversations concerning the above persons/entities;

11. Telephone records to include: receipts, records and documents depicting subscriber data and itemized telephone calls to other potential drug traffickers from the residential telephone, cellular telephones and pagers utilized or associated with Dana JARVIS and his associates;

12. Computers, computer software, mass storage devices, digital memory devices and or hand held electronic devices used by Dana JARVIS and his associates;

13. Receipts, records and documents indicating ownership, association and utilization of vehicles by Dana JARVIS and his associates to include maintenance and improvements to the vehicles;

14. Records indicating occupancy, residency and/or ownership of the premises, but not limited to utility and telephone bills, cancelled envelopes and keys;

15. Papers, tickets, notes, schedules, receipts and other items relating to all travel by JARVIS and his associates.

US v Jarvis et al    1371    05-00629M

## AFFIDAVIT OF IVAR HELLA

STATE OF ARIZONA    )
                    ) ss.
COUNTY OF PIMA      )

I Ivar Hella, first being duly sworn, depose and say:

I am a Special Agent of the Drug Enforcement Administration (DEA), United States Department of Justice, Albuquerque, New Mexico District Office. I have been employed as a Special Agent since 1998. As an agent with the DEA, I attended a 16 week academy, after which I was assigned to the wire intercept and long term conspiracy investigations group in Tucson, Arizona for approximately 3 ½ years. I have been assigned to the Albuquerque District Office since December 2002. I have been involved with numerous narcotics smuggling and distribution investigations which have resulted in the seizure of narcotics, the seizure of property, and the arrest, prosecutions and convictions of the subjects of the investigations. I have personal knowledge of the facts contained in this affidavit or have been told them by the persons mentioned below.

Because of my training and experience as a Special Agent with the DEA, I have extensive experience in debriefing defendants, co-conspirators, witnesses, and informants who have been involved in unlawful drug trafficking. Said individuals have had personal experience involving the techniques and methods by which drug traffickers manufacture and cultivate controlled substances and they have shared that information with me. Additionally, these individuals often know the type and amounts of drugs illegally distributed and to whom those drugs are distributed. In

addition they often know about the monies exchanged and received for drugs, as well as the techniques and methods by which drug traffickers acquire, spend, convert, transport, distribute and conceal the proceeds they derive from unlawful drug trafficking.

Based upon the information listed below, your Affiant has probable cause to believe that:

The residence located at 9227 W. Weaver Circle, Casa Grande, Arizona is under the dominion and control of David REID. David REID is a pilot for the Dana JARVIS DTO that is based out of Tucson, Arizona. David REID has knowledge of the marijuana trafficking activities of the Dana JARVIS DTO. Further evidence of David REID's involvement with the Dana JARVIS DTO can be found on the property of 9227 W. Weaver Circle, Casa Grande, Arizona.

**UNDERLYING FACTS AND CIRCUMSTANCES**

Your Affiant is the co-case agent assigned to investigate the drug trafficking organization (DTO) run by Dana JARVIS. The investigation of Dana JARVIS and his drug associates began in April 2002. To date your Affiant has learned the JARVIS DTO purchases ton quantities of marijuana from drug brokers in the state of Arizona. These Arizona based traffickers smuggle the marijuana into the United States from the Republic of Mexico. Once the JARVIS DTO takes possession of the bulk marijuana it is then distributed to drug dealers throughout the United States, to include the states of Colorado, Arizona, New Mexico, Illinois, New York, Connecticut, Massachusetts, Maryland, Ohio, Kentucky, Indiana, and Louisiana. Proceeds from the sale of marijuana are then funneled

back to Dana JARVIS and his associates in the form of bulk cash shipments. Many of the bulk cash shipments were transported aboard aircraft owned and/or operated by the JARVIS DTO. Agents have identified Jorge Luis MOFFET-ORTIZ and Ronald JUAREZ, as two Tucson based marijuana sources of supply for the JARVIS DTO.

Between March 2, 2005, and the present, agents in the District of New Mexico have conducted judicially-authorized Title III interceptions of several cellular telephones and a residential landline telephone used by Dana JARVIS and other members of the JARVIS DTO.

David REID is the pilot for the JARVIS DTO, as he has been observed by Agents in Albuquerque and Santa Fe, New Mexico picking up Dana JARVIS and/or several of his associates then flying to cities where the JARVIS DTO is known to deliver marijuana. David REID has flown an aircraft that is owned by Dana JARVIS until that aircraft was given as payment to Dennis COX, an associate of the JARVIS DTO, for a debt that is believed to be narcotic related. David REID also operates R.C. Computer & Graphics from his home at 9227 W. Weaver Circle, Casa Grande, Arizona. David REID purchased various telephones and provided R.C. Computer and Graphics at 9227 W. Weaver Circle, Casa Grande, Arizona as subscriber information. Two of the telephones were known to be in the possession of Dana JARVIS and he used these two telephones in furtherance of his narcotic trafficking activities. In the course of this investigation, these two telephones were authorized for Title III interception and identified as Target Telephone 6 and 7.

On May 17, 2005, a known marijuana and bulk money courier for the JARVIS DTO was stopped near Omaha, Nebraska. During a consent search of said individual's vehicle, officers discovered approximately 205 pounds of marijuana. In a post arrest interview, the cooperating defendant witness, hereafter referred to as CDW-1, stated that the marijuana he/she was stopped with belonged to Dana JARVIS and the he/she had worked for the JARVIS DTO for approximately two and one half years. During a subsequent debriefing of (Cooperating Defendant Witness #1) CDW-1, he/she was asked if David REID was aware if JARVIS' narcotic trafficking activities, CDW-1 said "he would be stupid if he didn't."

On October 27, 2004, Agents were notified by the United States Customs Air Marine Operations Center (AMOC) in Riverside, California that an aircraft bearing tail number N3AJ, registered in the name of Dana JARVIS, was enroute to Oklahoma City, Oklahoma from the Tucson, Arizona area. Agents followed the aircraft in a Customs aircraft and landed minutes ahead them in Oklahoma City. Agents observed Dana JARVIS's daughter, Ayla JARVIS, and the pilot, David REID, exit the aircraft. The two were followed to a local hotel where Ayla JARVIS registered in a nominee name. On October 28, 2004, the aircraft was tracked to Bloomington, Indiana. Ayla JARVIS was followed to a local restaurant where she met with known drug associate Greg HILL. After departing the restaurant location Ayla JARVIS was stopped for a traffic violation. During a consent search of her vehicle, agents discovered $278,210.00 in United States

Currency. Following the seizure of said funds, pilot David REID called the Indiana State Police Officer who seized the money. David REID told the officer that if the police department returned half of the monies that were seized, they (David REID and Ayla JARVIS) would donate the other half to the police department.

CDW-1 stated that Ayla JARVIS recently had a large sum of money seized from her in Bloomington, Indiana. This information is corroborated in the incident from October 27, 2004, described above. CDW-1 also said that police also recently seized a large sum of money from Geno BERTHOD in Denver, Colorado that was being transported to CDW-1, who then was going to take it to Dana JARVIS. The stop and seizure was conducted by Colorado State Police on March 25, 2005. This incident was also corroborated with various intercepted telephone conversations between Dana JARVIS messages left with the telephone of Geno BERTHOD.

On March 21, 2005 DEA and ICE agents in Columbus, Ohio observed George RIPLEY arrive at the local airport in a twin engine aircraft bearing tail number N3AJ. The aircraft was piloted by David REID, as observed by the above Agents. Agents observed George RIPLEY meet with two different individuals in the parking lot of the airport and take small packages from them. When the plane returned to Albuquerque observed George RIPLEY exit the aircraft with said packages. Telephone interceptions and surveillance indicate George RIPLEY picked up money for the JARVIS DTO on March 21, 2005.

On April 14, 2005 agents again observed George RIPLEY arrive in Columbus, Ohio aboard aircraft N3AJ and meet with suspected drug traffickers. The aircraft was piloted by David REID. Agents also observed George RIPLEY meet with a suspected drug associate in Athens, Ohio later that day and filmed an exchange between George RIPLEY and the drug associate. Agents were close enough that they observed the currency in a white plastic bag that was given to George RIPLEY. David REID remained in the airport terminal or with the aircraft while George RIPLEY contacted the above drug associate.

CDW-1 stated that JARVIS owned an aircraft with tail number N3AJ which he used to help facilitate his drug trafficking activities. CDW-1 stated that Dana JARVIS paid for him/her to get his/her pilot's license, but because of a DUI arrest he/she was not allowed to fly by the FAA. CDW-1 said that the money seized from Geno BERTHOD in March 2005 was going to be used to pay off a drug debt. CDW-1 said that Dana JARVIS gave aircraft N3AJ to an unidentified drug dealer to help pay off his debt. In addition, CDW-1 stated that David REID, the pilot, and Dana JARVIS owned a new King Air aircraft that was being used to fly around the country and pick up proceeds from the sale of bulk marijuana. CDW-1 also said that Dana JARVIS gave up a newer model silver Mercedes sedan to help pay off a drug debt, possibly to the same individuals that now have aircraft N3AJ in their possession. Intercepted conversation on July 7, 2005 revealed that Dennis COX was in possession of N3AJ, and was attempting to sell it for $135,000.

05-00629M

US v Jarvis et al    1377

On July 3, 2005 DANA JARVIS called David REID and advised him of a situation that developed in Coldwater Michigan involving several of Dana JARVIS' narcotic associates. Dana JARVIS told David REID that "he decided not to take her out there." David REID then asked if he "is the guy outback...the friend on Ajo who has the son." Dana JARVIS replied "that's the one...kinda large Hispanic man...yeah that's Casey [COX]." Dana JARVIS said that "he decided to do bad things and he stole close to half of a million from Bobby...in product." Dana JARVIS told David REID that he suspects that Casey [COX] has "it up there...at the place nearby where Sam [JONES] is." This intercepted conversation demonstrates that David REID is aware of the narcotic trafficking activities of Dana JARVIS and that Dana JARVIS trusts David REID with this information.

Russell TRUJILLO has been identified as a marijuana courier for the JARVIS DTO who drives loads of marijuana from Tucson, Arizona to Albuquerque, New Mexico. Russell TRUJILLO was arrested in Casa Grande, Arizona subsequent to a traffic stop that revealed he was in possession of approximately 125 pounds of marijuana that belonged to Dana JARVIS. Agents on surveillance observed the vehicle that was driven by Russell TRUJILLO parked at a residence known to be under the dominion and control of DANA JARVIS. During intercepted conversations between Russell TRUJILLO and Dana JARVIS, Dana JARVIS gave Russell TRUJILLO directions to the address where his [Russell TRUJILLO's] vehicle was observed. When Dana JARVIS was advised of the arrest of Russell TRUJILLO in Casa Grande, Arizona on July 16, 2005 he

contacted David REID and told him that he was "getting rid of his telephone." David REID told Dana JARVIS to return the telephone to him and he would "take care of it."

On August 23, 2005, a federal grand jury in the District of New Mexico returned a sealed 26-count indictment charging Dana Jarvis, Ayla Jarvis, Jorge Luis Ortiz-Moffett, Mike Hannah, Ralph Greene, George Ripley, Cathy Fitzgerald, David Reid, Pat Berssenbrugge, Barbara Hanna, George Osgood, Greg Hill, Geno Berthod, Russell Trujillo, Matthew Hotthan, Manuel Gil, Sam Jones, Salvador Abeyta, Bill Jones, Mary Cannant, and Adrian Sanford with, *inter alia*, Conspiracy to Distribute 1000 Kilograms and More of Marijuana, in violation of 21 U.S.C. § 846.

Your Affiant believes there is probable to believe evidence of David REID's facilitation of the JARVIS DTO can be found at the residence located at **9227 W. Weaver Circle, Casa Grande, Arizona** the home of David REID, the pilot for the JARVIS DTO. Per State of Arizona Department of Motor Vehicles, David REID lists his address as 9227 W. Weaver Circle, Tucson, Arizona. Based on your Affiant's training and experience and involvement in this and other investigations, your Affiant knows:

a.  Drug traffickers often place assets, to include vehicles, residences and communication devices, in names other than their own to avoid detection of these assets by government and law enforcement agencies;

b.  Drug traffickers often place assets, to include vehicles residences and communication devices, in names of business/corporate entities as

nominee title holders in order to avoid detection of these assets by government and law enforcement agencies;

c.  Even though these assets are placed in the names of other persons or entities, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

d.  Drug traffickers must maintain and have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business.

e.  Drug traffickers commonly provide marijuana on consignment sale to their customers, who pay for the drugs after reselling them. Therefore, books, records, receipts, notes ledgers, etc., will be secured by the drug traffickers within their residences and/or their businesses, and/or their conveyances so they are readily accessible for the purpose of determining drug debts and the collection of monies derived from the sale of said drugs;

f.  Drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of drug associates within their residences and/or place of business, their business or personal vehicles, or the curtilage of their residence or business for ready access and to hide them from law enforcement authorities;

g.  Drug traffickers commonly maintain records reflecting names, nicknames, addresses and telephone numbers of both their current and past drug associates;

h.  Drug traffickers who are aware of an ongoing criminal investigation into their drug activities will often destroy existing records reflecting their drug transactions (i.e. names of associates who owe them money for drugs and amounts of monies owed and collected). However, it is common for traffickers, particularly traffickers who provide marijuana for redistribution on a consignment sale basis, to create another type of drug record to assist the trafficker in collecting drug debts;

i.  Drug traffickers who are aware of an ongoing criminal investigation into their drug activities will usually alter their operational methods of drug importation and distribution in order to hinder law enforcement agencies from detecting their unlawful activities;

j.  Drug traffickers will commonly conceal within their vehicles/conveyances residence or businesses, or within the curtilage of their residence or businesses, caches of drugs, large amounts of currency, firearms, financial instruments, precious metals, precious gemstones, jewelry, electronic equipment, and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made in drug trafficking activities;

k.   Drug traffickers will attempt to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services(i.e., safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts);

l.   Persons involved in drug trafficking, who are aware of a criminal investigation into their financial drug activities will conceal, liquidate and transfer easily movable drug-derived assets in order to prevent law enforcement agencies from seizing and forfeiting these assets;

m.   Drug traffickers often have photographs, movies, and/or digital images of themselves, their co-conspirators and the property and assets purchased with drug proceeds.  These photographs and movies are normally in the drug traffickers possession, in their residences and/or their place of business, or their conveyances;

n.   Courts have recognized that an unexplained increase in wealth is probative evidence of crime motivated by greed; in particular, trafficking in controlled substances;

o.   Based upon your Affiant's training and experience drug traffickers commonly have firearms in their possession (on their person, at their residence and/or business or in their conveyance) including, but not limited to, handguns, rifles, shotguns, and automatic weapons.  These firearms are most often used and/or maintained in order to protect and secure a drug trafficker's property;

US v Jarvis et al   1382          05-00629M

p.  Drug traffickers often maintain (in their residence vehicles and/or businesses) telephone bills, receipts, records, and documents depicting subscriber data and itemized telephone calls to other potential drug traffickers from residential telephones, cellular telephones, and pagers;

q.  Drug traffickers often maintain (in their residence, vehicles and or business), receipts, records, and documents indicating ownership, association, and utilization of vehicles registered in their name or the names of others;

r.  Drug traffickers often maintain (in their residence, vehicles and or business), records, receipts, bills, and documents of maintenance and improvements to the vehicles registered in their name or the names of others.

s.  Drug traffickers often maintain (in their residence, vehicles and or business) equipment used to detect police activities and surveillance, including radio scanners and tape and wire transmitter detectors;

t.  Based upon your Affiant's training and experience drug traffickers will accumulate and maintain substantial amounts of drug proceeds, specifically currency, over a period of years, so that the proceeds can be used in later years for personal asset acquisitions and/or expenditures during periods when a drug trafficker is not distributing drugs.

05-00629 M

US v Jarvis et al  1383

u. Based upon your Affiant's training and experience drug traffickers often keep the records described in paragraphs e,f,g,k,l,m,q and r in electronic format on computers, computer disks, mass storage devices, and or hand held electronic devices.

I respectfully ask the court to issue an order authorizing the search of the premises, outbuildings, and vehicles located at **9227 W. Weaver Circle, Casa Grande, Arizona**, the residence of David REID who is the pilot for the JARVIS DTO. Furthermore, I have only used that information necessary to establish probable cause and inform the court of pertinent information related to the request for this search warrant.

_____
Ivar Hella
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 24th day of August, 2005.

_____
Hector C. Estrada
United States Magistrate Judge