**LAW OFFICES OF**
**NASH & KIRCHNER, P.C.**
P.O. BOX 2310
TUCSON, ARIZONA 85702
Telephone (520) 792-1613
Fax (520) 628-1079
Pima County Computer No. 41636
State Bar No. 002893
walter.nash@azbar.org
bkirchner@azbar.org

Attorney for defendant David Reid

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Plaintiff,         CR-05-1849 JH

vs.

DAVID REID,

  Defendant.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PREVIOUSLY FILED DISCOVERY MOTIONS

  The Defendant David Reid, by his counsel undersigned, hereby supplements previously-filed Motions for additional discovery and a Bill of Particulars as specifically set out herein.

  The nature and background of this case is unique. It is an incredibly complex case for a number of different reasons. There are well over one

-1-

hundred thousand pages of disclosure.  Initially, more than twenty defendants were indicted as allegedly being involved in a far-flung conspiracy spanning fifteen or more years.  The roles of the defendants were extremely disparate in that some had pervasive, overall, long-term activity while others simply engaged in isolated acts over a brief time span.  There is an extensive wiretap that involved an interception of a vast number of calls, a significant number of exhibits were also seized, and a plethora of potential witnesses are available.

The "field of play" in this case is now dramatically different.  But four defendants remain in a trial posture (David Reid, George Osgood, Greg Hill and Dennis Wilson).  Further, and perhaps most significant, the lead defendant in the case, Dana Jarvis, has recently entered a plea of guilty.  The remaining defendants had limited activity.  Therefore, the scope of the Government's trial presentation in this case is dramatically different from what it would have been months ago, let alone years ago.  The focus of the conspiracy from a proof standpoint in trial is now far narrower and more limited and a host of the acts and activities that the Government would have been forced to prove had other individuals, most specifically Dana Jarvis, gone to trial has been reduced tremendously.  Thus, the number of

exhibits, witnesses and, calls used will probably be smaller than would have been the case previously.

The case agents in this matter and the prosecutors involved are experienced professionals in their areas. They know the case literally inside and out because they have lived it from the inception of the investigation. Thus, one can properly infer that the prosecutors handling this matter indeed now have a firm grip on what they will really utilize in trial as to *these* four defendants concerning *their* roles.

All defendants have literally been "dump trucked" with discovery in this case. As mention before, there is a tremendous amount of disclosure that simply defies getting one's arms readily around. There have been a number of discovery motions and a motion for a Bill of Particulars filed. These have not been set for a hearing nor ruled upon. This pleading requests, *inter alia*, an Order from the Court requiring the Government to make specific disclosure of what it will *actually*, as opposed to what it *may* potentially, utilize in the trial of this matter. In other words, to review and potentially reduce what it will use. There is substantial case law to support such an order and it is well-grounded in logic and reason.

Knowing actually what the Government will truly use as opposed to

having to focus on a vast amount of extraneous information will save defense counsel (both retained and Court appointed) a tremendous amount of time.  It will also save the Court a great deal of time and effort in wrestling with needless issues.  Such an order would shorten a trial, avoid delay, facilitate various pretrial stipulations, minimize in trial issues and problems, reduce appellate issues, and insure the effective assistance of counsel.

What the defendant Reid seeks is for the Court to order the following:

1.  That the Government disclose the witnesses that it will now actually use.

2.  That the Government disclose the exhibits it will now actually use.

3.  That the Government disclose the calls it will now actually use.

4.  That the Government provide all *Brady* and Jencks information not previously disclosed.

5.  That the Government be ordered (on the Bill of Particulars) to delineate the evidence that it intends to utilize as to defendant Reid on the single money laundering count in which he is named.

Counsel undersigned wishes to recognize that the Government has disclosed a significant volume of information and a great deal of cooperator

-4-

*Brady* information as trial disclosure. Nothing in this pleading should be construed as accusing the Government of bad faith. What we seek here can essentially be described as "fine tuning" or reducing the amount of information that defense counsel will have to review and to insure that other specific information is available for cross examination and for trial preparation.

District Courts have the authority to enter discovery orders that are designed to limit the scope of required preparation, to properly identify issues that are truly to be tried, and to give the parties the opportunity to engage in appropriate discovery so that they are properly prepared. See *U.S. v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008). In *Grace* the 9th Circuit affirmed a District Court order requiring the Government to produce the finalized witness list (and other disclosure) one year before trial and to impose sanctions for the violation thereof. The scope of these orders can also include a list of documents to be utilized in trial. See *U.S. v. Upton*, 856 F.Supp. 727 (E.D.N.Y. 1994). Further, this orders can even include the names of cooperating witnesses in order to ensure the effective administration of the criminal justice system. *U.S. v. Higgs*, 1713 F.2d 39 (3rd Cir. 1983).

The bottom line of all of this is that Courts have traditionally been unwilling to allow the Government to "...bury the defendant in paper". *U.S. v. Turkish*, 458 F.Supp. 874, 882 (D.C.N.Y., 1978). In ordering the Government to identify with specificity the documents it actually intended to use at trial the Court in *U.S. v. Poindexter*, *infra*, said "...there is no reason why (the Government) cannot be more specific as to which documents it currently intends to use..." 727 F.Supp. 1470, 1484 (D.D.C. 1989).

The issue has previously arisen in this Court in a related context. In *U.S. v. Lujan,* 530 F.Supp.2d 1224 (D.N.M. 2008), the Court ordered that the Government could not rely upon blanket disclosure or an open-file policy and ordered disclosure of specific evidence. The Court quite properly reasoned that this type of an order would promote judicial economy, conserve Court resources, avoid litigation on irrelevant matters, and avoid the needless filing of motions. The same sound logic applies here.

The volume and scope of this case is so huge that the resources of defense counsel are indeed stretched thin. Having to prepare, analyze, and specifically deal with admissibility problems for a variety of matters when only a smaller number of them may actually be used is wasteful to

-6-

all. The Court is urged to require the Government to disclose the names of the witnesses, including cooperators, that will actually be used at the trial of this matter, the exhibits that the Government intends to actually use,[1] and the calls that the Government will actually introduce against these defendants in trial. This will allow the defendants to focus their scarce resources and to meaningfully to deal with this issue in an effort to be fully prepared for trial and to avoid in-trial problems. It will also facilitate a meaningful examination of the exhibits and the calls to see if foundational stipulations can be reached which will save the Court (and all other parties) a great deal of time.

With regard to the money laundering count in this case, it is very difficult for the defendant Reid to know exactly what theory the Government is proceeding on. Various strategies and defenses would be in play

---

[1] The reduction in the number of exhibits is particularly appropriate with regard to the money laundering situation in this case. When the defendant Jarvis was still a participating defendant, the parties were faced with an additional number of money laundering counts. The fact that Mr. Jarvis has pled has reduced the tally to but a single money laundering count. There is a significant volume of financial records that are now most likely irrelevant to these defendants and their involvement in the remaining single money laundering count. It is a waste of resources to force these defendants to prepare, analyze, and otherwise deal with a large volume of exhibits that are now extraneous to the matter at hand. Ordering the Government to specifically identify what documents it will use now will save all parties and the Court time and money.

-7-

depending upon whether the Government pursues different theories. The function of the Bill of Particulars is to require the Government to outline what acts support a claimed violation so that a meaningful defense can be mounted and so that the matter can proceed in an orderly fashion. It is not supposed to be "trial by ambush."

In this case there are a number of financial transactions involving the defendant Jarvis and others. It is unknown whether the Government's theory of money laundering as to the defendant Reid is based upon those transactions or upon simply allegations of his transporting money. The Court is respectfully urged to order the Government to specify what the claim is and to identify the facts that support it.

The Defendant Reid has filed an extensive request for *Brady* material. While the Government has made a large volume of exculpatory information available, the Court is respectfully urged to order the Government to provide additional disclosure forthwith and as to previously undisclosed cooperators. Further, some of the disclosure herein can only be obtained through the issuance of a Court order and should be obtained now and made available well in advance of trial. In addition, while the Government has disclosed extensive Jencks material, all other material of

-8-

a Jencks nature should be disclosed well in advance of the trial herein.

Counsel does not want to see a situation of voluminous additional materials being disclosed virtually on the eve of the trial, much of which may require substantial additional investigation when counsel are buried in other trial preparation efforts. The nature, scope, and complexity of this case makes it imperative that there be no last minute issues which could precipitate a delay in the trial or generate appellate issues.

Given the volume of material in this most complex of cases, disclosure of all remaining *Brady* material should be made as soon as possible to enable these defendants and their counsel to conduct follow-up investigation where needed and otherwise to be properly prepared to proceed to trial. The Court is respectfully urged to order the disclosure of all other *Brady* material forthwith.

Counsel undersigned concedes there is no hard and fast rule for the timing of disclosure of *Brady* material other than it must be disclosed sufficiently in advance of its potential use to allow its effective implementation. *United States v. Aichele*, 941 F.2d 761 (9th Cir. 1991). The duty to disclose earlier, rather than later, becomes more compelling when the defense may need to conduct additional investigation after the

-9-

initial disclosure of the evidence. *United States v. Thevis*, 84 F.R.D. 47 (N.D.Ga 1979). Counsel undersigned concedes that there is authority for the proposition that some *Brady* material can be disclosed even during trial *provided* that the defendants involved have sufficient time to examine and make appropriate use of the evidence. *United States v. Baxter*, 492 F.2d 150 (9th Cir. 1973). However, in this particular case in-trial disclosure, or even disclosure on the eve of trial, of *Brady* material will simply not give these defendants and their counsel sufficient time to make proper use thereof. This is an extremely complex case involving years of criminal activity on the part of large numbers of individuals engaging in numerous acts in many different locations. The Government has also chosen to disclose a large number of potentially cooperating individuals as witnesses in this case. Still others are undisclosed.

Early disclosure of *Brady* (indeed at the "earliest feasible opportunity") is recommended by the American Bar Association Standards for Criminal Justice. See ABA Standards for Criminal Justice, Standards 11.2.1 (a)(b)iii and 3-3.11(a).

The bulk of the *Brady* material, if indeed not the entirety thereof, revolves around various witnesses who have cooperated with the

-10-

government. Some of these witnesses have been indicted and some may have cooperated without being indicted. Many are identified (and there is no evidence of threats). Often, the Government justifiably does not wish to disclose *Brady* material early because of the fact that this may compromise the secrecy of the fact that the witness is cooperating. However, that argument does not apply in the case at bar and all should be identified forthwith well in advance of trial and all *Brady* material disclosed.

Further, given the large number of acts occurring over so long a period of time in this case, the defendants and their counsel must begin early with a background investigation in anticipation of cross-examination. Not knowing who the real trial witnesses will be at trial (when a large number are disclosed) will require the defendants and their lawyers to expend substantial time and substantial money for investigators conducting this investigation in pursuing needles activities on witnesses the Government may not intend to call. Appointed counsel will be forced to seek orders from the Court for compensation to investigate individuals who may not even be witnesses at trial because they cannot wait until the eleventh hour to begin this process. Thus, disclosing who really will be the witnesses in the trial of this matter early will save the defendants and their

-11-

counsel substantial time and money and will also enable the Court to save tremendous expense for investigators because the investigative efforts can be aimed at necessary witnesses, rather than all disclosed cooperating individuals out of an abundance of caution and in the exercise of due diligence.

Months ago counsel undesigned filed a specific request for *Brady* information which itemized a number of categories of evidence which were requested. *Brady* information, *inter alia* takes the form of anything that can be used to impeach the credibility of a witness on issues such as bias, motive, or a faulty recollection of the events that occurred. There is no artificial distinction between *Brady* evidence and "impeachment *Brady*" evidence - it is simply all *Brady* evidence and discoverable. *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Bagley*, 473 U.S. 667 (1985). *Brady* information can also take the form of prior inconsistent statements given by the same individual or externally inconsistent statements given by two different government witnesses. It can also take the form of a paucity of information from an individual who should know what occurred. For example, if Witness "A" says that a certain event occurred and that three individuals were present while Witness "B" states

-12-

he or she was present at the same meeting and makes no mention of certain individuals being present, that is the kind of impeachment *Brady* information that is the core of an effective cross-examination.

All of us are generally aware of the specific types of evidence that constitutes *Brady* material. The law also mandates production of information that, taken cumulatively, constitutes *Brady* material. See *Kyles v. Whitley*, 514 US 419 (1995). Thus, disparate pieces of evidence taken together may generate the kind of exculpatory information that is required to be produced even when the individual pieces thereof might not be exculpatory alone.

Without limitation, some of the areas of *Brady* material that these defendants respectfully urge the Court to order production of at this time would include all prior statements of all Government witnesses that are inconsistent with one another, either internally or externally, and either affirmatively or by the omission of certain events or people. This request includes all proffer and other statements of both testifying and non-testifying individuals given to the Government. See *United States v. Sudikoff*, 36 F.Supp. 1196 (1999). It also includes all notes constituting *Brady* material even though the notes are not Jencks Act material. For

example, if agent A takes notes of a witness during a debriefing and only the witness (not the agent) testifies, the notes do not automatically become producible under Jencks unless adopted by the witness. However, if the notes are different from the testimony, the notes must be produced under *Brady* to place the defendants and their counsel on notice to be able to call the agent as a witness to the prior inconsistent statement. The Court is also urged to order the production of all Presentence Reports in this case[2] and to excise the family history information. The Presentence Reports will contain the criminal history of a defendant sufficient to enable these defendants and their lawyers to conduct an investigation in advance of trial, the Government's version of what this individual did, the defendant's version of what they did, financial information which may be germane to relevant issues on cross-examination, the terms of their plea agreement, the Government's recommendation, if any[3], mental health history, and drug and alcohol use and abuse history. All of these items are relevant to a thorough investigation and cross examination of a testifying witness. If a report is not yet prepared, counsel requests that the Court order production

---

[2] Some have been disclosed.

[3] If separate memoranda was filed by the Government, these should be produced even if filed under seal.

-14-

of the draft of, or the notes prepared for, the report.

The Court is also urged to order the production of all other criminal history information in the possession of the Government. The Government has computer records not available to these defendants on criminal history.

The Court is also urged to order the production of the Pretrial Services Supervision Reports and all files reflecting any violations of conditions of release such as positive drug tests, non-compliance with other conditions, *etc.*, for each witness.

*Brady* issues may also arise regarding the photo or other identifications of the defendants by the Government's witnesses. See *White v. Helling*, 194 F.3d 937 (8th Cir. 1999); *United States v. Robinson*, 39 F.3d 1115 (10th Cir. 1994); *Cannon v. State of Alabama*, 558 F.2d 1211 (5th Cir. 1977). If the Government has evidence that, *inter alia*, any witness misidentified one of the defendants, provided a description that did not match the defendant, or provided information leading away from the defendant as a suspect, such information is *Brady* material and must be disclosed.

The previously filed *Brady* request also lists a number of other specific categories of information that will not be repeated here.

-15-

The problems with last minute disclosure by the Government of *Brady* material are substantial. For example, if a criminal history is disclosed shortly before trial, this may give defense counsel insufficient opportunity to thoroughly investigate, develop, and obtain relevant records for proper cross examination. Thus, if a testifying witness denied a certain aspect of their background, these defendants and their counsel would be cross-examining them with their hands tied behind their back even though they knew of the fact, but had not had sufficient time to develop the records to properly cross-examine with. Late disclosure of all of this information will cause a number of problems and may precipitate a continuance of this trial date or in trial delay. Therefore, the Court is urged to order the disclosure of all remaining *Brady* material (including what the Government may define as "impeach-ment *Brady*" material) for all witnesses it will call.

The Court is respectfully urged to order disclosure of the information outlined herein no less than sixty days prior to trial.[4] This should not be unduly burdensome to the Government since so much has already been disclosed by the Government and the number of defendants and the scope of the trial has been substantially reduced.

---

[4]The Court has already set a thirty day deadline.

Counsel undersigned has already requested all of the information outlined in this pleading of the Government. As mentioned before, the Government has already provided substantial information. The Government has indicated that it will abide by any orders of the Court, but does not wish to agree to all that is requested in this pleading by defense counsel.

Court has already entered orders concerning expert witnesses and information. There is no Rule 404 evidence disclosed as to the defendant Reid. There are no post arrest statements of the defendant Reid and no post arrest statements of other defendants that are inculpatory as to the defendant Reid which the Government has indicated will attempt to use in a joint trial.

RESPECTFULLY SUBMITTED this 2nd day of February, 2009

LAW OFFICES OF
NASH & KIRCHNER, P.C.


BY /S/ Walter Nash
WALTER NASH
Attorney for Defendant Reid

-17-

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was delivered to opposing counsel and all other counsel of record *via* the CM/ECF system this 2nd day of February, 2009.

/s/ Walter Nash
Walter Nash