IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
    vs.                             )        Cr. No. 05-1849 JH
                                    )
DAVID REID,                         )
                                    )
            Defendant.              )


UNITED STATES' RESPONSE TO DEFENDANT REID'S
MOTION FOR EVIDENTIARY HEARING AND TO SUPPRESS
IN-COURT IDENTIFICATION OF DAVID REID BY INFORMANT "CW5"

The United States hereby responds to defendant David Reid's Motion for

Evidentiary Hearing and to Suppress In-Court Identification of David Reid by Informant

"CW5" (Doc. 1530) as follows:

I.      INTRODUCTION

"CW5" was one of the twenty-one defendants who, along with defendant David

Reid ("Reid"), were initially indicted in this case on August 23, 2005.  "CW5"

subsequently submitted to an interview with government agents on December 27, 2005.[1]

During that interview, "CW5" described his involvement with the Dana Jarvis

drug trafficking organization ("DTO"), including a time he met Dave Reid, the pilot for

the Jarvis DTO, at Dana Jarvis's request.  According to "CW5," he met with Reid off

_____

[1]  The report of this interview, dated February 13, 2006, is attached to Reid's
motion.

Interstate 10 near "Avre Valley, Arizona" and Reid handed him a duffel bag containing between $50,000.00 and $80,000.00 in U.S. currency.  Near the end of the interview, "CW5" was shown approximately sixty photographs of people who were suspected to be members of, or associated with, the Jarvis DTO.  The photographs were displayed on a laptop computer.  Reid's driver's license photograph was included in this display.[2]  While "CW5" identified several people, he also stated that he did not recognize many of the people depicted in the photographs.  When shown Reid's photograph, "CW5" said he "looks familiar," but he did not associate the photograph with a particular person.

"CW5" was interviewed again on March 24, 2006.[3]  During this interview, "CW5" provided a different account of his meeting with Reid.  "CW5" was not shown any photographs during this interview.

II.    ARGUMENT

In his motion, Reid asks the Court to "preclud[e] the prosecution from presenting evidence that informant 'CW5' previously identified Mr. Reid or from identifying Mr. Reid during trial."  Def. Mot. at 2.  The United States does not intend to elicit any testimony on direct examination at trial regarding the photograph shown to "CW5" during the December 27, 2005 interview.  That portion of Reid's motion should therefore be denied as moot.  For the reasons stated below, Reid's request to preclude "CW5" from identifying Reid at trial should also be denied.

---

[2]  A copy of that photograph is attached hereto as Exhibit 1.

[3]  The report of this interview, dated April 11, 2006, is attached to Reid's motion.

In his motion, Reid asserts that the photographic procedure used during the interview of "CW5" resulted in an unreliable identification.  "When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances."  *United States v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir. 1994) (cited in Reid's motion at page 6). When the issue is the reliability of an in-court identification, as it is here, the question is whether the earlier "photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

*Sanchez*, along with the other cases cited in Reid's motion, involved an out-of-court identification of a defendant.  These cases are inapposite here because "CW5" did not identify Reid's photograph.  Reid has not cited to any case where a witness who did not make an out-of-court identification was precluded from making an in-court identification.  Simply put, there was no out-of-court identification by "CW5" that could irreparably taint a future in-court identification.[4]  But even assuming the applicability of *Sanchez*'s two-prong inquiry to this case, Reid's motion must fail.

---

[4]  Reid argues that an in-court identification will amount to a "show up."  Def. Mot. at 9.  Because "CW5" did not associate Reid's photograph with Reid, however, this case is no different than any other in which a witness identifies a defendant at trial.

3

First, Reid has failed to meet his "initial burden of proving that the identification procedure was impermissibly suggestive." *See English v. Cody*, 241 F.3d 1279, 1282-83 (10th Cir. 2001) ("It is only after the defendant meets this burden that the burden shifts to the government to prove that the identification was reliable independent of the suggestive procedure."). To determine whether a photo array was impermissibly suggestive, some of the factors courts consider are "the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves." *Sanchez*, 24 F.3d at 1262. In this case, the photographs shown to "CW5" and the manner in which they were shown were not impermissibly suggestive. Approximately sixty photographs were shown to "CW5" near the conclusion of the interview and not in relation to any particular person he had discussed during the interview. "CW5" was simply asked, in essence, whether he recognized any of the people depicted in the photographs. He positively identified only thirteen photographs,[5] and he did not recognize Reid in any of the photographs.[6] While "CW5" said that Reid's photograph "looks familiar," he did not associate that, or any, photograph with Reid. Under these circumstances, there is no chance that "CW5" will "retain in his memory the image in the photograph rather than of the person actually

---

[5] "CW5" said that the people depicted in six other photographs, including the photograph of Reid, "look[ed] familiar."

[6] The fact that "CW5" positively identified only thirteen out of the approximately sixty photographs that he was shown and stated that only six others "look[ed] familiar" cuts against Reid's assertion that "[t]he agents sent a clear message to 'CW5' – who has a strong incentive to please the Government – that he should recognize each photograph put before him." Def. Mot. at 9.

seen," thereby tainting any potential in-court identification of Reid. *See Simmons*, 390 U.S. at 383-84.

Even assuming, *arguendo*, that the procedure utilized was impermissibly suggestive, there is no reason to believe under the totality of the circumstances that an in-court identification of Reid by "CW5" will be unreliable. This is not the typical eyewitness identification case, where "the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress." *Manson v. Braithwaite*, 432 U.S. 98, 112 (1977). The circumstances at issue here did not involve an emergency or emotional distress; "CW5" was picking up drug proceeds from a co-conspirator, something he had done on numerous other occasions with other members of the Jarvis DTO. Moreover, although Reid was technically a stranger to "CW5," Jarvis had told "CW5" that he would be meeting "Dave Reid, the pilot for the Jarvis DTO." For the same reason that co-conspirator statements are deemed reliable, it is reasonable to conclude that Jarvis – during the course and in furtherance of the conspiracy – would have correctly identified the person with whom "CW5" was to meet. Furthermore, if "CW5" is able to make an in-court identification of Reid, he will be subject to cross-examination regarding his previous failure to identify the photograph of Reid as well as any inconsistencies in his rendition of his meeting with Reid. *See Simmons*, 390 U.S. at 384 (stating that risk of "convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the [photographic identification] method's potential for error.").

5

Finally, even if the Court precludes "CW5" from making an in-court identification of Reid, there is no basis for precluding "CW5" from testifying that Jarvis directed him to meet with "Dave Reid, the pilot for the Jarvis DTO" to pick up the bulk cash. Indeed, Reid has not moved the Court to suppress such testimony.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court deny defendant Reid's Motion for Evidentiary Hearing and to Suppress In-Court Identification of David Reid by Informant "CW5."

Respectfully submitted,

GREGORY J. FOURATT
United States Attorney
*/s/ James R.W. Braun*
JAMES R.W. BRAUN
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM  87103
(505) 346-7274

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of March, 2009, I filed the foregoing pleading electronically through the CM/ECF system, which is designed to cause counsel of record for the defendants to be served by electronic means.

*ELECTRONICALLY FILED*

JAMES R.W. BRAUN
Assistant U.S. Attorney