IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                                                 No. CR 05-1849 JH

GEORGE OSGOOD,

      Defendant.

**DEFENDANT GEORGE OSGOOD'S MOTION TO
COMPEL DISCOVERY RELATED TO
PEN REGISTER, CELL PHONE SITE,
OR GPS DATA**

Defendant George Osgood, by and through counsel of Record Amy Sirignano and Scott M. Davidson, hereby respectfully requests this Honorable Court to order the Government to produce documents and materials pertaining to the collection of pen register data, cell phone site data, or global positioning system (GPS) data. This information is necessary to determine whether or not the government has complied with the necessity and minimization requirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. § 2510-22. These records are necessary for the vindication of Mr. Osgood's fundamental constitutional right to freedom from unreasonable searches and seizures as protected by the Fourth Amendment. Allowing the

government to continue to conceal important documents relating to the legality

of the wiretap in this case thwarts Congress's purpose in enacting Title III,

prevents an independent determination by this Court of the legality of the

government's conduct of the wiretap in this case, and very will likely lead to

unnecessary delay in the course of these proceedings, wasting scarce judicial

resources.  The grounds for the production of these documents may be found in

Paragraph 2(C) of the discovery Order entered on August 29, 2005, by the

Honorable Alan C. Torgerson, United States Magistrate Judge, Title III of the

Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §

2510-22, the United States Constitution, and other applicable laws.

The specific documents and materials sought by Mr. Osgood are as

follows:

1.      Raw pen register data, cell phone site data, and GPS data on the wiretap

        target telephone numbers and on any phone number captured by the

        government in this case or a related DEA case that may have been used in

        this case.

2.      Applications by the government for court authority, including but not

        limited to such authority under Fed. R. Crim. P. 41, to collect pen register

data, cell phone site data, or GPS data on any telephone number of interest to the government.

3.      Affidavits or other materials filed with the Court in support of any such applications.

4.      Court orders authorizing or denying authority to collect such data.

5.      Wiretap second line data (digital call data, which includes, inter alia, text messaging and other digital data).

**Category #1: Raw Pen Register Data, Cell Phone Site Data, and GPS Data on the Wiretap Target Telephone Numbers and on Any Phone Number Captured by the Government in this Case or a Related DEA Case That May Have Been Used in this Case**.

With respect to the first category, it is important to distinguish between, on one hand, the raw pen register data that was originally collected by the government from Mr. Osgood and other targets of the investigation and, on the other hand, the summarized, digested, or manipulated reports of pen register data. The government has produced only the latter. The government alleges that the raw pen register data was never received by the telephone companies; rather, it was "dumped directly into the Penlink program" maintained by the DEA. Mr. Osgood requires the raw pen register data because only the raw data will show

whether the government illegally collected content-laden information as a result

of the collection of pen/trap data.

Penlink is a software program commonly used by the government to

summarize, collect, manage, or edit the data.  On information and belief, the

information provided to Mr. Osgood by the government is secondary data, after

having been altered or "packaged" by the government.  Mr. Osgood needs the

raw data, so that he can properly analyze whether or not the government's

collection of pen register data complied with the law.

With respect to cell phone site data, and GPS data, collection of these forms

of information may have exceeded the authority granted by the court in

authorizing the collection of pen register information.  It is impossible for Mr.

Osgood to determine whether or not the government complied with the law in

this phase of its investigation without the raw data, affidavits, authorization

applications, and court orders.

Finally, the government alleges that this marijuana conspiracy was a

nationwide conspiracy and Mr. Osgood was the leader of the NY/CT group.  Any

telephone pen register information or that was collected by the DEA at any office

or investigative agency that was used to obtain probable cause for any wiretap

related to this case is relevant to ascertain whether or not the government's

collection of pen register data and Title III affidavits complied with the law, and

if any of this information may be exculpatory in nature.

> **Category #2: Applications by the Government for Court Authority, Including but Not Limited to Such Authority under Fed. R. Crim. P. 41, to Collect Pen Register Data, Cell Phone Site Data, or GPS Data on Any Telephone Number of Interest to the Government, and Category #4: Court Orders Authorizing or Denying Authority to Collect Such Data.**

With respect to the second and fourth categories, this will show whether

the government complied with Federal Rule of Criminal Procedure 41.  If data

were collected, this would require a search warrant.  If this information was

collected by the government, and there was no search warrant, then the collection

of this content-laden information without proper legal authority might taint

information later collected by the government.  In order to vindicate Mr.

Osgood's rights under the Fourth Amendment, it is necessary for Mr. Osgood to

review the government's applications and the court orders regarding the

collection of pen register information.

> **Category #3: Affidavits or Other Materials Filed with the Court in Support of Any Such Applications.**

With respect to the third category, this will show whether the wiretaps

later obtained were unnecessary or were predicated on material omissions or false statements.  That is, representations by the government in the affidavits in support of authority to collect pen register information might undercut or contradict claims made later in seeking wiretap authority.

**Category #5: Wiretap Second Line Data (Digital Call Data, Which Includes, Inter Alia, Text Messaging and Other Digital Data)**.

With respect to the fifth category, on information and belief, wiretap data comes in on two separate lines: audio and digital.  On information and belief, these are separate dedicated lines that are routinely provided to defense counsel on separate CDs—one with the audio recordings from a specific wiretap and a second with the digital data collected from one or more wiretaps.  Mr. Osgood has not been provided with the digital data from the wiretap; he has been provided only with the recordings collected from the audio line.

The disclosure of these documents is necessary for Mr. Osgood to meet his burden in a motion to suppress and a hearing on the motion to suppress.  Mr. Osgood needs access to these documents and materials in order to demonstrate that the government has failed to show the necessity for a wiretap and that the government violated the minimization requirements of Title III.

The pen register information sought by Mr. Osgood is critical to determining whether the government may have illegally obtained content as it gathered pen register data during pre-wiretap surveillance.  In addition, these records are material to determining whether or not the intrusive step of electronic surveillance was necessary in this particular case.

Federal courts have recognized that these reports are discoverable and defendants are entitled to them.  *See, e.g.,* **United States v. Feola**, 651 F. Supp. 1068, 1144 (S.D.N.Y. 1987) ("[P]en register tapes, and telephone records are clearly included under [Rule 16(a)(1)(C)] as discoverable objects to which defendants are entitled.").  *See generally* 2 James G. Carr & Patricia L. Bellia, **The Law of Electronic Surveillance** § 7:12 (2004).  While it is true that there is some disagreement among courts on the extent of discovery obligations in this area, and there is not much case law in this area, *see* **Wright**, 121 F. Supp. 2d at 1349 (observing that "[o]nly a few courts have issued written decisions on what documents are discoverable" in anticipation of a challenge to the government's compliance with Title III requirements), there are compelling reasons for requiring disclosure in this case.

Mr. Osgood and other defendants were subject to a wide-ranging and

extensive intrusion into their protected privacy interests as a result of the

government's decision to initiate, and renew repeatedly, electronic

eavesdropping on a plethora of telephone calls without the consent or knowledge

of the participants in those private conversations.  Title III was enacted to "limit[]

the extent of court authorized intrusions on the privacy of oral communications."

*Chimera*, 201 F.R.D. at 76 (citing ***United States v. Kahn***, 415 U.S. 143, 154-55

(1974)).  It is impossible to honor the congressional purpose for this statute

without disclosure of the documents that contain the best material evidence of

compliance with (or violation of) the statutory requirements.  The pen register

records and related materials sought in this motion will shine light on the state of

the government's knowledge at the time of the application for the electronic

surveillance authorization from the court.  Consequently, they contain

indispensable of the necessity (or lack thereof) for this intrusive wiretap.

## CONCLUSION

For the foregoing reasons, Mr. Osgood respectfully requests this Honorable

Court to order the government to disclose to Mr. Osgood documents

and materials related to the collection of pen register data, cell phone site data,

and GPS data.

Respectfully submitted,


/s_____
Amy Sirignano
1011 Lomas Boulevard NW
Albuquerque, NM 87102
(505) 242-2770
(505) 242-2774 facsimile
amy@abqnmlaw.com

Attorney for Defendant


/s_____
Scott M. Davidson
1011 Lomas Boulevard NW
Albuquerque, NM 87102
(505) 255-9084

Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April 2009, I filed the foregoing motion electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing and, sent a copy to AUSA James Braun via facsimile at 505.346.7296.

/s_____

Amy Sirignano