1                    IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF NEW MEXICO

3

4    UNITED STATES OF AMERICA,

5          Plaintiff,

6      vs.                        CR-05-1849 JH

7    DANA JARVIS,

8          Defendant.

9

10         Transcript of Plea Hearing before The Honorable James A.
     Parker, Senior United States District Judge, held in
11   Albuquerque, Bernalillo County, New Mexico, commencing on
     Friday, November 21, 2009, at 3:35 p.m., and concluding at 4:29
12   p.m.

13

14   For the Plaintiff:  James R. W. Braun, Esq.

15                       Stephen R. Kotz, Esq.

16

17

18   For the Defendant:  Judith A. Rosenstein, Esq.

19                       Jody Neal-Post, Esq.

20

21

22

23                       John De La Rosa, CCR
                 United States Official Court Reporter
24               421 Gold Avenue, Southwest
                 Albuquerque, New Mexico  87102
25                    Phone:  505.348.2249

1  (In open court.)

2        THE COURT:  Good afternoon, court's in session.  Have a

3  seat, please.

4        This is Number 2005-1849, United States of America

5  versus Dana Jarvis.  Would counsel state their appearances,

6  please.

7        MR. BRAUN:  Good afternoon, Your Honor, James Braun and

8  Steve Kotz on behalf of the United States.

9        MS. ROSENSTEIN:  Good afternoon, Your Honor, Judith

10  Rosenstein and Jody Neal-Post on behalf of the defendant Dana

11  Jarvis.

12        THE COURT:  I was asked by Judge Herrera to conduct the

13  change of plea hearing, and I had some concerns because I

14  participated at some length by consent of the parties in plea

15  mediation.  I want to make sure there is no concern about my

16  presiding over the change of plea hearing.

17        MS. ROSENSTEIN:  Actually, Ms. Neal-Post and I

18  discussed that with Mr. Jarvis, and he's waiving any objection

19  to having you hear the plea.  In fact, he's very grateful to

20  the court for allowing him to plead before you.

21        THE COURT:  Let me ask counsel for the government, do

22  you see any concerns about this?

23        MR. BRAUN:  We did have some concerns, Your Honor, but

24  so long as the defendant himself waives any potential Rule 11

25  issue, we're okay with proceeding.

1          THE COURT:  Well, there was a waiver of Rule 11 matters

2    in writing at the time of the mediation.

3          MR. BRAUN:  Right.  There was a formal waiver for those

4    purposes, and we would just ask that there be a verbal waiver

5    from the defendant himself as to any other issues that may be

6    raised by the court also handling this taking of the plea,

7    because that's not something that was contemplated in the

8    original written waiver.

9          THE COURT:  That's correct.  I don't intend to accept

10   the terms of the plea agreement today.  I think I need to allow

11   the sentencing judge to do that.  I can accept a plea of guilty

12   to the two counts.

13         MR. BRAUN:  We understand that.  We were going to ask

14   the court to formally accept the plea of guilty but not accept

15   the plea agreement until Judge Herrera reviews the PSR.  To the

16   extent there might be some issues, we ask that the court get a

17   formal waiver of that from the defendant.

18         THE COURT:  Let me ask Mr. Jarvis and his counsel to

19   come up to the microphone.

20         I'll ask Ms. Blumenthal to administer the oath to

21   Mr. Jarvis.

22                         **DANA JARVIS,**

23   after having been duly sworn, testified as follows:

24         THE COURT:  Mr. Jarvis, you're now under oath, and if

25   you give false answers to any questions I ask, they could be

1   used against you in prosecutions for perjury, false statement

2   or obstruction of justice.  Do you understand?

3          MR. JARVIS:  Yes, I do, Your Honor.

4          THE COURT:  In the last 24 hours, have you had any

5   alcohol other any drugs?

6          MR. JARVIS:  No, I haven't.

7          THE COURT:  Are you under doctor's care at this time?

8          MR. JARVIS:  No, I'm not.

9          THE COURT:  And do you take any prescription medicines?

10          MR. JARVIS:  No, I don't, Your Honor.

11          THE COURT:  Is there anything about your mental

12   condition or your physical condition that makes it difficult

13   for you to understand these proceedings?

14          MR. JARVIS:  No.

15          THE COURT:  Now, if I ask a question that you do not

16   understand, would you please tell me?

17          MR. JARVIS:  Yes, I will.

18          THE COURT:  As you know, I participated in an effort to

19   mediate pleas with you and four other defendants in this case,

20   and we went through a lengthy procedure regarding consent to

21   that.  I think it's appropriate to establish, however, that you

22   are comfortable with me presiding over your change of plea

23   hearing today.  Is that acceptable to you?

24          MR. JARVIS:  Yes, that's satisfactory, Your Honor.

25          THE COURT:  Do you have any questions you want to ask

1  about that?

2          MR. JARVIS:  No, I understand, and it's fine.

3          THE COURT:  Okay.

4          MR. JARVIS:  I'm not uncomfortable with it.

5          THE COURT:  At most today, I would accept your pleas of

6  guilty, but I would not accept the terms of the plea agreement,

7  which is a Rule 11(c)(1)(C) agreement.  That will be left to

8  the sentencing judge to decide whether to accept that or not.

9  Do you understand that?

10          MR. JARVIS:  Yes, I do, Your Honor.

11          THE COURT:  May I see the original of the plea

12  agreement?

13          Would you hand that to counsel?

14          Mr. Jarvis, is that your signature on page 10 of the

15  plea agreement?

16          MR. JARVIS:  Yes, it is, sir.

17          THE COURT:  And did you read this in its entirety

18  before you signed it?

19          MR. JARVIS:  Yes, I did.

20          THE COURT:  Did you discuss it with your counsel before

21  you signed it?

22          MR. JARVIS:  We did.

23          THE COURT:  And did you understand all of the

24  provisions of the plea agreement before you signed it?

25          MR. JARVIS:  I understand what I read.

1        THE COURT:  Well, is there anything that you did not

2    understand?

3        MR. JARVIS:  Well, that's a hard question to answer,

4    Your Honor.

5        THE COURT:  Well, I need to know whether you have made

6    a knowing plea today, and it is based on your plea agreement;

7    so if there is something you don't understand about it, we need

8    to explore that.

9        MR. JARVIS:  Well, I guess the accurate answer to your

10   question is, yes, I do understand it.  I read English, and I

11   read it through, and I understand the points that were made,

12   although I don't agree with all of those points, but I have

13   signed it and am willing to accept the terms of the agreement.

14       THE COURT:  Well, I'm not sure what you disagree with,

15   but of particular importance is paragraph 8, the defendant's

16   factual basis.

17       MR. JARVIS:  Well, that's the part right there.

18       THE COURT:  That you have a problem with?

19       MR. JARVIS:  Yes.  There are some details in there that

20   are not facts, that are not accurate, that I don't feel

21   comfortable with, but -- well, the date factor and these

22   different states, for example, the mention of Ohio.

23       THE COURT:  Okay, well, it's very important that this

24   be entirely accurate.

25       MR. JARVIS:  Well, that's --

1          THE COURT:  Because you're going to have to swear under

2     oath to the accuracy of this.

3          MR. JARVIS:  It's close enough.

4          THE COURT:  Well, if it's not accurate, we need to make

5     whatever modifications are necessary in order to allow you to

6     swear under oath, subject to penalties of perjury, that this is

7     correct.

8          MR. JARVIS:  Well, I think it could be rewritten.

9          THE COURT:  Why don't I give you time to meet with your

10    counsel to do that, and see if you can do it today.

11         MR. JARVIS:  Well, I don't want to delay the

12    proceedings over this.  I know that everybody has come here to

13    get this taken care of.

14         THE COURT:  Well, notwithstanding that, it has to be

15    exact because you're swearing to this under oath.

16         Why don't I recess, let you meet with counsel for the

17    government and your counsel, and you can make whatever edits

18    you need to make to it to make it correct.

19         MR. JARVIS:  Thank you, Your Honor.

20         THE COURT:  We'll be in recess.

21     (Court recessed at 3:43 p.m. to 3:55 p.m.)

22         THE COURT:  Court's in session.  Have a seat, please.

23         Now, let me ask counsel and Mr. Jarvis, have you worked

24    out language in paragraph 8 that's satisfactory to both sides?

25         MS. ROSENSTEIN:  Yes, and I'm not even sure where the

1    original is.  The language itself is actually fine.  There are

2    some other explanations that Mr. Jarvis would like to indicate

3    because he felt that it sounded like he was doing every, single

4    thing every day in all of those states, which is not accurate;

5    and, of course, for a conspiracy charge, it is not necessary

6    that you are involved in every state on every date.

7             THE COURT:  Well, let me ask, is there a change in the

8    language in paragraph 8?

9             MS. ROSENSTEIN:  I think what we're going to do is just

10   explain, from what I understand, Mr. Jarvis took a several-year

11   break at some point in the '90s and was not involved in any

12   type of drug conspiracy.  I believe the government's discovery

13   and evidence would indicate that that is accurate, but that the

14   conspiracy started approximately 1990 and ended on the day of

15   his arrest, and that some of these locations, Mr. Jarvis has

16   never been to.  But as this court is probably aware, there are

17   a lot of other people who were involved in this, some of

18   whom -- who are all involved in the conspiracy, whether at

19   Mr. Jarvis' direction or not, but part of the same organization

20   who were in fact in those states; and there is some involvement

21   in terms of what the conspiracy did in those states, just not

22   on a day-to-day, everyday basis for the 15 years that's covered

23   here.

24             MR. JARVIS:  I was in all of those states.

25             MS. ROSENSTEIN:  Oh, you were?

1        MR. JARVIS:  Yes.  But I was never -- I never went to

2    Ohio as part of this situation prior to 2000s, 2002, 2000,

3    somewhere around there.  So that's what I had a problem with,

4    the 1990 -- from 1990 to 2002, I was never in Ohio.  I never

5    went to Ohio, you see.  It was a more recent situation.  But I

6    think Judith has explained it to me, Jody as well, and I

7    understand how the nature of the conspiracy overlaps the

8    different time periods and how that relates to the different

9    locations, and I'm satisfied with the wording the way it is.

10    It's fine.

11        THE COURT:  Let me ask Mr. Braun, do you have any

12    problems?

13        MR. BRAUN:  No, that explanation is fine.  There is no

14    dispute that this conspiracy, although it technically started

15    around 1990, that it evolved over time and that Mr. Jarvis did

16    take a break from it at some point in the mid '90s, so I think

17    the facts that are contained in the plea agreement are

18    accurate, but that that explanation is also accurate.

19        THE COURT:  But let me make sure, Mr. Jarvis.  Under

20    oath, then, you're confirming the factual basis as stated in

21    paragraph 8 on pages 3 and 4 of the plea agreement.  Is that

22    correct?

23        MR. JARVIS:  That's correct.

24        THE COURT:  Let me ask Ms. Rosenstein, is that your

25    signature on behalf of Gary Mitchell in the plea agreement?

1          MS. ROSENSTEIN:  Yes, it is.

2          THE COURT:  Ms. Neal-Post, is that your signature on

3   the plea agreement?

4          MS. NEAL-POST:  Yes, it is, Your Honor.

5          THE COURT:  Mr. Braun, is that your signature?

6          MR. BRAUN:  Yes, sir.

7          THE COURT:  Let me review some of the provisions with

8   you, Mr. Jarvis, even though they are set in writing and you

9   have said that you read and understood all of them.

10         You have certain rights that are expressed in paragraph

11  2, and they include the right to plead not guilty to the

12  charges in the Superseding Indictment, and to have a trial by a

13  jury at which your lawyers would cross-examine the government's

14  witnesses, and you would have the right to confront those

15  witnesses at the trial.  Do you understand all of that?

16         MR. JARVIS:  Yes, I do, Your Honor.

17         THE COURT:  Now, the government could not make you

18  testify at a trial.  Whether you testify would be entirely up

19  to you.  Do you understand that?

20         MR. JARVIS:  Yes, I do.

21         THE COURT:  The agreement says that you intend to plead

22  guilty to Counts 1 and 26 of the Superseding Indictment, and

23  with respect to Count 1, the maximum penalties are set forth in

24  paragraph 4, which are imprisonment of not less than 10 years

25  or more than life, a fine not to exceed $4,000,000, a mandatory

1    term of supervised release of at least five years that could be

2    as as long as life, a mandatory special penalty of $100, and

3    restitution as ordered by the court.  Do you understand all of

4    that?

5            MR. JARVIS:  Yes, I do.

6            THE COURT:  Now, with respect to supervised release, if

7    you violated a condition of supervised release, that could

8    result in you being returned to prison.  Do you understand

9    that?

10           MR. JARVIS:  Yes, I do.

11           THE COURT:  Paragraph 5 sets forth the maximum

12   penalties authorized by law for the offense charged in

13   Count 26.  The maximum period of imprisonment on Count 26 is 20

14   years.  The maximum fine is $500,000 or twice the pecuniary

15   gain.  There is a mandatory term of supervised release of not

16   longer than three years, a mandatory special penalty assessment

17   of $100, and again, restitution could be ordered with respect

18   to Count 26.  Do you understand that?

19           MR. JARVIS:  Yes, I do, Your Honor.

20           THE COURT:  Once more, I'll point out that, with

21   respect to the term of supervised release, if you violate a

22   condition, that could result in you being returned to prison.

23   Do you understand that?

24           MR. JARVIS:  Yes.

25           THE COURT:  Now, the most significant part of your

1    agreement is set forth in paragraph 6, and it states that you,

2    Mr. Jarvis, and the government have agreed under Rule

3    11(c)(1)(C) that the specific sentence in this case will be a

4    term of imprisonment of 168 months followed by a term of

5    supervised release of five years.  Is that your agreement?

6            MR. JARVIS:  Yes, it is, Your Honor.

7            THE COURT:  Now, do you understand that if the

8    sentencing judge accepts the plea agreement, the sentencing

9    judge will have no choice but to sentence you to 168 months

10   imprisonment and five years of supervised release?  The judge

11   won't have any discretion to do otherwise.  Do you understand

12   that?

13           MR. JARVIS:  I do now.

14           THE COURT:  Do you have any questions about that?

15           MR. JARVIS:  No, I don't.

16           THE COURT:  Now, we've already reviewed paragraph 8,

17   and you've confirmed under oath that, as stated in the plea

18   agreement, that is the factual basis for your plea.

19           I understand that paragraph 9 has been stricken from

20   the agreement.  Is that correct?

21           MR. BRAUN:  That is correct.  It was essentially

22   redundant with paragraph 7.

23           THE COURT:  Okay.

24           MR. BRAUN:  As far as the information that could be

25   provided to probation.

1                THE COURT:  And have you initialed that deletion,

2     Mr. Jarvis?

3                MR. JARVIS:  Yes.

4                THE COURT:  Paragraph 10 states, Mr. Jarvis, that you

5     must provide the probation office with truthful, accurate and

6     complete information, and have you agreed to do that?

7                MR. JARVIS:  I believe so.

8                THE COURT:  Paragraph 11 is a lengthy provision

9     regarding forfeiture of assets.  Have you read this carefully?

10               MR. JARVIS:  I have.  Yes.

11               THE COURT:  And are you satisfied that this does

12    accurately represent all of the assets that you intend to

13    forfeit under the terms of the agreement?

14               MR. JARVIS:  I'm satisfied with its accuracy.

15               THE COURT:  Paragraph 12 states that you will assist

16    the United States in the forfeiture of these assets, and have

17    you agreed to do that?

18               MR. JARVIS:  Yes, I will.

19               THE COURT:  Paragraph 13 states that you agreed to

20    waive your right to notice of any forfeiture proceeding

21    involving that property, and have you agreed to do that?

22               MR. JARVIS:  Yes, I have.

23               THE COURT:  Paragraph 14 states that you have knowingly

24    and voluntarily waived your right to a jury trial with regard

25    to forfeiture of the property described in paragraph 11.  Have

1    you agreed to do that?

2            MR. JARVIS:  Yes, Your Honor.

3            THE COURT:  Now, paragraph 15 was a matter that we

4    discussed at some length during the mediation agreement, and

5    that is that, in lieu of a money judgment, you agree to convey

6    the Mora real property into a trust for your children.  Is that

7    your understanding of this?

8            MR. JARVIS:  Yes, it is, and that has been done.

9            THE COURT:  Is this satisfactory to you now?

10           MR. JARVIS:  Yes, it is.

11           THE COURT:  Paragraph 17 states that if Mr. Jarvis

12   fulfills his obligations under the agreement, the United States

13   will not bring additional charges against him arising out of

14   his conduct presently known to the United States, and that at

15   the time of sentencing, the United States will move to dismiss

16   the remaining counts of the Superseding Indictment as to

17   Mr. Jarvis, and that the United States will not seek to forfeit

18   any of his property presently known to the United States other

19   than the property described in paragraph 11, and any other

20   property in regard to which forfeiture proceedings have been

21   initiated previously or prior to the date of this agreement.

22   Is that the government's agreement?

23           MR. BRAUN:  Yes, sir.

24           THE COURT:  Now, paragraph 18 states that this

25   agreement is limited to the United States Attorney's Office for

1    the District of New Mexico, does not bind any other federal,

2    state or local agency and the prosecuting authorities.  Does

3    that mean, for example, that, in the event the Internal Revenue

4    Service felt that there were taxes due, they could pursue that?

5            MR. BRAUN:  That is correct.

6            THE COURT:  And do you understand that, Mr. Jarvis?

7            MR. JARVIS:  Yes, I do.  I had a question about that.

8            THE COURT:  Well, go ahead and ask it.

9            MR. JARVIS:  If I may.  Thank you.  If that were the

10   case, would the government, prosecution's office, provide

11   information to the -- by signing this, am I going to get in

12   trouble with the IRS, too?  Is that what the bottom line of

13   that is?

14           THE COURT:  I don't know how to answer that.  This is,

15   I guess, a public document, is it not?

16           MR. BRAUN:  To my knowledge, there is no pending

17   investigation by the IRS into back taxes or anything of that

18   nature in relation to this case.  And I don't see this plea

19   agreement changing that.

20           THE COURT:  Any other questions?

21           MS. ROSENSTEIN:  If I may, I'm assuming that means that

22   your office does not intend to discuss this with the IRS or

23   anything of that nature.  I mean, if they call you, I'm sure

24   you'll talk to them, but you're not going to initiate --

25           MR. BRAUN:  We had no intention of referring this to

1    the IRS.  The IRS was involved in the investigation of the

2    criminal charges in this case, so I imagine if they intended to

3    pursue it, they would have started already.

4            THE COURT:  Any other questions about that?

5            MR. JARVIS:  I'm satisfied with that, Your Honor.

6            THE COURT:  Paragraph 19 states that you intend to

7    enter your pleas voluntarily and without threats or force.  Has

8    anyone threatened you or tried to force you to enter into this

9    plea agreement or to plead guilty?

10           MR. JARVIS:  I have a hard time answering that

11   question, Your Honor.  It's the definition of the word

12   "threat," is one I have trouble with.  Ms. Rosenstein and I

13   went over this for quite a period of time, and --

14           THE COURT:  Well, let me be very candid with you.  I

15   cannot accept your plea, nor would any other judge accept your

16   pleas of guilty, if they resulted from duress, threats, and for

17   any reason were not made voluntarily by you.

18           MR. JARVIS:  Well, I've signed the agreement, and no

19   one has threatened me, if that answers the question.

20           THE COURT:  Well, are you doing this of your own free

21   will, or are you doing it out of some sense of fear, duress or

22   other reasons?

23           MR. JARVIS:  Well, I've been told that if I don't, I go

24   to trial, I would be looking at 20 years or more instead of 14

25   years, which I accepted as most likely being a true fact.  So I

1    don't want to have this point hold up the provision at all, but

2    I'm not doing this because I want to, because I like it.  I

3    don't feel right about it, and I regret it, but I also accept

4    the responsibility of my actions, and so I've signed the plea,

5    and I will accept it as it is.

6         THE COURT:  Well, I'm not sure exactly what you're

7    saying.  If it's a matter of balancing your risks of a longer

8    sentence through conviction at trial and effecting a compromise

9    of that risk, that's one thing.  If you are telling me that

10   you're being pressed or forced into this by someone else and

11   don't want to agree with that, that's yet another matter.

12        MS. ROSENSTEIN:  May I state something for the record,

13   Your Honor?

14        THE COURT:  Go ahead.

15        MS. ROSENSTEIN:  There are two things.  Number one, I

16   believe when Mr. Jarvis indicated that it depends on the

17   definition of threat.  Obviously, as experienced counsel,

18   Mr. Mitchell, Ms. Neal-Post and myself have all indicated to

19   Mr. Jarvis the various options that he has at this point, and

20   we all are very much, very well aware of the guidelines, what a

21   guideline sentence would be, which we believe would be in

22   excess of the agreed-upon amount; and certainly, when one goes

23   to trial, one does not get the benefit of any kind of

24   acceptance of responsibility and other potentially mitigating

25   factors.  And I think that's what Mr. Jarvis is talking about.

1        I think that it's the former option that the court just

2   described, that he's agreeing to a compromise.  Even though he

3   doesn't like it, and is not happy about it, he's accepting the

4   compromise because he recognizes the reality of his situation,

5   the facts that are in the discovery, what might come out at

6   trial, and as well as the benefit that he receives in terms of

7   the trust fund for his children, the forfeiture issues.

8        And there is one other thing that's not part of this,

9   but I just want to state for the record that Mr. Kotz has

10  agreed with counsel for Mr. Jarvis' ex-wife, the mother of his

11  two older children, to attempt a settlement with regard to the

12  home that she lives in with their son, and they have agreed

13  that it will be a good faith negotiation for settlement, and

14  that at least one of the goals is that the family remain in the

15  home.  That's certainly not the only goal, but at any rate,

16  that was another thing, and I wanted to put that on the record,

17  because that was another reason that I believe Mr. Jarvis has

18  agreed to this compromise and to the waiver of his rights.

19       He feels very strongly about waiving his rights, and

20  he's agreeing to do so because I believe that he recognizes the

21  reality of his situation and this case, and understands that

22  this is the best possible situation that he could get.

23       If I'm wrong, please tell me.

24       THE COURT:  Well, the issue of his former wife's house

25  in Santa Fe is not addressed in writing in this agreement, is

1   it?

2          MS. ROSENSTEIN:  No.

3          MR. BRAUN:  No, and that's not part of this plea

4   agreement.  We've made that clear to Ms. Rosenstein, that we

5   don't want that to be part of the plea negotiations in this

6   case; but that being said, it should be put on the record, and

7   I'm glad that she did, that we have agreed to negotiate in good

8   faith towards a reasonable settlement in that case.  And so

9   we're putting that on the record here.

10          THE COURT:  Well, looking at the language of paragraph

11  19 of the plea agreement, Mr. Jarvis is representing here that

12  his plea is freely and voluntarily made, and not the result of

13  force or threats or of promises apart from those set forth in

14  the plea agreement.  Now, is there a promise relating to this

15  house or not?

16          MS. ROSENSTEIN:  No, there is no promise or commitment

17  other than that the parties will negotiate in good faith toward

18  a settlement.

19          THE COURT:  Is that your understanding, Mr. Jarvis?

20          MR. JARVIS:  Yes.  Yes, it is, Your Honor.

21          THE COURT:  Well, look carefully at the language of

22  paragraph 19.  The sentence is very short.  It says you agree

23  and represent that your plea of guilty is freely and

24  voluntarily made, and it is not the result of force or threats

25  or of promises apart from those set forth in the agreement.  Is

1    that correct or not?

2              MR. JARVIS:  That's correct.

3              THE COURT:  One of the things that I didn't see in this

4    agreement that sometimes appears in others is the matter of

5    payment of the special penalty assessment.  I told him that

6    that's a consequence.

7              MR. BRAUN:  Right, but, no, it is not included in there

8    that he has to pay that immediately, but there are procedures

9    in place for the payment of special penalty assessments.  And

10   that, of course, is required by law.

11             MS. ROSENSTEIN:  Yes, and Mr. Jarvis is aware of the

12   $200 mandatory penalty assessment, $100 for each count.

13             THE COURT:  Is that correct, Mr. Jarvis?

14             MR. JARVIS:  Yes, Your Honor, it is listed there in

15   number 4 and number 5, it's got it, and I agree with that.

16             THE COURT:  Now, if I accept your plea agreement -- not

17   your plea agreement.  If I accept your pleas of guilty to

18   Counts 1 and 26, it will be the same as though you had been

19   convicted of the felony crimes charged in Count 1 and in

20   Count 26.  Do you understand that?

21             MR. JARVIS:  Yes, sir.

22             THE COURT:  With respect to sentencing, as I indicated,

23   if the sentencing judge accepts your plea agreement, the

24   sentencing judge will have to impose a sentence of 168 months

25   imprisonment and a five-year term of supervised release.  The

1    only reduction off of the length of the sentence for good time

2    credit that you earn in prison is 15 percent or 54 days per

3    year.  Do you understand that?

4            MR. JARVIS:  Yes, and I have a question about that.

5            THE COURT:  Go ahead.

6            MR. JARVIS:  Would that apply to the entire 168 months.

7            THE COURT:  Let me ask Mr. Braun.  He's been in federal

8    custody for quite some time, and I assume that he'll qualify to

9    receive good time credit for the time he's already spent in

10   federal custody.  Do you know the answer?

11           MR. BRAUN:  I don't.

12           MS. ROSENSTEIN:  It is my experience, Your Honor,

13   that -- and I think there is even case law, although I don't

14   have it at my fingertips, that the good time credit applies to

15   the entire length of the sentence, and I can contact the BOP.

16   Maybe probation is still here.  No.  But I believe that he is

17   entitled to good time for the entire 168 months whenever,

18   wherever, it was served.  That's my understanding.

19           THE COURT:  Is that a satisfactory answer for you?

20           MR. JARVIS:  Yes, for now, that will work.

21           THE COURT:  Now, Mr. Jarvis, do you understand fully

22   the consequences of pleading guilty to the charges in Counts 1

23   and 26?

24           MR. JARVIS:  In reference to the 168 months?

25           THE COURT:  In reference to all of the provisions of

1    the plea agreement.

2              MR. JARVIS:  I believe so.

3              THE COURT:  Well, do you have any questions you want to

4    ask?

5              MR. JARVIS:  Well, I just think that 14 years is an

6    awful long time for first offense, nonviolent, marijuana-

7    related charges, Your Honor.  I would like to not have to be

8    sentenced to that long of time.  The time I've been in jail

9    already, my life has been ruined, and there will be

10   consequences after the 168 months that aren't addressed in this

11   agreement, and I don't know if they have been considered by the

12   government.

13             For example, my credit rating, which was in the 800s

14   prior to my arrest, will be permanently tarnished.  My ability

15   to travel to foreign countries, even if I am able to regain

16   possession of a passport, will be limited.  Canada won't let

17   you in if you have been convicted of a marijuana offense, even

18   though marijuana has been legalized to grow hemp in Canada now.

19   And I've seen the trends of the -- around the country,

20   including this state right here, just recently, legalized

21   medical marijuana in the recent elections.  Michigan was added

22   to that list, making a total of 14 states that have legalized

23   the possession of marijuana.

24             I was talking to my older sister in Hawaii on the phone

25   a couple of weeks ago.  She said she was looking out the window

1   at her marijuana plants growing in the garden which she's doing

2   legally, growing marijuana, and her younger brother is sitting

3   in jail with chains on for the same product.

4        I personally don't think that I should have to do that

5   much time for a substance that I don't feel is harmful. There

6   is no hard drugs involved in this case. There is no crime of

7   violence, and this is my first offense. I'll be 60 years old

8   in 14 months, and to sign up for 168 months in jail for pot to

9   me is very, very hard to accept that that is justice. I don't

10   believe that justice is being served here today, Your Honor,

11   and that's my point of view.

12        Hopefully, that's not too long of an answer.

13        THE COURT: No, I understand, but I think United States

14   Congress has a different view of marijuana than you do,

15   obviously. Independent of that, we need to know whether,

16   despite your beliefs about it, you're willing to proceed to

17   enter pleas of guilty and do so voluntarily.

18        MR. JARVIS: Well, I'm asking at this moment if it is

19   at all possible if the government would consider a slight

20   reduction in that sentence.

21        Is there any possibility that we could go down to six

22   months or a year on the sentence at this time?

23        MR. BRAUN: Your Honor, we have negotiated this plea

24   agreement, and that's all we're authorized to proceed with.

25        THE COURT: I should probably state on the record that

1    I was not involved in the final aspect of the agreement between

2    the government and Mr. Jarvis.  I participated in the

3    mediation, exchanged, and basically served as a courier, taking

4    information from one side to the other, and advising both sides

5    about where things stand, but I was not involved in the final

6    agreement.

7            You understand that, do you not, Mr. Jarvis?

8            MR. JARVIS:  Yes, I do.

9            THE COURT:  Well, do you wish to proceed to enter pleas

10   of guilty, or would you rather not?

11           MR. JARVIS:  Well, I'll plead guilty, and I just wanted

12   to make the point that I don't feel right about it, and I think

13   it's time that these long sentences for marijuana charges are

14   reduced.  I don't think it is right that people should get this

15   much time for pot.  I just don't feel right about it.

16           THE COURT:  Okay.  But you intend to go ahead and plead

17   guilty despite your beliefs?

18           MR. JARVIS:  Yes.

19           THE COURT:  Now, let me make sure that you understand

20   the charges to which you're pleading guilty.  Have you read the

21   Superseding Indictment?

22           MR. JARVIS:  Yes, sir.

23           THE COURT:  And have you discussed in particular Count

24   1 and Count 26 with your attorneys?

25           MR. JARVIS:  Yes, sir.

1          THE COURT:  Do you fully understand the charges that

2  are made against you in Count 1 and in Count 26?

3          MR. JARVIS:  Yes.

4          THE COURT:  Let me ask Mr. Jarvis' counsel, do you

5  believe it is in Mr. Jarvis' best interest to enter pleas of

6  guilty to the charges in Count 1 and Count 26 of the

7  Superseding Indictment?

8          MS. ROSENSTEIN:  Yes, sir.

9          THE COURT:  Now, will you explain on the record in more

10  detail why you think it is in his best interest?

11          MS. ROSENSTEIN:  Well, I would first say that I don't

12  necessarily disagree with a lot of the things that Mr. Jarvis

13  said, but I recognize that we all -- this is a country of law,

14  and the law is that marijuana and distribution thereof is

15  illegal.

16          It's my understanding that there is, I guess I can call

17  it, an enormous amount of evidence that has been accumulated by

18  the government against Mr. Jarvis; that there would be a number

19  of individuals who would would be testifying with regard to

20  their direct contact with Mr. Jarvis in connection with this

21  particular conspiracy, as well as the money laundering, which

22  is part of it.

23          I have reviewed the guidelines, and very frankly, I

24  think that pursuant to the guidelines, which I recognize are to

25  be considered reasonable at least by the Court of Appeals, and

1    certainly something that the government adheres to, and many

2    courts sentence pursuant to, I believe that he is facing a

3    significantly greater period of time should he be convicted at

4    trial.  I think the likelihood of conviction is fairly

5    substantial, and consequently, and after the negotiations that

6    I've been involved in in the short period of time, I believe

7    that this is the best we can do, and I believe, therefore, that

8    it is definitely in his interest to accept the plea.  That's

9    what we've been discussing for the last three or four days.

10            THE COURT:  Mr. Jarvis, how do you plead to the charge

11   in Count 1 of the Superseding Indictment?  Guilty or not

12   guilty?

13            MR. JARVIS:  Guilty, Your Honor.

14            THE COURT:  And how do you plead to the charge in

15   Count 26 of the Superseding Indictment?  Guilty or not guilty?

16            MR. JARVIS:  Guilty, Your Honor.

17            THE COURT:  It is my finding that the defendant, Dana

18   Jarvis, knowingly, voluntarily and intelligently entered pleas

19   of guilty to the charges in Count 1 and Count 26 of the

20   Superseding Indictment.  At this time, I will accept your pleas

21   of guilty as being voluntarily and intelligently made.

22   However, I am not accepting the terms of the plea agreement,

23   and that will be deferred for consideration by the judge who

24   sentences you.  Do you understand that the sentencing judge may

25   reject the plea agreement and decide not to accept it?  Do you

1  understand that?

2          MR. JARVIS:  Yes, I do.

3          THE COURT:  You'll be required to meet with the

4  probation officer to give information that will be included in

5  your Presentence Report.  You have the right to have your

6  attorneys with you when you are interviewed.  After your report

7  is prepared, you'll have a right to read your Presentence

8  Report and to discuss it with your attorneys.  If you find any

9  factual statements in the report that you believe are not

10  correct, you can point that out to the probation officer who

11  authors the report.  You can also ask for a hearing in court at

12  which you can present evidence as to facts you think should be

13  in your report.  Do you understand that?

14          MR. JARVIS:  Yes, I do, Your Honor.

15          THE COURT:  Normally, sentencing is scheduled about 75

16  days after the change of plea hearing, so you can expect the

17  sentencing date to be roughly 75 days from now.

18          MS. ROSENSTEIN:  Your Honor, we have actually -- all

19  parties have agreed to an expedited PSR.  I spoke with

20  Mr. Braun and Mr. Kotz to the probation department, and they

21  have agreed, they have indicated that they believe they can

22  have the report done in 30 days as opposed to the usual.

23          THE COURT:  Well, you'll just have to check with Judge

24  Herrera, who I assume will be the sentencing judge, about a

25  date for sentencing.

1          MS. ROSENSTEIN:  Yes.  According to her clerk, she will

2    be, yes.

3          THE COURT:  All right.  Let me ask Mr. Braun or Mr.

4    Kotz, anything else you need to bring up today on behalf of the

5    government?

6          MR. BRAUN:  No, Your Honor.

7          THE COURT:  And Ms. Rosenstein and Ms. Neal-Post,

8    anything else?

9          MS. ROSENSTEIN:  No, sir.

10          MS. NEAL-POST:  No.

11          THE COURT:  Court's in recess.

12     (Court recessed at 4:29 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C-E-R-T-I-F-I-C-A-T-E

2    UNITED STATES OF AMERICA

3    DISTRICT OF NEW MEXICO

4

5        I, John De La Rosa, RPR, CCR, Official Court Reporter for

6    the State of New Mexico, do hereby certify that the foregoing

7    pages constitute a true transcript of proceedings had before

8    the said Court held in the City of Albuquerque, New Mexico, in

9    the matter therein stated.

10       In testimony whereof, I have hereunto set my hand on this

11   6th day of May, 2009.

12

13

14

15

16            _____
              JOHN DE LA ROSA, CCR
17            United States Official Court Reporter
              421 Gold Avenue, Southwest
18            Albuquerque, New Mexico  87102
              Phone:  505.348.2249
19

20

21

22

23

24

25