# Exhibit 1-A
### (Pages 1-20)

TO
UNITED STATES' RESPONSE TO
DEFENDANTS' JOINT MOTION TO
SUPPRESS THE FRUIT OF
TITLE III WIRETAPS

FILED

IN THE UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FOR THE DISTRICT OF NEW MEXICO

MAR 0 3 2005

IN THE MATTER OF THE APPLICATION OF THE )
UNITED STATES OF AMERICA FOR AN ORDER )
AUTHORIZING THE INTERCEPTION OF WIRE )
COMMUNICATIONS OCCURRING OVER THE )
CELLULAR TELEPHONE BEARING )
ELECTRONIC SERIAL NUMBER ESN )
03704386178 WITH CURRENTLY ASSIGNED )
TELEPHONE NUMBER 505-470-1811. )

MATTHEW J. DYKMAN
CLERK

Misc. No.

FILED UNDER SEAL

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Richard L. Stark, being duly sworn, depose and state as follows:

## INTRODUCTION

1.     I am a Special Agent of the United States Drug Enforcement Administration

(DEA) and have been employed as a Special Agent since 1996.  As such, I am a law enforcement

officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by

law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

As an agent with the DEA, I attended a 16 week academy, after which I was assigned to the wire

intercept and long term conspiracy investigations group in Tucson, Arizona for approximately 4

years.  I have been involved with approximately ten Title III wiretap investigations as either the

affiant or as a Special Agent assigned to assist with the wiretap investigation.  I have been

assigned to the Albuquerque District Office since September 2000.

2.     This case is being investigated by the DEA, the Bureau of Immigration and

Customs Enforcement (BICE), and other federal, state, and local law enforcement officers.

I have personally participated in the investigation of the offenses described below and make this



Affidavit based on my personal participation in the investigation and based on reports made to me by other agents and law enforcement authorities. Except where otherwise noted, the information set forth in this Affidavit has been provided to me by other law enforcement agents and officers who have assisted in the investigation.

3.    Because this Affidavit is being submitted for the sole purpose of obtaining authorization for the interception and recording of wire communications, I have not included each and every fact known to me concerning the underlying investigation. I have set forth only the facts that I believe are essential to establish probable cause for an order authorizing the interception and recording of the wire communications described in this Affidavit.

4.    This Affidavit is made in support of an Application for an Order pursuant to 18 U.S.C. § 2518, authorizing Special Agents of the DEA and BICE (the "Investigative Agencies"), in conjunction with other federal law enforcement officers and any individuals operating under a contract with the government and acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception,[1] to intercept and record for a thirty-day period wire communications occurring to and from:

the cellular telephone bearing the Electronic Serial Number (ESN)[2] 03704386178, currently assigned telephone number (505) 505-470-1811, subscribed to by Richard Belian, (the "TARGET TELEPHONE"), to include any changed telephone numbers subsequently assigned to the instrument bearing the same ESN as the TARGET

---

[1] The Investigative Agencies do not have the resources to staff all aspects of the investigation and the requested interceptions with Special Agents and deputized law enforcement officers. As a result, monitoring personnel are expected to include civilian personnel, operating under a contract with the government and acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception.

[2] The ESN is a number unique to each cellular telephone, with only one ESN per telephone instrument.

TELEPHONE, any replacement cellular telephones obtained by the TARGET TELEPHONE's subscriber carrying the same telephone number or the same ESN, and any cellular telephones with a changed ESN subsequently assigned to the instrument bearing the same telephone number as the TARGET TELEPHONE during the effective period of the requested Order.

5.    According to subpoenaed information obtained from the TARGET TELEPHONE's current service provider, Alltel Wireless Communications, the TARGET TELEPHONE is subscribed to by Richard Belian, Post Office Box 868, Tesuque, New Mexico. Based on my knowledge derived from the investigation referenced below, it is believed the TARGET TELEPHONE is in the possession of, or under the dominion and control of, Dana JARVIS.

## SUBJECTS AND OFFENSES

6.    As a result of my personal participation in the investigation, statements made to me by other law enforcement personnel involved in the investigation, review of reports of other law enforcement personnel and confidential sources, and on the basis of reliable information I have reviewed, there is probable cause to believe that Dana JARVIS a/k/a Todd Ward, Ayla JARVIS, Eileen FITZGERALD, Cathy FITZGERALD, Donald TRUJILLO, David REID, Jude AUSTIN, Geno BERTHOD, Jacklyn COOK, Billy Joe COOK, Angela CUMMINGS, Dakota FITZNER, Kara GOLD, Joel GOODELL, Barbara HANNA, Greg HILL, Matthew HOTHAN, Melania KIRWIN a/k/a Mila, Joseph MARTIN, Rafal MISTRZAK, Lloyd MONTOYA, John NIETO, Dan CHOMYN, Salvador ABEYTA, and John WHALEN (the "SUBJECTS"), and

others as yet unknown, have committed, are committing, and will continue to commit offenses

enumerated in 18 U.S.C. § 2516,[3] that is, offenses involving violations of:

a.  21 U.S.C. § 841 – possession with intent to distribute and distribution of a controlled substance, namely marijuana;

b.  21 U.S.C. § 843(b) – use of a communications facility to further the commission of a felony controlled substance offense;

c.  21 U.S.C. § 846 – conspiracy to possess with intent to distribute and to distribute controlled substances;

d.  21 U.S.C. § 848 – continuing criminal enterprise;

e.  21 U.S.C. § 856 – maintaining a place for manufacture, distribution, or use of controlled substances;

f.  21 U.S.C. §§ 952(a), 960(a) – importation of a controlled substance;

g.  21 U.S.C. § 963 – conspiracy to import a controlled substance;

h.  18 U.S.C. § 1952 – foreign or interstate travel in aid of racketeering enterprise;

i.  18 U.S.C. § 1956 – laundering of monetary instruments; and

j.  18 U.S.C. § 1957 – engaging in monetary transactions involving property derived from specified unlawful activity.

7.  There is probable cause to believe that the SUBJECTS and others as yet unknown

will be using the TARGET TELEPHONE during the period of interception sought in furtherance

of, in connection with, to facilitate, and to commit the above offenses.

---

[3] Although aiding and abetting under 18 U.S.C. § 2 is not a predicate offense enumerated in 18 U.S.C. § 2516, there is also probable cause to believe that the SUBJECTS of this investigation have aided and abetted and are aiding and abetting the substantive offenses listed below.

4

## INVESTIGATIVE OBJECTIVES

8.    There is probable cause to believe that particular wire communications of the SUBJECTS and others as yet unknown concerning the above offenses will be obtained through the interception of wire communications for which authorization is herein sought.  In particular, there is probable cause to believe that these wire communications will concern the specifics of the above offenses, including:

a.    The nature, extent, and methods of operation of the illegal drug trafficking and money laundering of the SUBJECTS and others as yet unknown;

b.    The dates, times, places, and manner in which controlled substances and the proceeds of drug trafficking are being delivered to the SUBJECTS and others as yet unknown;

c.    The identification of other communications facilities used by the SUBJECTS and others as yet unknown in furtherance of the criminal activity alleged herein;

d.    The methods and means of payment for the controlled substances employed by the SUBJECTS and others as yet unknown, and the manner in which these transactions are conducted;

e.    The locations where the controlled substances are stored;

f.    The nature and extent of the mechanism used by the SUBJECTS and others as yet unknown to import, transport, and distribute controlled substances within the District of New Mexico;

g.    The identities of co-conspirators, accomplices, aiders and abetters, and other participants operating in concert with the SUBJECTS and their respective roles and participation in the above-mentioned offenses;

h.    The identities of the sources of supply of the controlled substances distributed by the SUBJECTS and others as yet unknown;

i.    The methods and means by which the SUBJECTS and others as yet unknown maintain, dispose of, and invest the proceeds from the sale of controlled substances; and

5

j.     The location and source of resources used to finance the illegal activities described herein.

In addition, these wire communications are expected to constitute admissible evidence of the commission of the above-described offenses. It is further expected that interception of wire communications, if authorized, will provide valuable evidence against the perpetrators of the above described offenses that cannot reasonably be obtained by other means.

9.     The nature of this investigation is such that there is probable cause to believe that additional communications of the same type will continue to occur after the described type of communications have been first obtained.

## PERSONS EXPECTED TO BE INTERCEPTED[4]

10.     **Dana JARVIS a/k/a Todd Ward**: (DOB: 1/25/1950, SSN: 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). JARVIS also uses Social Security Numbers 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 and 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. As detailed below, JARVIS is the leader of the JARVIS drug trafficking organization ("DTO"). JARVIS is the owner of 13 Enebro in Santa Fe, New Mexico, and 1440 Cielo Vista in Bernalillo, New Mexico. JARVIS was charged by the Tucson Police Department on May 7, 1979 for possession of marijuana, fleeing from police and driving while intoxicated. The disposition of these charges is unknown. On February 24, 1984, JARVIS was arrested for distributing a controlled substance by

---

[4]Jude Austin, Kara Gold, Geno Berthod, Jacklyn Cook, Billy Joe Cook, Angela Cummings, Greg Hill, Matthew Hothan, Lloyd Montoya, Dan Chomyn, and John WHALEN, named in this Affidavit as SUBJECTS, are believed to be participants in the underlying criminal activity. However, there is as of this date no evidence that they have participated in telephone calls to or from the TARGET TELEPHONE. Therefore, while they are identified as SUBJECTS, they are not included in the list of persons expected to be intercepted pursuant to the Order sought. If conversations involving one or more of these SUBJECTS are in fact intercepted, the Court will be advised in the interim progress reports submitted to the Court by the Assistant United States Attorney.

6

the Albuquerque FBI office. The case was subsequently transferred to the state of New Mexico for prosecution. The disposition of this charge is unknown.

11. **Ayla JARVIS**: (DOB: 7/23/1986, SSN: 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). As detailed below, Ayla JARVIS (the daughter of Dana JARVIS) is a high ranking member within the JARVIS DTO and helps run the DTO with her father. Investigation has revealed that Ayla JARVIS lives with her father on occasion at 13 Enebro in Santa Fe, New Mexico and at 1440 Cielo Vista in Bernalillo, New Mexico. A query of the Federal Aviation Administration database revealed that Ayla JARVIS has a listed address of 12711 East Cabeza de Vaca in Tucson, Arizona on her pilot's license. Ayla JARVIS was arrested for possession of a controlled substance and drug paraphernalia in September 2003. JARVIS volunteered for drug rehabilitation and the charges were dismissed.

12. **Eileen FITZGERALD**: (DOB: 5/16/1955, SSN: 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). As detailed below, Eileen FITZGERALD distributes drugs for the organization and is also attempting to establish her own independent drug distribution network. FITZGERALD is the owner of, and resides at, 3 Dovela in Santa Fe, New Mexico. She is the ex-wife of Dana JARVIS and the mother of two children fathered by JARVIS, Dylan and Ayla JARVIS.

13. **Cathy FITZGERALD**: (DOB: 2/1/1962, SSN: 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). As detailed below, Cathy FITZGERALD performs various tasks for the JARVIS DTO, including storing marijuana at her residence. Her residence is located at 28 Quail Run in Santa Fe, New Mexico. FITZGERALD was arrested for "drug abuse" on August 3, 1989, in the state of Ohio, and released on a $500 cash bond. The disposition of this charge is unknown.

7

14.     **Donald TRUJILLO**: (DOB: 9/28/1969, SSN: 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). TRUJILLO'S cellular telephone subscriber information lists his residence as 2710 Vereda Rodiando, Santa Fe, New Mexico.[5] Surveillance has revealed that TRUJILLO resides at 1917 Camino Lumbre in Santa Fe, New Mexico. TRUJILLO has worked for the JARVIS DTO as a pilot and as a drug and money courier.

15.     **David REID**: (DOB: 3/23/55, SSN: 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). REID is a certified pilot. As detailed below, REID is the primary pilot for Dana JARVIS' aircraft (N3AJ), which is used to fly JARVIS and other members of the organization around the United States to conduct meetings with other drug associates and/or to transport bulk cash. A query of the Federal Aviation Administration database revealed that Dave REID has a listed address of 214 East 2nd Street, Newberg, Oregon, on his pilot's license. REID is also the owner of a residence located at 9227 West Weaver Circle in Casa Grande, Arizona.[6]

16.     **Dakota FITZNER**: (DOB: 6/1/1973, SSN: 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). FITZNER resides at 639 Kinley NW in Albuquerque, New Mexico. As detailed below, FITZNER transports bulk marijuana and cash on behalf of the JARVIS DTO.

17.     **Barbara HANNA**: (DOB: 8/17/1967, SSN: 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). Subscriber information for HANNA'S cellular telephone lists her mailing address as Post Office Box 22882 in Santa Fe, New Mexico. Agents are unaware of HANNA'S physical address. As detailed below, HANNA assists in the counting of bulk cash received by the JARVIS DTO as payment for marijuana.

---

[5] 2710 Vereda Rodiando is the home of Donald TRUJILLO's parents.
[6] Subscriber information for REID'S cellular telephone lists his address as 9227 West Weaver Circle, Casa Grande, Arizona.

US v  Jarvis et al          24

18.    **Melania KIRWIN a/k/a Mila**: (DOB: 5/8/1983, SSN: 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).

Subscriber information for KIRWIN'S cellular telephone lists her residence as 4891 N Via

Serenidad in Tucson, Arizona.[7]  KIRWIN is also the lessee for an apartment at 9677 Eagle

Ranch, N.W., Apt. 2113, Albuquerque, New Mexico.  As detailed below, KIRWIN is Dana

JARVIS' paramour and assists JARVIS in the operation of the JARVIS DTO.

19.    **Joseph MARTIN**: (DOB: 12/29/1946, SSN: 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).  MARTIN'S

Arizona driver's license lists his address as 15025 Wells Fargo Road in Tucson, Arizona.

However, as detailed below, information provided by CS-1 and law enforcement surveillance

indicates that MARTIN resides at 9155 South Woodwalker Lane, Tucson, Arizona.  MARTIN is

believed to store bulk marijuana on behalf of the JARVIS DTO.  MARTIN was arrested for

possession of a controlled substance (cocaine) on 07-30-1999 in Albuquerque, New Mexico.

After being released from custody, MARTIN failed to appear for arraignment and an arrest

warrant was issued.  He was subsequently arrested on 05-28-2002, at the Dallas/Fort Worth

International Airport, after arriving with Dana JARVIS on a flight from Costa Rica.[8]  MARTIN

was extradited to New Mexico.  He pled guilty to possession of a controlled substance (cocaine)

on 02-17-2003, and was sentenced to time-served with 1.5 months probation (conditional

discharge).

20.    **Rafal MISTRZAK**: (DOB: 6/9/1973, SSN: 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).  As detailed below,

MISTRZAK is involved in the transportation of bulk currency for the JARVIS DTO.

---

[7]A query of Qwest communications, and utility records for 4891 N Via Serenidad revealed the
occupant to be Eleanor S. SOLIDAY.
[8]Per U.S. Customs Port of Entry records, on May 24, 2002, Dakota FITZNER and John NIETO,
along with five other companions, arrived at Dallas/Fort Worth International Airport on
American Airlines Flight 2166 from Costa Rica.

21.    **John NIETO**:  (DOB:  12/10/1947, SSN:  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).  As detailed below, NIETO is an "enforcer" for the JARVIS DTO, collecting debts owed to the organization.

22.    **Salvador ABEYTA**:  (DOB:  10/9/1972, SSN:  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).  ABEYTA is a former manager of Dana JARVIS' business, Club Rhythm and Blues.  As noted in paragraph 41 below, CS-2 stated that everyone employed at Club Rhythm and Blues was working for JARVIS in the drug trade one way or another.  In approximately December, 2002, a DEA agent acting in an undercover capacity engaged in a conversation with ABEYTA at Club Rhythm and Blues.  During that conversation, ABEYTA stated that he was leaving Club Rhythm and Blues to pursue a pilots license at a flight school in Phoenix, AZ.

## PRIOR APPLICATIONS

23.    Based upon a check of the electronic surveillance indices of the DEA, FBI, and the Bureau of Immigration and Customs Enforcement conducted on March 2, 2005, no prior federal applications for an order authorizing or approving the interception of wire, oral, or electronic communications have been made with respect to any of the persons, premises, or facilities named herein.

## CONFIDENTIAL SOURCES

24.    The Confidential Sources discussed below have assisted in this investigation and provided information set forth in this Affidavit.

a.    Confidential Source-1 ("CS-1").  CS-1 initiated contact with law enforcement regarding the JARVIS DTO and provided information in exchange for payment.  CS-1 was not a member of the JARVIS DTO, but learned of the information detailed below through legitimate business dealings with members of the JARVIS DTO.  CS-1 was charged in 1986 with

aggravated assault, burglary, and larceny. Those charges were dismissed. CS-1 has no pending criminal charges. The information provided by CS-1 has been substantially corroborated by subsequent investigation and by information provided by other confidential sources. Therefore, CS-1 is believed to be reliable and the information provided is believed to be accurate. Agents are no longer in contact with CS-1.

      b.    <u>Confidential Source-2 ("CS-2")</u>. CS-2 initiated contact with law enforcement regarding the JARVIS DTO and provided information in exchange for payment. CS-2 was/is a friend of JARVIS, but was not a member of the JARVIS DTO. CS-2 was charged with misdemeanor possession of marijuana in 1979. The disposition of this charge is unknown. CS-2 has no pending criminal charges. The information provided by CS-2 has been substantially corroborated by subsequent investigation and by information provided by other confidential sources. Therefore, CS-2 is believed to be reliable and the information provided is believed to be accurate. Agents are no longer in contact with CS-2.

      c.    <u>Confidential Source-3 ("CS-3")</u>. CS-3 initiated contact with law enforcement regarding the JARVIS DTO and has provided information and active cooperation in exchange for payment and an offer of immunity. As detailed more fully below, CS-3 was a member of the JARVIS DTO for several years and is still in contact with JARVIS. CS-3 was convicted of commercial burglary and sentenced to probation. CS-3 has no pending criminal charges. The information provided by CS-3 has been substantially corroborated by subsequent investigation and by information provided by other confidential sources. Therefore, CS-3 is believed to be reliable and the information provided is believed to be accurate.

11

## FACTS AND CIRCUMSTANCES

25.     In September 2001, the DEA Tucson, Arizona District Office received information regarding Dana JARVIS from a confidential source of information, hereafter referred to as CS-1. CS-1 told controlling agents that a man named Dana LNU (last name unknown) and Joe LNU were distributing ton quantities of marijuana from the Tucson geographic region throughout the United States. CS-1 stated that Dana LNU, later identified as Dana JARVIS, owned a bar on Central Avenue in Albuquerque, New Mexico, named Club Rhythm and Blues.

26.     CS-1 stated that Joe LNU, later identified as Joseph MARTIN drove a blue Plymouth Voyager, but the license plates were changed on a regular basis. CS-1 took controlling agents to MARTIN'S residence located at 9155 South Woodwalker Lane in a rural area near Tucson. CS-1 stated that MARTIN's residence was a marijuana stash house. The mailing address for MARTIN was noted to be 10390 South Sierrita Mountain Road. MARTIN was later determined to have cellular telephone number 520-591-2545.

27.     On January 25, 2001, agents from Tucson and CS-1 drove past MARTIN's Woodwalker residence. Agents observed a blue Plymouth Voyager bearing Arizona vehicle plate 057-FCH. A query of Arizona Department of Motor Vehicle records for vehicle plate 057-FCH revealed it to be registered to a Todd WARD at 5975 West Western Way in Tucson, Arizona.

28.     CS-1 stated the marijuana distributed for the JARVIS drug trafficking organization (DTO) was sent to the destination cities with young girls that were topless dancer-type individuals. CS-1 stated that the money was returned to JARVIS by a different set of individuals responsible only for money pick ups.

12

29.    The information from CS-1 was subsequently relayed to your Affiant. Your Affiant determined that Dana JARVIS owned and operated Club Rhythm and Blues located at 3523 Central Northeast in Albuquerque, New Mexico. In addition, agents determined that JARVIS owned a home at 13 Enebro in Santa Fe, New Mexico, and at 1440 Cielo Vista in Bernalillo, New Mexico. Further, agents discovered that JARVIS's ex-wife Eileen FITZGERALD owned a home located at 3 Dovela in Santa Fe, a short distance from the Enebro residence. Eileen FITZGERALD and JARVIS had two children together, Ayla JARVIS and Dylan JARVIS. Through telephone subscriber information, agents determined that Dana JARVIS had a cellular telephone number of 505-681-0195 and a home number (at 13 Enebro) of 505-466-4147 at the time. Agents also determined JARVIS used mailing address 551 West Cordova Road Box 144 in Santa Fe, New Mexico, the same mailing address used by his ex-wife FITZGERALD.

30.    In 2002, agents observed a disabled vehicle in the back yard of the 1440 Cielo Vista residence. A query of New Mexico Department of Motor Vehicle records revealed the vehicle was registered to Todd WARD. A comparison of New Mexico driver's license photographs of Todd WARD and Dana JARVIS revealed they were the same individual.[9]

31.    On December 18, 2001 Kara GOLD and Jude AUSTIN were stopped by a Texas Department of Public Safety (DPS) Officer for failure to wear a seat belt while driving on the interstate in Texas. GOLD was driving a vehicle which displayed Washington State vehicle plate

---

[9] Dana JARVIS was issued New Mexico Driver's license number 031380531 with a displayed date of birth of 01-24-1950 and home address listed as 535 West Cordova Road Box 144 Santa Fe, NM. Todd WARD was issued New Mexico Driver's license number 035480889 with a displayed date of birth of 04-10-1955 and home address listed as Box 15631 Santa Fe, NM.

13

109-MBF. Both GOLD and AUSTIN provided conflicting stories regarding their travel itinerary to the DPS Officer. The Officer at one point in the roadside interview asked GOLD and AUSTIN if they were carrying any large sums of currency. AUSTIN stated he had $400,000.00 in the vehicle he had "been saving." The Officer asked for and received consent to search the vehicle from both individuals. While the Officer searched the vehicle he placed both AUSTIN and GOLD in his patrol car. The audio system inside the patrol car monitored the conversation between GOLD and AUSTIN. AUSTIN immediately told GOLD not to say anything else. GOLD replied "I can't let you take full responsibility." AUSTIN replied "It's alright they got me." GOLD then replied, "no we share." They then discussed what each one told the DPS Officer.

32.    The DPS Officer discovered $395,000.00 inside a bag. The money was wrapped with gift wrap. The Officer later discovered $5,000.00 hidden in GOLD's clothing. Both GOLD and AUSTIN were arrested on Texas State charges of laundering money over $100,000.00. GOLD and AUSTIN were transported to the Gray County Jail where they were booked on the state money laundering charges.[10]

33.    While in custody, GOLD and AUSTIN placed outgoing telephone calls that were logged in jail records. According to jail records, GOLD placed a call to a "friend" at telephone number 505-466-1946, which was subsequently determined to be the residential telephone of Eileen FITGERALD at 3 Dovela in Santa Fe, New Mexico.[11]

---

[10]The criminal charges against AUSTIN and GOLD were subsequently dismissed. The seizure of the $400,000.00 was adjudicated in Texas state court. The county where the money was seized kept $320,000.00 and $80,000.00 was returned to AUSTIN.
[11]New Mexico Department of Motor Vehicle records and subscriber information for 505-681-0195 reveal that both Eileen FITZGERALD and Dana JARVIS have used the mailing address of

34.    A query of Washington vehicle plate 109-MBF revealed the vehicle GOLD and AUSTIN were driving was a National Car Rental. A review of the National Car Rental contract for said vehicle revealed the vehicle was rented in the name of Kara GOLD at the Evansville Airport located at 7601 Bussins Drive Highway 57 in Evansville, Indiana on December 16, 2001. The vehicle was scheduled to be returned to the Albuquerque Airport located at 3400 University Boulevard in Albuquerque, New Mexico on December 19, 2001.

35.    A scrap of paper found inside the rental vehicle occupied by GOLD and AUSTIN listed "National 97454048," "Jude 261-6635," and "Bear 502-330-5137." Jude AUSTIN was determined to have cellular telephone 505-261-6635. A query of Tracfone Wireless Communications records for telephone number 502-330-5137 revealed it was a disposable pre-paid cellular telephone. It was determined, however, that said telephone number called New Mexico telephone numbers 505-261-6635 (AUSTIN's cellular telephone) and 505-450-4131. A query of T-Mobile Communication records for 505-450-4131 revealed the subscriber to be Dakota FITZNER at 551 West Cordova Road, Box 103, Santa Fe, New Mexico.[12]

36.    A telephone call analysis of calls placed between September 1, 2001 and October 14, 2001 from AUSTIN's cellular telephone (505-261-6635) revealed:

      a.    15 calls to 505-463-3794, subscribed to Rafal MISTRZAK;

      b.    7 calls to 505-681-0195, subscribed to Jean Sweeney (Dana JARVIS' mother);

      c.    6 calls to 505-256-0849, subscribed to Club Rhythm and Blues; and

---

551 West Cordova #144, Santa Fe, New Mexico.
[12]See footnote 11 above.

   d.  2 calls to 505-450-4131, subscribed to Dakota FITZNER.

37. .A telephone call analysis of calls placed between September 1, 2001 and December 31, 2001 from Dakota FITZNER's cellular telephone 505-450-4131 revealed:

   a.  86 calls to 505-681-0195, subscribed to Jean Sweeney (Dana JARVIS' mother);

   b.  73 calls to 505-261 6635, subscribed to Jude AUSTIN;

   c.  13 calls to 505-256-0849, subscribed to Club Rhythm and Blues; and

   d.  13 calls to 520-591-2545, subscribed to Joseph MARTIN.

38. On April 8, 2002 Tucson agents observed a green suburban with New Mexico vehicle plate 994-MPN at MARTIN's residence in Tucson. A query of New Mexico Department of Motor Vehicle records for vehicle plate 994-MPN revealed it to be registered to Jude AUSTIN at 10604 Calle De Elena in Corrales, New Mexico.[13]

39. In October 2002, your Affiant interviewed a confidential source of information, hereafter referred to as CS-2. CS-2 stated that Dana JARVIS and his ex-wife Eileen FITZGERALD distributed ton quantities of marijuana throughout the United States including New Mexico, Colorado, Arizona, New York, Ohio, Indiana, and Kentucky. CS-2 also stated that Cathy FITZGERALD, Eileen FITZGERALD's sister, was in charge of loading vans filled with marijuana and stashing the marijuana at her home residence located in a rural area South of Santa Fe.[14]

---

[13]Jude AUSTIN at the 10604 Calle De Elena address was determined to be the same Jude AUSTIN stopped with Kara GOLD in December 2001 in the state of Texas with $400,000.00 United States Currency, through a comparison of AUSTIN'S driver's license photo with his Texas arrest photo.
[14]Cathy FITZGERALD's residence is located at 28 Quail Run in Santa Fe County, New Mexico.

40.     CS-2 stated that JARVIS traveled to the Tucson, Arizona, area three to four times per month to arrange large (multi-hundred pound) loads of marijuana. CS-2 stated that the marijuana was smuggled into the United States from the Republic of Mexico along the Southwest border of Arizona and New Mexico. The marijuana was then brought to a stash house location in Tucson, or shipped to stash house locations in the Albuquerque and Santa Fe areas. CS-2 said that JARVIS stashed up to 1000 pounds of marijuana at a time at his residence in Bernalillo, New Mexico.[15]

41.     CS-2 stated that JARVIS purchased Club Rhythm and Blues in Albuquerque specifically to launder drug proceeds. At one time, CS-2 said that JARVIS wanted to launder $750,000.00 per month through the club, but Eileen FITZGERALD stopped him because she thought such a large amount of cash would draw the attention of law enforcement authorities or the Internal Revenue Service. CS-2 stated that everyone employed at Club Rhythm and Blues was working for JARVIS in the drug trade one way or another. CS-2 indicated that Eileen FITZGERALD relied on JARVIS to help pay her monthly bills, but that she was attempting to establish her own independent marijuana distribution network using skills she had learned from JARVIS.

42.     CS-2 stated that JARVIS was paying his ex-girlfriend Barbara LNU, later identified as Barbara HANNA, approximately $150,000.00 per year to "keep quiet" about JARVIS' drug trafficking activities. HANNA owns a rental property a short distance from JARVIS's Enebro residence located at 5 Lauro Road in Santa Fe, New Mexico. CS-3 stated that

---

[15]As noted above, JARVIS owns a residence located at 1440 Cielo Vista, Bernalillo, New Mexico.

the 5 Lauro Road property was used to re-package and ship bulk marijuana as well as receive bulk cash from couriers.[16]

43.      CS-2 stated that Joel GOODELL was an accountant for the JARVIS DTO, and that he purchased large tracts of land in the State of Colorado.  GOODELL was married to Vicki GOODELL.  According to CS-2, when they divorced Vicki took a cash settlement from Joel because they did not want to explain how they accumulated their wealth.  CS-2 stated that Vicki GOODELL's sister is Kara GOLD.  CS-2 stated that another of Vicki GOODELL's sisters married Billy Joe COOK in the state of Colorado, and that they distributed large quantities of marijuana for the JARVIS DTO.

44.      In July 2004, your Affiant interviewed a confidential source of information hereafter referred to as CS-3.  CS-3 stated that he/she was a marijuana and bulk money courier for the JARVIS DTO from approximately 2001-2004.  CS-3 stated that in a period of one and a half years, he/she transported an estimated 10 million dollars for the JARVIS DTO.

45.      CS-3 identified Dana JARVIS as the head of the organization.  CS-3 stated that he/she personally participated in "dozens and dozens" of bulk money pick ups in Colorado, Massachusetts, Maryland, and Indiana on behalf of the JARVIS DTO.  CS-3 stated that bulk money pick ups were done very quickly at local hotel rooms and the bulk cash, which ranged in amounts from $250,000.00 to $750,000.00, was brought back to either to JARVIS at his 13 Enebro residence in Santa Fe or to HANNA's rental house located a short distance from

---

[16]In February 1992, HANNA was stopped at the Dallas/Fort Worth International Airport carrying $25,000.00 United States Currency.  HANNA stated the $25,000.00 was proceeds obtained by working as a prostitute.  This money was subsequently returned to HANNA.  According to the agent's report, HANNA had several documents in her possession that tied her to JARVIS.  No further information is available regarding the exact nature of those documents.

JARVIS's Enebro residence. While at HANNA's rental property, CS-3 stated other individuals were inside the garage area of the house on several occasions loading large duffel bags of marijuana in the trunks of vehicles or re-wrapping marijuana.

46.     CS-3 stated that JARVIS had one side of the organization that delivered the marijuana to the destination cities throughout the United States, and other individuals who were responsible for transporting bulk cash/drug proceeds back to JARVIS in Santa Fe, or in the Tucson area, where JARVIS spent a great deal of time. CS-3 stated that between the year 2000 and 2003 JARVIS had five two-person money teams that traveled throughout the United States picking up millions of dollars in drug proceeds from the various marijuana distribution/destination cities. CS-3 identified Rafal MISTRZAK as a manager at Club Rhythm and Blues, who was also in charge of bulk money pick-ups in Massachusetts. CS-3 stated that in 2003, he/she received approximately $70,000.00 bulk cash from MISTRZAK at a hotel in Boston. CS-3 stated that after receiving the $70,000.00, he/she was instructed to wait in the hotel room until more bulk cash arrived. The additional bulk cash, estimated by CS-3 to be $240,000.00, was delivered to CS-3 several days later by an unidentified individual. All of the bulk cash was then driven by CS-3 to New Mexico, where it was delivered to JARVIS at his 13 Enebro residence.

47.     CS-3 identified Dakota FITZNER as a "lieutenant" in charge of transporting bulk marijuana from the Tucson area to the Albuquerque area. CS-3 stated that FITZNER was also in charge of recruiting new members for the JARVIS DTO.

48.     CS-3 identified John NIETO, a Blues guitarist and employee of Club Rhythm and Blues, as a high ranking member of the JARVIS DTO and an "enforcer" known to brandish a

handgun to collect debts owed to the organization. CS-3 identified Matthew HOTHAN as a

courier and "enforcer" for the organization. CS-3 also stated that "Smiley," later identified by

CS-3 as Lloyd MONTOYA, was an "enforcer" and was also responsible for packaging and re-

packaging marijuana in Arizona.

49.    CS-3 stated the JARVIS DTO was very conscious of police surveillance

techniques, and that JARVIS trained his drug/money couriers in methods to avoid police

detection. For example, CS-3 stated JARVIS told his "employees" not to keep any receipts with

them that would allow law enforcement authorities to track their movements. In addition

JARVIS instructed his employees on how to avoid police surveillance while driving by making

erratic maneuvers and U-turns to detect follow vehicles. Further, JARVIS told couriers not to

ever write down area codes for drug associate contact numbers, again in an effort to avoid police

detection. CS-3 stated that JARVIS switched his cellular telephone on a regular basis as well.

CS-3 also said that JARVIS would never openly talk about "drug deals" on the telephone, but

would talk in code, and talk "around" the subject of drugs. When asked for an example of code

words used by the organization and JARVIS, CS-3 stated the word "pillows" was used to

describe pounds of marijuana. For example, if someone asked for "50 pillows" it meant 50

pounds of marijuana.

50.    CS-3 stated the organization had a red Volkswagen van equipped with digital

cameras and night vision equipment that it used for surveillance.[17] CS-3 explained that new

"recruits" were given tasks to perform for the organization like watch a specific location. The

---

[17]Agents discovered a red Volkswagen van at 1013 Camino Carlos Rey in Santa Fe, New
Mexico. This residence was reported by CS-3 to be a money count house for JARVIS and was
previously occupied by Angela CUMMINGS.