IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

    **vs.**                                                          No. 05-CR-1849-011 JH

**GEORGE OSGOOD,**

        **Defendant.**

## OBJECTIONS TO THE PRESENTENCE REPORT AND SENTENCING MEMORANDUM BY GEORGE OSGOOD

COMES NOW the defendant, George Osgood, by and through counsel of record Amy Sirignano, of the Law Office of Amy Sirignano, PC and, pursuant to U.S. Const. Amends. V and VI, and 18 U.S.C. § 3553(a), moves this Court to impose a thirty (30) month sentence following a two (2) year term of Supervised Release, pursuant to 18 U.S.C. § 3553(f). This sentence is sufficient but not greater than necessary to comply with the purposes of federal sentencing. As grounds, defendant states:

    1)    **Introduction, Facts of the Case, and History.**  George Osgood comes before this Honorable Court for sentencing on the following charges: Conspiracy to Distribute 50 Kilograms and More of Marijuana, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and 21 U.S.C. § (b)(1)(C). The federal sentencing guidelines applicable to this charge is 46-57 months. The parties have entered into a Rule 11(c)(1)(C) plea agreement to 30 months.

Mr. Osgood respectfully requests the Court to sentence him to thirty (30) months, consistent with the Rule 11(c)(1)(C) plea agreement, a two (2) year term of Supervised

Release, consistent with pursuant to 18 U.S.C. § 3553(f), and for the Court to recommend a Bureau of Prisons Medical facility to treat his serious and life-threatening medical conditions: Liver Failure, Acites and Hepatitis C.  Such a sentence would be sufficient but not greater than necessary to satisfy the purposes of federal sentencing.  His medical conditions will be detailed below.

    2) **Objections to the Presentence Report (PSR)/Medical Treatment**

        a. **Objections to the Presentence Report**

On August 27, 2009, counsel for Mr. Osgood submitted informal objections to the PSR to U.S. Probation Officers John Lovato, Vervian Yazzie and the government.  *See Defense Exhibit A.*

Although it does not impact his criminal history points, (Mr. Osgood is at Criminal History category I), Mr. Osgood would also like to advise the Court that in paragraph 174, the arrest for Theft of a Motor Vehicle was dismissed as the motor vehicle that Mr. Osgood purchased was previously stolen.  Furthermore, the charges in paragraph 176 for Assault, Negligent Use of a Firearm, Criminal Trespass and Larceny was also dismissed by the agency as the State Police ascertained that the alleged victim never had any chickens.  In paragraph 178, the charge of Possession of a Controlled Substance was also dismissed because the personal-use amount of marijuana was not his, but rather his ex-wife's.  In paragraph 179, the charge of Negligent Use of a Deadly Weapon was also dismissed as stated by Probation; Mr. Osgood was unaware it was illegal to discharge a firearm in a remote area of Las Vegas, NM.

2

b. **Medical Condition/Immediate Medical Treatment Needed**

As stated previously, Defense Exhibit A was sent to U.S. Probation and the government on August 27, 2009. Accompanying the letter were hundreds of pages of medical records. Pursuant to a conversation with Sonja Cole at the Bureau of Prisons ("BOP") Medical Section, on August 11, 2009, she advised counsel to attach Mr. Osgood's medical records to the PSR as Attachments to the PSR so BOP will have them immediately for classification after Mr. Osgood is sentenced. If not already Attached to the PSR, Counsel is requesting that the Court direct Probation to attach Mr. Osgood's medical records to the PSR to ease and expedite classification as requested by BOP.

On August 28, 2009, Counsel received an e-mail message from Deputy U.S. Marshal ("DUSM") Mark West, who advised he would look into Mr. Osgood's medical treatment. On September 1, 2009 Deputy U.S. Marshal Todd Kozusko sent an email to the parties advising that he spoke to Nurse Practitioner Karen Crist at the Torrance County Detention Facility ("TCDF"). She advised that she has twice spoken to counsel for Mr. Osgood, and that Mr. Osgood is in need of Hepatitis C Therapy. The treatment for Hepatitis C lasts approximately 1 year. Ms. Crist advised that TCDF is not a long term facility, and Mr. Osgood will be transferred to a BOP facility within the next few months. This type of treatment needs to be continuous and closely monitored by physicians and lab work. Additionally, according to Nurse Practitioner Crist, the lab work needed for this treatment is conducted just prior to the start of treatment. If the lab

work is done now, it will be obsolete when Mr. Osgood gets to the BOP facility, therefore, the necessary labs will be drawn at the start of treatment.  Ms. Crist told DUSM Kozusko that all progress notes and labs from the University of New Mexico Hospital doctors to TCDF indicate no urgency to begin this treatment.  DUSM Kozusko added that the TCDF is well aware of Mr. Osgood's medical status.  He has been under the care of medical staff.  The necessary treatment lasts approximately 1 year, twice a week and cannot have any breaks in the treatment (i.e. transfers, BOP moves).  Finally, Mr. Kozusko opines, "due to Mr. Osgood's court status, he will more than likely be transferred into a BOP [facility] where [BOP] can begin the continuous 1 year treatment needed."

In paragraphs 191-194, Officer Lovato does an excellent job describing Mr. Osgoods "multiple health disorders," and medications.  Presence Report ¶ 191-194.  Additionally, in paragraph 233 of the PSR, Officer Lovato stated that he considered a departure pursuant to U.S.S.G. § 5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse, Gambling Addiction).  Officer Lovato concluded that Mr. Osgood suffers from liver disease and Hepatitis C.  Mr. Lovato also states, "Based on the defendant's *current* medical condition it is likely he will remain in need of on-going medical care and may be in need of placement in a facility which can necessitate his medical care."  Presentence Report, ¶ 233.  The parties have entered into a Rule 11(c)(1)(C) plea agreement, so no departure can be granted.  However, Counsel for Mr. Ogsood would graciously request this Court to order the TCDC and the U.S. Marshal's

4

Service to continue treating all of Mr. Osgood's serious medical conditions until he reaches a BOP medical facility.

As the parties and the Court are well aware, it sometimes takes in excess of three months or longer before a defendant is classified and transferred to a BOP facility. Counsel for Mr. Osgood wholeheartedly disagrees with Ms. Crist's statement that there is no urgency to begin his treatment ASAP. The pages and voluminous records that Counsel has provided to Federal Probation provide, in great detail, the numerous ailments that Mr. Osgood is suffering from: 1. Cirrhosis; 2. History of Cirrhotic Ascites; History of Esophageal Varices with bleeding in the past; 3. History of alcoholism, in remission since September 2008; 5. Hepatitis C; 6. Gastroesophageal reflux disease; and 7. Resolved Depression, from 1984.

Mr. Osgood's last visit to the University of New Mexico Hospital was on May 20, 2009. There has been minimal medical treatment at the TCDC since that time. The Clinic Note of Doctor Matthew A. Smith from the Department of Internal Medicine and Dr. Jeffrey Dunkelberg, Associate Professor of Medicine in the Division of Gastroenterology & Hepatology states:

> PLAN: 1. The patient is clinically stable and I would continue his current medications at the current doses.
> 2. The patient *requires laboratories* as below to complete hepatocellular carcinoma (liver cancer) surveillance as well as to absolutely investigate possible co-morbid liver disease and his current Hepatitis C.
> 3. We will have the patient referred to Hepatitis C Clinic here, as he does not have access to hepatitis C therapy in his current facility and

5

> he may very well be incarcerated for as much as 18 months at this point.
> 4. Laboratories to include: CBC, differential, electrolytes, BUN, creatinine, liver function tests, TSH (thyroid stimulating hormone), alpha-1 antitrypsin level and phenotype, ANA, AMA, ceruloplasmin, ferritin, iron studies, SPEP, hepatitis genotype and viral load, alpha-getoprotein, antiendomysial antibody and IgA level, and urine toxicology screen.
> 5. Follow-up in Hepatitis C. Clinic.

*Defense Exhibit B*, Clinic Note of Doctors Matthew A. Smith and Jeffrey Dunkelberg on May 20, 2009 at 1:59 pm.

Arguably, many of these laboratory tests need to be conducted to "absolutely investigate possible co-morbid liver disease," liver cancer, immunity issues, and also to treat Mr. Osgood's Hepatitis C. Counsel is not a physician, but understands what occurs when a person is not treated consistent with doctor's orders. While it is true that the Hepatitis C treatment will take approximately 1 year, and laboratory tests need to be current to initiate such Hepatitis C treatment, Mr. Osgood is suffering from, and is inflicted with a multiple medical ailments, and the physicians would like to rule out liver cancer. The UNM doctors are recommending follow-up with the proper UNM clinics, that laboratory testing be done *prior* to his departure to a BOP facility, in part to ascertain the extent of his liver disease. The doctors acknowledged that he did not have access to Hepatitis C therapy in his current facility and recommended that he be referred to the Hepatitis C clinic at UNM. Without immediate care and immediate medical treatment, Mr. Osgood's condition could deteriorate and/or worsen prior to his classification and assignment in a BOP facility. Given his history and conditions that need to be treated,

Mr. Osgood respectfully requests that this Court recommend a BOP Medical Facility to finish out the remaining time of his thirty (30) month period of incarceration.

    3) **The Statutory Framework of Federal Sentencing after *United States v. Booker*, 543 U.S. 220 (2005).**

18 U.S.C. § 3553(a) requires the Court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of federal sentencing, and imposes a statutory duty to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the purposes of criminal punishment;
> (3) the kinds of sentence available;
> (4) the Guidelines range;
> (5) Sentencing Commission Policy Statements;
> (6) the need to avoid unwarranted sentencing disparities; and
> (7) the need to provide restitution.

A district Court's duty in sentencing is to impose a sentence in conformity with the parsimony principle in Section 3553. *See United States v. Smart*, 518 F.3d 800, 810 (10th Cir. March 4, 2008) ("[D]istrict Courts are bound to 'impose a sentence sufficient, but not greater than necessary' to comply with [the sentencing factors in Section 3553(a)(2)].") The purposes of federal sentencing enumerated in 18 U.S.C. §3553(a)(2) are the need for the sentence imposed:

> (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (b) to afford adequate deterrence to criminal conduct;
> (c) to protect the public from further crimes of the defendant; and
> (d) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

*United States v. Booker*, 543 U.S. 220 (2005); *United States v. Kristl*, 437 F.3d 1050 (10th Cir. 2006); *United States v. Sanchez-Juarez*, 446 F.3d 1109 (10th Cir. 2006).

In *Rita v. United States*, 127 S. Ct. 2456 (2007), the Court permitted, but did not require, appellate Courts to apply a presumption of reasonableness to a sentence within the advisory guideline sentencing range. *Rita*, 127 S. Ct. at 2463. The *Rita* Court also clarified that it was improper for a district Court to presume that the sentencing range as calculated under the Guidelines was reasonable. *Rita*, 127 S. Ct. at 2463. Left unanswered by *Rita*, however, was how appellate Courts were to review out-of-guidelines sentences.

In *Gall v. United States*, 128 S. Ct. 586 (2007), the Court clarified that federal sentencing should proceed in four basic steps: (1) Guidelines calculation, (2) Section 3553(a) analysis, (3) extent of variance from advisory sentencing range if an out-of-guidelines sentence is appropriate, and (4) justification for the out-of-guidelines sentence to afford meaningful appellate review. *Gall v. United States*, 128 S. Ct. at 595-597.

4) **History and Characteristics of the Defendant.** Mr. Osgood is a 60 years old. He has had a very interesting life working as a photographer, a carpenter, a framer for a general contractor, and as a gourmet and medicinal mushroom farmer at Fungi Perfecti, LLC. in Oregon. Mr. Osgood is a very intelligent and hard-working individual, who, despite a difficult time growing up, his alcohol addiction, has

successfully raised a son, Alan who attends the University of New Mexico, and will be graduating within the next two years.

Attached to the Amended Presentence Report are letters from Mr. Osgood's friends and family. Attached as Exhibit C to this Sentencing Memorandum is a letter from Alan Osgood to the Court.

5) **Supervised Release**: Pursuant to 18 U.S.C. § 3553(f), Mr. Osgood requests a term of two (2) years of Supervised Release.  Although there is a mandatory minimum of three (3) years of supervised release pursuant to 21 U.S.C. § 841(b)(1)(C), a two year term is warranted and permissible. *See Presentence Report* ¶ 216; 18 U.S. C. § 3553(f).  A two (2) year term of Supervised Release is permitted since Mr. Osgood does not have more than 1 criminal history point; Mr. Osgood did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; the offense did not result in death or serious bodily injury to any person; Mr. Osgood was not an organizer, leader, manager, or supervisor of other in the offense, as determined under the sentencing guidelines, nor was he engaged in a continuing criminal enterprise as defined by section 408 of the Controlled Substances Act; and not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense. 18 U.S.C. § 3553(f)(1-5).  Furthermore, there is no restitution involved in this case, and Mr. Osgood had minimum involvement considering the number of defendants charged

in this conspiracy.  If he is being treated for his medical issues, there will be no need for long-term drug and/or alcohol treatment.  Mr. Osgood does not need to be supervised for an extra year which will consume the time of those also assigned to supervise violent felons.  Lastly, if Mr. Osgood has difficulty with Supervised Release, at any time, his term of Supervised Release can be extended past two (2) years.

Mr. Osgood respectfully requests this Court to impose a sentence of thirty (30) months imprisonment, and for a recommendation from this Court that Mr. Osgood serve his sentence at the Federal Medical Center where he can receive treatment for his medical conditions outlined above.  Lastly, Mr. Osgood requests a two year term of Supervised Release as he meets the criteria set forth in 18 U.S.C. § 3553(f).

Considering all the facts and circumstances of this case, a thirty (30) month sentence with a two (2) year term of Supervised Release would be sufficient but not greater than necessary to satisfy the sentencing goals of punishment, deterrence, and protection of the public.

WHEREFORE, the defendant respectfully requests this Court to impose a sentence of thirty (30) months, a term of Supervised Release of two (2) years with treatment at a BOP Medical Facility, and for such other and further relief as the Court deems proper.

Respectfully Submitted,

/s/
Amy Sirignano
Law Office of Amy Sirignano, PC
1011 Lomas Boulevard NW
Albuquerque, NM 87102
505.242.2770
505.242.2774
Attorney for Defendant

I hereby certify that on September 9, 2009
I filed the foregoing pleading on CM/ECF
and sent a copy via facsimile to AUSA
James Braun at 505-346-7296 and to
John Lovato at U.S. Probation at 505-348-2625.

/s/
Amy Sirignano