IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                No. CR 05-1849 JH

DANA JARVIS, et al.,

    Defendants.

### DEFENDANTS' RENEWED REQUEST FOR DISCLOSURE ON PENDING MATTERS

Defendants David Reid and Greg Hill, by and through their respective counsel of record, hereby renew their previous requests for disclosure and ask that this Court resolve these matters before the Franks hearing now scheduled for May 3-5, 2010. Three matters requiring further disclosure are set forth below.

1. **REQUEST FOR DISCLOSURE OF INFORMATION CONCERNING INFORMANTS**

The central issue at the Franks hearing that is now set for May 3-5, 2010 will be whether the Government misrepresented the resources available to it when applying for permission to intercept electronic communications in this case. One of the principal contentions made by the defense is that the Government misled the issuing Court about the availability of, and amount of, information it could have obtained from informants. See Defendants' Joint Motion to Suppress

the Fruit of Title III Wiretaps (Doc.[1] #1533) at pp. 31- 43, 45; Defendants Reply to Government's Response Regarding Wiretaps (Doc. #1690) at pp. 8-10, 27-28.

The defense initially requested disclosure regarding informants on October 20, 2006, when counsel for Defendant Jarvis filed Defendants' Joint Motion for Disclosure and Production of Confidential Informants (doc. #722).  Defendants Hill and Reid joined that motion.  (Doc. #762, 893.)  The Government responded and the defense replied.  (Doc. 767, 816.)

Because that motion was filed before the legality of the wiretap had been raised, and well before this Court granted a Franks hearing, it was directed only toward disclosure for trial purposes.  However, in filing Defendants' Joint Motion to Suppress the Fruit of Title III Wiretaps (Doc. #1533) the defense noted that motions to reveal the identities of all informants had been filed and not yet ruled upon, and asked to be allowed to demonstrate the full facts known to the agents. (Id. at  p. 38 n. 5.)   As previously stated, that motion also discussed the misleading statements in the wiretap affidavits regarding the availability of, and degree of information the Government could have obtained from, informants.  (Id. at 39-43, 45.)  The Government responded on that issue and the defense replied. (Doc. #1661 at  21 n.13; # 1690 at 27-28.)  To date, this Court has not ruled on these requests.

The defense hereby renews those requests, specifically in the context of the Franks hearing that will be conducted in May.  Although the defense has

---

[1] The abbreviation "Doc." refers to the Clerk's docket in this matter.

already made a showing sufficient to obtain a Franks hearing on the issue of necessity, it is not limited only to the facts already known. It may inquire into other resources the Government had at its disposal; indeed that issue is at the heart of a Franks hearing. The Government's own affidavit in this case explicitly stated that it did not present to the issuing Court all of the facts known to the Government about this case, but only those that the affiant believed were essential to establishing **probable cause**. (Affidavit no. 1 at ¶ 2.) Thus, the facts relating to "necessity" are not covered.

This inevitably leads to the question of what other resources were available to the Government relating to necessity prior to its wiretap applications. Specifically, what informants were available and what information could have been obtained from them? These include individuals labeled as Confidential Sources, Confidential Informants, Sources of Information, and a host of similar designations. It would include all paid informants, such as those paid money in only one case, as well as professional informants who continually assist the Government in multiple investigations. Similarly, the issues of what steps were taken to "vet" the informants, whether the Government had informants in other cases or other districts that possessed information in this case, whether the Government polygraphed or drug-tested its informants, and what written agreements they had are all relevant to the Franks inquiry. Such questions will inevitably arise in the Franks hearing, and delays would be likely to result from

requests for disclosure that would follow.  Accordingly, the defense requests that this Court direct the Government to disclose all Informants and sources of any kind (both listed in the affidavit and those not listed), and however referred to, and to enumerate the information that they would likely have obtained and provided to the Government at the time the wiretap authorizations were sought, and to also disclose the agreements they had and the process the Government used to check their trustworthiness and veracity, including but not limited to polygraph and drug testing.

2. **REQUEST FOR OTHER INFORMATION RELEVANT TO *FRANKS* HEARING**.

In July of 2006, a group of defendants represented by court-appointed counsel filed Defendants' Joint Motion to Compel Discovery Regarding Electronic Communications (Doc. #573).  That motion requested 17 different categories of information.  Previous counsel for Mr. Reid filed a joinder in certain parts of that motion.  (Doc. #592.)  The Government responded (Doc. # 614) and the Court issued an order granting and denying various items of the requested information (Doc. #733).  Thereafter, the defense filed a belated "Reply," or "Motion to Reconsider."  (Doc. #770.)  The Government responded to that pleading in late November of 2006.  (Doc. #778).  Eight days later counsel undersigned substituted in for Mr. Reid's previous counsel.  (Doc. #781.)  Shortly thereafter the Court issued an order in response to the "Reply" or "Motion to Reconsider,"

leaving in place its earlier rulings, with certain modifications. (Doc. # 819). In the following period the Government made portions of the disclosure available to the defense in response to the Court's order.

However, undersigned counsel states, on information and belief, that not all of the ordered disclosure has been made, or if it was, that disclosure was not made in such a way that it was available to counsel undersigned. In addition, counsel further renews the requests for certain previously-denied information in light of the <u>Franks</u> hearing that is now set. As discussed above, much of the requested information is relevant to that hearing, and will come out in testimony. Requests for documentation and Jencks Act material at that time would only tend to delay the process. Accordingly, counsel is renewing the requests at this time to facilitate an efficient resolution of the <u>Franks</u> issues at the hearing. The following information is requested:


A.    <u>Request #4 from Motion #573: Pen register records and printouts</u>.

There are two issues involving pen-register and trap-and-trace devices (hereinafter "pen registers") that are separate but related. They will be discussed separately in this motion. The first has to do with whether the Government fully utilized the pen-register technique as permitted by the Court's authorization. The second is whether the Government captured information beyond that authorized, which will be discussed later near the end of this pleading.

In July of 2006 the defense requested "[a]ll pen register records and

-5-

printouts pertaining to this investigation, any of the defendants in this case, or any factual allegation made or individual referred to in the affidavits of DEA Special Agent Richard L. Stark." (Doc. #573 at 4.)  These records, in their unedited form, would show the information that the Government gathered from the pen-registers that the court had already given permission for, before moving to the much more intrusive step of wiretapping.  This Court denied the request as moot, noting that the Government had agreed "to work with the defense to provide" pen register records in this matter.  (Doc. # 733 at 2-3.)

The Government has indeed disclosed numerous pen-register records.  The defense, however, believes that not all of the records available to the Government were disclosed.  The reason for this belief is a statement made by Government's counsel that there were records in this category that he would not disclose because they were not used in the investigation, and would not be used at trial.

This is insufficient for the ends of justice.  The defense does not know exactly what definition the Government is using as to whether records were "used in the investigation," but the entire point of a <u>Franks</u> hearing on necessity is that the Government had resources at its disposal that diminished its need for a wiretap, and it chose not to disclose those resources to the issuing Court.  The failure to tell the issuing Court of such resources is a violation of the wiretap statute, regardless of whether the Government used the resources or not.  Therefore, the defense respectfully requests that this Court direct the

Government to disclose any and all pen register records related to this case that have not yet been disclosed, as they are directly relevant to the Franks issue.

      B.      Requests #5 and 6 from Motion #573: Financial investigation: The defense also requested that the Government disclose all net worth investigation records pertaining to this investigation and all financial analysis reports made in the case. (Doc. #573 at 4-6; Doc. # 770 at 8-9.) The Government responded to the former by stating that it had already produced "relevant financial documents" and to the latter by saying that the request was over-broad, and moot because a complete financial analysis had not yet been done. (Doc. # 778 at 7-9.) This Court denied both requests as being insufficiently supported by the defense motion, as well as denying the former request as moot and the latter as not being required under Rule 16. (Doc #733 at 2; # 819 at 2-3.)

The defense hereby renews those requests in light of the Franks hearing now set. As previously noted, the essence of a Franks hearing on the issue of necessity is that the Government misled the issuing Court about the normal investigative techniques available to it before requesting wire-intercept authorization. The defense contends that one such technique is to conduct a net-worth analysis of the primary suspects, and to survey their spending activities, and that the Government in this case failed to inform the issuing court of its abilities to conduct such investigations, and to explain its failure to do so. See Doc. # 1533 at 45-46; Doc. # 1690 at 11-12 citing United States v. Ailemen, 986

-7-

F.Supp. 1228, 1241, 1304-07 (N.D. Cal. 1997) . If there is no such information, then the Government should so state. If such information exists, then the Government should disclose it so that the portion of the <u>Franks</u> hearing relating to that issue may proceed in an orderly fashion. In sum, the requested information is relevant to the <u>Franks</u> issue, and the Court should therefore direct that it be disclosed.

      C.     <u>Request #7 from Motion #573: tape recordings</u>: In its July 2006 motion the defense requested that the Government disclose all audiotapes or similar recordings of any physical surveillance or consensual monitoring pertaining to this case. (Doc. #573 at 5.) The Government neither agreed nor declined to produce this material in its Responses (Doc. # 614, 778.) This Court ordered the Government to "produce all videotapes and audio tapes requested by Defendants in categories 7 and 13." (Doc. #733 at 3.)

     Undersigned counsel is of the belief that the Government, in response to this order, permitted previous counsel, Mr. Scott Davidson, to view and listen to various tape recordings, but did not physically produce them to the defense. Mr. Davidson is no longer serving on the case, as all of the clients for whom he was appointed to work have settled their cases. Accordingly, he will not be participating in the <u>Franks</u> hearing, and his recollections of the evidence he viewed will not be available to the defense. It is therefore respectfully requested that the Government produce the recordings as originally ordered, so that

counsel may understand what the Government was or was not able to tape record, which is directly relevant to the Franks/necessity issue.

        D.      Request #13 from Motion #573: surveillance reports, logs, notes: As part of its July 2006 filing the defense requested production of all logs, reports, records, original notes, and other records pertaining to physical surveillance of any individual named in the affidavits. (Doc. #573 at 7.) The Government argued that discovery of such items is not authorized under Rule 16 (Doc # 614 at 2 # 778 at 10-11.) The Court initially ruled that the Government must produce only videotape or audiotape relating to this category. (Doc. #733 at 3.) In its later ruling the Court concluded that the defense was entitled to the production of documents in this category as well as the video and audio tapes. (Doc. # 819 at 3.) Counsel undersigned believes that the disclosure relating to this category was never completed. Accordingly, the defense respectfully renews its request in this regard.

      3.      **PRODUCTION OF PEN REGISTER, CELL SITE AND GPS INFORMATION**.

In April of 2009 Defendant Osgood filed a Motion to Compel Discovery Related to Pen Register, Cell Phone Site, or GPS Data. (Doc. #1578.) This motion seeks disclosure of raw data (as opposed to that already manipulated by software such as the Penlink program) obtained by the Government in this matter

regarding pen registers, cell phone site data, GPS data, and second line data/digital data from wiretaps.  Counsel for Mr. Reid joined in that motion.  (Doc. # 1598.)  The Government responded (Doc. #1633) and the defense replied (Doc. #1688).  The defense hereby renews that motion in order to facilitate an efficient and speedy resolution of the suppression matter and Franks hearing now set.

The motion includes the second part of the pen-register data issue mentioned above.  The principal contention here is that the defense has reason to believe that the Government collected information from the pen registers, and from other sources such as cell-site data or GPS data in excess of that permitted under the Court orders in this case.  One category of such information is referred to as "post cut-through dialed digits."  A full explanation of that issue is contained in the defense Wiretap Suppression Motion (Doc. #1533 at 60-62), the Government's response (Doc. #1661 at 28-30) and the Defendants' Reply (Doc. 1690 at 29-33).  The failure to disclose to the issuing Court that substantive content was captured (as opposed to just the fact that a call took place) violates the requirement that the Government submit a full and complete statement of methods used, and constitutes a Franks violation as well.

The Government has responded that the data it captured from cellular phones was initially sent to Washington DC, then routed to Albuquerque, where it was loaded directly into the Penlink software.  (Doc #1633, Exhibit at 1.)  It contends that there is, therefore, no pre-Penlink "raw data" to disclose.   (Doc. #

-10-

1633 at 5 and attached exhibit). On the contrary, however, the defense submits, upon information and belief, that the DEA captures information, possibly at its Virginia headquarters near Washington DC, and loads it into centralized "intelligence" or "fusion" databases. The "intelligence" from those databases may then be made available to agents investigating a particular case without them necessarily knowing the original source thereof. Counsel further believes that DEA agents do consult DEA intelligence databases, and therefore may well come into possession of such information if it is contained in such a database.

      Thus, the fact that neither the agents in the field nor their analysts ever saw pen register content outside of the Penlink software does not mean that such content was never captured, and it does not mean that such content played no part in the investigation. Accordingly, the affidavit submitted by the Government does not settle the issue. To do so the Court should direct the Government to disclose all applications for pen register data, along with the affidavits and other materials filed in support thereof, as well as any Court orders that resulted, along with all raw data it has captured from its pen registers. The former are merely court filings of the kind routinely made available to defense counsel after an investigation has concluded, and the latter should require little work for the Government to comply with if indeed no raw data was collected.

      The remaining issues have to do with location information. Cell-site and GPS data gives law enforcement authorities real-time information about where a certain cellular telephone (and therefore its user) is located at a given moment.

In addition, pen registers may also be configured to provide phone location data. The Government seems to tacitly ***admit*** that it collected and used cell-site data in this case, but argues that it is not discoverable. (Doc. #1633 at 9-10.) The defense contends that the Government has a duty to disclose its collection and use of such information to any Court from which it seeks a wiretap authorization. (See 18 U.S.C. § 2518 requiring "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous"). The failure to make such disclosure relates directly to the necessity component of the wiretap suppression issue before the Court, as well as being a material omission that constitutes a Franks violation.

Moreover, the defense also contends that the Government needs a warrant to obtain location information under Fed. R. Crim. P. Rule 41, and there is no indication it ever obtained one in this case. Accordingly, this Court should direct the Government to disclose any applications it made to collect such data along with any affidavits or other materials filed in support thereof, and any court orders that were issued, as well as the data collected itself.

For these reasons, as well as those previously submitted to this Court, the defense hereby renews its requests for disclosure, and asks that the Court grant those requests before the upcoming Franks hearing to ensure the efficiency of those proceedings.

Electronically filed,

| | |
|---|---|
| /s/ | /s/ |
| Walter Nash, for Defendant Reid | Billy R. Blackburn for Defendant Hill |
| P.O. Box 2310 | 1011 Lomas NW |
| Tucson, Arizona 85702 | Albuquerque, New Mexico  87102 |
| (520) 792-1613 | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of March, 2010, I filed the foregoing electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing.

Electronically filed

Walter Nash