UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
          Plaintiff,

v.                                                        Cause No. 05-cr-1849-JCH

ADRIAN SANFORD,
          Defendant.

**SENTENCING MEMORANDUM**
**ON BEHALF OF DEFENDANT ADRIAN SANFORD**

      COMES NOW the Defendant, Adrian Sanford, by and through his attorney, Robert R. Cooper, and files the following Sentencing Memorandum setting forth all factors which the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

**BACKGROUND**

**I. Adrian Sanford's family history, education, characteristics and employment.**

      Adrian Sanford was born in Chicago, Illinois to Thomas and Susan Sanford. His parents divorced when he was only two years old. His father remarried his stepmother, Linnea Sanford. Adrian grew up in Lombard, Illinois, and stayed there until 1993. At that time, at the age of 19, Adrian moved to Sedona, Arizona, where he lived until 2001. He now lives in Tucson, Arizona, where he has been since 2001. Adrian is engaged to Chelsea Goodell, who he has been in a relationship with since 1994. The two have three children together ages 13, 10 and 7. Adrian is the financial provider for his family, working full time for Arizona Shuttle in Tucson. Adrian has been employed there since 2008. Prior to this time, dating back to 2002, Adrian was unable to work due to a chronic back condition. During that time, he acted as a stay-at-home dad, while his fiancé worked and supported the family financially. Prior to this offense, Adrian has had

almost no contact with the criminal justice system. When Adrian is not working, he is taking care of his three children and has devoted himself to his family.

## II. Adrian's chronic back condition.

Adrian began experiencing back problems in 2002. In early December of 2002, Adrian fell around a concrete pole near a gas pump, severely injury his back. He has a herniated disk in his lower back which causes chronic back pain. He was also been diagnosed with Degenerative Disc Disease in September 2004. As recently as March of this year he was hospitalized for over 5 days. He has good and bad days. Some days he can get by and manage the pain. Other days the pain is so excruciating he has to miss work and stay in bed. He is receiving injections for the pain and takes pain medication as needed.

## III. The Present Offense

As this Court is aware, Adrian's plea arises from a large, complex bulk marijuana transportation conspiracy, in which the Government has characterized Adrian as the least culpable defendant. Adrian was essentially a runner or "gopher" for Dana Jarvis and other members of the conspiracy. He got involved with them from around 2004 to August 25, 2005, primarily due to financial problems he was experiencing. Jarvis's drug conspiracy had been ongoing since the early 90s. Of this almost 25 years, Adrian was only involved for a little over one year. Other than running errands, Adrian participated in wrapping marijuana and putting it in suitcases for transport on one occasion. Adrian also picked up money for Jarvis and deposited money. The Government considers him the least culpable member of this conspiracy. *See* PSR, ¶ 139. As indicated in the PSR, Mr. Sanford is eligible for the reduction set forth in U.S.S.G. § 2D1.1(b)(11) because he meets the criteria set forth in U.S.S.G. § 5C1.2(1)-(5). Indeed, Mr. Sanford fully and timely cooperated and was prepared to offer any assistance necessary to the

Government, but the Government did not utilize him and thus he is not receiving a departure pursuant to U.S.S.G. § 5K1.1.

**IV. Adrian's post-arrest rehabilitation.**

Adrian was arrested on January 4, 2006, for this case and released to pretrial supervision the same day. Since his release on pretrial supervision, over five and half years ago, he has had no issues of non-compliance with conditions of release. He has maintained full-time employment, had no knew arrests, been drug and alcohol free, and has devoted himself to supporting his family. On December 9, 2010, the Court agreed to remove the condition of pretrial supervision. Adrian made this request of the Court at the request of pre-trial services, as his pre-trial services officer did not believe he was in need of supervision.

**MR. SANFORD'S SENTENCE**

**INTRODUCTION**

The PSR calculates Adrian's guideline sentence with a base offense level of 26. *See* PSR ¶ 145. Adrian is entitled to a two-level reduction pursuant to U.S.S.G. § 2D1.1(b)(11). *Id.* ¶ 146. Since he was a minimal participant, he also receives a four-level role adjustment reduction. *Id.* ¶ 148. Finally, he should receive a three-level adjustment for acceptance of responsibility, which brings his total offense level to a 17. *Id.* ¶¶ 151-152. This makes his guideline imprisonment range to 24 to 30 months. While the PSR does not address the issue at all, Adrian submits a downward departure for his medical condition, based upon U.S.S.G. § 5H1.1. Adrian also submits that a sentencing within the guideline range would result in a disparity among him and other co-defendants in this case who have received lesser periods of incarceration. Moreover, a guideline range sentence would not account for the fact he gave assistance to the Government, has rehabilitated himself and had a perfect record of compliance

on pretrial supervision for 5 ½ years, supports a family of three children and has full-time gainful employment. The Court should consider a variance to probation, or to a Zone B sentence, such that the Court could issue a sentence of probation, along with a period of home detention. *See* U.S.S.G. § 5B1.1(a)(2).

I.   **DOWNWARD DEPARTURES WITHIN THE SENTENCING GUIDELINES**

   **A. Adrian should receive a departure sufficient to allow for probation with home confinement because of the extraordinary circumstances created by his infirmity and physical impairment.**

Age, infirmity, and physical impairment are permissible grounds for departure when they are present to an exceptional degree. *See United States v. Collins*, 122 F.3d 1297, 1307 (10th Cir. 1997). Guideline § 5H1.1 states in pertinent part: "Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." Guideline § 5H1.4 states, "an extraordinary physical impairment may be a reason to depart downward, e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." If age, infirmity and physical impairment are present, the Court may depart below the guideline sentencing range giving a shorter term of incarceration, or impose an alternative to confinement. *United States v. Slater*, 971 F.2d 626, 635 (10th Cir. 1992).

Adrian has had serious and significant back problems since 2002. Most notably, as recent as March of this year, Adrian was hospitalized for his severe back pain. Adrian has to take oral pain medication on a daily basis and also receives injections from his doctor. Incarcerating him with these conditions will simply cost more money than is necessary. Under these circumstances, Adrian should be considered infirm pursuant to the policy statement set forth in Section 5H1.1. Both Sections 5H1.1 and 5H1.4 contemplate the possibility of either reducing

the guideline sentencing range or imposing a sentence of home confinement or probation in lieu of incarceration. Given Adrian's extreme physical impairment, a sentence of probation or home confinement is appropriate. Accordingly, Adrian submits the Court should depart downward six levels to a Zone B offense level in order to allow imposition of a sentence of home confinement followed by a period of probation.

II.     **NON-GUIDELINE DEPARTURE BASED ON 18 U.S.C. § 3553(a).**

A. **The law on variances from sentencing guidelines.**

A non-guideline departure, or variance, from a guideline sentence is authorized by the Supreme Court's ruling in *United States v. Booker*, that the guidelines are advisory only. 543 U.S. 220, 245 (2005). *See U.S. v. Smart*, 518 F.3d 800, 803, 807 (10th Cir. 2008); *U.S. v. Garcia-Lara*, 499 F.3d 1133, 1137 (10th Cir. 2007). Since the Court made the Guidelines advisory, a sentencing court must treat the guidelines as just one of a number of factors set forth in 18 U.S.C. § 3553(a) to determine the appropriate sentence. *Booker*, 543 U.S. at 245-46; *Gall v. United States*, 552 U.S. 38, 46 (2007); *Smart*, 518 F.3d at 803. The overriding principle and basic mandate of Section 3553(a) requires a district court to impose a reasonable sentence that is "**sufficient, but not greater than necessary**" to comply with the factors set forth in Section 3553(a). The sentencing court's post-*Booker* discretion and reasonableness inquiry is guided by these factors. *Gall*, 552 U.S. at 50.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act as revised by *Booker*, "requires a sentencing court to consider Guidelines ranges, *see* 18 U.S.C.A. § 3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well." *Booker*, 543 U.S. at 245-46. Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of factors set forth in 18 U.S.C. § 3553(a). If a guideline

sentence is not consistent with the totality of those sentencing factors the Court may depart or vary the sentence from the guidelines. *Garcia-Lara*, 499 F.3d at 1137.

The Section 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
(5) any pertinent policy statement . . .; and
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . .;

*See also*, 18 U.S.C. § 3551 (stating in relevant part, " . . . a defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this Chapter so as to achieve the purposes set forth in sub-paragraphs (A) through (D) of Section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case").

If the Court does issue a variance from the guidelines it "must give serious consideration to the extent of any departure. . .and must explain [its] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 552 U.S. at 46. However, extraordinary circumstances are not required to justify a sentence outside the guideline's range. *Id.* at 47; *Smart*, 518 F.3d at 808. As the Supreme Court explained in *Gall*, the sentencing court should start by correctly calculating the applicable guideline range. 552 U.S. at 49. The guidelines are the starting point and the benchmark from

which the Court should begin to consider the appropriate sentence. *Id.* Next, the court should then consider all of the Section 3553(a) factors in determining the ultimate sentence. *Id.* at 49-50. "In so doing, [the sentencing judge] *may not presume* that the guidelines range is reasonable," but rather, should make an individualized assessment based on the circumstances before it. *Id.* at 50 (emphasis added). If a variance is warranted, the court must ensure the extent of the variance is justified by sufficiently compelling reasons. *Id.* "A major [variance] should be supported by a more significant justification than a minor one." *Id.* Rather than focus on a particular "heartland" or "mine-run" of cases, the court should consider that "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

### B. A variance is warranted because Adrian provided substantial assistance to authorities, but the Government chose not to pursue the assistance offered which would have resulted in a Section 5K1.1 departure.

Undoubtedly, a defendant's complete and full cooperation with authorities is relevant to the characteristics of the defendant. *See U.S. v. Fernandez*, 443 F.3d 19, 33 (2d. Cir. 2006) (stating that cooperation is relevant to the history and characteristics of the defendant even if Government did not file motion for downward departure). Significant cooperation is also relevant to other Section 3553(a) factors. *See id.* at 33, n.10. Post-*Booker* a sentencing court may now impose a below guideline sentence unshackled by the lack of subsequent prosecution of individuals involved in the crimes of the defendant as the result of the cooperation.

Adrian's cooperation speaks volumes about his character as a person. Despite the fear of retribution, Adrian cooperated to the fullest extent possible. He has been more than willing to

assist in subsequent prosecutions, but has not been asked to do so. Under these circumstances, a guideline sentence does not reflect the history and characteristics of Adrian as Congress envisioned in Section 3553(a)(1). To the contrary, a below guideline sentence would reflect his history and characteristics by acknowledging his substantial cooperation. *See U.S. v. Fernandez*, 443 F.3d 19, 33 (2d. Cir. 2006) (stating that cooperation is relevant to the history and characteristics of the defendant even if Government did not file motion for downward departure). Adrian knows his actions were illegal and wrong, but he did everything he could to right that wrong by giving the authorities all the information he had and offering to assist in the prosecution of those for whom he worked. A guideline sentence in this case would only reflect the characteristics of Adrian that are relevant to the crime he committed, not those that are relevant to his willingness to make-up for that crime.

In light of his cooperation, a guideline sentence would also result in a sentence greater than necessary to comply with the four purposes of sentencing set forth in Section 3553(a)(2). The first of the four is to have the sentence reflect the seriousness of the offense, to provide just punishment for the offense and "*to promote respect for the law*." *See* § 3553(a)(2)(A) (emphasis added). Rewarding Adrian for his cooperation with a non-guideline sentence would promote respect for the law, while imposing a guideline sentence that does not account for this cooperation would not.

A below guideline sentence would also uphold the other three purposes of sentencing— general deterrence, specific deterrence and to provide the defendant with medical care and correctional treatment. *See* § 3553(a)(2)(B-D). Subsection (a)(2)(B) provides for the need for the sentence imposed to deter criminal conduct, i.e., general deterrence. Giving Adrian more a variance for his cooperation creates an incentive for others to cooperate, even though the

Government may not utilize their cooperation and file a motion for downward departure. Many defendants fear retaliation for cooperation. If a defendant believes they may get no benefit from cooperation because the Government does not utilize it, they may deem cooperation not worth the risk. Subsection (a)(2)(C) provides for specific deterrence in that it states the sentence should protect the public from further crimes of defendant. A below guideline sentence would still deter Adrian from future crimes. Whether he is incarcerated or given probation with home confinement, he would still be significantly incapacitated from committing crime. This, in addition to his severe medical conditions, would ensure specific deterrence. Finally, a below guideline sentence would not do violence to the last purpose of sentencing—to provide needed medical treatment to Adrian. *See* Section 3553(a)(2)(D). While the Bureau of Prisons can likely provide adequate medical treatment, it goes without saying that his medical conditions can be more effectively addressed in a non-incarceration setting. It also significantly reduces the cost to the taxpayer to have Adrian treated by his current physicians, rather than the Bureau of Prisons.

    Last, but certainly not least, a below guideline sentence would serve "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6). A defendant who is guilty of the same conduct as Adrian or even more serious conduct, and who may have a much more significant criminal history may even be given a lesser guideline sentence than Adrian because he had the opportunity to testify to a grand jury or at trial. At a minimum, Adrian should not receive a disparate sentence from others similarly situated simply because, for reasons beyond his control, the Government has been unable to fully utilize his cooperation. Accordingly, a below guideline sentence is needed to satisfy the prohibition on disparate sentences.

### C. A variance from the advisory guidelines is warranted for Adrian's medical conditions if the Court determines Sections 5H1.1 do not warrant a downward departure.

If the Court were to determine that Adrian's infirmity and physical impairment did not rise to the level contemplated by the policy statements set forth in Sections 5H1.1, it can then determine if a variance from the guidelines is warranted. While Adrian contends his back condition is sufficiently serious under the guideline, a variance would be warranted when examining all the Section 3553(a) requirements. A variance for his medical condition gives proper weight to all of his history and characteristics, not just those that fit into Section 5H1.1. A below-guideline sentence serves to uphold the four purposes of sentencing set forth in Section 3553(a)(2). Most notably, subparagraph (D) which relates to the provision of medical treatment in the most effective manner. Medical treatment provided to Adrian while under home confinement is likely more effective and less costly than that which the Bureau of Prisons (BOP) would provide. This is especially true for treatment involving the complex back problems that Adrian faces. It would be beneficial to both Adrian and the BOP, if Adrian continued treatment with the same doctors who are aware of and familiar with all his conditions, rather than having the BOP doctors have to get up to speed.

A below guideline sentence is warranted and reasonable where, as here, assuming the Court does not depart based upon Section 5H1.1, a guideline sentence does not serve the sentencing considerations set forth by Congress, but rather thwarts those considerations. Other than the guideline factors (factors 4 and 5 of § 3553(a)), every other sentencing factor is satisfied by a below guideline sentence. Because Adrian has serious and complex health problems, he requests that the Court depart from the guideline and impose a sentence that upholds the requirements of Section 3553(a). Adrian respectfully requests the Court grant a variance

downward and sentence him to a Zone B sentence with home confinement followed by probation.

### D. A variance is warranted for Adrian's post-crime rehabilitation and family circumstances.

In *Pepper v. United States*, 131 S.Ct 1229, 1241 (2011), the U.S. Supreme Court held that a district court may vary from the sentencing guidelines based upon post-sentencing rehabilitation. Certainly, post-crime, pre-sentencing rehabilitation should be treated no differently. Adrian has over five and half years of perfect compliance with pretrial supervision. His time on supervision was so exemplary that pretrial services requested that he be taken off supervision. Clearly, Adrian has rehabilitated himself, following his brief stint of criminal activity. In conjunction with the fact that he is the sole breadwinner for his family of three children and his fiancé, a variance to a Zone B sentence would undoubtedly serve the factors set forth in Section 3553(a).

### E. A variance is warranted to avoid a sentencing disparity among Adrian's co-Defendants.

Several co-defendants who have already been sentenced have received sentences of probation or incarceration that is less than a guideline sentence would be for Adrian. The PSR sets forth most of the dispositions of the co-defendnants where available. *See* PSR, ¶¶ 13-38. For instance, David Reid, who was a pilot that flew loads of marijuana for Jarvis, and was a substantial member of the organization, received a sentence of 12 months unsupervised probation. PSR, ¶ 18. Other key players, who are more culpable than Adrian, also received sentences below the Adrian's guideline range. Bill Jones received a sentence just over 12 months. *Id.* ¶ 29. Mary Canant, who maintained a house where marijuana was kept, received a 24 month sentence. *Id.* ¶ 30. Melania Kiriwn and Rafal Mistrzak, both of whom had much

larger roles in the conspiracy than Adrian, received sentences of 12 months. One of the key sentencing factors in Section 3553 is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Based on Adrian being the least culpable of all the co-defendants as well as the other facts set forth in this Memorandum, a disparity would occur if he were sentenced to guideline range or even a sentence longer than these other co-defendants. For these reasons, the Court should vary from the guideline imprisonment range.

## CONCLUSION

For all of the foregoing reasons, Adrian respectfully submits that a sentence of home confinement, followed by probation is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

> Respectfully Submitted,
> Robert R. Cooper Law Firm, P.C.
>
> */S/*
> ROBERT R. COOPER
> Counsel for Adrian Sanford
> 1011 Lomas Blvd. NW
> Albuquerque, New Mexico 87102
> (505) 842-8494

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2011, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James Braun
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico, 87103

*/S/*
ROBERT R. COOPER